UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SECURITIES AND EXCHANGE           :
COMMISSION,                       :
                                  :
              Plaintiff,          :   Civil Action
                                  :   No. 05-11853-PBS
       v.                         :
                                  :
BIOPURE CORPORATION, THOMAS       :
MOORE, HOWARD RICHMAN, and JANE   :
KOBER,                            :
                                  :
              Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO SHORTEN RESPONSE TIME TO REQUESTS FOR
ADMISSION AND TO EXPEDITE SUMMARY JUDGMENT HEARING**

**Preliminary Statement**

Defendants Biopure Corporation ("Biopure" or the "Company"), its current general counsel, and two former Biopure executives (respectively, Jane Kober, Thomas Moore and Howard Richman) (collectively, "Defendants") seek the following: (i) a slightly (by nine days) shortened response time within which the Securities and Exchange Commission ("SEC") must answer a discrete number of requests for admission; and (ii) a prompt hearing on Defendants' motions for summary judgment. The pending civil action, itself the result of a two-year SEC investigation, is causing harm to the Defendants and, collaterally, to the Company's shareholders -- the very constituency that is purportedly protected by SEC regulation. The Defendants' proposed schedule will present for prompt resolution discrete legal issues based on indisputable facts, which the Defendants maintain will dispose of this case.

I. **DEFENDANTS AND THE PUBLIC INTEREST REQUIRE PROMPT RESOLUTION**

The SEC instituted this civil action on September 14, 2005, against Biopure, its current general counsel, and two former Biopure executives. Although this action began six weeks ago, the SEC Staff has conducted its investigation leading to suit for nearly two years. Throughout that time, the individual Defendants have suffered reputational injury associated with the threatened and now asserted SEC enforcement action. Moreover, the pendency of the SEC enforcement action carries additional adverse consequences for the Company, which relies on financing through public and private equity markets. As disclosed in its most recent Form 10-Q, "[t]he Company expects [its] funding to be sufficient to fund operations into March 2006 under the Company's current operating plan. Additional capital will be required to fund the Company's operations until the Company becomes profitable." Biopure Corporation Form 10-Q, filed September 9, 2005, p. 6 (excerpts attached hereto as Ex. A). With the SEC action filed

and pending, the Company's fundraising has been severely hampered and, indeed, the Company's survival is threatened. The Company maintains the claims are without merit and the threat to its existence unwarranted. What it asks for is a prompt opportunity to remove this cloud.

Apart from the Defendants, the pendency of this action is potentially harming Biopure's shareholders -- the very individuals whose interests are purportedly advanced by SEC regulation. As Biopure's financing is currently dependent upon equity contributions (if and until it can market its product at a profit, see Ex. A), Biopure's continuing equity financing efforts will necessarily have a dilutive impact on current shareholders. The lower the price for Biopure's stock, the more the dilution. Biopure's share price has been adversely affected by the SEC's investigation and lawsuit.

The individuals too face reputational and career injury even with the very pendency of the SEC action.

The overarching purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. This Court is thus empowered to expedite litigation and sequence pre-trial activities when justice so requires. Here, justice so requires.

## II.   THIS ACTION IS SUSCEPTIBLE TO RESOLUTION BY SUMMARY JUDGMENT NOW

The SEC alleges that the Defendants engaged in securities fraud in connection with the Company's on-going efforts to obtain domestic marketing approval by the United States Food and Drug Administration ("FDA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure, a blood substitute sought for use by, among others, the U.S. military. The SEC's theory of liability, as articulated in its Complaint, focuses on the Defendants' disclosures and

alleged omissions concerning two matters -- the nature of an FDA letter dated July 30, 2003 and a "clinical hold" imposed by the FDA on a proposed clinical trial:

> From July 30, 2003 until December 11, 2003, in multiple public filings, press releases and statements, defendants misled investors by <u>failing to disclose that they had received a complete response letter from the FDA</u>, despite the fact that others, including the FDA staff and Biopure's own outside regulatory counsel, repeatedly and consistently identified the letter to defendants as a complete response letter. From July 30 until December 11, defendants further misled investors in multiple public filings, press releases and statements by misrepresenting the <u>nature and scope of the deficiencies in the BLA raised by the FDA and by failing to disclose the continuing clinical hold on trauma indication</u>.

Complaint ¶ 68 (emphasis added).[1]

While the Defendants maintain a number of legal and factual defenses to the SEC's allegations, the action is susceptible to resolution by summary judgment <u>now</u>, based on a handful of discrete, purely legal issues, predicated on indisputable facts. These potentially dispositive issues include (among others) the following: (i) whether the July 30, 2003 letter from FDA to Biopure was a "Complete Response Letter" -- an FDA communication of particular regulatory significance; and (ii) whether the FDA's hold on a <u>proposed</u> clinical trial was an event that should have been disclosed, as a matter of now well-developed law.

