UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | : |
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| BIOPURE CORPORATION, | : |
| THOMAS MOORE, HOWARD RICHMAN, | : |
| and JANE KOBER | : |
| | : |
| Defendants. | : |
| | : |

Civ. A No. 05-11853-PBS

---

### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO SHORTEN RESPONSE TIME TO REQUESTS FOR ADMISSION AND TO EXPEDITE SUMMARY JUDGMENT HEARING

Plaintiff Securities and Exchange Commission ("Commission") opposes the Defendants' Joint Motion to Shorten Response Time to Requests for Admission and to Expedite Summary Judgment Hearing ("Defendants' Motion") for three reasons. First, defendants are asking this Court, the Commission, and a non-party to expedite discovery so that defendants can file a summary judgment motion -- but the stated bases for seeking summary judgment on their face raise disputed issues of fact that must be decided by a jury. Second, defendants have already propounded significant discovery requests to the Commission and to a non-party, which would be impossible to complete in the next two weeks. Third, defendants' own initial disclosures indicate that several dozen witnesses may have to be deposed prior to trial of this action, and expedited discovery and summary judgment briefing before there is an opportunity for that discovery to take place would be a waste of judicial resources.

The Commission is mindful that lengthy discovery may not ultimately be necessary in this case and seeks to bring this case to trial as soon as reasonably possible. However, the

discovery that is necessary (and that defendants have already sought) simply cannot be completed in less than a month.  Accordingly, the Commission respectfully requests that this Court deny Defendants' Motion.

### **Background**

This is a civil enforcement action against defendants Biopure Corporation ("Biopure"), Thomas Moore, Biopure's former chief executive officer, Howard Richman, Biopure's former head of regulatory affairs, and Jane Kober, Biopure's current general counsel, for violations of the federal securities laws.  The Commission alleges that during the period of April through December 2003, defendants engaged in a fraudulent scheme to misrepresent and conceal from investors the truth about its applications for Food and Drug Administration ("FDA") approval to test and market its blood-substitute product called Hemopure, which is effectively the company's only product.

Specifically, the Commission alleges that in April 2003, defendants began receiving negative information from the FDA regarding Biopure's efforts to obtain FDA approval of Hemopure but failed to disclose the information, or falsely described it as positive developments. In April 2003, the FDA placed a clinical hold barring Biopure from conducting clinical trials of Hemopure in trauma settings such as emergency rooms, because of safety concerns about Hemopure.  During the next eight months, defendants made public statements about Biopure's plans to obtain approval for trauma uses of Hemopure while concealing the imposition of the clinical hold, and Biopure's repeated unsuccessful attempts to lift the clinical hold.

In addition, on July 30, 2003, the FDA informed defendants that it had not approved Biopure's biologics license application ("BLA") for use of Hemopure in orthopedic surgery.  In

its letter, the FDA conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioned the safety of Hemopure.  Defendants, however, issued public statements beginning on August 1, 2003 describing the FDA's communication as good news, causing Biopure's stock price to increase by over 20%.  Among the additional misleading statements set forth in the Complaint, defendants mislead investors about the reasons for a 90-day extension granted by the FDA and about major concerns with the BLA that the FDA conveyed to defendants prior to July 30, 2003.

As the true status of Biopure's efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of December 2003, the company's stock price plummeted almost 66% from its August 1 price. During the entire period of the scheme, Biopure raised over $35 million from investors.

Defendants now seek expedited discovery contending that this enforcement action, rather than defendants' conduct which forms the basis for this action, is causing harm to the company. Although the Commission is mindful that protracted discovery may not be necessary in this case, the schedule that defendants request is unrealistic and inappropriate.  Accordingly, the Commission respectfully requests that this Court deny Defendants' Motion.

<u>**Argument**</u>

The Commission opposes Defendants' Motion because the stated reason underlying Defendants' Motion -- that a motion for summary judgment may narrow or end this case -- lacks any basis in law or fact.  Moreover, as a practical matter, the purportedly "discrete" discovery that defendants are attempting to take on an expedited basis prior to moving for summary judgment is broad, will require the Commission to take additional discovery, and imposes a

substantial and unnecessary burden on non-party witnesses.  Lastly, defendants' own initial

disclosures indicate that defendants intend to rely on the testimony of up to 27 witnesses who did

not provide testimony to the Commission in its investigation.  This Court should afford the

Commission the opportunity, as allowed under the Federal Rules, to take discovery from these

witnesses, among others, in the normal course of discovery.

I.    **Expedited Discovery to Accommodate Defendants' Desire to Move for Summary
      Judgment this Month Is Inappropriate Because There Is No Basis in Law or Fact
      to Expect That Summary Judgment Briefing Would Narrow or Dispose of this Case**

Although Rule 56(b) on its face permits defendants to file a motion for summary

judgment at any time, the Commission respectfully suggests that briefing summary judgment

now -- at the beginning of discovery -- is not likely to result in narrowing the issues in this case

and would be a waste of judicial resources.  Defendants offer two reasons why summary

judgment briefing this month would be appropriate: first, they contend that the July 30, 2003

letter from the FDA to defendants was not a "complete response letter," and second, they contend

that the clinical hold imposed by the FDA was not material.  (Defs' Mot. at 4.)  Neither

contention has merit and neither issue is susceptible to resolution as a matter of law.  For that

reason alone, there is no basis to accommodate defendants' desire to depart from the response

times set forth in the Federal Rules or to expedite discovery and a summary judgment hearing.

