UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, </br></br> Plaintiff, </br></br> v. </br></br> BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   CIVIL ACTION </br> N0. 05-11853 - PBS |

**DEFENDANTS' OPPOSITION TO THE SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR AN EXTENSION OF TIME TO FILE AN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Biopure Corporation ("Biopure"), Thomas Moore, Howard Richman and Jane Kober oppose the Securities and Exchange Commission's ("SEC's") motion for an extension of time of more than three months or, alternatively, nearly one month to oppose the Defendants' Motion for Partial Summary Judgment. The request for such extraordinary delay is highly prejudicial to the Defendants and unwarranted in light of the narrow focus of the Motion for Partial Summary Judgment (the "Motion"). While the Court has granted the SEC's request for an extension through January 31, 2006 without an opposition, the Defendants respectfully request that the Court reconsider this ruling, and oppose strongly the request for an extension through April 14, 2006 because an extension through only January 17, 2006 is appropriate.

Indeed, the very fact that the SEC only asked Defendants for an extension through January 31, 2006 - not even mentioning such an extraordinary request as a three month extension

through the eve of trial when they contacted Defendants to confer -- is grounds to deny a request through April 14, 2006. The SEC itself did not request April 14, 2006 before filing the extension motion, meaning the SEC does not genuinely even need it. Furthermore, that date was set in relation to a service date of April 1, 2006, and provided only the fourteen days to oppose provided by the Federal Rules. Defendants served on December 21, 2005, not April 1, 2006. The opposition date was only intended to give the SEC the time permitted by the Rules, not to prejudice Defendants' very narrow, focused Motion, served on December 21, 2005, and doom any chance the Motion has of appropriately narrowing the case by keeping it in abeyance until trial.

## ARGUMENT

In further opposition to this motion, Defendants state as follows:

1.     ***The Motion Filed By The Defendants Is Extremely Focused Yet Disposes of a Central Claim By The SEC*** - On November 22, 2005, at the Scheduling Conference, this Court observed that omnibus summary judgment motions filed close to trial can be daunting. Mindful of that advice, Defendants pressed forward with a very focused Motion for Partial Summary Judgment on an issue that does *not* require lengthy briefs or factual submissions. Based on the undisputed content of a letter sent by the Food and Drug Administration ("FDA") to Biopure on July 30, 2003, did the Company accurately disclose the receipt of the letter in a press release on August 1, 2003? Defendants maintain that issue can be resolved by the Motion on the undisputed content of the relevant documents. Indeed, the defendants' brief is only sixteen pages and the Statement of Facts is only three pages with six exhibits.

While focused, however, the issue is central to one of the SEC's liability claims. If the Court agrees with the Motion, an entire part of the SEC's case fails. Defendants should not be required to prepare for trial on an issue that should be disposed of as a matter of law.

2.     ***The SEC's Contentions That It Needs To Do All Of Its Trial Preparation Before Opposing Is Both Untrue and Not Permitted Under The Federal Rules -*** The SEC says in support of its motion that it needs to do virtually all of its trial preparation in order to respond to this simple Motion. The SEC talks about document discovery, deposition discovery and experts, as if by simply listing typical trial preparation activity, the government can justify a request for an unfair extension. That contention is disingenuous, in light of the very specific focus of the pending Motion. The motion for an extension makes no attempt to link the generic trial preparation with the specific issues raised in the Motion. Furthermore, the SEC investigated these claims before bringing them *for more than two years* and took testimony from approximately twenty witnesses. They are not in a position to complain that they have a lack of information.

Indeed, the SEC tries to suggest that it needs responses to all discovery, depositions from "other witnesses who's testimony may be relevant," and even goes as far as to suggest that the SEC needs discovery in response to subpoenas to the Food and Drug Administration ("FDA") noticed *by the defendants*, when the SEC has informed another United States District Court that that discovery is irrelevant and should not even be permitted. *See* Exhibit A, SEC's Opposition to Biopure's Motion to Compel. In other words, at the same time that the SEC is arguing to this Court that FDA discovery may be relevant to opposing defendants' Motion, the SEC is telling another federal court that that discovery is entirely irrelevant.

