UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                  :
SECURITIES AND EXCHANGE COMMISSION, :
                                                  :
                          Plaintiff,              :         Civ. A No. 05-11853-PBS
              v.                                  :
                                                  :
BIOPURE CORPORATION,                              :
THOMAS MOORE, HOWARD RICHMAN,                     :
and JANE KOBER                                    :
                                                  :
                          Defendants.             :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF
SECURITIES AND EXCHANGE COMMISSION'S MOTION
TO COMPEL DEFENDANTS TO ADMIT OR DENY MATTERS
SET FORTH IN THE COMMISSION'S REQUESTS FOR ADMISSION**

On November 16, 2005, the Securities and Exchange Commission ("Commission")

served defendants with the Commission's First Request for Admission to Each Defendant

("Requests for Admission"), a written request that each defendant admit nineteen matters that are

central to this action.  (Exhibit A hereto.)  Rather than admit or deny these matters, defendants

instead provided evasive and non-responsive answers that do not address the specific factual

matters set forth in the requests, that refer the Commission generally to documents, and that

assert inapplicable objections.  (Exhibits B, C, D, and E hereto.)

Accordingly, the Commission now respectfully requests that this Court order defendant

Biopure to admit or deny the specific factual matters set forth in ten of the Commission's

requests and order the individual defendants to admit or deny the specific factual matters set forth

in nine of the Commission's requests.  Alternatively, the Commission requests that this Court

enter an Order that the matters are deemed admitted.

## Background

The Commission's Complaint alleges that during the period of April through December 2003, defendant Biopure and three Biopure executives engaged in a fraudulent scheme to misrepresent and conceal from investors the truth about Biopure's applications for FDA approval to test and market a blood-substitute product called Hemopure. Specifically, the Commission alleges that in April 2003, defendants began receiving negative information from the FDA regarding Biopure's efforts to obtain FDA approval of Hemopure but failed to disclose the information, or falsely described it as positive developments. In April 2003, the FDA imposed a clinical hold because of safety concerns about Hemopure. The clinical hold prohibited Biopure from conducting its requested clinical trials of Hemopure in trauma settings such as emergency rooms. During the next eight months, defendants made public statements about Biopure's plans to obtain approval of Hemopure for trauma uses while concealing the existence of the clinical hold and of Biopure's repeated unsuccessful attempts to lift the clinical hold.

In addition, on July 30, 2003, the FDA informed defendants that it had not approved Biopure's biologics license application ("BLA"), which sought permission to market Hemopure for use in orthopedic surgery. In its letter to Biopure, the FDA conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioned the safety of Hemopure. Defendants, however, issued public statements beginning on August 1, 2003 describing the FDA's communication as good news, causing Biopure's stock price to increase by over 20%.

As the true status of Biopure's efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of

2

December 2003 (including in a press release issued after the close of the markets on Christmas Eve), the company's stock price plummeted almost 66% from its August 1 price. During the period of the scheme, Biopure raised over $35 million from investors.

The Commission's Requests for Admission set forth narrowly tailored factual matters that, if admitted by defendants as they should be, would narrow the issues for trial. (Ex. A.) The first ten requests, which are the subject of this motion, are as follows:

- Request Nos. 1-3 are relevant to establishing that public statements made by Biopure about the use of Hemopure for trauma patients (which had been placed on clinical hold by the FDA) were misleading.

- Request No. 4 is relevant to establishing that the FDA had imposed a clinical hold on the trauma use as of the time defendants were make public statements about it.

- Request No. 5 is relevant to establishing that the explanation that defendants Biopure, Moore and Richman provided to investors about a 90-day extension was false.

- Request No. 6 is relevant to establishing, as an application of law to fact, that under the circumstances here, Biopure was obligated to disclose to investors when it received a complete response letter from the FDA.

- Request Nos. 7-10 are relevant to establishing that Biopure received a complete response letter from the FDA on July 30, 2003 and that Biopure has publicly stated that it received a complete response letter.

On December 19 and 20, 2005, defendants served their responses to the Commission's Requests for Admission. (Exs. B, C, D, and E.) With respect to the Commission's first ten requests, defendants evaded the requests and did not admit or deny the matters set forth as required by Rule 36.

On December 23, 2005, counsel for the Commission sent a letter to defense counsel requesting that defendants provide complete admissions or denials of the matters in the requests.

3

(Exhibit F.)  On January 4, 2006, counsel for defendant Kober responded refusing to modify her original answers.  (Exhibit G.)  On January 5, 2006, counsel for defendants Biopure and Moore similarly refused to modify their responses to Request Nos. 1-10.[1]  (Exhibits H and I.)  On January 6, 2006, counsel for defendant Richman stated during a telephone call that defendant Richman would similarly not modify his responses to Request Nos.1-10.

Accordingly, the Commission now respectfully requests that this Court order defendants to admit or deny the specific matters set forth or enter an order that the matters are deemed admitted.

## **Argument**

Each defendant's responses to the Commission's Requests for Admission fails to comply with the plain terms of the Rule 36.  Rule 36 permits a party to serve the other parties with written requests for the admission of the truth of any matter relevant to the subject matter of an action or opinions of fact or of the application of law to fact.  Fed. R. Civ. R. 36(a).  Unless the matter is admitted, Rule 36 provides that the answering party "shall <u>specifically</u> deny the matter or set forth the reasons why the answering party cannot truthfully admit or deny the matter" and that "[a] denial shall <u>fairly meet the substance</u> of the requested admission."  <u>Id.</u> (emphasis added).  The First Circuit has further held that, "Rule 36 requires specificity, detailed explanation when a truthful answer cannot be framed, good faith, and fairness."  <u>U.S. v. Kenealy</u>, 646 F.2d 669, 702 (1st Cit 1981) (affirming district court order deeming matters admitted when defendants' answers to requests for admission were "too vague and general.").

---

[1]  Defendant Moore did agree to amend his responses to Request Nos. 11-2 and 16-18, which are not at issue in this Motion.

Here, defendants' responses do not address the specifics of the requested admissions nor do they fairly address the substance of the Commission's requests.

**I.      Defendants Should be Required to Admit or Deny the Specific Factual <u>Matters set Forth in the Commission's Requests for Admission Nos. 1-10</u>**

**A.      <u>Defendants Should be Required to Admit or Deny Request Nos. 1 through 4</u>**

Request Nos. 1 through 4 ask that the defendants admit facts relevant to the falseness of statements about Biopure's trauma indication made in Biopure's filings with the Commission.  In several filings with the Commission, defendants stated:

> The FDA requires a separate approval for each proposed indication for the use of Hemopure in the United States. We have applied for an indication for Hemopure that will only involve its perioperative use in patients undergoing orthopedic surgery.  Subsequently, we expect to expand Hemopure's indications.  To do so, we will have to design additional clinical trials, submit the trial designs to the FDA for review and complete those trials successfully . . . .

> \*    \*    \*

> The Company expects to initiate additional pre-clinical and clinical trials this year to expand the indications for Hemopure beyond surgery.

> \*    \*    \*

> We are also developing Hemopure for potential use in trauma and other medical applications.

<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 32, 35, 39, 59, 63, 66, 88, 96.  Defendants also stated in a press release on May 22, 2003, that, "Biopure is preparing for a Phase IIa in-hospital trauma trial" and told investors in a conference call that same day that, "Parkman Hospital is going to be our initial clinical center to conduct the already announced in-hospital trauma trials that will set us up for subsequent pre-Hospital trials to establish an additional trauma indication for Hemopure."

5

Compl. ¶¶ 42, 44.

Applying similar language that defendants themselves used in public statements, Request Nos. 1 though 4 seek admissions that Biopure had already applied for the trauma indication and that FDA had placed it on hold at the same time that defendants were publicly stating that Biopure had only applied to the FDA for one indication and was developing Hemopure for other indications, including use in trauma:

> Request No. 1:  As of April 9, 2003, Biopure had applied to the FDA for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.
>
> Request No. 2:  As of April 9, 2003, Biopure had designed clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.
>
> Request No. 3:  As of April 9, 2003, Biopure had submitted to the FDA trial designs for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.
>
> Request No. 4:  As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

In response to Request Nos. 1 through 4, rather than admit or deny the specific statement in the request, defendants evasively refer to a document (Biopure's application to conduct trauma trials) and "otherwise deny" the request.  Thus, it is impossible to decipher from defendants' responses whether they are admitting or denying any of the facts in Request Nos. 1-4, and if they are denying them, which part they are denying.  For example, because defendants refer to their application to conduct clinical trials, it would seem that defendants are admitting Request No. 1. However, defendants nonetheless say that other than the document, they deny Request No.1. Commission counsel simply does not understand what it is that defendants are denying.  The

Commission is entitled to direct and unequivocal answers without being required to infer

defendants' position from their cryptic answers.  See Booth Oil Site Administration Group v.

Safety-Kleen Corp., 194 F.R.D. 76, 80 (W.D.N.Y. 2000) (compelling defendants to admit or

deny matters that are stated in documents and not allowing them to merely refer to the

documents).

##### B.       Defendants Should be Required to Admit or Deny Request No. 5

Defendants should similarly not be permitted to evade Request No. 5 by merely referring

to a document without directly admitting or denying the fact stated in the request.  Request No. 5

seeks an admission that the reason the FDA provided a 90-day extension to review Biopure's

BLA was because of information Biopure submitted in its request to lift the clinical hold.  In

contrast, during a May 30, 2003 conference call defendants Biopure, Moore and Richman told

investors a different reason for the extension, namely that, among other things, it was "a very

positive development," "very common," and "part of the normal review process" of the BLA.

Request No. 5 states:

> Request No. 5:  On May 30, 2003, the FDA told Biopure that the FDA was extending the
> deadline to complete its review of Biopure's BLA because of information contained in
> Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of
> Hemopure that would involve its use during the treatment of trauma in a hospital setting.

In response to Request No. 5, defendants refer the Commission to a letter from the FDA

about the extension and "otherwise" deny the request.  Again, it is impossible to determine from

defendants' responses whether they admit or deny that the FDA extended the deadline because of

information in Biopure's request to lift the clinical hold, which is what the letter appears to say.

