UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
                    Plaintiff,   :    Civil Action
                                 :    No. 05-11853-PBS
            v.                   :
                                 :
BIOPURE CORPORATION, THOMAS      :
MOORE, HOWARD RICHMAN, and JANE  :
KOBER,                           :
                                 :
                    Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO PRECLUDE
FDA EVIDENCE FROM THE TRIAL OF THIS MATTER**

Thomas J. Dougherty
Justin J. Daniels
Scott T. Lashway
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant Jane Kober

John D. Hughes
Cathy A. Fleming
Mary P. Cormier
EDWARDS ANGELL PALMER &
    DODGE LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 951-2225

Counsel for Defendant Howard Richman

Robert A. Buhlman
Donald J. Savery
Michael D. Blanchard
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000

Counsel for Defendant Biopure
Corporation

Edward P. Leibensperger
Bobby R. Burchfield
Jason A. Levine
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4046

Counsel for Defendant Thomas Moore

## TABLE OF CONTENTS

PAGE

Table of Authorities ...................................................................................... ii

Preliminary Statement ................................................................................... 2

Background...................................................................................................... 6

ARGUMENT .................................................................................................. 9

I.     THE SEC IS AFFIRMATIVELY TRYING TO BLOCK
       DEFENDANTS' ACCESS TO CRITICAL DISCOVERY ...................................... 9

II.    A PRECLUSION ORDER IS THE WARRANTED REMEDY ........................... 11

       A.   This Court Has Broad Discretion ................................................. 11

       B.   Preclusion Has Been Ordered
            In Much Less Egregious Cases........................................................ 12

       C.   Due Process Is Also Implicated.................................................... 14

Conclusion...................................................................................................... 16

# TABLE OF AUTHORITIES

CASES                                                                                     PAGE(S)

Burnett v. Venturi,
   903 F. Supp. 304 (N.D.N.Y. 1995) ............................................................................. 14

Davis v. Lehane,
   89 F. Supp. 2d 142 (D. Mass. 2000) .......................................................................... 15

Epperly v. Booker,
   997 F.2d 1 (4th Cir. 1993) ......................................................................................... 15

Lomascolo v. Otto Oldsmobile-Cadillac, Inc.,
   253 F. Supp. 2d 354 (N.D.N.Y. 2003) ...................................................................... 13

Poulin v. Greer,
   18 F.3d 979 (1st Cir. 1994) ....................................................................................... 11

Rivera-Flores v. Bristol-Myers Squibb Caribbean,
   112 F.3d 9 (1st Cir. 1997) ................................................................................... 11, 12

S.E.C. v. Rivlin,
   No. 99-1455, 1999 WL 1455758 (D.D.C. Dec. 20, 1999) ........................................ 15

Sheek v. Asia Badger, Inc.,
   235 F.3d 687 (1st Cir. 2000) ..................................................................................... 11

Thibeault v. Square D Co.,
   960 F.2d 239 (1st Cir. 1992) ............................................................................... 11, 12

Third Wave Tech., Inc. v. Stratagene Corp.,
   --- F. Supp. 2d ---, No. 04-0680, 2005 WL 3529659 (W.D. Wis. Dec. 16, 2005) ..... 13

United States v. Proctor & Gamble Co.,
   356 U.S. 677 (1958) ................................................................................................... 9

United States v. Walton,
   602 F.2d 1176 (4th Cir. 1979) .................................................................................. 15

Ware Communications, Inc. v. Rodale Press, Inc.,
   No. 95-5870, 2002 WL 89604 (E.D. Pa. Jan. 23, 2002) ........................................... 14

Washington v. Texas,
   388 U.S. 14 (1967) ..................................................................................................... 9

CASES                                                                    PAGE(S)

Washington v. Thurgood Marshall Acad.,
    230 F.R.D. 18 (D.D.C. 2005)................................................................... 10

Westinghouse Elec. Corp. v. City of Burlington,
    351 F.2d 762 (D.C. Cir. 1965) .................................................................. 9


RULES                                                                    PAGE(S)

Fed. R. Civ. P. 1 ............................................................................................ 1

Fed. R. Civ. P. 16 ............................................................................... 1, 12, 13

Fed. R. Civ. P. 26 ................................................................................... 1, 12

Fed. R. Civ. P. 37 ............................................................................... 1, 12, 13


OTHER AUTHORITIES                                                         PAGE(S)

8 Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 2001 (2d ed. 1994)................................ 9

Pursuant to Federal Rules of Civil Procedure 1, 16, 26 and 37, and this Court's inherent authority over the fair and just disposition of federal civil actions, defendants Biopure Corporation, Thomas Moore, Howard Richman and Jane Kober ("Defendants"), respectfully submit this Memorandum Of Law In Support Of Their Motion To Preclude FDA Evidence From The Trial Of This Matter.

A courtesy copy of this memorandum has also been filed with the United States District Court for the District of Columbia, where that court is presently considering Biopure's motion to compel U.S. Food and Drug Administration ("FDA") compliance with three federal subpoenas issued by Biopure seeking discovery in connection with this enforcement action.[1] In that proceeding, the Securities and Exchange Commission ("SEC"), in its capacity as the plaintiff in this action, has filed a self-styled "Response" to Biopure's motion in an attempt to prevent Biopure, or any other Defendant, from seeking any document discovery of the FDA.[2] Should Biopure's motion be granted in its entirety notwithstanding the SEC's intervention, this preclusion motion becomes moot. However, given that the trial of this matter begins on May 8, Defendants respectfully submit that briefing on this issue should begin now so that this motion can be resolved shortly after disposition of the District of Columbia proceeding in order to coordinate that discovery motion with issues to be tried on the merits in this Court. The

---

[1]     In re Subpoena In:  S.E.C. v. Biopure, et al., Misc. Case No. 1:05-mc-00506-RWR-AK (D.D.C.) (filed Dec. 9, 2005).  A copy of Biopure's memorandum in support of its motion to compel is attached hereto at Tab A.  Although Biopure is before the District of Columbia Court for purposes of its motion to compel, this Court obviously has overall authority over the disposition of the case and the parties.

[2]     See SEC's Response To Defendant Biopure Corporation's Motion To Compel FDA Compliance With Federal Subpoenas, In re Subpoena In:  S.E.C. v. Biopure, et al., Misc. Case No. 1:05-mc-00506-RWR-AK (D.D.C.) (filed Dec. 23, 2005) ("SEC Opp."), attached hereto at Tab B.

SEC cannot have it both ways:  It cannot block discovery and then seek to try the same issues.

### Preliminary Statement

This preclusion motion addresses the second of two elements of prosecutorial overreaching in this action.  The first, the SEC's suing Defendants for fraud, for issuing a press release updating the public on Biopure's BLA status using the very same words used by the FDA in its update letter to Biopure, is addressed in Defendants' pending motion for partial summary judgment.[3]

Here, we address the second element:  the SEC's attempt to prevent Defendants' searching examination of its false claim that Defendants should have disclosed an immaterial FDA safety hold on a proposed protocol for a future trauma study -- a safety hold that had no stated implications for the BLA whatsoever.  Indeed, the FDA had informed Biopure that **any** implications of that study hold (for a different patient population in a different use with a different dosage) would be stated in the BLA review.  No such implication was stated.

When this action was commenced, Biopure, on behalf of all Defendants, promptly subpoenaed the FDA records to prove, among other things, **that**:

1.    The FDA **never** internally determined that the trauma protocol safety hold was material or otherwise indicative for the BLA.

---

[3]    Defendants' Motion for Partial Summary Judgment and supporting papers, <u>S.E.C. v. Biopure, et al.</u>, Civil Action No. 05-11853-PBS (D. Mass.), Docket Nos. 46-50 (filed Dec. 21, 2005).

2.      The FDA **never** determined for **any** company that such a study protocol hold -- on a **different** population in a **different** use with a **different** dosage than a pending BLA -- had **any** import for any BLA.

<u>In addition</u>, Defendants' discovery seeks to probe the deeply prejudicial impact on this action of premature SEC intervention in August 2003 into Biopure's FDA approval process, including the two-fold prejudicial effects of:

1.      SEC prejudicial influence on the <u>FDA</u>'s biologic review judgments, record-keeping, and interactions with Biopure; and

2.      the <u>ways</u> in which the SEC's cooperation with the FDA has affected <u>FDA decision-making</u> inappropriately to leverage <u>the</u> <u>SEC's</u> <u>enforcement</u> effort.

If Biopure shows a trier of fact that <u>either</u> of those two biases occurred here, the impact will be far-reaching and therapeutic for public policy, not-to-mention constituting additional grounds for dismissal and other relief.

For example,

The SEC improperly asserts in this case that Biopure should have disclosed an immaterial trauma study protocol because of its implications for Biopure's pending BLA in a different indication, for a different patient population with a different dosage.  Yet, when the SEC took <u>ex</u> <u>parte</u> testimony from the FDA's Toby Silverman, she contradicted the SEC's own assertion:

Q.      Was there a reason that you limited your comment [in the FDA's April 9, 2003 call to Biopure regarding the trauma protocol] regarding FDA's

judgment that the product was unsafe to put in the patient population at that time <u>versus saying something that was broader in scope</u>?

A.   We were discussing a particular IND and a particular clinical trial under that IND.  Our comments are normally restricted to the [trauma] protocol and the [trauma] study in question.

Q.   In situations where the FDA has concerns that ma[y] go beyond a specific indication that's being evaluated, is it an option for them to express that greater level of concern, or are they limited in this way to only comment about what they're specifically reviewing?