The SEC contends that the BLA Letter omitted to state a material fact, namely, that the BLA Letter was a Complete Response Letter. <u>See</u> Complaint ¶ 68. Accordingly, the SEC first must establish as <u>fact</u> that the BLA Letter was a Complete Response Letter. If not, no omission to state so could be material. Whether the BLA Letter was a Complete Response Letter, however, is a <u>pure issue of law</u>, a legal conclusion, based on very limited CBER criteria easily

---

[1] Although the SEC also identifies allegedly misleading statements prior to July 30, 2003, the allegations relate to the clinical hold on the trauma indication referenced in paragraph 68, above. <u>See</u> Complaint ¶¶ 35-37, 56-60, 62. Likewise, the alleged "nature and scope of the deficiencies in the BLA raised by the FDA" are identified elsewhere in the Complaint as issues relating to and arising from the trauma hold question. <u>See</u> Complaint ¶¶ 79, 81-89, 91-101.

ascertained through a few requests for admission. Defendants will show that the BLA Letter was not a Complete Response Letter and summary judgment on this ground should enter due to the absence of the predicate facts upon which the SEC's 10b-5 claim is based.

The inquiry into the SEC's allegations regarding the trauma protocol safety hold is similarly narrow: Can a safety hold on a protocol for a proposed future in-hospital study be material where no application for such product use has been submitted or is contemplated and where the FDA admittedly stated that any implication of the safety hold for a pending application would be set out in its BLA Letter and, admittedly, none was? In light of the SEC's articulated theory of liability, the lengthy factual development of this case throughout the SEC's investigation, and a few discrete, indisputable facts, the Defendants respectfully submit that this case may be disposed of by summary judgment.

### III.  THE SEC WILL NOT BE PREJUDICED BY THIS SCHEDULE

The SEC has effectively completed its discovery in this action during the course of its lengthy investigation, which began as early as September 2003. The SEC took testimony under oath from numerous witnesses in this action, including each of the individual Defendants. During the course of its investigation, the SEC received reams of documents from both parties to this action and relevant non-parties (including the FDA and the Company's FDA-regulatory counsel).

The SEC, therefore, is easily in a position to respond by November 21, 2005 to the Requests For Admission served on October 31, 2005 -- only nine days earlier than as provided by Federal Rule of Civil Procedure 36. Similarly, the SEC will not be prejudiced by responding to the Defendants' motion(s) for summary judgment and defending a hearing on the same promptly. The proposed summary judgment schedule provides the SEC sixteen (16) days for

response, two days more than required by Local Rule 7.1(B)(2). And as provided by Federal Rule of Civil Procedure 56, the Defendants are entitled to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action . . . ." -- a period which has already expired. See South Austin Coalition Community Council v. SBC Communications Inc., 274 F.3d 1168, 1171 (7th Cir. 2001) ("District courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case -- in advance of discovery, if appropriate, for summary judgment may be sought at any time.").

In short, the minor modifications to the response time for requests for admission and early hearing on summary judgment requested by the Defendants would not be prejudicial to the SEC and would be in the interests of justice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Joint Motion To Shorten Response Time To Requests For Admission And To Expedite Summary Judgment Hearing, order the SEC to respond to the Requests For Admission by November 21, 2005, and adopt the proposed schedule included within the Motion.

Dated: October 31, 2005
Boston, Massachusetts

Respectfully submitted,

**JANE KOBER,**

By her attorneys,

/s/ Thomas J. Dougherty
Thomas J. Dougherty BBO #132300
Justin J. Daniels BBO #656118
Scott T. Lashway BBO #655268
Skadden, Arps, Slate,
  Meagher & Flom LLP
One Beacon Street
Boston, MA 02108
(617) 573-4800

**BIOPURE CORPORATION,**

By its attorneys,

/s/ Robert A. Buhlman
Robert A. Buhlman, BBO #554393
Anthony E. Fuller, BBO #633246
Michael D. Blanchard, BBO #636860
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

| | |
|---|---|
| **HOWARD RICHMAN,** | **THOMAS MOORE,** |
| By his attorneys, | By his attorneys, |
| /s/John D. Hughes | /s/Bernard J. Bonn, III |
| John D. Hughes BBO #243660 | Bernard J. Bonn, III BBO #049140 |
| Cathy A. Fleming (*pro hac vice*) | Erica L. Hovani BBO #655030 |
| Mary P. Cormier BBO #635756 | Dechert LLP |
| Edwards & Angell, LLP | 200 Clarendon Street |
| 101 Federal Street | 27th Floor |
| Boston, MA 02110 | Boston, MA 02116 |
| 617-951-2225 | 617-654-8611 |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on October 31, 2005.