A.    **Whether the FDA's July 30, 2003 Letter was a
      Complete Response Letter is a Disputed Factual Question
      And its Resolution Would Not Narrow the Issues in this Case**

Expedited summary judgment briefing on whether the FDA's July 30, 2003 letter was a

"Complete Response Letter" will not narrow the issues of this case because (1) there is a basic

factual dispute regarding this issue and (2) this is just one of defendants' many disclosure failings

4

set forth in the Complaint.  Defendants' contend that the July 30, 2003 letter that Biopure

received from the FDA was not a complete response letter and therefore, the Commission cannot

prevail on its claim that defendants failed to disclose that it was.  (Defs' Mot. at 4-5.)  Contrary

to defendants' assertion, however, even the most cursory review of the record -- including the

defendants' own admissions -- reveals a factual dispute of this issue.  As defendants would have

to concede:  the FDA staff told defendants the letter was a complete response letter and that fact

was confirmed to defendants in August 2003 through defendants' counsel, who spoke with the

FDA.  Moreover, defendants have now admitted on at least 20 occasions over the past two years

-- in periodic filings with the Commission, press releases and other public statements -- that the

letter was a complete response letter.  Accordingly, this basic factual dispute would likely

preclude judgment as a matter of law on this issue.

Even if defendants were to establish as a matter of law that the letter was not a complete

response letter -- and they cannot because the opposite is true -- this enforcement action would

not be considerably narrowed..  The Commission's allegation relating to the July 30, 2003 letter

is that defendants mislead the investors about the FDA's overall response to Biopure's BLA:

that the FDA questioned the integrity of the data Biopure was relying upon and imposed

significant obstacles to Biopure ever receiving FDA approval.  In short, the FDA reacted very

negatively to Biopure's BLA, but defendants told investors they had received positive news.

Whether the letter was a "complete response letter" is one part of the inadequate disclosure

because, among other things, receipt of that type of letter has implications for the timing of

subsequent FDA review and the potential for FDA approval.  However, the failure to disclose

that the letter was a complete response letter was just one of many inadequacies in Biopure's

disclosures to investors during 2003.  Accordingly, even if the facts were not in dispute (which they are), briefing summary judgment on that issue would not narrow or dispose of this case.

### B.    Summary Judgment Would Also Not Be <u>Appropriate on Defendants' Materiality Contention</u>

Similarly, summary judgment would be inappropriate on defendants' contention that the FDA's clinical hold was not material as a matter of law.  It is well-established that questions of materiality under the federal securities laws should normally be decided by a jury, not by the Court on a motion for summary judgment.  <u>See</u> <u>In re Stone & Webster, Inc. Sec. Litig.</u>, 414 F.3d 187, 209-210 (1st Cir. 2005) (vacating entry of summary judgment for defendants on materiality issue because, in part, "the materiality of a false statement [is a] question[] for the jury."); <u>see also</u> <u>In re Biogen Sec. Litig.</u>, 179 F.R.D. 25, 35 (D. Mass. 1997) (Saris, J.) ("The determination of materiality 'is normally a jury question . . .'") (citation omitted).  Courts decide questions of materiality only in the rare circumstance where the moving party satisfies a high standard of showing that reasonable minds could not possibly differ about the materiality of the information in question.  <u>Stone & Webster</u>, 414 F.3d at 209; <u>Biogen</u>, 179 F.R.D. at 35.

Here, even before discovery has commenced, there appears to be ample dispute about the materiality of defendants' disclosures and omissions relating to the clinical hold.  The Commission's complaint is not, as defendants suggest, that all clinical holds imposed by the FDA are material to investors as a matter of law.  Rather, as set forth in the Complaint, defendants in this case misled investors about what was really happening concerning the trauma indication.  Specifically, there is ample evidence that reasonable investors would want to have known more complete information about the clinical hold than what defendants told them --

especially in light of the facts, among others that: (1) defendants made prior public statements the that trauma indication was Biopure's "first clinical priority;" (2) defendants made contemporaneous public statements that implied that Biopure had not yet sought FDA approval to test other indications (when in actuality they had); (3) defendants made contemporaneous public statements that Biopure was affirmatively planning for trauma trials of Hemopure and even named a particular hospital (when in actuality the FDA had barred trials); (4) the FDA's clinical hold of the trauma trial was based on the same data Biopure submitted in support of its BLA; and (5) the FDA told defendants that the clinical hold was based on a preliminary assessment of the BLA. Although defendants may dispute the significance of these facts, this is exactly the type of dispute that should be decided by a jury.

Moreover, the question presented on this Motion is not whether defendants' substantive contention about materiality has merit -- and it does not -- but rather whether defendants' desire to file a Rule 56 motion justifies departing from the ordinary discovery rules to accommodate that desire. Because it would be rare to enter summary judgment on questions of materiality in any action and because there already appears to be a factual dispute relating to materiality in this action, the Commission respectfully suggests that there is no reason to accommodate defendants' extraordinary request.

## II.    As a Practical Matter, Even the "Discrete" Discovery Defendants Are Presently Seeking Cannot Be Completed in less than a Month

Defendants' Motion should be denied for the additional reason that it is unlikely that even the purportedly discrete discovery defendants' are seeking can be completed this month.

First, defendants' Request for Admissions will require that the Commission seek

additional discovery.  Defendants have requested that the Commission admit or deny 14 statements.  Unlike a private litigant, the Commission does not have any personal knowledge of the truth of these statements.  Thus, the Commission can only admit or deny statements based on the contents of its investigative record.  Having preliminarily reviewed the defendants' Requests, the Commission expects that responding to several requests will require that the Commission make additional "reasonable inquiry" pursuant to Rule 36 by seeking additional discovery.  In particular, several of defendants' Requests relate to a January 2004 meeting between the FDA and Biopure.  The Commission staff took the investigative testimony of many relevant witnesses before this meeting took place and before defendants produced documents relating to the meeting.  Thus, the investigative record may be insufficient for the Commission to admit or deny certain statements without additional discovery, which is unlikely to be completed in the next two weeks (i.e., by the requested November 21 response date).