Furthermore, the SEC's contention is already provided for in Fed. R. Civ. P. 56(f):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The SEC cannot respond to a focused Motion for Partial Summary Judgment by insinuating that all discovery on all issues somehow relates to the focused Motion. If the SEC's position in opposing the Motion is that they cannot oppose it, then Rule 56(f) imposes the burden on them *by affidavit* to state exactly what it is they cannot do and why those facts are "essential." With all due respect, Defendants submit that the SEC will not be able to make such assertions under Rule 56(f) because the Motion is so focused.

   3. ***The Requested Extension Severely Prejudices The Defendants.*** - The prejudice consists of both the risk that the Motion will be viewed differently too close to trial and the additional time and expense of preparing an issue that should be disposed of by the Motion. For example, if heard promptly, and the Defendants prevail as expected, then an entire issue will be off the table for purposes of experts and discovery. That is streamlining the case and what orderly resolution of cases requires. The SEC's schedule is for delay and keeping unnecessary issues in the case.

   4. ***The Defendants Agreed To A Reasonable Extension.*** - Defendants agreed to a two week extension for the SEC's opposition brief. That agreement is more than reasonable. The Federal Rules provide fourteen days and Defendants agreed nearly to double that time. The SEC's request for an extension through April 14, 2006 is totally unreasonable because that date was tied to a filing date of April 1, 2006 for the summary judgment motions themselves. Obviously, because Defendants moved on December 21, 2005, the April 14, 2006 date is no

longer a relevant or fair opposition date. Indeed, with all due respect, Defendants consider January 31, 2006 to be prejudicial and unfair to them as well, and they urge the Court to reconsider its ruling in this respect. Put simply, the SEC merely seeks to thwart the Defendants' defense by delay. As demonstrated by the SEC's Opposition to the defendants' discovery of the FDA and now by their extending the Defendants' Motion briefing, the SEC wants to delay and postpone matters important to the defense. At the same time, the SEC wants to use the time to pursue their own agenda. The SEC has offered no explanation of why it cannot be working on a fifteen page opposition brief and have it ready by January 17, 2006. The extension papers suggest the SEC wants to use that time to pursue their own agenda for discovery of repetitive things they covered in the two year investigation that led up to this lawsuit. Extensions that are requested merely to prejudice the Defendants to the advantage of a government that conducted a two year investigation before even filing the Complaint should not be allowed by the Court.

Dated: December 30, 2005  
       Boston, Massachusetts

Respectfully submitted,

| COUNSEL FOR DEFENDANT<br>JANE KOBER | COUNSEL FOR DEFENDANT<br>BIOPURE CORPORATION |
|---|---|
| By her attorneys, | By its attorneys, |
| /s/ Thomas J. Dougherty<br>Thomas J. Dougherty BBO #132300<br>Justin J. Daniels BBO #656118<br>Scott T. Lashway BBO #655268<br>Skadden, Arps, Slate,<br>  Meagher & Flom LLP<br>One Beacon Street<br>Boston, MA 02108<br>(617) 573-4800 | /s/ Robert A. Buhlman<br>Robert A. Buhlman, BBO #554393<br>Donald J. Savery, BBO #564975<br>Michael D. Blanchard, BBO #636860<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>(617) 951-8000 |

| COUNSEL FOR DEFENDANT HOWARD RICHMAN | COUNSEL FOR DEFENDANT THOMAS MOORE |
|---|---|
| By his attorneys, | By his attorneys, |
| /s/ John D. Hughes | /s/ Edward P. Leibensperger |
| John D. Hughes BBO #243660<br>Cathy A. Fleming (*pro hac vice*)<br>Mary P. Cormier BBO #635756<br>Edwards & Angell, LLP<br>101 Federal Street<br>Boston, MA 02110<br>617-951-2225 | Edward P. Leibensperger, Esq. BBO #292620<br>McDermott Will & Emery LLP<br>28 State Street<br>Boston, MA 02109<br>(617) 535-4000<br><br>Bobby R Burchfield (*pro hac vice*)<br>Jason A. Levine (*pro hac vice*)<br>McDermott Will & Emery LLP<br>600 Thirteenth Street, N.W.<br>Washington, D.C. 20005<br>(202) 756-8021 |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by electronic service upon the attorney(s) of record for each party on December 30, 2005.