If defendants' are denying some part of Request No. 5, they should state specifically which part

they deny.  Accordingly, Defendants should be required to admit or deny the facts stated in

Request No. 5.

C.    **Defendants Should be Required to Admit or Deny Request No. 6**

Request No. 6 seeks an admission about an application of law to fact, namely, that under

the circumstances here, Biopure had an obligation to disclose if and when it received a complete

response letter from the FDA.  In response, each of the defendants objected based on a claim that

Request No. 6 seeks a pure legal conclusion which is not permissible under Rule 36(a).  Request

No. 6 states:

> Request No. 6:  As of July 29, 2003, Biopure had an obligation to disclose to investors if
> and when the company received a complete response letter from the FDA.

Defendants' objection to Request No. 6 should be overruled because the request does not

seek admission of a pure legal conclusion.  Rule 36(a) authorizes a party to seek admissions of

both "opinions of fact" and "application of law to fact."  Fed. R. Civ. P. 36(a). Indeed, the

Advisory Committee Notes to Rule 36 encourage the use of requests for admission for this

purpose, noting that "[a]n admission of a matter involving the application of law to fact may, in a

given case, even more clearly narrow the issues."  Advisory Committee Notes to the 1970

Amendment to Rule 36.  See also In re Carney, 258 F.3d 415, 419 (5th Cir. 2001) (collecting

cases that Rule 36 "allows litigations to request admissions as to a broad range of matters,

including ultimate facts, as well as applications of law to fact."); S.A. Healy Co./Lodigiani USA,

Ltd. v. U.S., 37 Fed. Cl. 204, 205 (Fed. Cl. 1997) (holding that requests for admission are not

objectionable even if they require conclusions of law as long as the legal conclusions relate to the

facts of the case).

Here, Request No. 6 seeks an admission that Biopure had as of the relevant period, an obligation to disclose if and when it received a complete response letter from the FDA. The Commission does not seek any admissions about whether complete response letters, in the abstract, must be disclosed to investors. Rather, the Commission is entitled to know defendants' position on whether, given the particular disclosures that defendants had previously made, given the importance of Hemopure to Biopure and given the timing of the events, defendants had a duty to disclosure when it received a complete response letter.[2] Accordingly, defendants should be required to admit or deny Request No. 6.

### D.     Biopure Should be Required to Admit or Deny Request No. 7

Request No. 7 seeks an admission that the letter Biopure received from the FDA about its BLA on July 30, 2003 was a complete response letter. In response, Biopure evasively admits that it received the letter, but does not admit or deny that it was a complete response letter. Request No. 7 states:

Request No. 7: The July 30, 2003 BLA Letter was a complete response letter.

The Commission is plainly entitled to an admission or denial from Biopure that the July 30, 2003 letter about its BLA was a complete response letter.

---

[2] Indeed, one defendant, Defendant Kober, implied during investigative testimony that Biopure had such an obligation:

Q:     Okay. So, had the company received a complete response letter, that fact would have been something that you thought was important to disclose; correct?

Kober:  I said it would have triggered disclosure.

(11/23/04 Tr. at 133)

**E.      Defendants Should be Required to Admit or Deny Request Nos. 8, 9 and 10**

Request Nos. 8, 9 and 10 seek admissions that in filings with the Commission, press releases issued by Biopure and on Biopure's website, Biopure has publicly stated that the July 30, 2003 letter from the FDA was a complete response letter.  These facts are relevant both to the Commission's charge that Biopure should have disclosed that fact earlier and to defendants' argument in this litigation that the letter was not a complete response letter.  Request Nos. 8, 9 and 10 state:

> Request No. 8:  Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

> Request No. 9:  Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

> Request No. 10:  Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

In response to Request Nos. 8, 9, and 10, defendants evasively refer to language in an August 1, 2003 press release, which does not say whether the letter was a complete response letter, and further state that Biopure "made materially similar references . . . in later press releases and SEC filings."  In fact, however, in many public statements after the August 1, 2003 press release, defendants have stated that the letter was a complete response letter.  Below are a few of the many examples of Biopure's public statements in which they have said that the letter was a complete response letter:

| Document | Quotation |
|---|---|
| December 11, 2003, Biopure press release | "On July 30, 2003, the FDA sent Biopure a complete response letter . . . ." |
| December 22, 2003, Biopure press release | "In July 2003, the U.S. Food and Drug Administration (FDA) sent Biopure a complete response letter . . . ." |
| December 24, 2003, Biopure press release | "In July 2003, the U.S. Food and Drug Administration (FDA) sent Biopure a complete response letter . . . ." |
| January 8, 2004, Biopure press release | "[O]n January 6, 2004, the company and the U..S. Food and Drug Administration (FDA) met at Biopure's request to discuss its reply to the FDA complete response letter . . . ." |
| February 19, 2004, Biopure press release | "Biopure is currently collecting information and formulating its reply to the FDA's complete response letter . . . ." |
| Biopure Form 10-K for fiscal year 2004, filed January 14, 2005 | "On July 30, 2003, the FDA sent Biopure a complete response letter . . . ." |
| Biopure Form S-3 Registration Statement, filed April 16, 2004 | "On July 30, 2003, the FDA sent us a complete response letter . . . ." |
| Biopure's Website | "On July 30, 2003, the FDA issued Biopure a complete response letter . . . ." |

Defendants' refusal to admit or deny Request Nos. 8, 9, and 10 is particularly inappropriate because defendants have taken a position in this litigation -- i.e., that the letter was not a complete response letter -- that is directly contrary to prior public statements made by the defendants. See Defendants' Memorandum in Support of Joint Motion to Shorten Response Time to Requests for Admission and to Expedite Summary Judgment Hearing [Docket 28] at 5 ("Defendants will show that the BLA Letter was not a Complete Response Letter . . . ."). In light of the apparent contradiction between Biopure's public statements and defendants' litigation

11

position, the Commission is entitled to a admission or denial of the facts stated in Request Nos. 8, 9 and 10.

Furthermore, defendants' objections that Request Nos. 8, 9, and 10 are vague should be overruled. Each of these requests is straightforward and blunt about the fact that defendants are asked to admit. Accordingly, defendants should be required to admit or deny the facts stated in Request Nos. 8, 9, and 10.

## II.     Alternatively, the Commission Requests that the Matters Stated in Request Nos. 1-10 Be Deemed Admitted

Rule 36 provides that, "If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a). See also Asea, Inc. v. Southern Pacific Transp. Co., 669 F.2d 1242, 1247-8 (9th Cir. 1982) (affirming order deeming facts admitted when defendants failed to admit or deny requests for admission in compliance with Rule 36). Accordingly, because defendants' answers to Request Nos. 1-10 do not comply with the requirements of Rule 36, the Commission respectfully requests that those matters be deemed admitted.

## Conclusion

For the forgoing reasons, the Commission respectfully requests that this Court order each defendant to admit or deny the Commission's Request for Admissions Nos. 1-6 and 8-10, and

12

order defendant Biopure to additionally admit or deny the Commission's Request for Admission

No. 7.  Alternatively, the Commission respectfully requests that this Court enter and Order that

these matters are deemed admitted.

Dated: January 6, 2006                    Respectfully submitted,
        Boston, Massachusetts


                                           /s/ Ian D. Roffman
                                          Ian D. Roffman (BBO# 637564)
                                          R. Daniel O'Connor (BBO# 634207)
                                          Ellen Bober Moynihan (BBO#  567598)
                                          ATTORNEYS FOR PLAINTIFF
                                          SECURITIES AND EXCHANGE COMMISSION
                                          73 Tremont Street, 6th Floor
                                          Boston, Massachusetts 02108
                                          (617) 573-8900, ext. 8987 (Roffman)

                                  *Electronically Served*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : Civ. A No. 05-11853-PBS |
| v. | : |
| | : |
| BIOPURE CORPORATION, | : |
| THOMAS MOORE, HOWARD RICHMAN, | : |
| and JANE KOBER | : |
| | : |
| Defendants. | : |

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## FIRST REQUEST FOR ADMISSION TO EACH DEFENDANT

Plaintiff Securities and Exchange Commission ("Commission"), pursuant to Rules 26 and

36 of the Federal Rules of Civil Procedure, hereby requests that each defendant separately admit

the truth of the matters set forth below in writing and under oath and serve such admissions upon

the Commission no later than November 28, 2005 or such other date as the Court may order.

**Request for Admission**[1]

1.    As of April 9, 2003, Biopure had applied to the FDA for an indication of

Hemopure that would involve its use during the treatment of trauma in a hospital setting.

2.    As of April 9, 2003, Biopure had designed clinical trials for an indication of

Hemopure that would involve its use during the treatment of trauma in a hospital setting.

3.    As of April 9, 2003, Biopure had submitted to the FDA trial designs for an

indication of Hemopure that would involve its use during the treatment of trauma in a hospital

setting.

---

[1]    See Definitions and Instructions, infra.

4.     As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

5.     On May 30, 2003, the FDA told Biopure that the FDA was extending the deadline to complete its review of Biopure's BLA because of information contained in Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

6.     As of July 29, 2003, Biopure had an obligation to disclose to investors if and when the company received a complete response letter from the FDA.

7.     The July 30, 2003 BLA Letter was a complete response letter.

8.     Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

9.     Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

10.     Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

11.     On July 31, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

12.     On August 15, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

13.     On August 26, 2003, Biopure's outside counsel told Thomas Moore and Jane Kober, among others, that the July 30, 2003 BLA Letter was a complete response letter.

14.     As of no later than August 26, 2003, Biopure was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

15.     As of no later than August 26, 2003, Thomas Moore was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

16.     As of no later than August 26, 2003, Howard Richman was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

17.     As of no later than August 26, 2003, Jane Kober was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

18.     Biopure's outside counsel advised Biopure to include the following disclosure in a press release issued on October 30, 2003:  "In its planned response to FDA, Biopure intends to narrow its focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option."

19.     During a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address deficiencies identified in the July 30, 2003 BLA Letter.