A.   We can certainly comment more generally.  In this case the review [of the <u>BLA</u>] had not been completed.  (12/18/03 Silverman Tr. at 18 (emphasis added).)

*   *   *

Q   Why did the FDA not say in the [July 30, 2003] <u>BLA response letter</u> that the product was <u>unsafe</u>?

A.   This is the same discussion that we had earlier. Such was that FDA wanted to offer Biopure the opportunity to respond <u>before FDA made a final determination</u>.  (<u>Id.</u> at 62 (emphasis added).)

**How on Earth can the SEC fault Biopure for making no disclosure on July 31, 2003 regarding safety implications for the BLA of a trauma study protocol (different indication, different population, different dosage) when the FDA itself says it then had made no determination of any such implication and not informed Biopure of any?!?**

Biopure is entitled to FDA discovery on (1) <u>why</u> the FDA's position shifted again and again following the SEC's intervention -- and (2) whether a trier of fact

4

could also conclude on that evidence that SEC/FDA coordination included improper assertion of FDA process leverage on Biopure in <u>aid</u> of <u>SEC</u> enforcement.

FDA process delay greatly advantages the SEC because Biopure's shareholders are exponentially diluted now when <u>small</u> amounts of capital are raised at large numbers of shares per million dollars raised (diluting $500 million previously invested over 21 years).[4] Without FDA progress, given the cloud of these SEC charges, Biopure's future is at stake in this action, as are the reputations of its officer Defendants.

In the face of Defendants' legitimate attempt to explore these and other issues -- <u>the SEC seeks to block that inquiry</u>. In the United States District Court for the District of Columbia, the SEC has now submitted a memorandum opposing Biopure's pending motion to compel FDA compliance with the subpoenas duces tecum served on the FDA by Biopure.

The SEC <u>does not allege any interest or privilege</u> in the materials sought by the subpoenas. Rather, the SEC's <u>only</u> basis for trying to stop Defendants from seeking their own discovery of the FDA is the SEC's claim that its own document collection of the FDA will be sufficient to provide Defendants with anything "relevant" (as the SEC defines it). In other words, the SEC has already collected what **it** deems relevant and is now affirmatively attempting to deny Defendants an equal opportunity to do the same.

---

[4]     Since the time of the SEC's Wells Notice to Biopure, Biopure's market capitalization has declined approximately 75% and the value of each share then outstanding has been diluted approximately 94.5%.

**<u>Background</u>**

The SEC instituted this civil enforcement action on September 14, 2005,
alleging that Biopure and the other defendants engaged in securities fraud in connection
with the company's on-going efforts to obtain domestic marketing approval by the FDA
of Hemoglobin Glutamer-250 (bovine), also known as Hemopure, a blood substitute
sought for use by, among others, the U.S. military.  According to the SEC's Complaint:

> In 2003, Biopure Corporation ("Biopure"), and its chief
> executive officer, head of regulatory affairs and general
> counsel engaged in a fraudulent scheme to misrepresent and
> conceal from investors the truth about its applications for
> Food and Drug Administration ("FDA") approval of
> Hemopure.

SEC Complaint ¶ 1.  There is no question that the FDA is central to the SEC's case-in-
chief, as a review of the Complaint's allegations referring to the FDA makes perfectly
clear:  <u>See id.</u> ¶¶ 1, 2, 3, 5, 6, 12, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 28, 29, 30, 32, 33,
34, 36, 37, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59, 60, 61, 65, 66, 67,
68, 69, 70, 71, 73, 74, 75, 77, 79, 80, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 93, 96, 97, 99,
100, 102 & 104.  Indeed, the FDA is by far the most important actor in this action.

Although this enforcement action began last September, the SEC staff had
been actively investigating Biopure and other possible individual targets for more than
two years prior.  The staff's investigation included fourteen document subpoenas and
thirteen testimonial subpoenas on the company, its employees and directors; the
production of hundreds of thousands of pages of documents, including e-mail and other
electronic documents; subpoenas and testimony from four outside counsel to the
company; and at least seven separate Wells submissions.

6

Not surprisingly, the SEC staff also sought extensive information from the FDA. However, in contrast to all of the other recipients of the SEC's investigative demands, the FDA was an <u>active partner</u> in the SEC's investigation.[5] In fact, recently-produced documents have revealed that an FDA staffer was actually <u>responsible</u> for raising the matter with the SEC in the first instance: In an August 8, 2003 letter to the SEC's Division of Enforcement, Elaine Cole of the FDA's Office of Compliance and Biologics Quality stated that "[i]t has come to the attention of the FDA that information in a press release dated 8/1/2003 . . . may not be a fair and accurate disclosure of information to public investors" and that "under the SEC's existing agreement with FDA, the information provided is not publicly disclosable without written permission from FDA." Aug. 8, 2003 Letter, attached hereto at Tab C. Indeed, the SEC and the FDA are brethren agencies in the same federal government.

Once the SEC's investigation began in 2003, the FDA began permitting the SEC to have informal, "off the record" conversations with key officials at the FDA involved in Biopure's applications. In the SEC's October 22, 2003 document request letter to FDA, the SEC attorney noted "the <u>extensive time and effort</u> you and Dr. Silverman [a key FDA witness] have offered to this office in connection with our investigation." Oct. 22, 2003 Letter (emphasis added), attached hereto at Tab D.

---

[5]     In early February 2004, in the midst of the SEC's investigation of Biopure, the SEC and FDA simultaneously announced to the public their partnership relating to securities law enforcement. The relevant announcements and press releases can be found on the FDA's website at http://www.fda.gov/bbs/topics/NEWS/2004/NEW01019.html.

The SEC staff also requested what <u>it</u> deemed to be the relevant documents for its purposes. In the same October 22, 2003 letter, the SEC requested four individual or categories of documents:

(1)     an April 25, 2003 letter from FDA to Biopure;

(2)     a July 30, 2003 letter from FDA Biopure;

(3)     "[o]ther correspondence, notes or other memorializations of all conversations between FDA officials and employees, officers or agents of Biopure regarding IND 10962 for the period April 1, 2003 to present [October 22, 2003]"; and

(4)     "[n]otes of all conversations between FDA officials and employees, officers or agents of Biopure regarding Biopure's biologics license application ('BLA') for the company's investigational 'Hemopure' product for the period April 1, 2003 through the present [October 22, 2003]."

<u>See</u> Tab D. Apparently satisfied that it had received everything that it needed from the FDA and others for its purposes, the SEC brought suit against Defendants. Defendants do not complain as to what the SEC felt it needed; rather Defendants object to the SEC suggesting that it should deem what is necessary for Defendants.

In order to defend against the SEC's false claims about "<u>the truth about Biopure's applications for FDA approval to test and market a blood-substitute product called Hemopure</u>," SEC Opp. at 3 (emphasis added), once this action commenced, and as soon as Defendants were entitled under the Federal Rules, Biopure served subpoenas on the FDA. The SEC now seeks to interdict two-sided inquiry of that truth. Asserting no burden to itself or any interest or privilege in the FDA documents -- which it cannot legitimately do -- the SEC nevertheless challenges Biopure's requests on the basis of the

8

SEC's own assertion that the documents sought are "irrelevant" and that the SEC's selective production from the FDA is "sufficient" for Defendants' purposes.

**Argument**

## I.    THE SEC IS AFFIRMATIVELY TRYING TO BLOCK DEFENDANTS' ACCESS TO CRITICAL DISCOVERY

Although it should go without saying, our modern civil judicial process is meant to provide parties with fair access to, and complete disclosure of, all information relevant to the matter in dispute.  A trial should not be a game of stonewall or blindman's bluff.  United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958).  It is supposed to be a "search for the truth."  8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2001, at 40 (2d ed. 1994).  Courts have long recognized that this search will succeed only if each party has the right to present its own evidence and to rebut that of its opponent; it is a right that "is a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14, 19 (1967); see also Westinghouse Elec. Corp. v. City of Burlington, 351 F.2d 762, 767 (D.C. Cir. 1965) ("[T]he paramount interest of the Government in having justice done between litigants in the Federal courts militates in favor of requiring a great effort on its part to produce any documents relevant to a fair termination of this litigation.").

Yet in this case, the SEC is deliberately and affirmatively seeking to block Defendants' access to the key actor in this litigation -- knowing that the actor has additional information it could produce.  See, e.g., SEC Opp. at 6 (suggesting Biopure's requests seek potentially "millions of pages" of documents).  Notwithstanding its virtually unfettered and far superior access to the FDA for more than two years, in

response to Defendants' own effort to seek discovery of the FDA, the SEC has come out in direct opposition. Although it claims <u>no interest or privilege</u> in the FDA documents at issue -- and thus has no standing to oppose Biopure's motion or the enforcement of the subpoenas[6] -- for strategic reasons known only to it, the SEC is trying to block Defendants' access to this key witness through its opposition to Biopure's motion to compel.

The SEC's effort includes trying to prevent Defendants from exploring subject areas <u>which the SEC itself explored during its investigation</u>. For example, the SEC argues against any discovery relating to "the internal deliberations of the FDA, which are not at all relevant to the pending action." SEC Opp. at 6. Yet the SEC explored this in detail during its own questioning of FDA's witnesses. The following are merely a few examples of the kinds of questions asked of the FDA by SEC staff during its investigation (and outside of Defendants' presence):

> Q. Did you attend the filing meeting [an internal FDA meeting] that predated issuance of Exhibit 41? Were there any concerns expressed by any of the attendees about any elements of the BLA? (12/17/03 Stephenson Tr. at 27.)

> Q. What was the reason that FDA would not grant a meeting? (<u>Id.</u> at 75.)