/s/ Michael D. Blanchard
Michael D. Blanchard

# EXHIBIT A

# SECURITIES AND EXCHANGE COMMISSION
## Washington, DC 20549
# FORM 10-Q

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended July 31, 2005

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from       to

Commission File Number 001-15167

# BIOPURE CORPORATION
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **04-2836871** |
| (State of Incorporation) | (IRS Employer Identification Number) |
| **11 Hurley Street, Cambridge, Massachusetts** | **02141** |
| (Address of principal executive offices) | (Zip Code) |

**(617) 234-6500**
(Registrant's telephone number)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   ☑ Yes   ☐ No

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Exchange Act).   ☑ Yes   ☐ No

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   ☐ Yes   ☑ No

The number of shares outstanding of each of the issuer's classes of common stock as of September 7, 2005 was:

| | |
|---|---|
| Class A Common Stock, $.01 par value | 24,359,170 |
| Class B Common Stock, $1.00 par value | 117.7 |

---

## BIOPURE CORPORATION
## INDEX TO FORM 10-Q

| | Page |
|---|---|
| Part I — Financial Information: | |
| Item 1 — Financial Statements (Unaudited) | |
| Condensed Consolidated Balance Sheets at July 31, 2005 and October 31, 2004 | 3 |
| Condensed Consolidated Statements of Operations for the three and nine months ended July 31, 2005 and July 31, 2004 | 4 |
| Condensed Consolidated Statements of Cash Flows for the nine months ended July 31, 2005 and July 31, 2004 | 5 |
| Notes to Condensed Consolidated Financial Statements | 6 |
| Item 2 — Management's Discussion and Analysis of Financial Condition and Results of Operations | 13 |
| Item 3 — Quantitative and Qualitative Disclosure of Market Risk | 23 |
| Item 4 — Controls and Procedures | 23 |
| Part II — Other Information: | |
| Item 1 — Legal Proceedings | 24 |
| Item 2 — Unregistered Sales of Equity Securities and Use of Proceeds | 24 |
| Item 3 — Defaults Upon Senior Securities | 24 |
| Item 4 — Submission of Matters to a Vote of Security Holders | 24 |
| Item 5 — Other Information | 25 |
| Item 6 — Exhibits | 36 |
| Signatures | 37 |
| Exhibit Index | |
| Ex-3.(i) Restated Certificate of Incorporation | |
| Ex-3.(ii) By-laws of Biopure, as amended | |
| Ex-31.1 Section 302 Certification of CEO | |
| Ex-31.2 Section 302 Certification of CFO | |
| Ex-32.1 Section 906 Certification of CEO | |
| Ex-32.2 Section 906 Certification of CFO | |

BIOPURE CORPORATION
Notes to Condensed Consolidated Financial Statements
July 31, 2005
(Unaudited)

1. Basis of Presentation

   The accompanying unaudited condensed consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States for interim financial information and pursuant to the rules and regulations of the Securities and Exchange Commission (SEC). Accordingly, they do not include all of the information and footnotes required by accounting principles generally accepted in the United States for complete financial statements. In the opinion of management, all adjustments (consisting of normal recurring adjustments) considered necessary for a fair presentation have been included. Operating results for the three and nine month periods ended July 31, 2005 are not necessarily indicative of the results that may be expected for the year ending October 31, 2005; however, the Company expects to incur a substantial loss for the year ending October 31, 2005.

   Effective May 27, 2005, the Company's outstanding class A common shares, stock options and warrants reverse split at a six to one ratio, with post split shares retaining a par value of $.01 per share. The Company had 146,157,346 shares of class A common stock outstanding at the end of trading on May 26, 2005, which converted into 24,359,558 shares. Biopure did not issue fractional shares of common stock following the reverse split. Stockholders otherwise entitled to fractional shares received a cash payment. All references to shares and options, in this period and in prior periods, have been adjusted to reflect the post reverse split amounts.

   The accompanying consolidated financial statements include the accounts of the Company and its wholly owned subsidiaries, Biopure Netherlands, BV, Biopure South Africa, Pty, Ltd., Reperfusion Systems Incorporated, DeNovo Technologies Corporation and Biopure Overseas Holding Company, and NeuroBlok Incorporated, a 60% owned subsidiary. All intercompany accounts and transactions have been eliminated in consolidation.

   These financial statements should be read in conjunction with the audited consolidated financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the fiscal year ended October 31, 2004, filed with the SEC on January 14, 2005.

   The Company has financed operations from inception primarily through sales of equity securities and development and license agreement payments. The Company has not been profitable since inception and had an accumulated deficit of $490,830,000 at July 31, 2005. As of July 31, 2005, the Company had $16,454,000 in cash and cash equivalents. The Company expects this funding to be sufficient to fund operations into March 2006 under the Company's current operating plan. Additional capital will be required to fund the Company's operations until the Company becomes profitable. The Company does not expect to be profitable for at least the next several years and may never become profitable. The Company intends to seek additional capital through sales of equity securities and, if appropriate, to consider strategic collaborations for sharing development and commercialization costs. However, there can be no assurance that adequate additional financing will be available to the Company on terms that it deems acceptable, if at all.

2. Net Loss per Share

   Basic net loss per common share is computed based on the weighted-average number of common shares outstanding during the period. Diluted net loss per common share is computed based upon the weighted-average number of common shares outstanding during the period, adjusted for the dilutive effect of the Company's common stock equivalents, including the shares issuable upon the conversion of Class B Common Stock outstanding and the exercise of common stock options and warrants. The dilutive effect of stock options and warrants is determined based on the treasury stock method using the average market price of common stock for