Second, defendants have sought extremely broad and burdensome discovery from the FDA that would be nearly impossible to complete on the short notice requested by defendants.  Defendants have served three subpoenas on the FDA seeking depositions and production of documents on November 16, 17 and 18, 2005, respectively.  (Exhibit A hereto).  Commission counsel received notice of these subpoenas on November 2 -- with only two weeks advance notice, and Commission counsel believes that the FDA received less notice than that.  The subpoenas seek extremely broad categories of documents most of which are entirely irrelevant to this case and likely privileged from production.  Among other things, Biopure is seeking personnel files of certain FDA employees, all complete response letters sent by the FDA to anyone for any product at any time under the guidelines in place in 2003, all documents relating

8

to Hemopure (which might include documents covering a time period of nearly 20 years since

Biopure began clinical trials), and all documents relating to the BLA and trauma indication

applications. With less than two weeks notice, it is unrealistic to expect the FDA, which is not a

party in this litigation, to be able to locate, review and produce (or assert privilege over) these

broad and burdensome categories of documents.

In addition, FDA regulations and witness and counsel availability may also make it

unlikely that defendants' discovery can be completed two weeks. As Commission counsel has

informed counsel for the defendants, FDA regulations require that FDA employees obtain

authorization from the Commissioner of Food and Drugs prior to providing substantive

deposition testimony. See 21 C.F.R. § 20.1. Although Commission counsel does not know how

long this process takes, defendants did not afford the FDA much time to obtain the required

authorization. Moreover, the availability of witnesses and counsel may also make it difficult for

these depositions and document productions to be completed with only two weeks notice.

For these reasons, practical considerations make it extremely unlikely that the expedited

discovery sought by defendants can be completed in the next two weeks.

### III.   Defendants' Initial Disclosures Indicate That Substantial Discovery May Be Necessary in this Case

Finally, defendants' initial disclosures indicate that substantial discovery may be

necessary in this case before summary judgment motions should be heard. Although the

Commission staff took sworn testimony from many witnesses in the investigation that led to the

institution of this action, defendants' initial disclosures indicate that additional discovery relating

to other witnesses may be necessary. Defendants have identified 27 additional witnesses whose

testimony was not taken during the investigation and on whom defendants purportedly intend to

rely.  The Commission should be afforded an opportunity to depose these witnesses prior to

briefing any summary judgment motions.  In addition, the Commission also expects to depose

the defendants and to further develop the evidentiary record with additional factual and expert

discovery, as permitted under the Federal Rules.  Lastly, there are likely more than 20 witnesses

who reside more than 100 miles outside of Boston and whose testimony may have to be

preserved for trial.

For these reasons as well, it would be a waste of judicial resources for summary judgment

motions -- especially a motion raising the fact-intensive issue of materiality -- to be heard prior to

completion of a reasonable discovery period.

### <u>Conclusion</u>

For the foregoing reasons, the Commission respectfully requests that this Court deny

Defendants' Motion.

Dated:  November 10, 2005                            Respectfully submitted,
        Boston, Massachusetts


           /s/ Ian D. Roffman
          Ian D. Roffman (Mass. Bar No. 637564)
          Ellen Bober Moynihan (Mass. Bar No. 567598)
          ATTORNEYS FOR PLAINTIFF
          SECURITIES AND EXCHANGE COMMISSION
          73 Tremont Street, 6th Floor
          Boston, Massachusetts 02108
          (617) 573-8900, ext. 8987 (Roffman)


*Served Electronically*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> N0. 05-11853 - PBS |

## BIOPURE CORPORATION'S NOTICE OF
## DEPOSITION OF LAURENCE LANDOW

PLEASE TAKE NOTICE THAT, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendant Biopure Corporation will take the deposition upon oral examination of Laurence Landow on November 18, 2005 at 10:00 a.m., at the offices of Bingham McCutchen LLP, 1120 20th St., NW, Suite 800, Washington, D.C. 20036, before a notary public or other officer authorized by law to administer oaths. The deposition will be recorded by stenographic means and will continue from day to day until completed.

Laurence Landow will be served with a subpoena and will be required to produce the documents specified in Schedule A attached hereto.

You are invited to attend and cross-examine.

Dated November 2, 2005

BIOPURE CORPORATION,

By its attorneys,

_Robert A. Buhlman_

Robert A. Buhlman (BBO #554393)
Anthony E. Fuller (BBO #633246)
Michael Blanchard, (BBO #636860)
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1276
(617) 951-8000

Counsel for Defendant Biopure
Corporation

## CERTIFICATE OF SERVICE

I, Robert A. Buhlman, hereby certify that on November 2, 2005, I caused a true copy of the foregoing Defendant's Notice of Deposition of Laurence Landow to be served by hand delivery upon Ian D. Roffman, United States Securities and Exchange Commission, 73 Tremont Street, Suite 600, Boston, Massachusetts 02108, and by hand on counsel for each of the three individual defendants.

Dated: November 2, 2005

_Robert A. Buhlman_

Robert A. Buhlman

**SCHEDULE A:**

**DOCUMENTS TO BE PRODUCED**

1.    All documents[1] concerning Biopure Corporation ("Biopure")'s biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure (hereinafter, "Hemopure"), including:[2]

   (a)    all documents concerning, constituting or reflecting any communications between the FDA[3] and any other party;

   (b)    all documents concerning, constituting or reflecting any communications between the FDA and any other federal government agency, body or entity, including the Securities and Exchange Commission ("SEC");

   (c)    all documents generated by the FDA concerning, discussing or relating to Biopure's BLA for Hemopure;

   (d)    all documents concerning, describing, evidencing, or constituting the FDA's interpretation, analysis, or discussion of Biopure's clinical studies regarding Hemopure;

   (e)    all documents concerning, constituting or reflecting any communications between the FDA and any agent or employee of Biopure;

   (f)    all documents concerning, constituting or reflecting any communications between the FDA and any attorney representing Biopure; and

   (g)    all documents concerning, constituting or reflecting any internal communications within FDA.