/s/ Robert A. Buhlman
Robert A. Buhlman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:

SECURITIES AND EXCHANGE COMMISSION, :

          Plaintiff,

v.

BIOPURE CORPORATION,
THOMAS MOORE, HOWARD RICHMAN,
and JANE KOBER

          Defendants.

No. 1:05-mc-00506-RWR-AK

(Related Case:
Civ. A No. 05-11853-PBS, pending
in the United States District Court
for the District of Massachusetts)

### SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT BIOPURE CORPORATION'S MOTION TO COMPEL FDA COMPLIANCE WITH FEDERAL SUBPOENAS

The Securities and Exchange Commission ("Commission") respectfully submits this response to Defendant Biopure Corporation's ("Biopure") Motion to Compel FDA Compliance with Federal Subpoenas ("Motion"). The Commission respectfully requests that Biopure's Motion be denied in its entirety because, in addition to any reason set forth by the Food and Drug Administration ("FDA"), the documents sought by Biopure:

    (1) have already been produced by the Commission,

    (2) are already in the possession of Biopure, or

    (3) are entirely irrelevant to the securities enforcement action in which the subpoenas at issue here were issued (the "Underlying Enforcement Action").[1]

In addition, the Commission recognizes that this Court is not presiding over the Underlying Enforcement Action, and therefore also submits this response to provide the Court

---

[1] The Commission does not object to defendants deposing relevant witnesses who are FDA employees provided that defendants comply with the requirements of 21 C.F.R. § 20.1.

with additional factual and procedural information about the Commission's pending enforcement action against Biopure and about the current state of document discovery in that action.

**Preliminary Statement**

The pending Motion relates to three subpoenas issued in this District by counsel for Biopure, one of four defendants in the Underlying Enforcement Action. The Underlying Enforcement Action is a civil action brought by the Commission for violations of the federal securities laws, currently pending in the United States District Court in Boston, Massachusetts. The three subpoenas at issue here purport to require that a non-party, the FDA, produce of an enormous number of documents that -- to the extent not privileged, not already produced by the Commission or not already in Biopure's possession -- are entirely irrelevant to the Underlying Enforcement Action.

In the Underlying Enforcement Action, the Commission charges defendants with fraudulently misrepresenting the status of Biopure's efforts to obtain FDA approval to test and market a product while simultaneously raising tens of millions of dollars from investors. The key facts center on disclosures and omissions made by the defendants: what the defendants knew at the time (or where reckless in not knowing) and what they said. The Commission acknowledges that the FDA and its employees are relevant to this action, but only to the extent that they communicated with the defendants; i.e., that they did or said something that the defendants were aware of. Accordingly, the communications between the FDA and Biopure either have already been produced to the defendants by the Commission or were previously in the

2

possession of Biopure.[2] Additional detailed and intrusive discovery of internal FDA matters or FDA communications with non-parties would be unnecessary and irrelevant to this action because they could not possibly relate to the defendants' knowledge or their disclosures during the relevant period.

For these reasons, in addition to other reasons set forth by the FDA, this Court should deny Biopure's Motion in its entirety.

## Background

The Commission's Complaint alleges that during the period of April through December 2003, defendant Biopure and three Biopure executives engaged in a fraudulent scheme to misrepresent and conceal from investors the truth about Biopure's applications for FDA approval to test and market a blood-substitute product called Hemopure. Specifically, the Commission alleges that in April 2003, defendants began receiving negative information from the FDA regarding Biopure's efforts to obtain FDA approval of Hemopure but failed to disclose the information, or falsely described it as positive developments. In April 2003, the FDA imposed a clinical hold because of safety concerns about Hemopure. The clinical hold prohibited Biopure from conducting its requested clinical trials of Hemopure in trauma settings such as emergency rooms. During the next eight months, defendants made public statements about Biopure's plans to obtain approval of Hemopure for trauma uses while concealing the existence of the clinical

---

[2] Prior to commencement of the Underlying Enforcement Action, Biopure already possessed nearly all of the communications between the FDA and Biopure during the relevant period and had produced those to the Commission. The Commission has produced additional documents to defendants that they did not already posses, including summaries of telephone calls between Biopure and the FDA written by FDA employees and testimony transcripts in which FDA employees describe and explain communications with defendants.