**Definitions and Instructions**

The Uniform Definitions set forth in Local Rule 26.5(c) of the District of Massachusetts are hereby adopted.  In addition:

A.     "Biopure" means Biopure Corporation, as well as its agents, officers, directors, employees, independent contractors, assignees, parents, successors, subsidiaries, related corporations, any partnerships or joint ventures acting on its behalf, and entities controlled, directly or indirectly, by Biopure or through which Biopure conducts business.

3

B.     "FDA" means Food and Drug Administration, an agency within the U.S.

Department of Health and Human Services, and its employees.

C.     "BLA" means the biologics license application for Hemoglobin Glutamer-250

(Bovine), also known as HBOC-201, submitted on July 31, 2002, under section 351 of the Public

Health Service Act.

D.     The "July 30, 2003 BLA Letter" means the letter from Basil Golding, M.D. to

Howard P. Richman, D.P.M., dated July 30, 2003 that begins, "This letter is in regard to your

Biologics License Application (BLA) for Hemoglobin Glutamer- 250 (Bovine), also known as

HBOC-201 submitted under section 351 of the Public Health Service Act."

Dated: November 16, 2005                    Respectfully submitted,
       Boston, Massachusetts

_____
Ian D. Roffman (BBO# 637564)
Ellen Bober Moynihan (BBO# 567598)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8900, ext. 8987 (Roffman)

4

## Certificate of Service

    I, Ian D. Roffman, hereby certify that on November 16, 2005, a true and correct copy of the foregoing Plaintiff Securities and Exchange Commission's First Request for Admission to Each Defendant was served by facsimile and first class mail, postage prepaid upon:

Robert A. Buhlman
Anthony E. Fuller
Michael D. Blanchard
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

John D. Hughes
Mary Patricia Cormier
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

COUNSEL FOR DEFENDANT
HOWARD RICHMAN

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4046

COUNSEL FOR DEFENDANT
THOMAS MOORE

Thomas J. Dougherty
Justin J. Daniels
Scott T. Lashway
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

COUNSEL FOR DEFENDANT
JANE KOBER

Dated: November 16, 2005

_____
Ian D. Roffman

5

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION N0. 05-11853 - PBS |
| BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT BIOPURE CORPORATION'S OBJECTIONS  AND RESPONSES TO**
**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**FIRST REQUEST FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36 and Local Rule 36.1, Defendant Biopure Corporation ("Biopure"), hereby respectfully objects and responds to Plaintiff Securities and Exchange Commission's First Request for Admission dated November 16, 2005 (the "Request"), as follows:

**GENERAL OBJECTIONS**

The following General Objections apply to and are incorporated into each individual response, whether or not expressly incorporated by reference in each such response:

1.      Biopure objects to the Plaintiff's Definitions, Instructions and Request to the extent that they seek to impose obligations beyond those provided in the Federal Rules of Civil Procedure and Local Rules of this District Court.  The responses and objections herein are made in accordance with the Federal Rules of Civil Procedure and the Local Rules of this District Court only.  Biopure adopts the Definitions in Local Rule 26.5(c) for its responses below.

2.     Biopure further objects to the Request to the extent that it calls upon Biopure to form or adopt legal conclusions.

3.     Biopure further objects to the Request to the extent that it is vague, ambiguous and overly broad and, therefore, requires Biopure, to the best of its ability, to make a subjective determination as to what documents and information are being sought.

4.     Biopure further objects to the Request to the extent that it calls for the production of documents or information protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege or any other applicable privilege, immunity, statute, regulation or rule. Every response to all Requests below is subject to this objection and no document or information within these protections will be produced. The inadvertent production of any privileged information shall not be deemed a waiver of any applicable privilege with respect to such information or any other information.

5.     Biopure objects to the Request to the extent that it seeks the production of documents or information already in the Plaintiff's possession, that is publicly available, and/or that is equally available to Plaintiff. Biopure will not provide information and/or documents it has previously provided to the Plaintiff.

6.     Biopure objects to the Request to the extent that it seeks information that is not relevant or not reasonably calculated to lead to the discovery of admissible evidence.

7.     Biopure's investigation of documents that may be responsive to the Request for Admission is continuing and, therefore, Biopure reserves the right to supplement or modify its responses and objections to the Request if and when it should discover any additional responsive, non-privileged, non-protected information adduced, disclosed, or developed through discovery or further investigation.

-2-

8.     Biopure expressly reserves all objections as to relevance, authenticity or admissibility of any documents or responses.

9.     Biopure further objects to the Request to the extent it calls for reference to documents containing confidential business information or trade secrets. Biopure will seek the execution of an appropriate confidentiality order in connection with such documents or information.

10.    The term "General Objections" is used below to refer collectively and/or individually to each of the paragraphs above.

## RESPONSES TO REQUESTS FOR ADMISSION

Subject to the foregoing General Objections and without waiving them, Biopure responds to the specific Requests as follows:

## REQUEST NO. 1:

As of April 9, 2003, Biopure had applied to the FDA for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

## RESPONSE TO REQUEST NO. 1:

Biopure asserts its General Objections. Subject to and without waiving the General Objections, Biopure admits that it submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC (BP 15664-737); and otherwise denies this request.

## REQUEST NO. 2:

As of April 9, 2003, Biopure had designed clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

## RESPONSE TO REQUEST NO. 2:

Biopure asserts its General Objections. Subject to and without waiving the General Objections, Biopure admits that it submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC (BP 15664-737); and otherwise denies this request.

-3-

**REQUEST NO. 3:**

As of April 9, 2003, Biopure had submitted to the FDA trial designs for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

**RESPONSE TO REQUEST NO. 3:**

Biopure asserts its General Objections. Subject to and without waiving the General Objections, Biopure admits that it submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC (BP 15664-737); and otherwise denies this request.

**REQUEST NO. 4:**

As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

**RESPONSE TO REQUEST NO. 4:**

Biopure asserts its General Objections and objects to this request because it is vague and ambiguous, particularly in its references to "barring" Biopure from conducting "clinical trials" relating to the "treatment of trauma." Subject to and without waiving the General Objections and these objections, Biopure admits that Biopure's records include a record of a telephone communication from the FDA, on or about April 9, 2003, to certain Biopure employees, placing a single study (the "HEM-0125 protocol") on clinical hold, a copy of which was produced to the SEC (BP 07459); and otherwise denies this request.

**REQUEST NO. 5:**

On May 30, 2003, the FDA told Biopure that the FDA was extending the deadline to complete its review of Biopure's BLA because of information contained in Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

**RESPONSE TO REQUEST NO. 5:**

Biopure asserts its General Objections. Subject to and without waiving the General Objections, Biopure admits that Biopure's records include a letter from Basil Golding of FDA dated May 30, 2003, addressed to Howard Richman of Biopure, concerning the BLA, a copy of which letter was produced to the SEC (BP 00816); and otherwise denies the request.

-4-

**REQUEST NO. 6:**

As of July 29, 2003, Biopure had an obligation to disclose to investors if and when the company received a complete response letter from the FDA.

**RESPONSE TO REQUEST NO. 6:**

Biopure asserts its General Objections and objects to this request because it seeks a pure legal conclusion and is therefore not permissible under the Federal Rules of Civil Procedure. Tulip Computers Intern., B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002) ("[R]equests that seek legal conclusions are not allowed under Rule 36."); Warnecke v. Bollinger, No. 5:01-151, 2002 WL 32140316, *5 (N.D. Tex. Dec. 23, 2002) ("Rule 36 does not allow a request for admission of a pure matter of law.").

**REQUEST NO. 7:**

The July 30, 2003 Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 7:**

Biopure asserts its General Objections and objects to this request on the grounds it is vague.  Subject to and without waiving the General Objections and this objection, Biopure admits that it received a letter dated July 30, 2003 from the FDA stating that the FDA had "completed the review of all submissions made relating to" Biopure's BLA; otherwise, Biopure denies this request.

**REQUEST NO. 8:**

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

**RESPONSE TO REQUEST NO. 8:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure's filings with the SEC are documents whose contents are readily available to Plaintiff; Biopure admits that on August 1, 2003 it issued a press release stating that FDA had "completed its review of the Company's biologic license application … and issued a letter" and, thereafter, Biopure filed a Form 8-K and made materially similar references to the same letter, in later press releases and SEC filings.

**REQUEST NO. 9:**

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

LITDOCS/622772.1

**RESPONSE TO REQUEST NO. 9:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure's press releases are documents whose contents are readily available to Plaintiff and were produced to the SEC (BP01100-BP01111; BP06686-BP06688; and BP06704); Biopure admits that on August 1, 2003 it issued a press release stating that FDA had "completed its review of the Company's biologic license application ... and issued a letter" and, thereafter, Biopure filed a Form 8-K and made materially similar references to the same letter, in later press releases and SEC filings.

**REQUEST NO. 10:**

Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 10:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure's press releases which are available on Biopure's website are documents whose contents are readily available to Plaintiff and were produced to the SEC (BP01100-BP01111; BP06686-BP06688; and BP06704); Biopure admits that on August 1, 2003 it issued a press release stating that FDA had "completed its review of the Company's biologic license application ... and issued a letter" and, thereafter, Biopure filed a Form 8-K and made materially similar references to the same letter, in later press releases, SEC filings and on its website.

**REQUEST NO. 11:**

On July 31, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 11:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure states that this Request is directed to another defendant not to Biopure and no response is required by Biopure. Biopure lacks information or knowledge sufficient to admit or deny this Request and has made reasonable inquiry, but the information known or readily obtainable by Biopure is insufficient to enable Biopure to admit or deny. To the extent any response is required, Biopure denies this request.

**REQUEST NO. 12:**

On August 15, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 12:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure states that this Request is directed to another defendant not to Biopure and no response is required by Biopure. Biopure lacks information or knowledge sufficient to admit or deny this Request and has made reasonable inquiry, but the information known or readily obtainable by Biopure is insufficient to enable Biopure to admit or deny.  To the extent any response is required, Biopure denies this request.

**REQUEST NO. 13:**

On August 26, 2003, Biopure's outside counsel told Thomas Moore and Jane Kober, among others, that the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 13:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure denies this Request.