> Q. Does the FDA have to take certain steps to take comfort regarding the level of safety issues before actually allowing the clinical trials to proceed? (12/17/03 Silverman Tr. at 42.)

> Q. [W]ere there any discussions among the FDA personnel about whether the issues discussed in these telephone

---

[6]    "A party generally lacks standing to challenge a subpoena issued to a third-party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." <u>Washington v. Thurgood Marshall Acad.</u>, 230 F.R.D. 18, 21 (D.D.C. 2005) (citing cases).

conferences and correspondence in September of 2002
should have any impact on whether the application was
accepted for review? (<u>Id.</u> at 95.)

Q.    In your experience is there a bias among investigators with
regard to substitutes for blood or alternatives for blood?
(12/16/03 Landow Tr. at 34.)

Q.    What is the process that occurs once the FDA receives a
BLA, such as the one referred to in Exhibit 40? (<u>Id.</u> at 42.)

## II.    <u>A PRECLUSION ORDER IS THE WARRANTED REMEDY</u>

There can be no other explanation for the SEC's conduct than an attempt
to gain some sort of litigation advantage. The SEC seeks to block those it has charged
with securities fraud from obtaining the discovery they deem necessary and essential for
their defense. The SEC's tactic here is both deliberate and palpably prejudicial, and
should be remedied.

### A.    <u>This Court Has Broad Discretion</u>

"The federal courts' supervision of the discovery process, and the courts'
concomitant authority to upbraid those who do not play by the rules, is rooted in the need
for maintaining the integrity of the trial process. Hence, the impetus behind a court's
deployment of sanctions is not merely to punish a party for untoward acts or omissions; it
is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules."
<u>Thibeault v. Square D Co.</u>, 960 F.2d 239, 245 (1st Cir. 1992). Thus, this court "possesses
wide latitude in formulating the appropriate sanction" for discovery abuses. <u>Sheek v.
Asia Badger, Inc.</u>, 235 F.3d 687, 694 (1st Cir. 2000) (citing <u>Poulin v. Greer</u>, 18 F.3d 979,
984 (1st Cir. 1994)); and a district court's determinations in this regard are reviewed for
abuse of discretion only. <u>Thibeault</u>, 960 F.2d at 243; <u>see also</u> <u>Rivera-Flores v. Bristol-</u>

11

Myers Squibb Caribbean, 112 F.3d 9, 14 (1st Cir. 1997) ("Our review of the district

court's discovery-related decisions is for abuse of discretion, and we will intervene in

such matters only upon a clear showing of manifest injustice.") (quotations omitted).  As

held by the First Circuit Court of Appeals:  "This circuit has recommended a

straightforward approach to ensure that the spirit of open discovery embodied in Rule 26

is not undermined either by evasion or by dilatory tactics."  Thibeault, 960 F.2d at 244.

In this case, the parties are on an accelerated schedule to try this case in

early May 2006.  The FDA is the critical witness.  Defendants' access to this witness is

therefore essential to their defense, and time is of the essence.  For the SEC to act in

derogation of Defendants' legitimate attempt to seek access to information Defendants

consider important is clearly contrary to the spirit of open discovery embodied in Rule 26

and is already prejudicing Defendants by forcing them to engage in this motion practice

during the limited time remaining.

**B.    Preclusion Has Been Ordered**
**In Much Less Egregious Cases**

When a party affirmatively withholds discovery from its opponent without

substantial justification, Rule 37 provides sanctions -- that party shall be precluded from

using such evidence at trial unless the failure to disclose is harmless.  See, e.g., Rule

37(b)(2)(B) (providing that an appropriate sanction for failing to obey a discovery order

is to "[prohibit] that party from introducing designated matters in evidence").  Similarly,

Rule 16(f) permits a court to impose any sanctions "as are just" (including preclusion

12

sanctions permitted under Rule 37(b)(2)) for failure to obey a scheduling or pre-trial order.  See Fed. R. Civ. P. 16(f).[7]

There are numerous situations where courts have reasonably imposed the sanction of preclusion against a party who fails to comply with discovery obligations or who acts to prevent the timely and fair completion of discovery.  For example:

Third Wave Tech., Inc. v. Stratagene Corp., --- F. Supp. 2d ---, No. 04-0680, 2005 WL 3529659 (W.D. Wis. Dec. 16, 2005), involved defendant's challenge to various rulings by the district court after an unfavorable jury verdict finding patent infringement.  One of the issues raised by defendant was the court's preclusion of evidence from its general counsel on the grounds that during discovery defendant had prevented plaintiff from exploring the full extent of that witness's communications with another key witness by asserting the attorney-client privilege.  The Court reaffirmed its decision precluding the evidence, holding that "[i]t is not my practice to let a party introduce evidence at trial on a relevant topic that it has prevented its adversary from exploring during discovery."  Id. at *5 (emphasis added).

In Lomascolo v. Otto Oldsmobile-Cadillac, Inc., 253 F. Supp. 2d 354 (N.D.N.Y. 2003), the defendant-employer had moved for protective order to preclude the plaintiff-employee from using documents during the trial of plaintiff's Title VII claims, which were allegedly required in initial disclosures but which were first disclosed during depositions.  The court ruled that because plaintiff had taken the position during discovery that such documents were not required disclosures, he was now precluded from

---

[7]      There is both a scheduling and a pre-trial order in this case.  See Docket Nos. 41 & 42.

using those documents during the trial for any purpose other than impeachment.

In <u>Ware Communications, Inc. v. Rodale Press, Inc.</u>, No. 95-5870, 2002 WL 89604 (E.D. Pa. Jan. 23, 2002), the court had to determine whether to preclude the introduction by plaintiff of damages evidence at trial.  Defendant had sought preclusion because plaintiff's counsel had failed to comply timely with discovery requests for this information and only produced it at the very end of the pre-trial period.   Though the court recognized that its ruling effectively dismissed plaintiff's claim because it precluded all evidence going to an element of the cause of action, it nevertheless granted defendant's motion to preclude.  Among the reasons was the court's finding of significant prejudice to the defendant from plaintiff's action, which "substantially impeded Defendant's ability to prepare a full and complete defense."  <u>Id.</u> at *3.

<u>Burnett v. Venturi</u>, 903 F. Supp. 304 (N.D.N.Y. 1995), involved tenants who had brought suit against landlords alleging violation of Fair Housing Act and New York Law.  On motions for sanctions due to discovery abuses, the court held that a six-month delay in producing an audiotape, combined with allegedly negligent erasure of one side of tape, was conduct sanctionable by preclusion of any testimony regarding erased conversation.  <u>Id.</u> at 309 ("Plaintiffs must be precluded from offering any testimony in regard to the second conversation so that they will not benefit from their failure to comply with the spirit of the federal discovery rules.").

### C.    <u>Due Process Is Also Implicated</u>

As demonstrated above, preclusion would be warranted in this case even if it was simply a commercial dispute between private litigants.  But in this case, the

circumstances are much more serious. Here, the plaintiff is the federal government, and the federal government has accused a public company and three present or former officers with securities fraud; seeking relief that would ruin the company and the individuals' careers and professional reputations. The SEC's position is even more outrageous in light of the dramatically disparate economic and one-sided pre-suit investigatory advantage that it had over defendants going into this litigation.

In attempting to restrict Defendants' access to potentially exculpatory information, the SEC's conduct is tantamount to prosecutorial interference with a witness. It therefore implicates Defendants' rights to due process.[8] See Epperly v. Booker, 997 F.2d 1, 10 (4th Cir. 1993) (recognizing that "a number of circuits [including the First] have held that such interference with witnesses violates the constitutional guarantee of a fair trial"); see also United States v. Walton, 602 F.2d 1176, 1179 (4th Cir. 1979) ("A witness is not the exclusive property of either the government or a defendant."). For example, in Davis v. Lehane, 89 F. Supp. 2d 142 (D. Mass. 2000), the court held that a government official's efforts to convince a relevant witness not to be interviewed by the petitioner constituted a violation of the petitioner's due process rights. Id. at 155-56.

In persisting in its effort to limit Defendants' access to the FDA, the SEC, at a minimum, should be precluded from introducing its own, self-selected FDA documents and testimony into evidence in the trial of this matter.

---

[8]    See S.E.C. v. Rivlin, No. 99-1455, 1999 WL 1455758, *3 (D.D.C. Dec. 20, 1999) (recognizing that a defendant has "full due process rights" when "the SEC, pursuant to its investigation, either files a complaint or makes a criminal reference") (citation omitted).

15

## Conclusion

For these reasons, Defendants respectfully submit that the SEC should be precluded from introducing or relying on at trial any materials, testimony or other evidence received from the FDA, any of its affiliates, and/or any of its current or former employees.

Dated  January 10, 2006
       Boston, Massachusetts

Respectfully submitted,

/s/ Thomas J. Dougherty
Thomas J. Dougherty (BBO #132300)
Justin J. Daniels (BBO #656118)
Scott T. Lashway (BBO #655268)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
dougherty@skadden.com

Counsel for Defendant Jane Kober

/s/ Robert A. Buhlman
Robert A. Buhlman (BBO #554393)
Donald J. Savery (BBO #564975)
Michael D. Blanchard (BBO #636860)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000
robert.buhlman@bingham.com

Counsel for Defendant Biopure Corporation

/s/ John D. Hughes
John D. Hughes (BBO #243660)
Cathy A. Fleming (*pro hac vice*)
Mary P. Cormier (BBO #635756)
EDWARDS ANGELL PALMER &
   DODGE LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 951-2225
jhughes@eapdlaw.com

Counsel for Defendant Howard Richman

/s/ Edward P. Leibensperger
Edward P. Leibensperger (BBO #292620)
Bobby R. Burchfield (*pro hac vice*)
Jason A. Levine (*pro hac vice*)
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4046
eleibensperger@mwe.com

Counsel for Defendant Thomas Moore

## CERTIFICATE OF SERVICE

I, Justin J. Daniels, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 10, 2006.