---

[1] Note that the term "documents" specifically includes electronic files, including electronic mail.  *See* Definitions and Instructions hereto.

[2] Note that the word "include" or "including" means including without limitation.  *See* Definitions and Instructions hereto.

[3] Note that the term "FDA" specifically includes CBER and CDER.  *See* Definitions and Instructions hereto.

2.    All documents concerning Biopure's investigational new drug application ("IND")
       10962, including:

    (a)    all documents concerning, constituting or reflecting any communications between
       the FDA and any other party;

    (b)    all documents concerning, constituting or reflecting any communications between
       the FDA and any other federal government agency, body or entity, including the
       SEC;

    (c)    all documents generated by the FDA concerning, discussing or relating to
       Biopure's IND 10962;

    (d)    all documents concerning, describing, evidencing, or constituting the FDA's
       interpretation, analysis, or discussion of Biopure's clinical studies relating to IND
       10962;

    (e)    all documents concerning, constituting or reflecting any communications between
       the FDA and any agent or employee of Biopure; and

    (f)    all documents concerning, constituting or reflecting any communications between
       the FDA and any attorney representing Biopure.

    (g)    all documents concerning, constituting or reflecting any internal communications
       within FDA.

3.    All documents concerning Biopure, Jane Kober, Thomas Moore or Howard Richman,
       individually, jointly or in any combination, (the "Biopure Defendants") including:

    (a)    all documents in any electronic form relating to the Biopure Defendants,
       including all email, computer hard drives, documents on any form of network,
       deleted electronic documents, DVDs, CDs, tape or other backup, storage or
       archive systems;

    (b)    all documents describing, analyzing or discussing the Biopure Defendants;

    (c)    all documents relating to any studies or trials (actual or otherwise) by or on behalf
       of Biopure;

(d)    all documents relating to any endpoints (actual or otherwise) relating to any study or trial by or on behalf of Biopure;

(e)    all documents relating to any protocols, statistical analysis plans or clinical study reports by or on behalf of Biopure;

(f)    all documents relating to any BLA, IND, or any other regulatory submission by or on behalf of Biopure;

(g)    all communications between the FDA any other governmental agency, body, or entity, relating to the Biopure Defendants;

(h)    all communications between the FDA and the SEC relating to the Biopure Defendants;

(i)    all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to the Biopure Defendants;

(j)    all documents issued, distributed, published, circulated or otherwise made available to the public relating to the Biopure Defendants;

(k)    all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), relating to the Biopure Defendants;

(l)    all documents relating to the Biopure Defendants that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)    all documents relating to the Biopure Defendants in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)    any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)    all other documents relating to the Biopure Defendants not already requested in ¶¶ 2 (a)-(n), above.

4.    All documents concerning Hemopure, including:

(a)    all documents in any electronic form relating to Hemopure, including all email, computer hard drives, documents on any form of network, deleted electronic documents, DVDs, CDs, tape or other backup, storage or archive systems;

(b)    all documents describing, analyzing or discussing Hemopure;

(c)    all documents relating to any studies or trials (actual or otherwise) for Hemopure;

(d)    all documents relating to any endpoints (actual or otherwise) relating to any study or trial for Hemopure;

(e)    all documents relating to any protocols, statistical analysis plans or clinical study reports relating to Hemopure;

(f)    all documents relating to any Biologics License Application, Investigational New Drug, or any other regulatory submission for Hemopure;

(g)    all communications between the FDA any other governmental agency, body, or entity, relating to Hemopure;

(h)    all communications between the FDA and the SEC relating to Hemopure;

(i)    all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to Hemopure;

(j)    all documents issued, distributed, published, circulated or otherwise made available to the public relating to Hemopure;

(k)    all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States relating to Hemopure;

(l)    all documents relating to Hemopure that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)     all documents relating to Hemopure in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)     any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)     all other documents relating to Hemopure not already requested in ¶¶ 1(a)-(n), above.

5.     All documents concerning, constituting or reflecting any communications between the FDA and the SEC about Biopure, the Biopure Defendants, Hemopure, Biopure's public disclosures or Biopure's communications with the FDA.

6.     All documents concerning this lawsuit and any other lawsuit involving the Biopure Defendants or Hemopure, whether concluded, pending, or contemplated.

7.     All complete response letters, as described in the Standard Operating Procedures in effect on July 30, 2003, sent out by FDA at any time.

8.     All complete response letters, as described in the Standard Operating Procedures and/or rules or regulations as amended after July 30, 2003, sent out by FDA at any time.

9.     All documents concerning, constituting or reflecting any communications within FDA about changing wording of complete response letters during the period July 1, 2002 through the present.

10.     All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #2.

11.     All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #3.

12. All documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure.

13. All documents concerning Biopure's clinical studies regarding Hemopure, including comments concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, and internal memoranda concerning Biopure's clinical studies regarding Hemopure.

14. All documents concerning the FDA's consideration of Biopure's clinical studies regarding Hemopure, including communications concerning that issue with the FDA.

15. All documents concerning communications with the FDA about proposed revisions to Biopure's clinical studies regarding Hemopure.

16. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), concerning Hemopure.

17. All standard record retention schedules maintained pursuant to which existing FDA records are subject to routine destruction as described in 20 C.F.R. 20.23(c).

18. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to the dissolution of, or potential dissolution of CBER.

19. Any proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA.

20. All documents relating to the joint FDA/SEC effort to increase the public's protection from false and misleading statements by enhancing inter-agency cooperation.

21. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Lawrence Landow.

22.    Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Franklin Stephenson.

23.    Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Toby Silverman.

## DEFINITIONS AND INSTRUCTIONS

Defendant incorporates by reference the Uniform Definitions In Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5.

Additionally, the following definitions and instructions shall apply:

(A)    "Biopure Corporation" and "Biopure" includes Biopure Corporation and all parents, subsidiaries, wholly-owned or otherwise, affiliates, its business (past, present and future whether actual, or contemplated), its officers, directors, employees, representatives, agents, and all other persons or entities action on its behalf.