3

hold and of Biopure's repeated unsuccessful attempts to lift the clinical hold.

In addition, on July 30, 2003, the FDA informed defendants that it had not approved Biopure's biologics license application ("BLA"), which sought permission to market Hemopure for use in orthopedic surgery. In its letter to Biopure, the FDA conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioned the safety of Hemopure. Defendants, however, issued public statements beginning on August 1, 2003 describing the FDA's communication as good news, causing Biopure's stock price to increase by over 20%.

As the true status of Biopure's efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of December 2003 (including in a press release issued after the close of the markets on Christmas Eve), the company's stock price plummeted almost 66% from its August 1 price. During the period of the scheme, Biopure raised over $35 million from investors.

## Argument

Biopure's Motion should be denied in its entirety because the documents sought by Biopure: (1) have already been produced by the Commission, (2) are already in the possession of Biopure, or (3) are utterly irrelevant to the Underlying Enforcement Action. Prior to institution of its enforcement action, the Commission staff conducted a formal investigation pursuant to an order of the Commission. In its investigation, the Commission obtained documents and testimony from several sources, including the FDA. After the Underlying Enforcement Action was commenced, the Commission produced its investigative file to defendants. The Commission's investigative file includes all documents provided to the Commission staff by the

4

FDA in this matter, communications between the FDA staff and Commission staff about this matter, and transcripts of all investigative testimony provided by FDA employees in this matter. Thus, the Commission has already produced all of the FDA-related materials in this matter to the defendants.[3]

The additional documents that Biopure now seeks from the FDA are not reasonably likely to lead to the discovery of admissible information. The three subpoenas that Biopure seeks to enforce contain identical attachments requesting production of 23 categories of documents. (See Exhibits A, B and C to Biopure's Motion.) As described below, this Court should deny Biopure's Motion with respect to each of those requests.

**Request Nos. 1-4 and 12-16 Seek Documents That Biopure Already Possesses or that Are Irrelevant**

Biopure's Request Nos. 1-4 and 12-16 seek enormously broad categories of documents, which, if at all relevant to the pending action, are already in the possession of Biopure. Biopure seeks:

> 1. All documents concerning Biopure Corporation ("Biopure")'s biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure (hereinafter, "Hemopure"), including [seven enumerated categories].

---

[3] In its Motion, Biopure suggestively states that "None of the Defendants or their respective counsel were notified of the testimony [of FDA employees] at the time." Motion at 8-9. Any implication that the Commission staff acted inappropriately in not notifying defendants of the testimony at the time it was taken is absolutely and unequivocally frivolous. As defendants are aware, testimony of these witnesses was taken during a non-public formal investigation prior to the commencement of litigation. At the time, none of the current defendants had yet been sued. During a Commission investigation, no witness has a right to be notified that the Commission staff is taking investigative testimony of another witness. The Commission's Rules of Practice provide that all witnesses shall be sequestered (other than their own counsel) and that no other witness or other counsel is permitted to be present during the examination of any other witness. See 17 C.F.R. § 203.7.

5

2. All documents concerning Biopure's investigational new drug application ("IND") 10962, including [seven enumerated categories].

3. All documents concerning each of the defendants including [ten enumerated categories].

4. All documents concerning Hemopure, including [ten enumerated categories].

12. All documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure.

13. All documents concerning Biopure's clinical studies regarding Hemopure, including [four enumerated categories].

14. All documents concerning the FDA's consideration of Biopure's clinical studies regarding Hemopure, including communications concerning that issue with the FDA.

15. All documents concerning communications with the FDA about proposed revisions to Biopure's clinical studies regarding Hemopure.

16. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), concerning Hemopure.

There are likely millions of pages of documents responsive to Request Nos. 1-4 and 12-16, and Biopure already has the vast majority of them. Biopure already has in its possession all submissions that Biopure made to the FDA in connection with Hemopure, the BLA and IND applications, all correspondence between Biopure and the FDA, and all responses from the FDA to Biopure about its submissions. To the extent there are additional documents responsive to Request Nos. 1-4 and 12-16 that Biopure does not already possess, such documents would reflect the internal deliberations of the FDA, which are not at all relevant to the pending action.