**REQUEST NO. 14:**

As of no later than August 26, 2003, Biopure was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 14:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure denies this request.

**REQUEST NO. 15:**

As of no later than August 26, 2003, Thomas Moore was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

LITDOCS/622772.1

**RESPONSE TO REQUEST NO. 15:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure states that this Request is directed to another defendant not to Biopure and no response is required by Biopure. Biopure lacks information or knowledge sufficient to admit or deny this Request and has made reasonable inquiry, but the information known or readily obtainable by Biopure is insufficient to enable Biopure to admit or deny.  To the extent any response is required, Biopure denies this request.

**REQUEST NO. 16:**

As of no later than August 26, 2003, Howard Richman was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 16:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure states that this Request is directed to another defendant not to Biopure and no response is required by Biopure. Biopure lacks information or knowledge sufficient to admit or deny this Request and has made reasonable inquiry, but the information known or readily obtainable by Biopure is insufficient to enable Biopure to admit or deny.  To the extent any response is required, Biopure denies this request.

**REQUEST NO. 17:**

As of no later than August 26, 2003, Jane Kober was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**RESPONSE TO REQUEST NO. 17:**

Biopure asserts its General Objections and objects to this Request because it is vague. Subject to and without waiving the General Objections and this objection, Biopure states that this Request is directed to another defendant not to Biopure and no response is required by Biopure. Biopure lacks information or knowledge sufficient to admit or deny this Request and has made reasonable inquiry, but the information known or readily obtainable by Biopure is insufficient to enable Biopure to admit or deny.  To the extent any response is required, Biopure denies this request.

**REQUEST NO. 18:**

Biopure's outside counsel advised Biopure to include the following disclosure in a press release issued on October 30, 2003:  "In its planned response to FDA, Biopure intends to narrow its focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option."

-8-

**RESPONSE TO REQUEST NO. 18:**

Biopure asserts its General Objections.  Subject to and without waiving the General Objections, Biopure denies that on or before October 30, 2003, Biopure concluded it intended to pursue a "narrow focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option" and, therefore, Biopure denies that any such disclosure would have been appropriate on October 30, 2003.  Further answering, Biopure admits that its records include an email regarding the October 30, 2003 press release, produced to the SEC (HPM00145-HPM00149); and otherwise denies this request.

**REQUEST NO. 19:**

During a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address deficiencies identified in the July 30, 2003 BLA Letter.

**RESPONSE TO REQUEST NO. 19:**

Biopure asserts its General Objections.  Subject to and without waiving the General Objections, Biopure admits that certain of its employees attended a meeting with certain employees of FDA on January 6, 2004 and that for the first time FDA requested that Biopure conduct certain animal studies as a necessary action in the review of the BLA; and otherwise denies this request.

Dated:      December 19, 2005
            Boston, Massachusetts

                          **BIOPURE CORPORATION,**

                          By its attorneys:

                          Robert A. Buhlman, BBO #554393
                          Donald J. Savery, BBO #564975
                          Michael D. Blanchard, BBO #636860
                          Bingham McCutchen LLP
                          150 Federal Street
                          Boston, MA  02110-1726
                          (617) 951-8000

-9-

**Certificate of Service**

I, Robert A. Buhlman, hereby certify that on December 19, 2005, a true and correct copy of the foregoing Defendant's Responses to Plaintiff's First Request for the Production of Documents was served by first class mail upon an attorney for each other party.

Robert A. Buhlman

-10-

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-11853-PBS |
| BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## RESPONSE OF DEFENDANT THOMAS A. MOORE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Pursuant to Federal Rule of Civil Procedure 36, defendant Thomas A. Moore ("Mr. Moore") hereby responds to plaintiff's First Request for Admissions (the "Requests"). Mr. Moore has not yet completed his investigation of the facts relating to this action, nor has he completed discovery or preparation for trial. Mr. Moore reserves the right to rely on any facts, documents, or other evidence that may develop or come to his attention in the future. Mr. Moore's responses are set forth herein without prejudice to his right to assert additional objections or supplemental responses should he discover additional information or grounds for objections. Mr. Moore reserves his right to amend, modify, or supplement his objections and responses at any time prior to the trial of this action.

### GENERAL OBJECTIONS

1.      Mr. Moore objects to the "Definitions and Instructions" set forth in the Requests to the extent that they seek to impose discovery obligations upon Mr. Moore that differ from or

exceed those set forth in the Federal Rules of Civil Procedure and Local Rule 26.5(c) of the

District of Massachusetts.

    2.    Mr. Moore objects to the Requests to the extent that they call for the disclosure of

information protected by the attorney-client privilege, the attorney work product doctrine, self-

evaluation privilege, or any other applicable statutory or common law privilege or bar on

disclosure. Moreover, inadvertent disclosure of privileged or protected information shall not be

deemed a waiver of the privilege or protection.

    3.    Mr. Moore objects to the Requests on grounds of overbreadth, undue burden, and

harassment to the extent that they seek information that is not obtainable through a reasonably

diligent search by Mr. Moore, or information that is not currently within his custody, possession,

or control.

    4.    Mr. Moore objects to the Requests to the extent that they seek information that is

not reasonably calculated to lead to the discovery of admissible evidence.

    5.    Mr. Moore objects to the Requests to the extent that they call for speculation and

conjecture, opinion, or legal conclusion.

### SPECIFIC OBJECTIONS AND RESPONSES

**Request for Admission No. 1:**

    As of April 9, 2003, Biopure had applied to the FDA for an indication of Hemopure that
would involve its use during the treatment of trauma in a hospital setting.

**Response:**

    Mr. Moore incorporates herein by reference his General Objection 2. Mr. Moore

objects specifically that the undefined term "applied" is vague and unintelligible as used in the

Request. Subject to and without waiving these objections, and based on a reasonable

interpretation of the Request, Mr. Moore admits that on or around March 7, 2003, Biopure

2

submitted to the FDA a proposed protocol to IND 2935 entitled, "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737), and otherwise denies this Request.

### Request for Admission No. 2:

As of April 9, 2003, Biopure had designed clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

### Response:

Mr. Moore incorporates herein by reference his General Objection 2. Mr. Moore objects specifically that the undefined term "designed" is vague and unintelligible as used in the Request. Subject to and without waiving these objections, and based on a reasonable interpretation of the Request, Mr. Moore admits that on or around March 7, 2003, Biopure submitted to the FDA a proposed protocol to IND 2935 entitled, "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737), and otherwise denies this Request.

### Request for Admission No. 3:

As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

### Response:

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Mr. Moore objects specifically that the undefined term "barring" is vague and unintelligible as used in the Request. Subject to and without waiving these objections, and based on a reasonable interpretation of the Request, Mr. Moore admits that on or around March 7, 2003, Biopure

3

submitted to the FDA a proposed protocol to IND 2935 entitled, "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737), and otherwise denies this Request.

**Request for Admission No. 4:**

As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

**Response:**

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Mr. Moore objects specifically that the undefined term "barring" is vague and unintelligible as used in the Request. Subject to and without waiving these objections, and based on a reasonable interpretation off the Request, Mr. Moore admits, upon information and belief, that on or around April 9, 2003, the FDA notified certain Biopure employees that the FDA was placing a single study entitled, "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," on clinical hold, and otherwise denies this Request.

**Request for Admission No. 5:**

On May 30, 2003, the FDA told Biopure that the FDA was extending the deadline to complete its review of Biopure's BLA because of information contained in Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

**Response:**

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore admits, upon information and belief, that on or about May 30, 2003, Basil Goldberg of FDA sent a letter addressed to Howard

Richman of Biopure concerning the BLA, a copy of which was produced to the SEC on October 1, 2003 (BP 00816), and otherwise denies this Request.

## Request for Admission No. 6:

As of July 29, 2003, Biopure had an obligation to disclose to investors if and when the company received a compete response letter from the FDA.

### Response:

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Mr. Moore objects specifically that the undefined term "obligation" is vague and unintelligible as used in the Request. Mr. Moore further objects to this Request because it seeks a legal conclusion and is therefore impermissible under the Federal Rules of Civil Procedure. Subject to and without waiving these objections, and based on a reasonable interpretation of the Request, Mr. Moore denies this Request.

## Request for Admission No. 7:

The July 30, 2003 BLA Letter was a complete response letter.

### Response:

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore denies this Request.

## Request for Admission No. 8:

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

### Response:

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore incorporates by reference Biopure's response to this Request.

**Request for Admission No. 9:**

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

**Response:**

Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore incorporates by reference Biopure's response to this Request.

**Request for Admission No. 10:**

Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

Mr. Moore incorporates herein by reference his General Objection 2. Subject to and without waiving this objection Mr. Moore denies this Request for lack of personal knowledge.

**Request for Admission No. 11:**

On July 31, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

Mr. Moore incorporates herein by reference his General Objection 2. Subject to and without waiving this objection, Mr. Moore denies this Request for lack of personal knowledge.

**Request for Admission No. 12:**

On August 15, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

      Mr. Moore incorporates herein by reference his General Objection 2. Subject to, and without waiving this objection, Mr. Moore denies this Request for lack of personal knowledge.

**Request for Admission No. 13:**

    On August 26, 2003, Biopure's outside counsel told Thomas Moore and Jane Kober, among others, that the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

      Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore denies this Request.

**Request for Admission No. 14:**

    As of no later than August 26, 2003, Biopure was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

      Mr. Moore incorporates herein by reference his General Objections 2 and 5. Mr. Moore objects specifically that the undefined term "believed" is vague and unintelligible as used in the Request. Subject to and without waiving these objections, and based on a reasonable interpretation of the Request, Mr. Moore denies this Request.

**Request for Admission No. 15:**

    As of no later than August 26, 2003, Thomas Moore was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

      Mr. Moore incorporates herein by reference his General Objections 2 and 5. Subject to and without waiving these objections, Mr. Moore denies this Request. Mr. Moore further states that on or about August 26, 2003, certain of Biopure's outside counsel reported on

a conversation that they had with two FDA officers who had not participated in the review of the Hemopure BLA, which officers purportedly stated to counsel their opinion that the July 30, 2003 BLA letter appeared to be a "complete response letter." Mr. Moore further states that Biopure received no indication that the opinion of the two FDA officers reflected the official position of FDA.