Dated:  January 10, 2006

/s/ Justin J. Daniels
Justin J. Daniels

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE
COMMISSION,                                  :
                                             :
                                             :
              Plaintiff,                      :     Miscellaneous Case No. _____
                                             :
                                             :
          v.                                 :     (Related Case: Civ. No. 05-11853-PBS
                                             :     Pending in the United States District
BIOPURE CORPORATION,                         :     Court for the District of Massachusetts)
THOMAS MOORE, HOWARD RICHMAN                  :
and JANE KOBER,                              :
                                             :     **EXPEDITED HEARING
              Defendants.                     :     REQUESTED**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT BIOPURE CORPORATION'S MOTION
TO COMPEL FDA COMPLIANCE WITH FEDERAL SUBPOENAS**


Stephen J. Crimmins (DC Bar No. 391604)
John J. Dempsey  (DC Bar No. 480348)
BINGHAM MCCUTCHEN LLP
Suite 800
1120 20th Street, N.W.
Washington, D.C.  20036
(202) 778-6150

Robert A. Buhlman (MA Bar No. 554393)
Donald J. Savery (MA Bar No. 564975)
Michael D. Blanchard (MA Bar No. 636860)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000


Counsel for Defendant
Biopure Corporation

# **TABLE OF CONTENTS**

PAGE

Table of Authorities...............................................................................................ii

Preliminary Statement ........................................................................................ 1

ARGUMENT......................................................................................................3

I.    THE LAW REQUIRES FDA COMPLIANCE WITH THE SUBPOENAS ..............3

    A.    *Houston Business Journal* Compels Compliance
        With The Subpoenas For Documents ................................................3

    B.    Fed. R. Civ. P. 30(b)(6) Compels Compliance
        With The FDA And CBER Subpoenas For Testimony......................................6

    C.    Any Doubt About The Applicability Of The Federal
        Rules Is Removed In This Case Given That The
        Plaintiff Is The United States Government...........................................7

II.   THE DISCOVERY SOUGHT BY THE SUBPOENAS IS CENTRAL
    TO THE DEFENSE, AND THE FDA SHOULD NOW BE COMPELLED
    TO RESPOND TO IT IN ITS ENTIRETY...................................................9

    A.    Each Of The Categories Of Documents Identified
        In The Subpoenas Calls For Relevant Documents
        Important To The Defense Of The SEC Action .................................9

    B.    The FDA Has Declined Biopure's Offer To
        Negotiate The Scope Of The Requests ............................................12

Conclusion......................................................................................................12

i

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Al Fayed v. CIA,
    229 F.3d 272 (D.C. Cir. 2000).............................................................6

Connaught Lab., Inc. v. SmithKline Beecham P.L.C.,
    7 F. Supp. 2d 477 (D. Del. 1998) ...............................................5

Exxon Shipping Co. v. United States Dep't of Interior,
    34 F.3d 774 (9th Cir. 1994)......................................................5

Ho v. United States,
    374 F. Supp. 2d 82 (D.D.C. 2005).............................................6

*  Houston Bus. Journal, Inc. v. Office of the Comptroller, Dep't. of Treasury,
    86 F.3d 1208 (D.C. Cir. 1996)...........................................4-6, 7

Lerner v. District of Columbia,
    No. 00-1590, 2005 WL 2375175 (D.D.C. Jan. 7, 2005) .............................5

Linder v. Calero-Portocarrero,
    251 F.3d 178 (D.C. Cir. 2001).................................................6

Touhy v. Ragen,
    340 U.S. 462 (1951) ...........................................................4

Taylor v. Gabelli,
    No. 04-534, 2005 WL 2375173 (D.D.C. May 3, 2005) .............................5

Yousuf v. Samantar,
    No. 05-110, 2005 WL 1523385 (D.D.C. May 3, 2005) .........................5, 6


STATUTES AND RULES                                                       PAGE(S)

5 U.S.C. § 301 ...................................................................4

28 U.S.C. § 1782 .................................................................6

28 U.S.C. § 2072 .................................................................7

STATUTES AND RULES                                                                PAGE(S)

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 9

Fed. R. Civ. P. 30(b)(6) ............................................................................................ 6-7

Fed. R. Civ. P. 37 ......................................................................................................... 1

Fed. R. Civ. P. 45 ........................................................................................ 1, 3, 6, 7,12

iii

Pursuant to Fed. R. Civ. P. 37 and 45, and the Local Rules of this Court, Defendant Biopure Corporation ("Biopure") respectfully submits this Memorandum Of Law in support of its motion to compel the United States Food and Drug Administration ("FDA") to comply with three federal subpoenas issued out of the United States District Court for the District of Columbia on November 2, 2005 and served on the FDA on November 4, 2005 ("Subpoenas") (attached hereto as Exhibits A, B, and C). The FDA is refusing to comply with the Subpoenas in any respect.

### Preliminary Statement

The Subpoenas at issue arise out of a securities enforcement action brought by the United States Securities and Exchange Commission ("SEC") against Biopure, as well as two former executives (Thomas Moore and Howard Richman) and its current general counsel (Jane Kober) (collectively, "Defendants"), in the United States District Court for the District of Massachusetts. SEC v. Biopure Corporation, Thomas Moore, Howard Richman, and Jane Kober, Civ. No. 05-11853 (D. Mass., filed Sept. 14, 2005).

Biopure is a small biotechnology firm currently located in Cambridge, Massachusetts. The SEC alleges that Biopure and the other defendants violated the federal securities laws in connection with the Company's public disclosures about the FDA's review of Hemopure, Biopure's biotechnology product that is designed to deliver oxygen to tissues as a substitute for red blood cells. According to the SEC's Complaint: "Biopure . . . and its chief executive office, head of regulatory affairs and general counsel engaged in a fraudulent scheme to misrepresent and conceal from investors the truth about its applications for Food and Drug Administration ('FDA') approval of Hemopure." See Complaint, SEC v. Biopure Corporation, Thomas Moore, Howard

Richman, and Jane Kober ("Complaint") (attached hereto as Exhibit D), ¶ 1. The SEC's entire case is based on the FDA's review of the Company's submissions for Hemopure and the FDA's communications with Biopure about them. See, e.g., id. ¶¶ 2, 3, 5, 6, 16-20, 25-34, 36, 37, 43-56, 59-61, 66-75, 79, 82-86, 88-91, 96, 97, 99, 100, 102, 104.

Given the critical importance of the FDA for the defense, on November 2, 2005, Biopure issued three federal subpoenas to the FDA that go directly to the issues raised by the SEC's Complaint.[1]

By letter of November 15, 2005, the FDA Chief Counsel's Office informed Biopure that it would not comply in any respect with the subpoenas and requested that they be withdrawn. See Nov. 15, 2005 FDA Letter, attached hereto as Exhibit E.

The FDA's treatment of Biopure's requests contrasts with the assistance and cooperation that the agency has provided to the SEC in the SEC's effort to develop the alleged factual basis for this action. In fact, since the SEC began its investigation more than 2 years ago, the FDA has, among other things, supplied the SEC with non-public documents and voluntarily consented to allow sworn testimony from three key FDA fact witnesses. See infra pp. 8-9.

The FDA should be ordered to provide Biopure with the much-needed and appropriate discovery identified in their duly-authorized, federal district court Subpoenas. First, the FDA is required to do so under law. Clear precedent from the D.C. Circuit, as well as the language of the Federal Rules of Civil Procedure, compel this conclusion.

---

[1] One subpoena is directed to the FDA and another is directed to one of the FDA's divisions, the Center for Biologics Evaluation and Review ("CBER"). The Subpoenas are identical in all other respects. A third subpoena is directed to Laurence Landow, a CBER employee. It is anticipated that additional requests to the FDA will be issued.

2

See infra Section I. Second, this is a lawsuit brought by the federal government against Biopure; one which directly comes as a result of information and cooperation provided by the very federal agency that is now refusing to comply with the Subpoenas. Without an opportunity to obtain their own discovery from the FDA, the Defendants in this action will be seriously impeded; a prejudice that is magnified by the fact that the FDA has assisted the SEC on the very same subjects in connection with its pre-complaint investigation for over 2 years. See infra Section II. For these reasons, Biopure respectfully moves this Court to compel the FDA's immediate compliance with Biopure's Subpoenas.

Indeed, there is a compelling need for this discovery promptly because the court in the District of Massachusetts has scheduled a prompt trial on May 8, 2006.

## ARGUMENT

I.    **THE LAW REQUIRES FDA COMPLIANCE WITH THE SUBPOENAS**

A.    ***Houston Business Journal* Compels
      Compliance With The Subpoenas For Documents**

The sole legal justification stated by the FDA on November 15, 2005 to Biopure for the FDA's refusal to comply with the Subpoenas is its claim that it is not a "person" under Rule 45 of the Federal Rules of Civil Procedure and, therefore, is outside the subpoena power of the federal courts.[2] See Nov. 15, 2005 FDA Letter, Ex. E ("[A] subpoena issued pursuant to Rule 45 may not be used to seek discovery from an agency

---

[2]  Rule 45 provides, in relevant part, that: "Every subpoena shall . . . command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person, or to permit inspection of premises, at a time and place therein specified." Fed. R. Civ. P. 45(a)(1)(C).