(B)    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(C)    The "Center for Drug Evaluation and Research" and "CDER" include the Center for Drug Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(D)    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, gents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

(E)    The term "document" is used in the broadest sense and includes, but it not limited to, the following items, whether typed, printed, recorded, written out by hand, photographed, microfilmed, microfiched, or reproduced by any other mechanical or electronic process, including any information maintained on computer memory disk or electronic or magnetic media, whether or not printed out, and any information to which you have access by reason of

any computer, including, without limitation: agreements; contracts; communications, including intra-company communications; correspondence; e-mails; envelopes; telegrams; telecopies; telefacsimilies; memoranda; agenda; books; summaries of records of personal or telephone conversations or interviews; telephone logs, diaries; articles; newspapers; circulars; brochures; pamphlets; forecasts; statistical statements; accountants; work papers; graphs; charts; slides; drawings; diagrams; films; video tapes; visual aids; audio tapes; compact discs or CD-ROMs; accounts; analytical records; worksheets; worksheet files; spreadsheets; word processor files; minutes or records of meetings or conferences; reports or summaries of interviews; reports or summaries of investigations; opinions or reports of consultants; appraisals' records; reports or summaries of negotiations; trade letters; press releases; notes; projections; drafts of any documents; working papers; securities ledgers; checks, front and back; check stubs or receipts; including any other document or writings of whatever description.

(F)    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail or other recorded forms of communication.    It includes, but it not limited to, documents, meetings, and conversations.  To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation.  The term "communications" means yes transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(G)    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

(H)    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

(I)    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

(J)    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed and the paragraph of this Subpoena to which such document relates.

(K)    In the event that any document called for by this Subpoena has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

(L)    If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

(M)    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the FDA or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

(N)    All documents are to be produced as they are kept in the usual course of business so that Biopure can ascertain the file in which they are located, their relative order in such files and how such files were maintained.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>                    v.<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
N0. 05-11853 - PBS

## BIOPURE CORPORATION'S NOTICE OF
## DEPOSITION OF CBER KEEPER OF RECORDS

PLEASE TAKE NOTICE THAT, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendant Biopure Corporation will take the deposition upon oral examination of Keeper of Records, Center for Biologics Evaluation and Research ("CBER"), U.S. Food and Drug Administration on November 17, 2005 at 10:00 a.m., at the offices of Bingham McCutchen LLP, 1120 20th St., NW, Suite 800, Washington, D.C. 20036, before a notary public or other officer authorized by law to administer oaths. The deposition will be recorded by stenographic means and will continue from day to day until completed.

Keeper of Records, Center for Biologics Evaluation and Research ("CBER"), U.S. Food and Drug Administration will be served with a subpoena and will be required to produce the documents specified in Schedule A attached hereto.

You are invited to attend and cross-examine.

Dated November 2, 2005

BIOPURE CORPORATION,

By its attorneys,


Robert A. Buhlman (BBO #554393)
Anthony E. Fuller (BBO #633246)
Michael Blanchard, (BBO #636860)
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1276
(617) 951-8000

Counsel for Defendant Biopure
Corporation

### CERTIFICATE OF SERVICE

I, Robert A. Buhlman, hereby certify that on November 2, 2005, I caused a true copy of the foregoing Defendant's Notice of Deposition of CBER Keeper Of Records to be served by hand delivery upon Ian D. Roffman, United States Securities and Exchange Commission, 73 Tremont Street, Suite 600, Boston, Massachusetts 02108, and by hand on counsel for each of the three individual defendants.

Dated: November 2, 2005

Robert A. Buhlman

**SCHEDULE A:**

**DOCUMENTS TO BE PRODUCED**

1.    All documents[1] concerning Biopure Corporation ("Biopure")'s biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure (hereinafter, "Hemopure"), including:[2]

   (a)    all documents concerning, constituting or reflecting any communications between the FDA[3] and any other party;

   (b)    all documents concerning, constituting or reflecting any communications between the FDA and any other federal government agency, body or entity, including the Securities and Exchange Commission ("SEC");

   (c)    all documents generated by the FDA concerning, discussing or relating to Biopure's BLA for Hemopure;

   (d)    all documents concerning, describing, evidencing, or constituting the FDA's interpretation, analysis, or discussion of Biopure's clinical studies regarding Hemopure;

   (e)    all documents concerning, constituting or reflecting any communications between the FDA and any agent or employee of Biopure;

   (f)    all documents concerning, constituting or reflecting any communications between the FDA and any attorney representing Biopure; and

   (g)    all documents concerning, constituting or reflecting any internal communications within FDA.

---

[1] Note that the term "documents" specifically includes electronic files, including electronic mail. _See_ Definitions and Instructions hereto.

[2] Note that the word "include" or "including" means including without limitation. _See_ Definitions and Instructions hereto.

[3] Note that the term "FDA" specifically includes CBER and CDER. _See_ Definitions and Instructions hereto.

2.    All documents concerning Biopure's investigational new drug application ("IND") 10962, including:

    (a)    all documents concerning, constituting or reflecting any communications between the FDA and any other party;

    (b)    all documents concerning, constituting or reflecting any communications between the FDA and any other federal government agency, body or entity, including the SEC;

    (c)    all documents generated by the FDA concerning, discussing or relating to Biopure's IND 10962;

    (d)    all documents concerning, describing, evidencing, or constituting the FDA's interpretation, analysis, or discussion of Biopure's clinical studies relating to IND 10962;

    (e)    all documents concerning, constituting or reflecting any communications between the FDA and any agent or employee of Biopure; and

    (f)    all documents concerning, constituting or reflecting any communications between the FDA and any attorney representing Biopure.

    (g)    all documents concerning, constituting or reflecting any internal communications within FDA.