Biopure does not contend in its Motion -- nor is the Commission aware of any basis for it to contend -- that defendants were aware of the FDA's internal deliberations or that its awareness

6

of such internal deliberations was a factor in its decisions to disclose or fail to disclose any facts to investors. Nor does the Commission attempt impute to defendants any knowledge of the FDA's internal deliberation other than what the FDA employees actually told defendants orally or in writing.

Accordingly, this Court should deny Biopure's request to compel responses to Request Nos. 1-4 and 12-16.

**Request Nos. 5, 6 and 20 Seek Documents**
**That The Commission Has Already Produced or That Are Irrelevant**

Biopure's Request Nos. 5, 6 and 20 seek documents that the Commission has already produced or that are not relevant to this action. Biopure seeks:

> 5. All documents concerning, constituting or reflecting any communications between the FDA and the SEC about Biopure, the Biopure Defendants, Hemopure, Biopure's public disclosures or Biopure's communications with the FDA.
>
> 6. All documents concerning this lawsuit and any other lawsuit involving the Biopure Defendants or Hemopure, whether concluded, pending, or contemplated.
>
> 20. All documents relating to the joint FDA/SEC effort to increase the public's protection from false and misleading statements by enhancing inter-agency cooperation.

The Commission has <u>already produced</u> to defendants communications between the Commission staff and the FDA staff in this investigation. Specifically, the Commission has produced: all documents provided to the Commission staff by the FDA during the investigation that led to this action, all communications between FDA staff and Commission staff during the investigation, and transcripts of all investigative testimony provided by FDA employees. To the extent there are additional documents relating to this matter that are responsive to Request Nos. 5, 6 and 20, such documents would seem to be limited to internal deliberations and

7

communications within the FDA. Biopure has not made any showing as to why internal FDA documents would be relevant to any fact in the Underlying Enforcement Action. Indeed, such documents (if any exists) have not been seen by defendants or the Commission and thus, did not and could not have affected Biopure's disclosures to investors.

Accordingly, this Court should deny Biopure's request to compel responses to Request Nos. 5, 6 and 20.

**Request Nos. 7, 8 and 9 Seek Documents
That Are Irrelevant Because They Relate to
Non-Parties' Communications with the FDA About Unrelated Matters**

Biopure's Request Nos. 7, 8 and 9 seek documents that are not relevant because they relate to the FDA's communications with non-parties about matters unrelated to anything in this action. Biopure seeks:

> 7. All complete response letters, as described in the Standard Operating Procedures in effect on July 30, 2003, sent out by FDA at any time.
>
> 8. All complete response letters, as described in the Standard Operating Procedures and/or rules or regulations as amended after July 30, 2003, sent out by FDA at any time.
>
> 9. All documents concerning, constituting or reflecting any communications within FDA about changing wording of complete response letters during the period July 1, 2002 through the present.

Letters that the FDA sent to companies other than Biopure have no relevance to this case. Simply put, because defendants did not receive such letters, they could not have been aware of them at the time they were making disclosures about Biopure's applications with the FDA. Moreover, letters that defendants have never seen could not have formed the basis for any decision to disclose or fail to disclose any fact. Contrary to Biopure's assertion in its Motion (Mot. at 11), the Commission does not base any of its claims in the Underlying Enforcement

Action on the contents of complete response letters sent to other companies about unrelated products.

Accordingly, this Court should deny Biopure's request to compel responses to Request Nos. 7, 8 and 9.

**Request Nos. 10, 11 and 17-19 Seek Documents
That Are Irrelevant Because They Concern FDA's Internal
Processes, Communications and Deliberations Unrelated to Biopure's Product**

Biopure's Request Nos. 10, 11 and 17-19 seek irrelevant documents relating to FDA's internal processes, communications and deliberations, none of which is relevant to the defendants' knowledge or disclosure during the relevant time period. Biopure seeks:

> 10. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #2.
>
> 11. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #3.
>
> 17. All standard record retention schedules maintained pursuant to which existing FDA records are subject to routine destruction as described in 20 C.F.R. 20.23(c).
>
> 18. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to the dissolution of, or potential dissolution of CBER.
>
> 19. Any proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA.