**Request for Admission No. 16:**

As of no later than August 26, 2003, Howard Richman was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

Mr. Moore incorporates herein by reference his General Objection 2. Subject to and without waiving this objection, Mr. Moore denies this Request for lack of personal knowledge.

**Request for Admission No. 17:**

As of no later than August 26, 2003, Jane Kober was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

**Response:**

Mr. Moore incorporates herein by reference his General Objection 2. Subject to and without waiving this objection, Mr. Moore denies this Request for lack of personal knowledge.

**Request for Admission No. 18:**

Biopure's outside counsel advised Biopure to include the following disclosure in a press release issued on October 30, 2003: "In its planned response to FDA, Biopure intends to narrow its focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option."

**Response:**

   Mr. Moore incorporates herein by reference his General Objection 2. Subject to and without waiving this objection, Mr. Moore states that after reasonable inquiry, the information currently known and readily obtainable is insufficient to enable Mr. Moore to admit or deny this Request, and otherwise denies this Request.

**Request for Admission No. 19:**

  During a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address deficiencies identified in the July 30, 2003 BLA Letter.

**Response:**

   Mr. Moore incorporates herein by reference his General Objections 2 and 5. Mr. Moore objects specifically that the undefined term "deficiencies" is vague and unintelligible as used in the Request. Subject to and without waiving this objection, and based on a reasonable interpretation of the Request, Mr. Moore admits that during a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address certain issues identified in the July 30, 2003 BLA Letter, and to supplement Biopure's existing data in support of the Hemopure BLA, and otherwise denies this Request.

Respectfully Submitted,

Edward P. Leibensperger (BBO# 292620)
Jeffrey S. Huang (BBO# 651854)
MCDERMOTT WILL & EMERY, LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Bobby R. Burchfield (admitted *pro hac vice*)
Jason A. Levine (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY, LLP
600 13th Street, NW
Washington, DC 20005-3096
(202) 756-8000

*Attorneys for Defendant Thomas A. Moore*

Dated: December 19, 2005

10

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          v.

BIOPURE CORPORATION, THOMAS
MOORE, HOWARD RICHMAN and
JANE KOBER,

                    Defendants.

Civil Action No. **05 CA 11853-PBS**

## DEFENDANT HOWARD RICHMAN'S RESPONSES TO PLAINTIFF, SECURITIES AND EXCHANGE COMMISSION'S FIRST REQUEST FOR ADMISSION TO EACH DEFENDANT

Pursuant to Fed. R. Civ. P. 36 and Local Rule 36.1, Defendant Howard Richman ("Mr.

Richman") responds and objects to the request for admissions propounded by the Plaintiff,

Securities and Exchange Commission ("Plaintiff") as follows:

### GENERAL OBJECTIONS AND RESPONSES

1. Mr. Richman objects generally to the Requests to the extent that they seek to impose

duties and obligations beyond the scope of Rules 26 and 36 of the Federal Rules of Civil

Procedure and the Local Rules of this Court.

2. Mr. Richman objects generally to the Requests to the extent that they seek production

of information and/or documents that would be of little or no relevance to the issues raised in the

Complaint, are overly broad and would subject Mr. Richman to unreasonable, oppressive, and

undue burden and expense, and are not reasonably calculated to lead to the discovery of

admissible evidence.

3.  Mr. Richman objects generally to the Requests to the extent that they call for production of information and/or documents protected from disclosure by the attorney-client privilege, attorney work product immunity doctrine or any other applicable privilege or doctrine.

4.  Mr. Richman objects generally to the Requests to the extent that they seek information that is not within Mr. Richman's personal possession, custody or control, or that have not yet come into existence.

5.  Mr. Richman reserves the right to supplement or alter these objections and responses. Mr. Richman also reserves the right to rely, at the time of trial or in other proceedings in this action, upon documents and information in addition to the responses provided herein regardless of whether, *inter alia*, any such documents and evidence are newly discovered or are currently in existence.

6.  Mr. Richman objects to producing information and/or documents that are publicly available on the grounds that such information and/or document are available to the Commission as to Mr. Richman.

7.  Mr. Richman objects to producing information and/or documents that are already in the possession, custody, or control of the Commission. Mr. Richman will not produce information and/or documents previously provided to the Commission.

8.  Mr. Richman objects to any request that calls upon him to adopt, form, or assume legal conclusions and is, therefore, not permissible under Rule 36 of the Federal Rules of Civil Procedure. (See Tulip Computers Intern., B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002); Warnecke v. Bollinger, No. 5:01-151, 2002 WL 32140316, *5 (N.D. Tex. Dec. 23, 2002)).

9.  Mr. Richman objects to any request that asks for information that is beyond his own personal knowledge and, therefore, requires speculation, conjecture, or opinion.

10. Subject to the foregoing objections and without waiving them, and without conceding that any information admitted is properly discoverable in, relevant to, or admissible as evidence in this action, Mr. Richman further objects and responds to the Requests as follows:

**SPECIFIC OBJECTIONS AND RESPONSES**

REQUEST NO. 1

As of April 9, 2003, Biopure had applied to the FDA for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE NO. 1

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman admits only so much of this request that Biopure Corporation ("Biopure") submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the Commission on December 1, 2003 (BP 15664-737).  Mr. Richman otherwise denies this request.

REQUEST NO. 2

As of April 9, 2003, Biopure had designed clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE NO. 2

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman admits only so much of this request that Biopure submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the Commission on December 1, 2003 (BP 15664-737).  Mr. Richman otherwise denies this request.

REQUEST  NO. 3

As of April 9, 2003, Biopure had submitted to the FDA trial designs for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE NO. 3

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman admits only so much of this request that Biopure submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the Commission on December 1, 2003 (BP 15664-737). Mr. Richman otherwise denies this request.

REQUEST NO. 4

As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE NO. 4

In addition to the General Objections, set forth above and incorporated herein, Mr. Richman objects to this request on the grounds that it is vague and ambiguous insofar as the references to "barring" Biopure from conducting "clinical trials" relating to the "treatment of trauma" are undefined and unclear.

Subject to and without waiving the General and Specific Objections, Mr. Richman admits only so much of this request that the FDA on or about April 9, 2003, notified Mr. Richman and other Biopure employees that the FDA was placing a clinical hold on a single clinical trial entitled "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects." Mr. Richman otherwise denies this request.

REQUEST NO. 5

On May 30, 2003, the FDA told Biopure that the FDA was extending the deadline to complete its review of Biopure's BLA because of information contained in Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE NO. 5

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman admits only so much of this request that Basil Golding of FDA, on or about May 30, 2003, sent a letter to Mr. Richman concerning the BLA. A copy of that letter was produced to the Commission on October 1, 2003 (BP 00816). Mr. Richman otherwise denies this request.

REQUEST NO. 6

As of July 29, 2003, Biopure had an obligation to disclose to investors if and when the company received a complete response letter from the FDA.

BOS_512905_2/MCORMIER

RESPONSE  NO. 6

In addition to the General Objections, set forth above and incorporated herein, Mr. Richman objects to this request because it seeks a pure legal conclusion and is, therefore, not permissible under Rule 36 of the Federal Rules of Civil Procedure.  (See  Tulip Computers Intern., B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002); Warnecke v. Bollinger, No. 5:01-151, 2002 WL 32140316, *5 (N.D. Tex. Dec. 23, 2002)).

REQUEST NO. 7

The July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 7

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman denies this request.

REQUEST NO. 8

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

RESPONSE NO. 8

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman incorporates by reference herein the response provided by Biopure in response to this request. Mr. Richman otherwise denies this request.

REQUEST  NO. 9

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

RESPONSE NO. 9

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman incorporates by reference herein the response provided by Biopure in response to this request. Mr. Richman otherwise denies this request.

REQUEST NO. 10

Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 10

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman incorporates by reference herein the response provided by Biopure in response to this request. Mr. Richman otherwise denies this request.

REQUEST NO. 11

On July 31, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 11

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman denies this request.

REQUEST NO. 12

On August 15, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 12

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman denies this request.

REQUEST NO. 13

On August 26, 2003, Biopure's outside counsel told Thomas Moore and Ms. Kober, among others, that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 13

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman states that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request. Mr. Richman otherwise denies this request.

REQUEST NO. 14

As of no later than August 26, 2003, Biopure was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 14

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman incorporates his responses to Request Nos. 15, 16, and 17. Insofar as any further response is required, Mr. Richman denies this request.

REQUEST NO. 15

As of no later than August 26, 2003, Thomas Moore was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 15

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman states that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request. Mr. Richman otherwise denies this request.

REQUEST NO. 16

As of no later than August 26, 2003, Howard Richman was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 16

In addition to the General Objections, set forth above and incorporated herein Mr. Richman objects to this request on the grounds that the phrase "aware that the FDA believed" is vague and ambiguous. Subject to and without waiving these objections, Mr. Richman denies this request.

REQUEST NO. 17

As of no later than August 26, 2003, Ms. Kober was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE NO. 17

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman states that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request. Mr. Richman otherwise denies this request.

REQUEST NO. 18

Biopure's outside counsel advised Biopure to include the following disclosure in a press release issued on October 30, 2003: "In its planned response to FDA, Biopure intends to narrow its focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option."

RESPONSE NO. 18

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman states that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request. Mr. Richman otherwise denies this request.

REQUEST NO. 19

During a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address deficiencies identified in the July 30, 2003 BLA Letter.

RESPONSE NO. 19

Subject to the General Objections, set forth above and incorporated herein, Mr. Richman states that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request. Mr. Richman otherwise denies this request.