3

of the federal government because the term 'person' as used in the Rule does not include the federal government.").

The FDA's position is contrary to governing precedent from the D.C. Circuit Court of Appeals on this very subject.  In <u>Houston Bus. Journal, Inc. v. Office of the Comptroller, Dep't of Treasury</u>, 86 F.3d 1208 (D.C. Cir. 1996), the Court unequivocally held that:

> A federal-court litigant . . . can seek to obtain the production of documents from a federal agency by means of a federal subpoena.

<u>Id.</u> at 1212; and further held that to the extent a federal agency's regulation --

> may be to the contrary, it conflicts with Federal Rule of Civil Procedure 45 and <u>exceeds the [agency's] authority</u> under the Housekeeping Statute.

<u>Id.</u> (emphasis added).

<u>Houston Bus. Journal</u> involved a private company seeking to compel the U.S. Office of Comptroller to comply with subpoenas that the company issued in connection with a state court libel action in which it was a defendant.  The Comptroller refused to comply with the subpoenas, citing its regulations governing the testimony of agency employees enacted under the Federal Housekeeping Statute, which provides that the "head of an Executive department . . . may prescribe regulations for the . . . conduct of its employees . . . and the custody, use, and preservation of its records, papers, and property."  5 U.S.C. § 301.  These regulations are sometimes known as "<u>Touhy</u>

4

regulations," after the seminal Supreme Court decision in which they were authorized.[3]
On appeal from the district court's denial of the motion, the D.C. Circuit held that
because the underlying litigation was in state court, the district court did not have
jurisdiction to issue the subpoena in the first place.  Id. at 1213 ("Article III of the
Constitution limits the federal courts' subpoena power to cases where a federal court has
subject-matter jurisdiction over the underlying action, or in certain circumstances where
an action is cognizable in federal court.").  In its decision, the Court assessed the
differences between the procedures provided to a state court versus federal court litigant
seeking documents from a non-party government agency.

The court concluded that while the state court's ability to enforce a subpoena was
limited, a federal court could enforce the subpoena against the government.  As
recognized by the Court, "in past cases in which a federal-court litigant has come to
federal district court in the District of Columbia to enforce a subpoena duces tecum
against the [agency], this court has held that the district court owes no deference to the
[agency] in ruling on whether the documents are covered by the [applicable] privilege."
Id. at 1212.[4]

None of the three district court decisions cited by the FDA in its November 15,
2005 letter changes this.  See Nov. 15, 2005 FDA Letter, Ex. E (citing Yousuf v.

---

[3]  See Touhy v. Ragen, 340 U.S. 462, 467 (1951) (holding that federal agencies, in the interest of
internal administration, can promulgate regulations governing an agency's procedures for
producing documents and testimony under certain circumstances).

[4]  See also Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 780 (9th Cir.
1994) (requiring federal employees to comply with nonparty subpoenas issued in connection
with litigation stemming from the Exxon Valdez oil spill); Connaught Lab., Inc. v. SmithKline
Beecham P.L.C., 7 F. Supp. 2d 477, 480 (D. Del. 1998) (denying FDA's motion to quash
nonparty subpoenas served in patent infringement suit).

5

Samantar, No. 05-110, 2005 WL 1523385 (D.D.C. May 3, 2005), Taylor v. Gabelli, No.

04-534, 2005 WL 2375173 (D.D.C. May 3, 2005), and Lerner v. District of Columbia,

No. 00-1590, 2005 WL 2375175 (D.D.C. Jan. 7, 2005)). First, none of the cases question

the continued validity of Houston Bus. Journal. Second, in contrast to the litigation here,

in none of these cases was the federal government the plaintiff. Indeed, in Yousuf v.

Samantar, for example, the Court explicitly noted that the analysis of the government's

duties with regard to discovery differed from cases in which the government is, as it is

here, a party. 2005 WL 1523385 at *2. In fact, Houston Bus. Journal was recently

reaffirmed in Ho v. United States, 374 F. Supp. 2d 82 (D.D.C. 2005), and no D.C. Circuit

decision has overturned it.[5]

    **B.    Fed. R. Civ. P. 30(b)(6) Compels Compliance**
          **With The FDA and CBER Subpoenas For Testimony**

The FDA states that it need not comply with the Subpoenas for testimony because

Biopure did not follow the FDA's Touhy regulations. See Nov. 15, 2005 FDA Letter,

Ex. E. The FDA's argument is undercut by the nature of testimony sought. Through the

two subpoenas served on FDA and CBER, Biopure is not attempting to obtain factual

testimony from the FDA, but rather is seeking testimony from designated "keepers of

records" concerning the FDA's document organization and retention. See Subpoenas,

---

[5] Although Linder v. Calero-Portocarrero, 251 F.3d 178 (D.C. Cir. 2001), raised the question of whether the D.C. Circuit's long-standing application of Rule 45 to federal agencies was impacted by its decision in Al Fayed v. CIA, 229 F.3d 272 (D.C. Cir. 2000), a case construing 28 U.S.C. § 1782, the court never reached the question. Instead, it stated that "[w]ith respect to Rule 45, we have consistently proceeded under the ordinary standard of review to determine whether a district court properly considered the motion to compel production-inquiring whether the district court abused its discretion in denying or compelling discovery." 251 F.3d at 181.

Exs. A & B.[6] With respect to this kind of testimony, Rule 30(b)(6) of the Federal Rules

of Civil Procedure could not be clearer:

> A party may in the party's notice <u>and in a subpoena</u> name as
> the deponent a public or private corporation or a partnership
> or association or <u>governmental agency</u> and describe with
> reasonable particularity the matters on which examination is
> requested. In that event, the organization so named shall
> designate one or more officers, directors, or managing
> agents, or other persons who consent to testify on its behalf,
> and may set forth, for each person designated, the matters
> on which the person will testify. A subpoena shall advise a
> non-party organization of its duty to make such a
> designation. The persons so designated shall testify as to
> matters known or reasonably available to the organization.
> This subdivision (b)(6) does not preclude taking a
> deposition by any other procedure authorized in these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added). In <u>Houston Bus. Journal</u>, the Court concluded

that sovereign immunity does not insulate the federal government from Rule 45 and that

to the extent an agency's <u>Touhy</u> regulation "may be to the contrary, it conflicts with

Federal Rule of Civil Procedure 45 and exceeds the [agency's] authority under the

Housekeeping Statute." 86 F.3d at 1212. Here, the <u>plain language</u> of Rule 30(b)(6)

<u>identifies</u> the government as a legitimate target of these Subpoenas. Further, by statute,

any conflict that this language has with other laws (including FDA regulations) is

resolved in favor of the Rules. 28 U.S.C. § 2072 ("The Supreme Court shall have the

power to prescribe general rules of practice and procedure and rules of evidence for cases

in the United States district courts . . . All laws in conflict with such rules shall be of no

---

[6] Compliance with the subpoena on Dr. Landow should be compelled for the reasons set forth in Section I.C., <u>infra</u>.

7

further force or effect after such rules have taken effect."). Rule 30(b)(6) thus permits the

testimony sought by Biopure from the FDA and CBER here.

> **C.    Any Doubt About The Applicability Of**
> **The Federal Rules Is Removed In This Case Given**
> **That The Plaintiff Is The United States Government**

In the SEC action, the federal government has affirmatively invoked the Federal

Rules of Civil Procedure and thus has waived any claim against their applicability.

Therefore, by the federal government's own terms, the Rules now govern discovery in

this action.  There is nothing in the language of the Rules, or in any applicable case law,

to suggest that the application of the Rules should be determined selectively on an

agency-by-agency basis.

The FDA in this action has played an active role in assisting the SEC in its effort

to collect information leading to this lawsuit.  It has intimately involved itself in this

matter for over 2 years and cannot now claim to be simply a non-party bystander.

Among the other events demonstrating the FDA's active assistance in developing the

SEC's allegations are the following:

- The SEC's head of the Boston office reportedly said at a conference earlier this year that FDA officials are referring cases to the SEC and becoming witnesses in investigations.  *See* Boston Globe article dated March 31, 2005, "SEC, FDA Boost Effort to Police Drug Claims." The FDA referred Biopure's case to the SEC.

- Three FDA witnesses -- listed next -- gave testimony in the investigation of Biopure.  One of the witnesses testified that he listened to Biopure's quarterly earnings calls.

- On December 12, 2003, Dr. Landow gave sworn testimony to the SEC.  None of the Defendants or

8

their respective counsel were notified of the
testimony at the time.

- On December 17, 2003, Toby Silverman of the
  FDA gave sworn testimony to the SEC. None of
  the Defendants or their respective counsel were
  notified of the testimony at the time.

- On December 17, 2003, Franklin Stephenson of the
  FDA gave sworn testimony to the SEC. None of
  the Defendants or their respective counsel were
  notified of the testimony at the time.

Thus, certainly under the particular circumstances of this case, any claim that the FDA

should not be required to comply with a federal subpoena, issued out of a court whose

jurisdiction was invoked <u>by</u> the federal government with the <u>cooperation</u> of the FDA, is

frivolous and should be rejected.