3.    All documents concerning Biopure, Jane Kober, Thomas Moore or Howard Richman, individually, jointly or in any combination, (the "Biopure Defendants") including:

    (a)    all documents in any electronic form relating to the Biopure Defendants, including all email, computer hard drives, documents on any form of network, deleted electronic documents, DVDs, CDs, tape or other backup, storage or archive systems;

    (b)    all documents describing, analyzing or discussing the Biopure Defendants;

    (c)    all documents relating to any studies or trials (actual or otherwise) by or on behalf of Biopure;

(d)     all documents relating to any endpoints (actual or otherwise) relating to any study or trial by or on behalf of Biopure;

(e)     all documents relating to any protocols, statistical analysis plans or clinical study reports by or on behalf of Biopure;

(f)     all documents relating to any BLA, IND, or any other regulatory submission by or on behalf of Biopure;

(g)     all communications between the FDA any other governmental agency, body, or entity, relating to the Biopure Defendants;

(h)     all communications between the FDA and the SEC relating to the Biopure Defendants;

(i)     all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to the Biopure Defendants;

(j)     all documents issued, distributed, published, circulated or otherwise made available to the public relating to the Biopure Defendants;

(k)     all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), relating to the Biopure Defendants;

(l)     all documents relating to the Biopure Defendants that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)     all documents relating to the Biopure Defendants in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)     any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)    all other documents relating to the Biopure Defendants not already requested in ¶¶ 2 (a)-(n), above.

4.    All documents concerning Hemopure, including:

(a)    all documents in any electronic form relating to Hemopure, including all email, computer hard drives, documents on any form of network, deleted electronic documents, DVDs, CDs, tape or other backup, storage or archive systems;

(b)    all documents describing, analyzing or discussing Hemopure;

(c)    all documents relating to any studies or trials (actual or otherwise) for Hemopure;

(d)    all documents relating to any endpoints (actual or otherwise) relating to any study or trial for Hemopure;

(e)    all documents relating to any protocols, statistical analysis plans or clinical study reports relating to Hemopure;

(f)    all documents relating to any Biologics License Application, Investigational New Drug, or any other regulatory submission for Hemopure;

(g)    all communications between the FDA any other governmental agency, body, or entity, relating to Hemopure;

(h)    all communications between the FDA and the SEC relating to Hemopure;

(i)    all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to Hemopure;

(j)    all documents issued, distributed, published, circulated or otherwise made available to the public relating to Hemopure;

(k)    all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States relating to Hemopure;

(l)    all documents relating to Hemopure that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)     all documents relating to Hemopure in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)     any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)     all other documents relating to Hemopure not already requested in ¶¶ 1(a)-(n), above.

5.     All documents concerning, constituting or reflecting any communications between the FDA and the SEC about Biopure, the Biopure Defendants, Hemopure, Biopure's public disclosures or Biopure's communications with the FDA.

6.     All documents concerning this lawsuit and any other lawsuit involving the Biopure Defendants or Hemopure, whether concluded, pending, or contemplated.

7.     All complete response letters, as described in the Standard Operating Procedures in effect on July 30, 2003, sent out by FDA at any time.

8.     All complete response letters, as described in the Standard Operating Procedures and/or rules or regulations as amended after July 30, 2003, sent out by FDA at any time.

9.     All documents concerning, constituting or reflecting any communications within FDA about changing wording of complete response letters during the period July 1, 2002 through the present.

10.     All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #2.

11.     All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #3.

12. All documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure.

13. All documents concerning Biopure's clinical studies regarding Hemopure, including comments concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, and internal memoranda concerning Biopure's clinical studies regarding Hemopure.

14. All documents concerning the FDA's consideration of Biopure's clinical studies regarding Hemopure, including communications concerning that issue with the FDA.

15. All documents concerning communications with the FDA about proposed revisions to Biopure's clinical studies regarding Hemopure.

16. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), concerning Hemopure.

17. All standard record retention schedules maintained pursuant to which existing FDA records are subject to routine destruction as described in 20 C.F.R. 20.23(c).

18. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to the dissolution of, or potential dissolution of CBER.

19. Any proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA.

20. All documents relating to the joint FDA/SEC effort to increase the public's protection from false and misleading statements by enhancing inter-agency cooperation.

21. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Lawrence Landow.

22.    Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Franklin Stephenson.

23.    Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Toby Silverman.

## DEFINITIONS AND INSTRUCTIONS

Defendant incorporates by reference the Uniform Definitions In Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5.

Additionally, the following definitions and instructions shall apply:

(A)    "Biopure Corporation" and "Biopure" includes Biopure Corporation and all parents, subsidiaries, wholly-owned or otherwise, affiliates, its business (past, present and future whether actual, or contemplated), its officers, directors, employees, representatives, agents, and all other persons or entities action on its behalf.

(B)    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(C)    The "Center for Drug Evaluation and Research" and "CDER" include the Center for Drug Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(D)    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, gents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

(E)    The term "document" is used in the broadest sense and includes, but it not limited to, the following items, whether typed, printed, recorded, written out by hand, photographed, microfilmed, microfiched, or reproduced by any other mechanical or electronic process, including any information maintained on computer memory disk or electronic or magnetic media, whether or not printed out, and any information to which you have access by reason of

any computer, including, without limitation: agreements; contracts; communications, including intra-company communications; correspondence; e-mails; envelopes; telegrams; telecopies; telefacsimilies; memoranda; agenda; books; summaries of records of personal or telephone conversations or interviews; telephone logs, diaries; articles; newspapers; circulars; brochures; pamphlets; forecasts; statistical statements; accountants; work papers; graphs; charts; slides; drawings; diagrams; films; video tapes; visual aids; audio tapes; compact discs or CD-ROMs; accounts; analytical records; worksheets; worksheet files; spreadsheets; word processor files; minutes or records of meetings or conferences; reports or summaries of interviews; reports or summaries of investigations; opinions or reports of consultants; appraisals' records; reports or summaries of negotiations; trade letters; press releases; notes; projections; drafts of any documents; working papers; securities ledgers; checks, front and back; check stubs or receipts; including any other document or writings of whatever description.