None of the documents sought by Biopure in Request Nos. 10, 11 or 17-19 relate in any way to the facts of this case. With respect to Request Nos. 10 and 11, only the actual Standard

Operating Procedures and Policies, which Biopure presumably has (or has access to), are even arguably relevant. Biopure did not have any contemporaneous access to FDA's internal communications and deliberations about those procedures and policies. Biopure does not assert that it relied in any way on internal FDA communications and deliberations nor does the Commission based any of its claims on internal FDA communications and deliberations relating to its policies or procedures. Thus, these documents are not relevant to this action. Request Nos. 17, 18 and 19 represent mere fishing expeditions, as there are no issues in this case relating to FDA's retention of documents, to the potential dissolution of CBER or (if any exists) to FDA guidelines for making public disclosures.

Accordingly, this Court should deny Biopure's request to compel responses to Request Nos. 10, 11, 17, 18 and 19.

### Request Nos. 21, 22 and 23 Seek Intrusive and Irrelevant Discovery into the Personnel Records of FDA Employees

Lastly, Biopure's Request Nos. 21, 22 and 23 inappropriately seek personnel records of three employees of the FDA who were responsible for reviewing Biopure's applications. Biopure seeks:

> 21. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Lawrence Landow.
>
> 22. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Franklin Stephenson.
>
> 23. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1, 2005 of Toby Silverman.

There is no basis for Biopure to obtain personnel files, job descriptions or performance reviews of FDA employees. Personnel files, job descriptions and performance reviews contain

10

highly personal, private and confidential information. Biopure has not asserted -- nor is there any basis to assert -- that any FDA employee acted inappropriately or that any FDA employee deviated from his or her job description. Thus, there is no justification in this action in to invade the privacy of these FDA employees by allowing Biopure to fish through their personnel files. This is especially so here, where Biopure seeks personnel files of the same FDA employees that, independent of this litigation, review Biopure's applications to test and market its products. See 5 U.S.C. § 552 (b)(6) (FOIA exemption for personnel files to protect against "a clearly unwarranted invasion of personal privacy").

Accordingly, this Court should deny Biopure's request to compel responses to Request Nos. 21, 22 and 23.

### Conclusion

For the foregoing reasons, in addition to any reason set forth by the FDA, the Commission respectfully requests that this Court deny Biopure's Motion in its entirety.

Dated: December 23, 2005  
Boston, Massachusetts

Respectfully submitted,

/s/ Ian D. Roffman  
Ian D. Roffman (Mass. Bar No. 637564)  
R. Daniel O'Connor (Mass Bar No. 634207)  
Ellen Bober Moynihan (Mass. Bar No. 567598)  
ATTORNEYS FOR PLAINTIFF  
SECURITIES AND EXCHANGE COMMISSION  
73 Tremont Street, 6th Floor  
Boston, Massachusetts 02108  
(617) 573-8900, ext. 8987 (Roffman)

## Certificate of Service

I, Ian D. Roffman, hereby certify that on December 23, 2005, a true and correct copy of the foregoing Securities and Exchange Commission's Response To Defendant Biopure Corporation's Motion to Compel FDA Compliance with Federal Subpoenas was served:

By overnight delivery to:

Stephen J. Crimmins
John J. Dempsey
BINGHAM MCCUTCHEN, LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036-3406
(202) 778-6150

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Michael Shane
Office of the Chief Counsel
U.S. Food and Drug Administration
5600 Fisher Lane, GCF-1
Rockville, MD 20857

COUNSEL FOR NON-PARTY
FOOD AND DRUG ADMINISTRATION

By first class mail, postage prepaid to:

Robert A. Buhlman
Donald J. Savery
Michael D. Blanchard
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4046

COUNSEL FOR DEFENDANT
THOMAS MOORE

John D. Hughes
Cathy Fleming
Mary Patricia Cormier
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

COUNSEL FOR DEFENDANT
HOWARD RICHMAN

Thomas J. Dougherty
Justin J. Daniels
Scott T. Lashway
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

COUNSEL FOR DEFENDANT
JANE KOBER

Dated: December 23, 2005

/s/ Ian D. Roffman
Ian D. Roffman