**HOWARD RICHMAN,**
By his attorneys,

Dated:  December 19, 2005

John D. Hughes (BBO No. 243660)
Cathy Fleming (*Pro Hac Vice*)
Mary Patricia Cormier (BBO No. 635756)
**EDWARDS ANGELL PALMER &**
**DODGE LLP**
101 Federal Street
Boston, Massachusetts 02110
Tel. (617) 439-4444
Fax. (617) 439-4170

<u>CERTIFICATE OF SERVICE</u>

I, Mary Patricia Cormier, hereby certify that on this 19th day of December 2005 I served a copy of the foregoing document by hand upon:

> Ian D. Roffman
> Ellen Bober
> U.S. Securities and Exchange Commission
> 73 Tremont Street – 6th Floor
> Boston, MA 02108

and by first class mail upon the following counsel to the parties in this action:

Edward P. Leibensperger
McDermot Will & Emery LLP
28 State Street
Boston, MA 02109

Thomas J. Dougherty
Justin J. Daniels
Skadden Arps Slate Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

Robert A. Buhlman
Anthony Fuller
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

_____
Mary Patricia Cormier

- 9 -

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SECURITIES AND EXCHANGE              :
COMMISSION,                          :
                                     :
                  Plaintiff,         :        Civil Action
                                     :        No. 05-11853-PBS
            v.                       :
                                     :
BIOPURE CORPORATION, THOMAS          :
MOORE, HOWARD RICHMAN, and JANE      :
KOBER,                               :
                                     :
                  Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEFENDANT JANE KOBER'S OBJECTIONS AND RESPONSES TO PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S FIRST REQUEST FOR ADMISSION**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure and Rule 36.1 of
the Local Rules of this Court, Defendant Jane Kober ("Ms. Kober" or "Defendant"), by her
undersigned counsel, hereby responds and objects to Plaintiff Securities And Exchange
Commission's ("SEC's") First Request For Admission To Each Defendant, served by first
class mail and facsimile November 16, 2005 (the "Requests") as follows:

**GENERAL OBJECTIONS AND RESPONSES**

1.     Ms. Kober objects generally to the Requests to the extent that they seek to
impose duties and obligations beyond the scope of Rules 26 and 36 of the Federal Rules of Civil
Procedure and the Local Rules of this Court.

2.     Ms. Kober objects generally to the Requests to the extent that they seek
production of information and/or documents that would be of little or no relevance to the issues
raised in the Complaint, are overly broad and would subject Ms. Kober to unreasonable,
oppressive, and undue burden and expense, and are not reasonably calculated to lead to the
discovery of admissible evidence.

3.     Ms. Kober objects generally to the Requests to the extent that they call for
production of information and/or documents protected from disclosure by the attorney-client
privilege, attorney work product immunity doctrine or any other applicable privilege or doctrine.

4.     Ms. Kober objects generally to producing information and/or documents
that are publicly available, on the ground that such information and/or documents are as
available to the SEC as to Ms. Kober, and information and/or documents that are already in the

SEC's possession. Ms. Kober will not produce information and/or documents previously provided to the SEC. Ms. Kober does not waive this objection as to any response to which, subject to this objection, she nonetheless will produce publicly-available documents, to the extent the documents exist.

5.     Ms. Kober objects generally to the Requests to the extent that they seek information that is not within Ms. Kober's personal possession, custody or control, or that have not yet come into existence.

6.     Ms. Kober reserves the right to supplement or alter these objections and responses. Ms. Kober also reserves the right to rely, at the time of trial or in other proceedings in this action, upon documents and information in addition to the responses provided herein regardless of whether, inter alia, any such documents and evidence are newly discovered or are currently in existence.

7.     Counsel for Ms. Kober will be prepared to discuss the objections presented herein with counsel for the SEC for the purpose of resolving any disputes that may arise without need for intervention by the Court.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing objections and without waiving them, and without conceding that any information admitted is properly discoverable in, relevant to, or admissible as evidence in this action, Jane Kober further objects and responds to the Requests as follows:

REQUEST FOR ADMISSION NO. 1

As of April 9, 2003, Biopure had applied to the FDA for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE TO REQUEST FOR ADMISSION NO. 1

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober admits that Biopure Corporation ("Biopure") submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737); and otherwise denies this request.

REQUEST FOR ADMISSION NO. 2

As of April 9, 2003, Biopure had designed clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE TO REQUEST FOR ADMISSION NO. 2

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober admits that Biopure Corporation ("Biopure") submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737); and otherwise denies this request.

REQUEST FOR ADMISSION NO. 3

As of April 9, 2003, Biopure had submitted to the FDA trial designs for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE TO REQUEST FOR ADMISSION NO. 3

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober admits that Biopure Corporation ("Biopure") submitted to the FDA a proposed protocol to IND 2935 on or about March 7, 2003, entitled "A Multi-Center, Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects," a copy of which was produced to the SEC on December 1, 2003 (BP 15664-737); and otherwise denies this request.

REQUEST FOR ADMISSION NO. 4

As of April 9, 2003, the FDA had imposed a clinical hold barring Biopure from conducting clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

RESPONSE TO REQUEST FOR ADMISSION NO. 4

See General Objections, which are incorporated herein. Ms. Kober further objects to this request because it is vague and ambiguous, particularly in its references to "barring" Biopure from conducting "clinical trials" relating to the "treatment of trauma." Subject to and without waiving these objections, Ms. Kober admits, upon information and belief, that the FDA, on or about April 9, 2003, notified certain Biopure employees that the FDA was placing a clinical hold on a single clinical trial entitled "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects"; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 5

On May 30, 2003, the FDA told Biopure that the FDA was extending the deadline to complete its review of Biopure's BLA because of information contained in Biopure's May 12, 2003 request to lift the hold on clinical trials for an indication of Hemopure that would involve its use during the treatment of trauma in a hospital setting.

3

RESPONSE REQUEST FOR ADMISSION NO. 5

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober admits, upon information and belief, that Basil Golding of FDA, on or about May 30, 2003, sent a letter to Howard Richman of Biopure concerning the BLA, a copy of which letter was produced to the SEC on October 1, 2003 (BP 00816); and otherwise denies the request.

REQUEST FOR ADMISSION NO. 6

As of July 29, 2003, Biopure had an obligation to disclose to investors if and when the company received a complete response letter from the FDA.

RESPONSE TO REQUEST FOR ADMISSION NO. 6

See General Objections, which are incorporated herein. Ms. Kober further objects to this request because it seeks a pure legal conclusion and is therefore not permissible under the Federal Rules of Civil Procedure, Tulip Computers Intern., B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002) ("[R]equests that seek legal conclusions are not allowed under Rule 36."), Warnecke v. Bollinger, No. 5:01-151, 2002 WL 32140316, *5 (N.D. Tex. Dec. 23, 2002) ("Rule 36 does not allow a request for admission of a pure matter of law."); and otherwise denies this request.

REQUEST FOR ADMISSION NO. 7

The July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 7

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober denies this request.

REQUEST FOR ADMISSION NO. 8

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in filings with the Securities and Exchange Commission.

RESPONSE TO REQUEST FOR ADMISSION NO. 8

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober incorporates by reference the response provided by Biopure in response to this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 9

Biopure stated that the July 30, 2003 BLA Letter was a complete response letter in press releases issued by the company.

RESPONSE TO REQUEST FOR ADMISSION NO. 9

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober incorporates by reference the response provided by Biopure in response to this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 10

Biopure's website states that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 10

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober incorporates by reference the response provided by Biopure in response to this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 11

On July 31, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 11

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 12

On August 15, 2003, Franklin Stephenson told Howard Richman that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 12

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 13

On August 26, 2003, Biopure's outside counsel told Thomas Moore and Ms. Kober, among others, that the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 13

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober denies this request.

REQUEST FOR ADMISSION NO. 14

As of no later than August 26, 2003, Biopure was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 14

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober refers the SEC to her responses to Request Nos. 15, 16, and 17. To the extent any further response is required, Ms. Kober denies this request.

REQUEST FOR ADMISSION NO. 15

As of no later than August 26, 2003, Thomas Moore was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 15

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 16

As of no later than August 26, 2003, Howard Richman was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 16

See General Objections, which are incorporated herein. Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 17

As of no later than August 26, 2003, Ms. Kober was aware that the FDA believed the July 30, 2003 BLA Letter was a complete response letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 17

       <u>See</u> General Objections, which are incorporated herein.  Ms. Kober further objects to this Request because the phrase "aware that the FDA believed" is vague and ambiguous. Subject to and without waiving these objections, Ms. Kober admits that on or about August 26, 2003, she received an e-mail from Josephine M. Torrente regarding the BLA Letter, which document was produced to the SEC on June 25, 2004 (BP 36774); and otherwise denies this request.

REQUEST FOR ADMISSION NO. 18

       Biopure's outside counsel advised Biopure to include the following disclosure in a press release issued on October 30, 2003:  "In its planned response to FDA, Biopure intends to narrow its focus and seek approval only for anemia in those surgical settings where blood transfusion is not an option."

RESPONSE TO REQUEST FOR ADMISSION NO. 18

       <u>See</u> General Objections, which are incorporated herein.  Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request; and otherwise denies this request.

REQUEST FOR ADMISSION NO. 19

       During a meeting on January 6, 2004, the FDA suggested that Biopure conduct additional animal studies to attempt to address deficiencies identified in the July 30, 2003 BLA Letter.

RESPONSE TO REQUEST FOR ADMISSION NO. 19

       <u>See</u> General Objections, which are incorporated herein.  Subject to and without waiving these objections, Ms. Kober avers that after reasonable inquiry the information currently known and currently readily obtainable is insufficient to enable admission or denial of this request, as she did not attend any January 6, 2004 meeting with FDA.  Ms. Kober further refers the SEC to various documents purporting to reflect what was stated at the January 4, 2004 meeting, including, <u>inter alia</u>, those documents produced to the SEC on May 28, 2004 and identified by "Bates" numbers K-041 to K-047, K-048 to K-059, K-060 to K-074, and otherwise denies this request.