## II.     THE DISCOVERY SOUGHT BY THE SUBPOENAS IS CENTRAL
TO THE DEFENSE, AND THE FDA SHOULD NOW BE
<u>COMPELLED TO RESPOND TO THEM IN THEIR ENTIRETY</u>

### A.     Each Of The Categories Of Documents Identified
In The Subpoenas Calls For Relevant Documents
<u>Important To The Defense Of The SEC Action</u>

Under the Federal Rules of Civil Procedure, Biopure "may obtain discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any

party . . . [and] the court may order discovery of any matter relevant to the subject matter

involved in the action." Fed. R. Civ. P. 26(b)(1). In this case, the discovery sought by

the FDA Subpoenas is central to the defense. Indeed, the FDA does not and cannot

challenge its relevance.

9

        1.      **Categories 1, 2, 4 And 12-16 Seek Relevant Information**
                    <u>Regarding The FDA's Consideration Of Hemopure</u>

Eight categories of documents called for by the Subpoenas seek documents related to the FDA's consideration, discussion, review or proposals relating, respectively, to Biopure's "biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure" and "[a]ll documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure." Those documents are clearly relevant to the defense of the SEC action. Among other things, the SEC's Complaint repeatedly references the alleged "negative information" received from the FDA, including various "safety concerns." See, e.g., Complaint ¶ 3. The FDA's materials on the status of the review for Hemopure, the specific BLA at issue, as well as the positions that the FDA was taking (or discussed taking) with respect thereto, is directly related to the SEC's claims.

        2.      **Categories 3, 5, 6 Seek Relevant Information Relating**
                    <u>To Biopure, Hemopure And The Individual Defendants</u>

Categories 3, 5 and 6 seek information concerning Biopure, Hemopure and the individual defendants. These subjects are obviously relevant to the allegations in the Complaint. Biopure's defense requires extensive knowledge of the FDA's assessments and viewpoints regarding the approval of Hemopure and the steps needed for Hemopure to obtain marketing approval in the United States. That information can only be found in the FDA's internal records, including electronic mail. For example, this case includes issues concerning the FDA's internal development of assessments and external communications regarding the merits of Biopure's clinical data supporting its application

10

for Hemopure. These are precisely the kinds of issues that need to be explored with the FDA in discovery.

      **3.**      **Categories 7, 8, 9 Seek Relevant Information
Regarding FDA Complete Response Letters**

Categories 7, 8 and 9, respectively, seek "[a]ll complete response letters, as described in the Standard Operating Procedures in effect on July 30, 3003, sent out by FDA at any time," "[a]ll complete response letters, as described in the Standard Operating Procedures and/or rules or regulations as amended after July 30, 3003, sent out by FDA at any time" and "all documents concerning, constituting or reflecting any communications within FDA about changing wording of complete response letters during the period July 1, 2002 through the present." The types of letters referenced in these requests are key regulatory communications from the FDA, and the SEC's case hinges on how to characterize them. For example, a central thesis of the SEC's Complaint is that Biopure should have recognized the July 30, 2003 letter as a Complete Response Letter. See, e.g., Complaint ¶ 5. FDA precedent for Complete Response Letters and non-Complete Response Letters are obviously central to the defense of these charges.

      **4.**      **Categories 10, 11 And 17-23 Seek
Relevant Information Relating To The
FDA's Internal Policies Procedures And Personnel**

Categories 10, 11 and 17-23 seek relevant information relating to the FDA's internal policies and procedures. For example, category 19 seeks "[a]ny proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA." Any such documents would assist Biopure and the other defendants

11

in showing that Biopure's disclosure did in fact conform to the guidance contained in those documents. Further, category 20 seeks "[a]ll documents relating to the joint FDA/SEC effort to increase the public's protection from false and misleading statements by enhancing inter-agency cooperation." Those documents are necessary to show the contacts between the FDA and the SEC and the possible prejudice that Biopure has suffered through the impact of those contacts on the Hemopure approval process.

### B.    Requests Are Not Burdensome In Light of The Complaint

Compliance with the federal Subpoenas should be compelled unless the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3). The requests are not burdensome because they are tailored to the issues raised by the Complaint that has been brought by the same government now claiming to comply is too much. If the FDA can agree to withdraw its blanket refusal to respond, Biopure would be perfectly willing to negotiate the scope of the requests in an attempt to address the FDA's concerns about undue burden. In the face of the blanket refusal, however, Biopure is forced to move to compel compliance in its entirety.

### Conclusion

For all of the forgoing reasons, this Court should grant Defendant Biopure Corporation's Motion To Compel FDA Compliance With Federal Subpoenas. Biopure seeks prompt compliance within 15 days of the Order because of the trial date of May 8, 2006.

Dated: December 9, 2005
        Washington, DC

Respectfully submitted,

*Stephen J. Crimmins*

Stephen J. Crimmins (DC Bar No. 391604)
John J. Dempsey  (DC Bar No. 480348)
BINGHAM MCCUTCHEN LLP
Suite 800
1120 20th Street, N.W.
Washington, D.C.  20036
(202) 778-6150

Robert A. Buhlman (MA Bar No. 554393)
Donald J. Savery (MA Bar No. 564975)
Michael D. Blanchard (MA Bar No. 636860)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Counsel for Defendant
Biopure Corporation

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by overnight delivery upon Michael Shane, Office of Chief Counsel, U.S. Food and Drug Administration, 5600 Fisher Lane, GCF-1, Rockville, MD 20857 and upon the attorney of record for each other party by overnight delivery on December 9, 2005.

Jennifer L. Holden

14

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:                              :
————————————————————————        :
SECURITIES AND EXCHANGE COMMISSION,  :
                                                :
                           Plaintiff,           :       No. 1:05-mc-00506-RWR-AK
             v.                                 :
                                                :       (Related Case:
BIOPURE CORPORATION,                            :       Civ. A No. 05-11853-PBS, pending
THOMAS MOORE, HOWARD RICHMAN,                   :       in the United States District Court
and JANE KOBER                                  :       for the District of Massachusetts)
                                                :
                           Defendants.          :
————————————————————————        :

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE
TO DEFENDANT BIOPURE CORPORATION'S MOTION TO
COMPEL FDA COMPLIANCE WITH FEDERAL SUBPOENAS**

The Securities and Exchange Commission ("Commission") respectfully submits this

response to Defendant Biopure Corporation's ("Biopure") Motion to Compel FDA Compliance

with Federal Subpoenas ("Motion"). The Commission respectfully requests that Biopure's

Motion be denied in its entirety because, in addition to any reason set forth by the Food and Drug

Administration ("FDA"), the documents sought by Biopure:

  (1) have already been produced by the Commission,

  (2) are already in the possession of Biopure, or

  (3) are entirely irrelevant to the securities enforcement action in which the subpoenas at

issue here were issued (the "Underlying Enforcement Action").[1]

In addition, the Commission recognizes that this Court is not presiding over the

Underlying Enforcement Action, and therefore also submits this response to provide the Court

———————————————

[1]    The Commission does not object to defendants deposing relevant witnesses who are FDA
employees provided that defendants comply with the requirements of 21 C.F.R. § 20.1.

with additional factual and procedural information about the Commission's pending enforcement action against Biopure and about the current state of document discovery in that action.

### Preliminary Statement

The pending Motion relates to three subpoenas issued in this District by counsel for Biopure, one of four defendants in the Underlying Enforcement Action. The Underlying Enforcement Action is a civil action brought by the Commission for violations of the federal securities laws, currently pending in the United States District Court in Boston, Massachusetts. The three subpoenas at issue here purport to require that a non-party, the FDA, produce of an enormous number of documents that -- to the extent not privileged, not already produced by the Commission or not already in Biopure's possession -- are entirely irrelevant to the Underlying Enforcement Action.

In the Underlying Enforcement Action, the Commission charges defendants with fraudulently misrepresenting the status of Biopure's efforts to obtain FDA approval to test and market a product while simultaneously raising tens of millions of dollars from investors. The key facts center on disclosures and omissions made by the defendants: what the defendants knew at the time (or where reckless in not knowing) and what they said. The Commission acknowledges that the FDA and its employees are relevant to this action, but only to the extent that they communicated with the defendants; i.e., that they did or said something that the defendants were aware of. Accordingly, the communications between the FDA and Biopure either have already been produced to the defendants by the Commission or were previously in the

2

possession of Biopure.[2]  Additional detailed and intrusive discovery of internal FDA matters or

FDA communications with non-parties would be unnecessary and irrelevant to this action

because they could not possibly relate to the defendants' knowledge or their disclosures during

the relevant period.

For these reasons, in addition to other reasons set forth by the FDA, this Court should

deny Biopure's Motion in its entirety.

## Background

The Commission's Complaint alleges that during the period of April through December

2003, defendant Biopure and three Biopure executives engaged in a fraudulent scheme to

misrepresent and conceal from investors the truth about Biopure's applications for FDA approval

to test and market a blood-substitute product called Hemopure.  Specifically, the Commission

alleges that in April 2003, defendants began receiving negative information from the FDA

regarding Biopure's efforts to obtain FDA approval of Hemopure but failed to disclose the

information, or falsely described it as positive developments.  In April 2003, the FDA imposed a

clinical hold because of safety concerns about Hemopure.  The clinical hold prohibited Biopure

from conducting its requested clinical trials of Hemopure in trauma settings such as emergency

rooms.  During the next eight months, defendants made public statements about Biopure's plans

to obtain approval of Hemopure for trauma uses while concealing the existence of the clinical

---

[2]    Prior to commencement of the Underlying Enforcement Action, Biopure already
possessed nearly all of the communications between the FDA and Biopure during the relevant
period and had produced those to the Commission.  The Commission has produced additional
documents to defendants that they did not already posses, including summaries of telephone calls
between Biopure and the FDA written by FDA employees and testimony transcripts in which
FDA employees describe and explain communications with defendants.