(F)    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail or other recorded forms of communication.    It includes, but it not limited to, documents, meetings, and conversations.  To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation.  The term "communications" means yes transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(G)    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

(H)    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

(I)    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

(J)    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed and the paragraph of this Subpoena to which such document relates.

(K)    In the event that any document called for by this Subpoena has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

(L)    If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

(M)    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the FDA or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

(N)    All documents are to be produced as they are kept in the usual course of business so that Biopure can ascertain the file in which they are located, their relative order in such files and how such files were maintained.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>     v.<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  No. 05-11853 - PBS |

## BIOPURE CORPORATION'S NOTICE OF
## DEPOSITION OF FDA KEEPER OF RECORDS

PLEASE TAKE NOTICE THAT, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendant Biopure Corporation will take the deposition upon oral examination of Keeper of Records, U.S. Food and Drug Administration on November 16, 2005 at 10:00 a.m., at the offices of Bingham McCutchen LLP, 1120 20th St., NW, Suite 800, Washington, D.C. 20036, before a notary public or other officer authorized by law to administer oaths. The deposition will be recorded by stenographic means and will continue from day to day until completed.

Keeper of Records, U.S. Food and Drug Administration will be served with a subpoena and will be required to produce the documents specified in Schedule A attached hereto.

You are invited to attend and cross-examine.

Dated November 2, 2005

BIOPURE CORPORATION,

By its attorneys,

Robert A. Buhlman (BBO #554393)
Anthony E. Fuller (BBO #633246)
Michael Blanchard, (BBO #636860)
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1276
(617) 951-8000

Counsel for Defendant Biopure
Corporation

## CERTIFICATE OF SERVICE

I, Robert A. Buhlman, hereby certify that on November 2, 2005, I caused a true copy of the foregoing Defendant's Notice of Deposition of FDA Keeper Of Records to be served by hand delivery upon Ian D. Roffman, United States Securities and Exchange Commission, 73 Tremont Street, Suite 600, Boston, Massachusetts 02108, and by hand on counsel for each of the three individual defendants.

Dated: November 2, 2005

Robert A. Buhlman

## SCHEDULE A:

## **DOCUMENTS TO BE PRODUCED**

1.    All documents[1] concerning Biopure Corporation ("Biopure")'s biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure (hereinafter, "Hemopure"), including:[2]

(a)    all documents concerning, constituting or reflecting any communications between the FDA[3] and any other party;

(b)    all documents concerning, constituting or reflecting any communications between the FDA and any other federal government agency, body or entity, including the Securities and Exchange Commission ("SEC");

(c)    all documents generated by the FDA concerning, discussing or relating to Biopure's BLA for Hemopure;

(d)    all documents concerning, describing, evidencing, or constituting the FDA's interpretation, analysis, or discussion of Biopure's clinical studies regarding Hemopure;

(e)    all documents concerning, constituting or reflecting any communications between the FDA and any agent or employee of Biopure;

(f)    all documents concerning, constituting or reflecting any communications between the FDA and any attorney representing Biopure; and

(g)    all documents concerning, constituting or reflecting any internal communications within FDA.

---

[1] Note that the term "documents" specifically includes electronic files, including electronic mail.  *See* Definitions and Instructions hereto.

[2] Note that the word "include" or "including" means including without limitation.  *See* Definitions and Instructions hereto.

[3] Note that the term "FDA" specifically includes CBER and CDER.  *See* Definitions and Instructions hereto.

2.     All documents concerning Biopure's investigational new drug application ("IND") 10962, including:

    (a)    all documents concerning, constituting or reflecting any communications between the FDA and any other party;

    (b)    all documents concerning, constituting or reflecting any communications between the FDA and any other federal government agency, body or entity, including the SEC;

    (c)    all documents generated by the FDA concerning, discussing or relating to Biopure's IND 10962;

    (d)    all documents concerning, describing, evidencing, or constituting the FDA's interpretation, analysis, or discussion of Biopure's clinical studies relating to IND 10962;

    (e)    all documents concerning, constituting or reflecting any communications between the FDA and any agent or employee of Biopure; and

    (f)    all documents concerning, constituting or reflecting any communications between the FDA and any attorney representing Biopure.

    (g)    all documents concerning, constituting or reflecting any internal communications within FDA.

3.     All documents concerning Biopure, Jane Kober, Thomas Moore or Howard Richman, individually, jointly or in any combination, (the "Biopure Defendants") including:

    (a)    all documents in any electronic form relating to the Biopure Defendants, including all email, computer hard drives, documents on any form of network, deleted electronic documents, DVDs, CDs, tape or other backup, storage or archive systems;

    (b)    all documents describing, analyzing or discussing the Biopure Defendants;

    (c)    all documents relating to any studies or trials (actual or otherwise) by or on behalf of Biopure;

(d)     all documents relating to any endpoints (actual or otherwise) relating to any study or trial by or on behalf of Biopure;

(e)     all documents relating to any protocols, statistical analysis plans or clinical study reports by or on behalf of Biopure;

(f)     all documents relating to any BLA, IND, or any other regulatory submission by or on behalf of Biopure;

(g)     all communications between the FDA any other governmental agency, body, or entity, relating to the Biopure Defendants;

(h)     all communications between the FDA and the SEC relating to the Biopure Defendants;

(i)     all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to the Biopure Defendants;

(j)     all documents issued, distributed, published, circulated or otherwise made available to the public relating to the Biopure Defendants;

(k)     all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), relating to the Biopure Defendants;

(l)     all documents relating to the Biopure Defendants that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)     all documents relating to the Biopure Defendants in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)     any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)    all other documents relating to the Biopure Defendants not already requested in ¶¶ 2 (a)-(n), above.