Dated:  December 19, 2005
      Boston, Massachusetts

Respectfully submitted,

Thomas J. Dougherty (BBO #132300)
Justin J. Daniels (BBO #656118)
Scott T. Lashway (BBO #655268)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
Jane Kober

## CERTIFICATE OF SERVICE

     I, Justin J. Daniels, hereby certify that on December 19, 2005, I caused a true copy of the foregoing Defendant Jane Kober's Objections And Responses To Plaintiff Securities And Exchange Commission's First Request For Admission To Each Defendant to be served by hand upon Ian D. Roffman, United States Securities and Exchange Commission, 73 Tremont Street, Suite 600, Boston, Massachusetts 02108; Robert A. Buhlman, Bingham McCutchen LLP, 150 Federal Street, Boston, Massachusetts 02110; John D. Hughes, Edwards Angell Palmer & Dodge LLP, 101 Federal Street, Boston, Massachusetts 02110; and Edward P. Leibensperger, McDermott Will & Emery LLP, 28 State Street, Boston, Massachusetts 02109.

Dated:  December 19, 2005

Justin J. Daniels

8

# EXHIBIT F



**UNITED STATES**
SECURITIES AND EXCHANGE COMMISSION
**BOSTON DISTRICT OFFICE**
6TH FLOOR
73 TREMONT STREET
BOSTON, MASSACHUSETTS 02108

IN REPLYING PLEASE QUOTE

_____

IAN D. ROFFMAN
Tel: (617) 573-8987
Fax: (617) 424-5940

December 23, 2005

**Via Facsimile and U.S. Mail**

Robert A. Buhlman
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Edward P. Leibensperger
McDermott, Will & Emery
28 State Street
Boston, MA 02109-1775

John D. Hughes
Edwards Angell Palmer & Dodge LLP
101 Federal Street
Boston, MA 02110

Thomas J. Dougherty
Skadden, Arps, Slate,
Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108

Re:    SEC v. Biopure, Civ. A. No. 05-11853-PBS (D. Mass.)

Dear Counsel:

I received the defendants' responses to the Commission's First Request for Admissions this week. Each defendant's responses are inadequate, non-responsive, evasive and fail to conform to the plain requirements of Rule 36. For these reasons, I ask that each defendant provide responses to the Commission's Requests that conform to the Federal Rules immediately. Otherwise, I will be forced to seek appropriate relief from the Court.

Specifically, Rule 36 requires that responses fairly address the substance of the requested admission. With respect to many of the Commission's Requests for Admission, defendants have simply referred to documents and/or provided a general denial. This is insufficient. The Commission is entitled to a direct and substantive admission or denial of each Request without being required to determine whether an admission or denial is lurking somewhere in the documents referenced by the defendants. Accordingly, defendants should admit or deny the specific factual statement set forth in the Commissions request, including defendant Biopure's responses to Request Nos. 1-5, 8, 9, 10, and 18; defendant Moore's responses to Request Nos. 1-5, 8, 9, and 10; defendant Richman's responses to 1-5, 8, 9, and 10; and defendant Kober's responses to Request Nos. 1-5, 8, 9, 10, 17, and 19.

Letter to All Counsel of Record
December 23, 2005
Page 2

With respect to Request No. 6, the advisory committee notes to Rule 36 make clear that it is appropriate and encouraged for parties to seek admissions of mixed questions of law and fact. Request No. 6 seeks just that: an admission of a mixed question of law and fact that is central to this dispute, i.e., whether, during the relevant period, Biopure had an obligation to disclose to investor if and when it received a complete response letter. Please admit or deny this straight-forward statement that lies at the heart of this case.

Request No. 7 requires that the defendants admit or deny a basic, simple fact. By quoting one phrase from the July 30, 2003 letter and offering a residual denial, Biopure has evaded and not responded to this Request. Biopure should please admit or deny Request No. 7.

With respect to Request Nos. 8, 9, and 10, defendants' denials do not fairly address the Commission's requests. Biopure has filed periodic reports and other documents with the Commission, has issued press releases and sponsors a website, each of which have contained words identical or substantially the same as the following: "On July 30, 2003, the FDA sent Biopure a complete response letter . . ." In light of this fact, I do not understand defendants' basis for denying these Requests. Moreover, defendants' reference to documents, including the August 1, 2003 press release, is evasive and non-responsive. Please admit or deny Request Nos. 8, 9 and 10.

Defendants' various responses to Request Nos. 11 through 18 also fail to satisfy the requirements of Rule 36 because lack of personal knowledge is not a basis to deny a requested admission. Specifically, defendant Biopure should admit or deny Request Nos. 11, 12, 15, 16, and 17; defendant Moore should admit or deny Request Nos. 11, 12, 16, 17, and 18; defendant Richman should admit or deny Request Nos. 13, 14, 15, 16, 17, 18 and 19; and defendant Kober should admit or deny Request Nos. 11, 12, 14, 15, 16, 18 and 19.

In addition, defendants (other than defendant Moore) have asserted general objections that are not directed to particular requests. Rule 36 does not permit such general objections. Moreover, it is unclear from defendants responses whether by stating objections, the defendants are withholding substantive responses from the Commission or whether the assertion of any objection has affected the substance of defendants' admission or denial. Please clarify what defendants' mean when they deny facts subject to an objection.

Finally, many of defendants' responses contain the assertion that a defendant "otherwise denies this Request." Such residual denials do not conform to the requirements of Rule 36 because they do not make clear which specific facts defendants are denying. With respect to each Request, to the extent that a defendant denies a portion of the Request, please state with specificity which fact(s) the defendant denies.

Letter to All Counsel of Record
December 23, 2005
Page 3


I recognize that the holiday season is upon us.  However, because of the expedited pre-trial schedule that defendants have requested and in light of the summary judgment motion that defendants filed on Wednesday, I ask that defendants provide complete responses to the Commission's Requests for Admission in conformity to Rule 36 immediately or let me know of your intention not to modify your responses immediately.  I would also be available to further confer with any or all defense counsel about these issues at any time, and expect to be in the office next week.

Please let me know if you would like to discuss any of these matters further.

Very truly yours,

Ian D. Roffman

# EXHIBIT G

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

———

TEL: (617) 573-4800

FAX: (617) 573-4822

www.skadden.com

FIRM/AFFILIATE OFFICES

CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 4, 2006

BY HAND

Ian D. Roffman
United States Securities and Exchange Commission
Boston District Office
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108

RE:  SEC v. Biopure, et al., Civ. A. No. 05-11853-PBS

Dear Ian:

This responds to your letter of Friday afternoon, December 23, 2005, listing your various criticisms of Defendant Jane Kober's Objections And Responses To Plaintiff Securities And Exchange Commission's ("SEC's") First Request For Admission.  For ease of reference, I have set forth below the relevant excerpts from your letter along with Ms. Kober's responses thereto.

SEC's Criticism (Request Nos. 1-5, 8-10, 17 & 19)

"[D]efendants have simply referred to documents and/or provided a general denial."

Ms. Kober's Response

Pursuant to Rule 36, "[a] denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder."  The SEC's Requests Nos. 1, 2, 3, 4, 5 & 17 seek to characterize written materials already in the SEC's possession.  By identifying the materials to which she believed the SEC was referring, Ms. Kober was making a good faith attempt to admit "so much of [the Requests] as is true."  Similarly, the SEC's Requests Nos. 8, 9 and 10 ask Ms. Kober

Ian D. Roffman
January 4, 2006
Page 2

to do nothing more than reiterate the contents of public documents. Reference to those documents is therefore appropriate. With respect to Request No. 19, Ms. Kober was not present at the meeting referenced in the request; therefore, her response was a good faith attempt to admit "so much of [the Request] as is true."

SEC's Criticism (Request No. 6)

"[T]he advisory committee notes to Rule 36 make clear that it is appropriate and encouraged for parties to seek admissions of mixed questions of law and fact. Request No. 6 seeks just that an admission of a mixed question of law and fact that is central to this dispute, i.e., whether, during the relevant period, Biopure had an obligation to disclose to investor[s] if and when it received a complete response letter. Please admit or deny this straight-forward statement that lies at the heart of this case."

Ms. Kober's Response

The Request called for a pure legal conclusion; namely, whether Biopure had a disclosure obligation. Were that not the case, the Request would have been denied in light of Biopure's disclosures.

SEC's Criticism (Request Nos. 8-10)

"[D]efendants' denials do not fairly address the Commission's requests. Biopure has filed periodic reports and other documents with the Commission, has issued press releases and sponsors a website, each of which have contained words identical or substantially the same as the following: 'On July 30, 2003, the FDA sent Biopure a complete response letter . . .' In light of this fact, I do not understand defendants' basis for denying these Requests."

Ms. Kober's Response

As stated above, these requests ask Ms. Kober simply to reiterate the contents of publicly-available documents. Reference to those documents is therefore appropriate under these circumstances.

SEC's Criticism (Request Nos. 8-10)

"[D]efendants' reference to documents, including the August 1, 2003 press release, is evasive and non-responsive."

Ian D. Roffman
January 4, 2006
Page 3

<u>Ms. Kober's Response</u>

You do not give a basis for this assertion.  Please explain.

<u>SEC's Criticism (Request Nos. 11-12, 14-16 & 18-19)</u>

"[L]ack of personal knowledge is not a basis to deny a requested admission."

<u>Ms. Kober's Response</u>

Your statement of the rule is incorrect.  Rule 36 states that an answering party may
give lack of information or knowledge as a reason for failure to admit if the party
"states that the party has made reasonable inquiry and that the information known or
readily obtainable by the party is insufficient to enable the party to admit or deny."
<u>Id.</u>  That is precisely what Ms. Kober did.

<u>SEC's Criticism (non-specific)</u>

"[D]efendants (other than defendant Moore) have asserted general objections that are
not directed to particular requests.  Rule 36 does not permit such general objections.
Moreover, it is unclear from defendants['] responses whether by stating objections,
the defendants are withholding substantive responses from the Commission or
whether the assertion of any objection has affected the substance of defendants'
admission or denial.  Please clarify what defendants[] mean when they deny facts
<u>subject to</u> an objection."  (emphasis in original)

<u>Ms. Kober's Response</u>

Your attempt to challenge Ms. Kober's assertion of general objections is frivolous
and contradicted by your own practice.  The SEC's own Nov. 30, 2005 responses
and objections to Biopure's Requests For Admission contain the same types of
objections and language.  For example, the SEC in its Responses and Objections:

- lists several "General Responses and Objections" not directed to
  particular requests, including some of the same objections raised by Ms.
  Kober;

- states that all of the SEC's responses "are submitted subject to, and
  without in any way waiving or intending to waive" those objections; and

Ian D. Roffman
January 4, 2006
Page 4

- reiterates that the specific responses "are expressly subject to, do not constitute a waiver of, and implicitly incorporate all of the above general objections."