3

hold and of Biopure's repeated unsuccessful attempts to lift the clinical hold.

In addition, on July 30, 2003, the FDA informed defendants that it had not approved Biopure's biologics license application ("BLA"), which sought permission to market Hemopure for use in orthopedic surgery. In its letter to Biopure, the FDA conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioned the safety of Hemopure. Defendants, however, issued public statements beginning on August 1, 2003 describing the FDA's communication as good news, causing Biopure's stock price to increase by over 20%.

As the true status of Biopure's efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of December 2003 (including in a press release issued after the close of the markets on Christmas Eve), the company's stock price plummeted almost 66% from its August 1 price. During the period of the scheme, Biopure raised over $35 million from investors.

## Argument

Biopure's Motion should be denied in its entirety because the documents sought by Biopure: (1) have already been produced by the Commission, (2) are already in the possession of Biopure, or (3) are utterly irrelevant to the Underlying Enforcement Action. Prior to institution of its enforcement action, the Commission staff conducted a formal investigation pursuant to an order of the Commission. In its investigation, the Commission obtained documents and testimony from several sources, including the FDA. After the Underlying Enforcement Action was commenced, the Commission produced its investigative file to defendants. The Commission's investigative file includes all documents provided to the Commission staff by the

4

FDA in this matter, communications between the FDA staff and Commission staff about this matter, and transcripts of all investigative testimony provided by FDA employees in this matter. Thus, the Commission has already produced all of the FDA-related materials in this matter to the defendants.[3]

The additional documents that Biopure now seeks from the FDA are not reasonably likely to lead to the discovery of admissible information. The three subpoenas that Biopure seeks to enforce contain identical attachments requesting production of 23 categories of documents. (See Exhibits A, B and C to Biopure's Motion.) As described below, this Court should deny Biopure's Motion with respect to each of those requests.

**Request Nos. 1-4 and 12-16 Seek Documents**
**That Biopure Already Possesses or that Are Irrelevant**

Biopure's Request Nos. 1-4 and 12-16 seek enormously broad categories of documents, which, if at all relevant to the pending action, are already in the possession of Biopure. Biopure seeks:

> 1. All documents concerning Biopure Corporation ("Biopure")'s biologics license application ("BLA") for Hemoglobin Glutamer-250 (bovine), also known as Hemopure (hereinafter, "Hemopure"), including [seven enumerated categories].

---

[3]     In its Motion, Biopure suggestively states that "None of the Defendants or their respective counsel were notified of the testimony [of FDA employees] at the time." Motion at 8-9. Any implication that the Commission staff acted inappropriately in not notifying defendants of the testimony at the time it was taken is absolutely and unequivocally frivolous. As defendants are aware, testimony of these witnesses was taken during a non-public formal investigation prior to the commencement of litigation. At the time, none of the current defendants had yet been sued. During a Commission investigation, no witness has a right to be notified that the Commission staff is taking investigative testimony of another witness. The Commission's Rules of Practice provide that all witnesses shall be sequestered (other than their own counsel) and that no other witness or other counsel is permitted to be present during the examination of any other witness. See 17 C.F.R. § 203.7.

2. All documents concerning Biopure's investigational new drug application ("IND") 10962, including [seven enumerated categories].

3. All documents concerning each of the defendants including [ten enumerated categories].

4. All documents concerning Hemopure, including [ten enumerated categories].

12. All documents issued, distributed, published, circulated or otherwise made available to the public by the FDA concerning Biopure's BLA for Hemopure.

13. All documents concerning Biopure's clinical studies regarding Hemopure, including [four enumerated categories].

14. All documents concerning the FDA's consideration of Biopure's clinical studies regarding Hemopure, including communications concerning that issue with the FDA.

15. All documents concerning communications with the FDA about proposed revisions to Biopure's clinical studies regarding Hemopure.

16. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to any research projects, studies, or cost analysis conducted, initiated or funded by the United States (including the FDA), concerning Hemopure.

There are likely millions of pages of documents responsive to Request Nos. 1-4 and 12-16, and Biopure already has the vast majority of them. Biopure already has in its possession all submissions that Biopure made to the FDA in connection with Hemopure, the BLA and IND applications, all correspondence between Biopure and the FDA, and all responses from the FDA to Biopure about its submissions. To the extent there are additional documents responsive to Request Nos. 1-4 and 12-16 that Biopure does not already possess, such documents would reflect the internal deliberations of the FDA, which are not at all relevant to the pending action.

Biopure does not contend in its Motion -- nor is the Commission aware of any basis for it to contend -- that defendants were aware of the FDA's internal deliberations or that its awareness

6

of such internal deliberations was a factor in its decisions to disclose or fail to disclose any facts

to investors. Nor does the Commission attempt impute to defendants any knowledge of the

FDA's internal deliberation other than what the FDA employees actually told defendants orally

or in writing.

Accordingly, this Court should deny Biopure's request to compel responses to Request

Nos. 1-4 and 12-16.

**Request Nos. 5, 6 and 20 Seek Documents**
**That The Commission Has Already Produced or That Are Irrelevant**

Biopure's Request Nos. 5, 6 and 20 seek documents that the Commission has already

produced or that are not relevant to this action. Biopure seeks:

> 5. All documents concerning, constituting or reflecting any communications between the
> FDA and the SEC about Biopure, the Biopure Defendants, Hemopure, Biopure's public
> disclosures or Biopure's communications with the FDA.

> 6. All documents concerning this lawsuit and any other lawsuit involving the Biopure
> Defendants or Hemopure, whether concluded, pending, or contemplated.

> 20. All documents relating to the joint FDA/SEC effort to increase the public's
> protection from false and misleading statements by enhancing inter-agency cooperation.

The Commission has <u>already produced</u> to defendants communications between the

Commission staff and the FDA staff in this investigation. Specifically, the Commission has

produced: all documents provided to the Commission staff by the FDA during the investigation

that led to this action, all communications between FDA staff and Commission staff during the

investigation, and transcripts of all investigative testimony provided by FDA employees. To the

extent there are additional documents relating to this matter that are responsive to Request Nos.

5, 6 and 20, such documents would seem to be limited to internal deliberations and

communications within the FDA.  Biopure has not made any showing as to why internal FDA

documents would be relevant to any fact in the Underlying Enforcement Action.  Indeed, such

documents (if any exists) have not been seen by defendants <u>or</u> the Commission and thus, did not

and could not have affected Biopure's disclosures to investors.

       Accordingly, this Court should deny Biopure's request to compel responses to

Request Nos. 5, 6 and 20.

### Request Nos. 7, 8 and 9 Seek Documents That Are Irrelevant Because They Relate to Non-Parties' Communications with the FDA About Unrelated Matters

       Biopure's Request Nos. 7, 8 and 9 seek documents that are not relevant because they

relate to the FDA's communications with non-parties about matters unrelated to anything in this

action.  Biopure seeks:

       7.  All complete response letters, as described in the Standard Operating Procedures in
       effect on July 30, 2003, sent out by FDA at any time.

       8.  All complete response letters, as described in the Standard Operating Procedures
       and/or rules or regulations as amended after July 30, 2003, sent out by FDA at any time.

       9.  All documents concerning, constituting or reflecting any communications within FDA
       about changing wording of complete response letters during the period July 1, 2002
       through the present.

       Letters that the FDA sent to companies other than Biopure have no relevance to this case.

Simply put, because defendants did not receive such letters, they could not have been aware of

them at the time they were making disclosures about Biopure's applications with the FDA.

Moreover, letters that defendants have never seen could not have formed the basis for any

decision to disclose or fail to disclose any fact.  Contrary to Biopure's assertion in its Motion

(Mot. at 11), the Commission does not base any of its claims in the Underlying Enforcement

Action on the contents of complete response letters sent to other companies about unrelated

products.

Accordingly, this Court should deny Biopure's request to compel responses to Request

Nos. 7, 8 and 9.

**Request Nos. 10, 11 and 17-19 Seek Documents**
**That Are Irrelevant Because They Concern FDA's Internal**
<u>**Processes, Communications and Deliberations Unrelated to Biopure's Product**</u>

Biopure's Request Nos. 10, 11 and 17-19 seek irrelevant documents relating to FDA's

internal processes, communications and deliberations, none of which is relevant to the

defendants' knowledge or disclosure during the relevant time period. Biopure seeks:

10. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #2.

11. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams, files, communications and e-mails, concerning any revisions (whether contemplated, considered, proposed or implemented) to CBER's Standard Operating Procedures and Policies 8405, Version #3.

17. All standard record retention schedules maintained pursuant to which existing FDA records are subject to routine destruction as described in 20 C.F.R. 20.23(c).

18. All documents, including any correspondence, reports, presentations, memoranda, notes, drafts, diagrams and e-mails, relating to the dissolution of, or potential dissolution of CBER.

19. Any proposed or final guidelines, protocols, FAQ's or other advisories for the information or assistance of those making public disclosures of the status of a drug biologics application approval or denial by the FDA.

None of the documents sought by Biopure in Request Nos. 10, 11 or 17-19 relate in any

way to the facts of this case. With respect to Request Nos. 10 and 11, only the actual Standard

Operating Procedures and Policies, which Biopure presumably has (or has access to), are even

arguably relevant. Biopure did not have any contemporaneous access to FDA's internal

communications and deliberations about those procedures and policies. Biopure does not assert

that it relied in any way on internal FDA communications and deliberations nor does the

Commission based any of its claims on internal FDA communications and deliberations relating

to its policies or procedures. Thus, these documents are not relevant to this action. Request

Nos. 17, 18 and 19 represent mere fishing expeditions, as there are no issues in this case relating

to FDA's retention of documents, to the potential dissolution of CBER or (if any exists) to FDA

guidelines for making public disclosures.

Accordingly, this Court should deny Biopure's request to compel responses to Request

Nos. 10, 11, 17, 18 and 19.

**Request Nos. 21, 22 and 23 Seek Intrusive and Irrelevant**
**Discovery into the Personnel Records of FDA Employees**

Lastly, Biopure's Request Nos. 21, 22 and 23 inappropriately seek personnel records of

three employees of the FDA who were responsible for reviewing Biopure's applications.

Biopure seeks:

21. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1,2005 of Lawrence Landow.

22. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1,2005 of Franklin Stephenson.

23. Personnel file, job description and performance reviews during the period January 1, 2002 through January 1,2005 of Toby Silverman.

There is no basis for Biopure to obtain personnel files, job descriptions or performance

reviews of FDA employees. Personnel files, job descriptions and performance reviews contain

10

highly personal, private and confidential information. Biopure has not asserted -- nor is there any

basis to assert -- that any FDA employee acted inappropriately or that any FDA employee

deviated from his or her job description. Thus, there is no justification in this action in to invade

the privacy of these FDA employees by allowing Biopure to fish through their personnel files.

This is especially so here, where Biopure seeks personnel files of the same FDA employees that,

independent of this litigation, review Biopure's applications to test and market its products. See

5 U.S.C. § 552 (b)(6) (FOIA exemption for personnel files to protect against "a clearly

unwarranted invasion of personal privacy").

Accordingly, this Court should deny Biopure's request to compel responses to Request

Nos. 21, 22 and 23.

## Conclusion

For the foregoing reasons, in addition to any reason set forth by the FDA, the

Commission respectfully requests that this Court deny Biopure's Motion in its entirety.

Dated: December 23, 2005
      Boston, Massachusetts

Respectfully submitted,

  /s/ Ian D. Roffman
Ian D. Roffman (Mass. Bar No. 637564)
R. Daniel O'Connor (Mass Bar No. 634207)
Ellen Bober Moynihan (Mass. Bar No. 567598)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8900, ext. 8987 (Roffman)

11

## Certificate of Service

I, Ian D. Roffman, hereby certify that on December 23, 2005, a true and correct copy of the foregoing Securities and Exchange Commission's Response To Defendant Biopure Corporation's Motion to Compel FDA Compliance with Federal Subpoenas was served:

By overnight delivery to:

Stephen J. Crimmins
John J. Dempsey
BINGHAM MCCUTCHEN, LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036-3406
(202) 778-6150

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Michael Shane
Office of the Chief Counsel
U.S. Food and Drug Administration
5600 Fisher Lane, GCF-1
Rockville, MD 20857

COUNSEL FOR NON-PARTY
FOOD AND DRUG ADMINISTRATION

By first class mail, postage prepaid to:

Robert A. Buhlman
Donald J. Savery
Michael D. Blanchard
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4046

COUNSEL FOR DEFENDANT
THOMAS MOORE

John D. Hughes
Cathy Fleming
Mary Patricia Cormier
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

COUNSEL FOR DEFENDANT
HOWARD RICHMAN

Thomas J. Dougherty
Justin J. Daniels
Scott T. Lashway
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

COUNSEL FOR DEFENDANT
JANE KOBER

Dated: December 23, 2005

/s/ Ian D. Roffman
Ian D. Roffman

12

# EXHIBIT C

DEPARTMENT OF HEALTH & HUMAN SERVICES                                    Food and Drug Administration

                                                                    Center for Biologics Evaluation and
                                                                            Research
                                                                    1401 Rockville Pike
                                                                    Rockville MD 20852-1448

August 8, 2003


Laurie Stegman
Special Counsel to the Director
Division of Enforcement
Securities and Exchange Commission
450 Fifth Street NW
Washington, DC  20549

Re:      Biopure Corporation                 Certified Mail Return Receipt
         11 Hurley Street
         Cambridge, MA  02141

Dear Ms. Stegman:

This letter is in follow-up to a recent phone conversation between you and
Ms. Coleen Klasmeier of the Office of the Chief Counsel of the Food and
Drug Administration (FDA).  It has come to the attention of the FDA that
information in a press release dated 8/1/2003 and posted by Biopure
Corporation on its internet website, http://www.biopure.com, may not be a fair
and accurate disclosure of information to public investors.  The press release
may not accurately reflect the magnitude of concerns expressed by FDA's
Center for Biologics Evaluation and Research (CBER) about deficiencies in
the biologics license application (BLA) for the firm's investigational product
"Hemopure."  We enclose a copy of CBER's July 30, 2003 letter (redacted to
remove trade secret information that, under 21 USC 331(j), we are not
permitted to release outside of the Department of Health and Human
Services) to Biopure Corporation, so that the SEC can determine whether or
not the press release complies with the registrant's statutory requirements for
disclosure to public investors.

For your information, the SEC's letter of February 5, 2003 (Jeffrey P. Riedler,
Assistant Director, Division of Corporation Finance) asked CBER to review
the S-3 registration filed by Biopure Corporation on 1/29/03 and the annual
report on form 10-K for the fiscal year ending 10/31/02, SEC file #333-
102786. We replied (letter of 3/26/2003) "The information in the registration
statement is accurate as it pertains to Hemopure [hemoglogin glutamer-250

L. Stegman, p.2

(bovine), or HBOC-201] for human use." The records enclosed with this letter to you provide facts or additional information to supplement our previous communication concerning Biopure Corporation.

Please note that under the SEC's existing agreement with FDA, the information provided is not publicly disclosable without written permission from FDA. If you have any questions, please call me at 301-827-6220.

Sincerely,

Elaine Knowles Cole
Director, Division of Inspections
 and Surveillance (HFM-650)
Office of Compliance and Biologics
Quality

Enclosure: as stated

Cc: C. Klasmeier GCF-1

SEC LIT 000326

L. Stegman, p.3

Bcc:
Reference- STN 125066/0
HFM-1 Goodman
HFM-4 Elengold
HFM-600 Masiello
HFM-600 Cohen
HFM-650 Cole
HFM-650 J.Davis
HFM-664 R.Wesley
HFM-664 P. Holobaugh
HFM-340 Golding
HFM- 300 J. Epstein
HFM-44 J.Binkley
HFC-200 D.Elder
HFC-230 S.Sheehan
HF-1 S.Gottlieb
Redactions reviewed by OCTMA (Binkley/Brockner Ryan) 8/8/2003
EKCole:ekc:8/8/2003

SEC LIT 000327

# EXHIBIT D



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**BOSTON DISTRICT OFFICE**
6TH FLOOR
73 TREMONT STREET
BOSTON, MASSACHUSETTS 02108

IN REPLYING PLEASE QUOTE

TELEPHONE: (617) 424-5900
FACSIMILE: (617) 424-5940

ELLEN E. BOBER
(617) 424-5900 ext. 608

October 22, 2003

**VIA FACSIMILE (301) 827-6748**
**AND FIRST CLASS MAIL**

Elaine Knowles Cole
Director, Division of Inspections
  and Surveillance (HFM-650)
Office of Compliance and Biologics Quality
Center for Biologics Evaluation and Research
Food and Drug Administration
1401 Rockville Pike
Rockville, MD 20852-1448

Re:     In re: Biopure Corporation (MB-01987)

Dear Ms. Cole:

As we discussed earlier this afternoon, the staff of the U.S. Securities and Exchange Commission ("Commission") requests that your office send us copies of certain materials in connection with our investigation of the above-referenced matter. Specifically, the staff requests that you voluntarily produce the following documents relating to the Food and Drug Administration's ("FDA's") communications with Biopure Corporation ("Biopure") regarding Biopure's applications for approval of its hemoglobin-based oxygen therapeutics:

1)    The FDA's April 25, 2003 letter to Biopure notifying the company that, due to safety concerns, the FDA was placing on clinical hold Biopure's HEM-0125 protocol submitted to its Investigative New Drug Application ("IND" 10962) for the use of its hemoglobin product, HBOC-201, for a trauma application;

2)    The FDA's July 30, 2003 letter to Biopure regarding IND 10962;

SEC LIT 000402

Ms. Elaine Cole
October 22, 2003
Page 2

3)  Other correspondence, notes or other memorializations of all conversations between FDA officials and employees, officers or agents of Biopure regarding IND 10962 for the period April 1, 2003 to the present; and

4)  Notes of all conversations between FDA officials and employees, officers or agents of Biopure regarding Biopure's biologics license application ("BLA") for the company's investigational "Hemopure" product for the period April 1, 2003 through the present.

Please forward the information to my attention at your earliest convenience at the following address:

U.S. Securities and Exchange Commission
Boston District Office
73 Tremont Street, 6th Floor
Boston, MA  02108
fax: (617) 424-5940

This inquiry is confidential and should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be construed as an adverse reflection upon any person, entity or security. For your information, I have enclosed a copy of the Commission's Supplemental Information for Persons Requested to Supply Information Voluntarily ("Form 1662"). Please also note that the staff is not requesting production of any materials not permitted by the Commission's existing agreement with the FDA.

Thank you very much for your assistance with this request and for the extensive time and effort you and Dr. Silverman have offered to this office in connection with our investigation. If you have any questions, please contact me at (617) 424-5900, extension 608, or Celia D. Moore, Deputy Assistant District Administrator, at extension 650.

Very truly yours,

*Ellen E. Bober*

Ellen E. Bober
Senior Enforcement Counsel

Enclosure

SEC LIT 000403