4.    All documents concerning Hemopure, including:

(a)    all documents in any electronic form relating to Hemopure, including all email, computer hard drives, documents on any form of network, deleted electronic documents, DVDs, CDs, tape or other backup, storage or archive systems;

(b)    all documents describing, analyzing or discussing Hemopure;

(c)    all documents relating to any studies or trials (actual or otherwise) for Hemopure;

(d)    all documents relating to any endpoints (actual or otherwise) relating to any study or trial for Hemopure;

(e)    all documents relating to any protocols, statistical analysis plans or clinical study reports relating to Hemopure;

(f)    all documents relating to any Biologics License Application, Investigational New Drug, or any other regulatory submission for Hemopure;

(g)    all communications between the FDA any other governmental agency, body, or entity, relating to Hemopure;

(h)    all communications between the FDA and the SEC relating to Hemopure;

(i)    all communications between the FDA and any individual or entity not employed by or part of a governmental agency, body or entity, relating to Hemopure;

(j)    all documents issued, distributed, published, circulated or otherwise made available to the public relating to Hemopure;

(k)    all documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States relating to Hemopure;

(l)    all documents relating to Hemopure that are not physically located at the FDA but which the FDA has possession, custody or control;

(m)    all documents relating to Hemopure in the possession, custody or control (or at any time previously in the possession, custody or control) of Lawrence Landow, Toby Silverman, Franklin Stephenson or Basil Golding;

(n)    any reports, presentations, memoranda, notes, drafts, diagrams, memoranda, minutes, communications, correspondence, discussions, briefings, agendas, or analyses relating to any of the above, and

(o)    all other documents relating to Hemopure not already requested in ¶¶ 1(a)-(n), above.

5.    All documents concerning, constituting or reflecting any communications between the FDA and the SEC about Biopure, the Biopure Defendants, Hemopure, Biopure's public disclosures or Biopure's communications with the FDA.

6.    All documents concerning this lawsuit and any other lawsuit involving the Biopure Defendants or Hemopure, whether concluded, pending, or contemplated.

7.    All complete response letters, as described in the Standard Operating Procedures in effect on July 30, 2003, sent out by FDA at any time.

8.    All complete response letters, as described in the Standard Operating Procedures and/or rules or regulations as amended after July 30, 2003, sent out by FDA at any time.

9.    All documents concerning, constituting or reflecting any communications within FDA about changing wording of complete response letters during the period July 1, 2002 through the present.

10.    All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #2.

11.    All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #3.

12. All documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure.

13. All documents concerning Biopure's clinical studies regarding Hemopure, including comments concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, communications concerning Biopure's clinical studies regarding Hemopure, and internal memoranda concerning Biopure's clinical studies regarding Hemopure.

14. All documents concerning the FDA's consideration of Biopure's clinical studies regarding Hemopure, including communications concerning that issue with the FDA.

15. All documents concerning communications with the FDA about proposed revisions to Biopure's clinical studies regarding Hemopure.

16. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), concerning Hemopure.

17. All standard record retention schedules maintained pursuant to which existing FDA records are subject to routine destruction as described in 20 C.F.R. 20.23(c).

18. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to the dissolution of, or potential dissolution of CBER.

19. Any proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA.

20. All documents relating to the joint FDA/SEC effort to increase the public's protection from false and misleading statements by enhancing inter-agency cooperation.

21. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Lawrence Landow.

22.   Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Franklin Stephenson.

23.   Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Toby Silverman.

## DEFINITIONS AND INSTRUCTIONS

Defendant incorporates by reference the Uniform Definitions In Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5.

Additionally, the following definitions and instructions shall apply:

(A)   "Biopure Corporation" and "Biopure" includes Biopure Corporation and all parents, subsidiaries, wholly-owned or otherwise, affiliates, its business (past, present and future whether actual, or contemplated), its officers, directors, employees, representatives, agents, and all other persons or entities action on its behalf.

(B)   The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(C)   The "Center for Drug Evaluation and Research" and "CDER" include the Center for Drug Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

(D)   The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, gents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

(E)   The term "document" is used in the broadest sense and includes, but it not limited to, the following items, whether typed, printed, recorded, written out by hand, photographed, microfilmed, microfiched, or reproduced by any other mechanical or electronic process, including any information maintained on computer memory disk or electronic or magnetic media, whether or not printed out, and any information to which you have access by reason of

any computer, including, without limitation: agreements; contracts; communications, including intra-company communications; correspondence; e-mails; envelopes; telegrams; telecopies; telefacsimilies; memoranda; agenda; books; summaries of records of personal or telephone conversations or interviews; telephone logs, diaries; articles; newspapers; circulars; brochures; pamphlets; forecasts; statistical statements; accountants; work papers; graphs; charts; slides; drawings; diagrams; films; video tapes; visual aids; audio tapes; compact discs or CD-ROMs; accounts; analytical records; worksheets; worksheet files; spreadsheets; word processor files; minutes or records of meetings or conferences; reports or summaries of interviews; reports or summaries of investigations; opinions or reports of consultants; appraisals' records; reports or summaries of negotiations; trade letters; press releases; notes; projections; drafts of any documents; working papers; securities ledgers; checks, front and back; check stubs or receipts; including any other document or writings of whatever description.

(F)    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail or other recorded forms of communication.    It includes, but it not limited to, documents, meetings, and conversations.  To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation.  The term "communications" means yes transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(G)    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

(H)    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

(I)    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

(J)    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed and the paragraph of this Subpoena to which such document relates.

(K)     In the event that any document called for by this Subpoena has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

(L)     If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

(M)     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the FDA or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

(N)     All documents are to be produced as they are kept in the usual course of business so that Biopure can ascertain the file in which they are located, their relative order in such files and how such files were maintained.