If it is truly your position that such general objections are not permissible under Rule 36, then I suggest you consider whether the SEC's Responses and Objections to Biopure's Requests for Admission constitute a violation of Rule 11.

SEC's Criticism (Request Nos. 1-6, 8-12 & 14-19)

"[R]esidual denials do not conform to the requirements of Rule 36 because they do not make clear which specific facts defendants are denying."

Ms. Kober's Response

Your statement of the rule is incorrect. Rule 36 states that "when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." Id. (emphasis added). That is precisely what Ms. Kober's responses did.

Please let me know if you have any questions.

Very truly yours,

Thomas J. Dougherty

cc:  Co-Defendants' Counsel

# EXHIBIT H

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan        Jason A. Levine
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.    Partner
                                              jlevine@mwe.com
                                              202.756.8021

January 5, 2006

**VIA FACSIMILE AND U.S. MAIL**

Ian D. Roffman, Esq.
U.S. Securities and Exchange Commission
Boston District Office
Sixth Floor, 73 Tremont Street
Boston, MA 02108

Re:    *SEC v. Biopure*, Civ. A. No. 05-11853-PBS (D. Mass.)

Dear Mr. Roffman:

I am writing in response to your letter of December 23, 2005, in which you criticize Thomas Moore's responses to the SEC's First Request for Admissions. As explained below, we believe that all but one of your criticisms misinterpret the responses and Federal Rule of Civil Procedure 36, and we address your one arguably valid – albeit technical – criticism in Amended Responses of Mr. Moore that will be served under separate cover.

*First*, with respect to Request Nos. 1-5 and 8-10, you observe that "[D]efendants have simply referred to documents and/or provided a general denial." Elsewhere, you also characterize Mr. Moore's responses to Requests 8-10 as incomprehensible, evasive, and non-responsive. In fact, Mr. Moore's responses to all of these Requests comply fully with Fed. R. Civ. P. 36, which provides that "[a] denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." Request Nos. 1-5 purport to characterize – inaccurately – written materials that are in the SEC's possession. In response to these Requests, Mr. Moore identified the materials to which he believed the SEC meant to refer, and also made a good faith attempt to admit "so much of [the Requests] as is true." Request Nos. 8-9 simply ask Mr. Moore to reiterate the contents of Biopure documents that speak for themselves, and Mr. Moore's reference to Biopure's responses – which in turn refer to the documents themselves – accordingly is appropriate. Further, Mr. Moore denies Request No. 10 for lack of personal knowledge; he does not reference documents or issue a general denial in this response.

*Second*, you characterize Request No. 6 as posing a "mixed question of law and fact" and demand an unqualified admission or denial. With all due respect, Request No. 6 plainly asserts a pure legal conclusion regarding disclosure obligations, and it is inconsistent with Fed. R. Civ. P. 36. Notwithstanding his objections, Mr. Moore provides a denial of the Request in any event.

Ian Roffman, Esq.
January 5, 2006
Page 2

***Third***, with respect to Request Nos. 11-12 and 16-18, you assert that Mr. Moore's "lack of personal knowledge is not a basis to deny a requested admission." On the contrary, Fed. R. Civ. P. 36 expressly states that an answering party may provide lack of information or knowledge as the ground for a denial if the party "states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." Mr. Moore's responses to these Requests (and to Request No. 10) inadvertently omit reference to his reasonable inquiry, and the Amended Responses are curative.

***Finally***, with respect to "many of defendants' responses," you state that "residual denials do not conform to the requirements of Rule 36 because they do not make clear which specific facts defendants are denying." On the contrary, Fed. R. Civ. P. 36 expressly provides that "when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true ***and qualify or deny the remainder***." Mr. Moore did so in each instance where his response includes a so-called "residual denial."

Please contact me if you have any further questions.

Sincerely yours,

Jason A. Levine

cc:    Robert A. Buhlman (counsel for Biopure Corporation)
       Thomas J. Dougherty (counsel for Jane Kober)
       John D. Hughes (counsel for Howard Richman)

# EXHIBIT I

**BINGHAM McCUTCHEN**

Robert A. Buhlman
Direct Phone:  (617) 951-8717
Direct Fax:     (617) 951-8736
robert.buhlman@bingham.com

January 4, 2006

**BY FIRST CLASS MAIL**

Ian D. Roffman, Esq.
Securities and Exchange Commission
73 Tremont Street - 6th Floor
Boston, MA  02108

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

617.951.8000
617.951.8736 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

> **Re:    *Securities and Exchange Commission v. Biopure
> Corporation, et al.* C.A. No. 05-CA-11853-PBS**

Dear Ian:

I am writing on behalf of Biopure Corporation to respond to your two letters dated December 23, 2005.

One letter concerned Biopure's interrogatory responses.

The SEC's complaint about Biopure's responses to interrogatories number 1, 2, 3 and 7 is that Biopure has identified documents from which the answer may be derived or ascertained.  Such a designation is expressly permitted by Fed. R. Civ. P. 33(d).  The burden of deriving or ascertaining the answer is substantially the same for Biopure as it is for the Commission, as Rule 33(d) provides.  Therefore, your complaint about the identification of documents in response to these interrogatories is not appropriate under Rule 33.

Your complaint about the response to interrogatory number 2 seems to be that you think it should have only identified one or, at most, two communications. We do not agree.   The record of written communications and telephonic communications between the Company and the FDA is responsive to this request and has been provided to you.   You seem to want to characterize the communications in a certain way.  The communications, however, speak for themselves.  Given that, the Company cannot be more specific than to refer you to its records of communications with the FDA about the July 30 BLA letter.

We disagree with your complaints about the response to interrogatory number 3.  The Company responded with 5 pages of responsive information.  For example, the Company did identify three specific communications by Mr. Zafirelis that responded to questions asked in the July 30, 2003 BLA letter. Copies of those letters have been produced.  Furthermore, the designation of other

**BINGHAM McCUTCHEN**

**IAN D. ROFFMAN, ESQ,**
**January 4, 2006**
Page 2

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

617.951.8000
617.951.8736 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

records to respond to the interrogatory is perfectly appropriate under Rule 33(d) as explained above.

Furthermore, your complaint also ignores the Company's properly made General Objections and specific objections. For example, work on BLA responses after January 6, 2004 is not relevant to the Company's disclosures or state of mind during the period at issue.

I will inquire of the Company about providing last known addresses for the individuals listed in response to interrogatory 3. If the Company has that information, we will update.

The Company's response to interrogatory number 4 was properly limited to the period prior to December 24, 2003 in light of the Company's properly made objections.

Your complaint about interrogatory number 5 is baseless. The communications about the July 30 IND letter cannot be more specifically described than identifying and providing you the communications themselves. However, the Company will provide a list of persons who participated in the decision to withdraw the IND to the best of its ability. The Company will supplement in that respect if it can be more specific.

As for interrogatory number 6, we provided you the list you requested and I will check on the last known address of Richard Shaw and supplement accordingly if the Company has it.

As for your letter concerning the responses to the requests for admission, your complaints there also are without merit.

Fed. R. Civ. P. 36 states "(a) denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." The Company has complied with this Rule in its responses.

Your only complaint about the responses to requests 1-4 seems to be with the phrase "otherwise denies this request" which follows the specific fact that Biopure does admit. Rule 36 expressly provides that a party may admit part of a request and deny the remainder. That is what the Company has done.

**BINGHAM McCUTCHEN**

IAN D. ROFFMAN, ESQ,
January 4, 2006
Page 3

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

617.951.8000
617.951.8736 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

In request number 5, the Commission incompletely characterized a communication that was in writing. Biopure admitted that its records include the writing. It is not required to admit the Commission's incomplete characterization of that writing.

Request number 6 asks whether there was a legal obligation to disclose. That is a question of law and, for the reasons stated in the Company's response, is not a proper request for admission.

Contrary to your contention, Biopure's response to request to admit number 7 is not evasive. Rule 36 permits a party to admit part of a matter of which an admission is requested and deny the rest. Biopure has admitted that it received a letter from FDA dated July 30, 2003 and that the letter states that the FDA had "completed the review of all submissions made relating to" Biopure's BLA. Otherwise, Biopure denies the request. Your characterization of the July 30 BLA letter in the request for admission does not appear in the letter and is disputed. Thus, the remainder of your request is appropriately denied.

Your complaint about responses 8-10 is the same in each case. The Company properly referred to public documents whose contents are readily available to the SEC. Biopure further admitted that it issued the August 1, 2003 press release and that the release contained the quoted phrases. Your complaint seems to be that the content does not "fairly address the Commission's request" because you do not like that the Company referred to a press release in which it disclosed that FDA sent a letter stating that it had "completed its review of the Company's biologic license application." The Company disagrees with the Commission on that point.

Finally, you lump Biopure's responses to requests 11, 12, 15, 16 and 17 under the assertion that lack of personal knowledge is not a basis to deny a requested admission. Your assertion, however, is not a correct statement of the Rule. Rule 36 does permit such a response if the party states that it has made reasonable inquiry and that information known or readily obtainable is insufficient to enable the party to admit or deny. Biopure so stated. Furthermore, as Biopure also stated, each of these requests on its face is directed to another defendant, not to Biopure.

Biopure also stands by its general objections. You made similar objections on behalf of plaintiff.

**BINGHAM McCUTCHEN**

**IAN D. ROFFMAN, ESQ,**
**January 4, 2006**
Page 4

        Best regards.

Yours truly,

Robert A. Buhlman

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

RAB/cc

617.951.8000
617.951.8736 fax

cc:    Edward P. Leibensperger, Esq.
       Thomas J. Dougherty, Esq.
       Cathy A. Fleming, Esq.
       John D. Hughes, Esq.

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington