UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
:
SECURITIES AND EXCHANGE COMMISSION,  :
:
Plaintiff,  :        Civ. A. No. 05-11853-PBS
v.  :
:
BIOPURE CORPORATION,  :
THOMAS MOORE, HOWARD RICHMAN,  :
and JANE KOBER  :
:
Defendants.  :
_____:

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE
FDA EVIDENCE FROM THE TRIAL OF THIS MATTER**

The Defendants' Motion to Preclude FDA Evidence from the Trial of this Matter

("Motion") should be denied for at least four reasons.

First and foremost, defendants' Motion is based on a false premise: that the Securities and

Exchange Commission ("Commission") is trying to block defendants' access to the FDA.  That

accusation is not true.  The Commission has not taken any step to block access to the FDA.

Moreover, it has produced to defendants all documents that it received from the FDA during its

investigation and has identified all relevant FDA witnesses.

Second, the defendants' Motion is moot -- or at least substantially impacted -- because of

the recent decision by the federal district court in the District of Columbia.  Pending before that

court were defendant Biopure's motion to compel the FDA to comply with three subpoenas

directed at the FDA and the FDA's motion to quash those subpoenas.  The Commission filed two

1

responsive briefs arguing that Biopure's requests for documents were overly broad.[1]  The District

of Columbia court, however, quashed Biopure's subpoenas for reasons briefed only by Biopure

and the FDA and did not expressly reach the Commission's scope argument.  See Memorandum

Opinion, January 20, 2005 ("Mem. Op.") (Exhibit B hereto).  In addition, the court also ordered

the parties to meet and confer to resolve the dispute relating to FDA participation in discovery.

See Order, January 20, 2005 (Exhibit C hereto).

      Third, as the court in the District of Columbia noted, defendants have not sought

information from the FDA through the processes set forth in the FDA's Touhy regulations.[2]

Were they to do so, the Commission would support reasonable requests.

      Fourth, none of the cases cited by defendants support their position that FDA evidence

should be precluded from trial.

      In short, the Commission is not playing "a game of stonewall or blindman's bluff" as

defendants accuse.  Defs. Mem. at 9.  Instead, the Commission simply took the position that

defendants' document requests to the FDA were too broad given the circumstances of this case.[3]

---

[1]      Defendants attached one of the Commission's two briefs as Exhibit B to Defendants'
Memorandum ("Defs. Mem.").  The Commission's other brief is attached as Exhibit A hereto.

[2]      See Touhy v. Regan, 340 U.S. 463, 467 (1951) (holding that federal agencies, in the
interest of internal administration, may promulgate regulations governing an agency's procedures
for producing documents and testimony under certain circumstances).

[3]      Although the issue is moot now, the subpoenas in question would have required the FDA
to unnecessarily expend enormous amounts of time and resources to produce documents that are
far afield from any issue in this case.  For example, Biopure was seeking every document, with
no time limitation, about its products.  Not only does Biopure already have most of those
documents (because it submitted them to the FDA), but because Biopure has been developing its
products for approximately 20 years, the vast majority of responsive documents would have had
nothing at all to do with this action.

A dispute about the appropriate breadth of a subpoena, which was pending before a federal court, is not grounds for the extraordinary relief sought here.

Accordingly, the Commission respectfully requests that defendants' motion be denied in its entirety.

## Background

*The Commission's Complaint*

This is a civil enforcement action charging that from April to December 2003, defendants misled investors about the status of their efforts to gain FDA approval for a blood substitute product called Hemopure.  Specifically, in April 2003, the FDA imposed a clinical hold because of safety concerns about Hemopure.  The clinical hold prohibited Biopure from conducting requested clinical trials of Hemopure in trauma settings such as emergency rooms.  During the next eight months, defendants made public statements about Biopure's plans to obtain approval of Hemopure for trauma uses while concealing the existence of the clinical hold and of Biopure's repeated unsuccessful attempts to lift the clinical hold.

In addition, on July 30, 2003, the FDA informed defendants that it had not approved Biopure's biologics license application ("BLA"), which sought permission to market Hemopure for use in orthopedic surgery.  In its letter to Biopure, the FDA conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioned the safety of Hemopure.  Defendants, however, issued public statements beginning on August 1, 2003 describing the FDA's communication as good news and failing to convey the magnitude of the FDA's concerns.

As the true status of Biopure's efforts to obtain FDA approval gradually became public,

through a series of incomplete and misleading disclosures between late October and the end of

December 2003 (including in a press release issued after the close of the markets on Christmas

Eve), the company's stock price plummeted almost 66% from its August 1 price.

*Status of Discovery to Date*

The Commission has produced its investigative file to defendants.  Included in the

investigative file are all documents provided by the FDA to the Commission staff during its

investigation, all of the Commission's letters and requests for information to the FDA during the

investigation, and all transcripts of investigative testimony of the FDA employees.  The

Commission also identified all relevant FDA witnesses in its initial disclosures.  Thus,

defendants have the same FDA documents that the Commission has.

In addition, because defendants had expressed their intention to seek additional discovery

from the FDA, on November 2, 2005, counsel for the Commission informed counsel for Biopure

by voicemail about the existence of Touhy regulations governing the circumstances under which

FDA employees are permitted to give testimony.  The voicemail message was memorialized in a

letter dated November 4, 2005:

> [A]s I mentioned in the voicemail message I left for you on Wednesday
> [November 2], . . . FDA regulations, specifically 21 C.F.R. § 20.1, require
> a certain process before FDA employees are permitted to provide
> deposition testimony.  I bring this to your attention so that you can begin
> whatever process is required under the regulations at your earliest
> convenience.

(Exhibit D hereto.)

Defendants, however, chose not to seek testimony from the FDA in compliance with the

FDA's Touhy regulation, 21 C.F.R. §20.1.  Instead, defendant Biopure served FDA with three

Rule 45 subpoenas seeking depositions and documents.[4]

On November 15, 2005, the FDA objected to Biopure's subpoenas.[5]  (Exhibit E hereto.)
Biopure then filed a motion in the district of the District of Columbia seeking to compel the FDA
to comply with its subpoenas.  In response, the FDA moved to quash the subpoenas.

In briefing before the District of Columbia court, the Commission took that position that
Biopure's subpoenas -- which sought production of 23 extremely broad categories of documents
-- were overly broad because they sought documents that Biopure possessed prior to institution of
this action, that the Commission had already produced to defendants in this action or that were
irrelevant to this action.  (See Ex. B to Defs. Mem.; Ex A. hereto.)  The Commission made clear
that it did not object either (1) to defendants taking depositions of FDA witnesses pursuant to
FDA's Touhy regulations or (2) to the production of any documents concerning communications
between Biopure and the FDA from the relevant period, if there were any such documents that
have not already been produced.  (See Ex. A.)

*The Decision of the District of Columbia Court*

On January 20, 2006, Magistrate Judge Kay issued a Memorandum Opinion and Order.
(Exs. B and C.)  The court denied Biopure's motion to compel, granted FDA's motion to quash
and ordered that:

---

[4]    Recently, Biopure provided notice to the Commission of two additional subpoenas
directed at FDA employees.  These subpoenas, which appear to seek the identical documents as
the prior three, were served after the parties briefed the motions in the District of Columbia, but
before that court's decision.

[5]    The Commission was not copied on the FDA's letter to Biopure and did not participate in
any discussions between Biopure and the FDA about the subpoenas.  The Commission did not
even receive a copy of the FDA's objection letter until Biopure attached it as an exhibit to its
motion to compel.

> pursuant to the FDA's suggestion that the Court enter an order directing the parties to confer for the purpose of narrowing the scope of Biopure's requests and allowing the FDA a reasonable amount of time to respond, and directing the Biopure shall assume the costs associated with the requests, the parties are directed to meet and confer at a mutually convenient place and time, to make a good faith effort to effect a resolution of this dispute.

(Ex C.)

The court held that "Biopure's subpoenas are not enforceable against the FDA" because the FDA is not subject to the subpoena power of Rule 45. See Mem. Op. at 3-8 (Ex. B). The court further held that Biopure did not comply with the FDA's Touhy regulations in its effort to obtain discovery. See Mem. Op. at 9-10 (Ex. B). In reaching its decision, the court did not need to address the Commission's argument about the overly broad scope of the subpoenas.

*Defendants Can Obtain Discovery From the FDA*
*If They Comply With Its Touhy Regulations*

The court's order does not prevent the defendants from obtaining discovery from the FDA. As the court noted, defendants can submit a request for FDA testimony to the Commissioner of Food and Drugs pursuant to 21 C.F.R. § 20.1. Mem. Op. at 9 (Ex. B). Additionally, the court noted that Biopure can obtain document discovery from the FDA if it converted its subpoenas to a request for documents pursuant to FOIA. Id. The court further noted that if Biopure converted its subpoenas to FOIA requests and narrowed the requests, the FDA would expedite production of documents to Biopure. Id.

As of the filing of this opposition and to the best of the Commission's knowledge, defendants have not sought testimony or documents from the FDA pursuant to the FDA's Touhy regulations.

6

## Argument

### I.     There Is No Basis for an Order Precluding FDA Evidence

Defendants' request that this Court preclude all FDA evidence against them at trial should be denied because it has no basis in law or fact.  As purported bases for its request, defendants variously argue that the Commission has committed "discovery abuses" (Defs. Mem. at 11), that the Commission has "affirmatively with[held] discovery" (id. at 12), that the Commission has "fail[ed] to obey a scheduling or pre-trial order (id. at 12-13), that the Commission "fail[ed] to comply with discovery obligations or . . . act[ed] to prevent the timely and fair completion of discovery" (id. at 13), and that the Commission has violated defendants' due process rights (id. at 15).

These are serious accusations, but not one -- none -- has any basis.

### A.     The Commission Has Not Violated Any Order, Withheld Any Document or Committed Any Abuse

The purported "abuses" that defendants complain about amount to one thing:  that the Commission filed two briefs arguing that Biopure's FDA subpoenas were too broad.  However, the court in the District of Columbia did not even address the merits of Commission's argument in ruling on the motions before it.

The defendants do not identify any Order that the Commission purportedly violated.  The Commission has violated none.

The defendants do not identify any document that the Commission purportedly withheld. The Commission has produced every document that it received from the FDA and has identified all relevant FDA witnesses.

The defendants do not identify any discovery obligation that the Commission purportedly failed to comply with. The Commission has not failed to comply with any.

The defendants do not identify any act that prevented the timely and fair completion of discovery. The Commission has not prevented any discovery. To the contrary, Commission counsel brought the FDA's <u>Touhy</u> regulation to the attention of defense counsel at the beginning of discovery. If defendants had complied with those regulations in the first place, the time-consuming motion practice over Biopure's subpoenas would have been avoided entirely. Moreover, as the court in the District of Columbia noted, if defendants were to narrow their document requests and serve them as FOIA requests, the FDA could respond in an expedited fashion. Mem. Op. at 9 (Ex B).

For these reasons, defendants motion should be denied.

**B.      The Defendants' Motion Is Moot**

The defendants Motion should also be denied because it is now moot. The court in the District of Columbia made clear that defendants have two potential avenues for obtaining discovery: they can submit a request for testimony pursuant to 21 C.F.R. § 20.1, and they can file a FOIA request. Mem. Op. at 9-10 (Ex. B.) The court also ordered the parties to meet and confer to attempt to resolve the dispute over FDA discovery. <u>See</u> Order (Ex. C). Until defendants comply with the District of Columbia court's order, there is no basis to even consider an order precluding evidence at trial.

 Moreover, defendants' Motion is based on the Commission's arguments before the District of Columbia court. That court did not consider the Commission's arguments in making its ruling. <u>See</u> Mem. Op. (Ex. B). Accordingly, even if the Commission's briefs could have

formed the basis for a preclusion order -- which they could not have -- the District of Columbia court's decision has rendered that argument moot.

### C.    The Cases Cited By Defendants Do Not Support Its Position

The cases relied on by defendants do not support their position.  Defendants primarily rely on four cases in support of their Motion.  Defs. Mem. at 13-14.  None is applicable here.

In <u>Third Wave Tech</u>, a preclusion order was warranted when, after defendant refused to answer deposition questions based on an assertion of the attorney-client privilege, defendant then attempted to introduce evidence about the same specific topic at trial.  <u>Third Wave Tech, Inc. v. Stratagene Corp.</u>, No. 04 C 0680 C, 2005 WL 3529659, *5 (W.D. Wisc. Dec. 16, 2005).  Here, the Commission has not asserted any privilege, has not instructed any witness to refuse to answer any question and has not prevented discovery in any way.

In <u>Lomascola</u>, the court did not even preclude evidence from trial.  <u>Lomascola v. Otto Oldsmobile-Cadillac, Inc.</u>, 253 F. Supp.2d 354, 361 (N.D.N.Y. 2003).  Rather, the court held that because the plaintiff withheld documents from production based on a claim that they would only be used for impeachment, the court allowed those documents to only be used for impeachment. <u>Id.</u>  Here, there is no issue about the use of impeachment materials and, in any event, the Commission is not withholding any FDA documents.

<u>Ware Communications</u> is an example of egregious conduct in which the court precluded the plaintiff from introducing evidence of damages after the plaintiff had failed to respond to defendants' interrogatories, failed to respond to a motion to compel, failed to comply in a timely manner with an order compelling plaintiff to answer interrogatories, and when plaintiff eventually responded, it did so incompletely.  <u>Ware Communications, Inc. v. Rodale Press, Inc.</u>,

9

No. Civ. A. 95-5860, 2002 WL 89604 (E.D. Pa. 2002). Moreover, plaintiff in that case had voluntarily entered into a stipulation in which it agreed that if it failed "to provide full and complete responses, the parties agree that Plaintiff shall be prohibited from presenting any evidence in support of its claim at the time of trial . . . ." Id. at *1. Here, the Commission has not committed even one of the many acts and omissions of the plaintiff in Ware Communications. It has not failed to respond to any discovery requests, has not failed to respond to any motions, has not failed to comply with any orders and has not entered into any stipulations in which it agreed to be barred from introducing evidence. Thus, the preclusion order in Ware Communications, which the court recognized was an "extreme sanction," has no analogy here. Id. at *2.

Finally, in Burnett, the court ruled on a motion to exclude testimony about two conversations where the plaintiff had tape-recorded the conversations, but failed to produce the recording of the first conversation for more than six months and erased the recording of the second conversation. Burnett v. Venturi, 903 F. Supp. 304, 308-310 (N.D.N.Y. 1995). The court denied defendants' motion to preclude evidence of the first conversation even though plaintiff had failed to produce the tape for more than six months. Id. at 309. The court precluded evidence only about the second conversation, which had been erased by the plaintiff. Id. at 309-301. Here, the Commission has not delayed production of any documents (which was not even grounds for a preclusion order in Burnett), and there is no allegation that any evidence has been tampered with, destroyed, or erased.

Defendants have not cited any cases in which a court has precluded evidence from trial because a party raised concerns about the scope of a subpoena.

For these reasons as well, defendants motion should be denied in its entirety.

### D.     The Defendants' Due Process Rights Have Not Been Violated

Perhaps most troubling is defendants' accusation that the Commission has violated their due process rights.  There is no basis for this accusation.

Tellingly, defendants do not specify what, exactly, it is that they believe the Commission has done to violate their due process rights.  For example, defendants state in broad and denunciatory terms that the Commission is "attempting to restrict Defendants' access to potentially exculpatory information."  Defs. Mem. at 15.  But they do not identify any specific act that the Commission purportedly took to do so.  Moreover, it was the Commission that first informed defense counsel about the Touhy regulations, so that defendants could take testimony from the FDA witness.  (Ex. D.)  It was defendants' strategic choice not to comply with those regulations, not the Commission's.

The due process cases cited by defendants further do not support its claims.  Defs. Mem. at 15.  All three cases cited by defendants are criminal cases, and in each, the conviction was affirmed.  See Epperly v. Booker, 997 F.2d 1, 10-11 (4th Cir. 1993); United States v. Walton, 602 F.2d 1176, 1179-80 (4th Cir 1979); Davis v. Lehane, 89 F. Supp.2d 142, 154-157 (D. Mass. 2000).  In Epperly, the court held that a murder defendant's due process rights were not violated even though the prosecutor had instructed three police officers not to speak with defense counsel.  Epperly, 997 F.2d at 10-11.  Here, the Commission has not instructed any witness not to speak with anyone, and even if it had, Epperly does not support a claim of a due process violation.  In Walton, the defendant was not prejudiced when an Assistant United States Attorney denied defendant's access to a narcotics conspirator who had been placed in protective custody.  Walton,

602 F.2d at 1179-80.  Here, there are no issues of protective custody; and the defendants do not

need the Commission's permission to question FDA witnesses, whom the Commission does not

control.  Finally, in <u>Davis</u>, the court held that defendants were not prejudiced when a witness

refused to speak with defense counsel after prosecutors had pressured the witness not to speak.

<u>Davis</u>, 89 F. Supp.2d at 154-157.  Here, the Commission has not pressured the FDA witnesses to

refuse to speak with defendants.  To the contrary, the Commission has told defense counsel <u>how</u>

they could speak with FDA witnesses.

For these reasons, there is no basis to find that defendants' due process rights have been

violated in any way.

## II.    Defendants' Conspiracy Theory That the Commission Has Influenced the FDA's Substantive Evaluation of Biopure's <u>Products Is Fiction and Does Not Support a Preclusion Order</u>

Lastly, as support for their purported need to obtain additional discovery from the FDA,

defendants offer the theory that the Commission has influenced the FDA substantive review of

Biopure's applications for FDA approval.  Defs. Mem. at 3.  This theory is pure fiction, and in

any event, this is not the appropriate forum in which to raise it.

Defendants do not offer any facts to support this claim that the Commission -- an

independent agency that administers and enforces federal securities laws -- has influenced the

FDA's decision-making on a matter of public health.  Moreover, if Biopure disagrees with

FDA's substantive determinations, the appropriate remedy would be to seek review of FDA's

substantive decisions -- not to use this action as a pretense for obtaining discovery relating to,

apparently, a separate disagreement with the FDA.  The FDA has published guidance, available

on its website, about the process for appealing substantive determinations.  The Guidance states,

among other things, that:

> FDA regulations (21 CFR 10.75) provide a mechanism for any interested person to obtain formal review of any Agency decision by raising the matter with the supervisor of the employee who made the decision. If the issue is not resolved at the primary supervisory level, the interested person may request that the matter be reviewed at the next higher supervisory level. This process may continue through the Agency's chain of command, through the Centers to the Commissioner of Food and Drugs. Regulations for dispute resolution during the IND process (21 CFR 312.48) and the NDA/ANDA process (21 CFR 314.103) specifically establish similar procedures for the resolution of scientific and procedural matters at the Division level and subsequent formal review of decisions through Center management. CDER and CBER regulations also provide that a sponsor may request that the Agency seek the advice of outside experts, including an appropriate advisory committee, in resolving the matter (312.48(c)(3) and 314.103(c)(3)).

See Guidance for Industry: Formal Dispute Resolution: Appeals Above the Division Level, U.S. Department of Health and Human Services, Food and Drug Administration (Feb. 2000).[6]  The Commission does not know if Biopure has sought review of any FDA determination pursuant to the appropriate administrative avenues.  Whether it has or not, this securities case is not the appropriate forum in which to do so.

For this reason also, defendants' motion should be denied.

---

[6]    The guidance is available on the Internet at:  *http://www.fda.gov/cber/guidelines.htm*.

## Conclusion

For the foregoing reasons, the Commission respectfully requests that this Court deny

defendants' motion to preclude FDA evidence from trial in its entirety.

Dated: January 23, 2006                          Respectfully submitted,
      Boston, Massachusetts

                                      /s/ Ian D. Roffman
                                      Ian D. Roffman (BBO# 637564)
                                      R. Daniel O'Connor (BBO# 634207)
                                      Ellen Bober Moynihan (BBO#  567598)
                                      ATTORNEYS FOR PLAINTIFF
                                      SECURITIES AND EXCHANGE COMMISSION
                                      73 Tremont Street, 6th Floor
                                      Boston, Massachusetts 02108
                                      (617) 573-8900, ext. 8987 (Roffman)

                                    *Electronically Served*

14

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:

                                    :

SECURITIES AND EXCHANGE COMMISSION, :

                                    :

                Plaintiff,          :      No. 1:05-mc-00506-RWR-AK

              v.                 :

                                    :      (Related Case:

BIOPURE CORPORATION,             :      Civ. A No. 05-11853-PBS, pending

THOMAS MOORE, HOWARD RICHMAN,   :      in the United States District Court

and JANE KOBER                 :      for the District of Massachusetts)

                                    :

              Defendants.     :

## SURREPLY BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

The Securities and Exchange Commission ("Commission") respectfully submits this surreply in response to statements in Biopure's Reply Memorandum.

First, contrary to Biopure's hyperbolic statements that "the SEC is trying to block Biopure's access to the key witness" and that the Commission is suggesting that its "own self-serving discovery of the key witness should be the only discovery sued at trial" (Reply at 16), the Commission stated in its Opposition that it does <u>not</u> object to defendants deposing relevant witnesses who are employees of the FDA.  SEC Opp. at 1, n1.

Second, the Commission's Opposition relates only to the <u>scope</u> of the document production demands that Biopure has made to the FDA, which under the circumstance of this case, are overly broad.  This Court has previously held that discovery can be limited "to 'that which is proper and warranted in the circumstances of the case.'"  <u>Wyoming v. U.S. Department of Agriculture</u>, 208 F.R.D. 449, 452 (D.D.C. 2002) (quoting <u>Katz v. Batavia Marine & Sporting Supplies, Inc.</u>, 984 F.2d 422, 424 (Fed. Cir. 1993)) (denying motion to compel production of

documents by a non-party because, among other things, the documents were not relevant to the action). This Court should further balance Biopure's purported need for discovery against the burden imposed upon non-parties. Id. "Burden" in these circumstances "is identified by looking at factors such as relevance, the need for the documents, the breadth of the documents request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." Id. at 452-453.

Here, this Court would not have a basis for making a determination about the burden imposed by Biopure's document requests without being informed about the facts of the case and the document discovery that has occurred to date. Although it is true that this burden would fall on the FDA, the Commission, as the plaintiff, is in a better position than the FDA, a non-party, to describe the facts of this case and the document discovery has occurred between the parties.

Third, Biopure's substantive claim that it is not on a level playing field with the Commission has no basis. Biopure has the same documents from the FDA relating to this case that the Commission has. Furthermore, Biopure's suggestion that the Commission acted nefariously in requesting only limited categories of documents from the FDA is belied by the requests themselves, which Biopure quotes: they seek all communications between Biopure and the FDA from April 2003 to the present. Reply at 19. There are no claims in this matter for misconduct prior to April 2003. If it turns out that the Commission and Biopure do not already have documents concerning communications between the FDA and Biopure during the relevant period, the Commission does not object on relevancy grounds to the further production of those documents.

Fourth, contrary to Biopure's claim, the Commission has a real interest in the Motion

before this Court.  Reply at 16.  Protracted discovery about subject matters unrelated to this dispute would be time-consuming, unnecessary, and inefficient.  This is especially true in this case because the district court in Massachusetts -- upon Biopure's request for an expedited schedule -- has set this matter for trial in early May 2006.  Although Biopure, which continues to seek FDA approval for its product, may have reasons for seeking access to FDA's internal deliberations and to the personnel files of FDA employees, those documents are not relevant to this dispute.

Dated: January 10, 2006
      Boston, Massachusetts

Respectfully submitted,

Ian D. Roffman (Mass. Bar No. 637564)
R. Daniel O'Connor (Mass Bar No. 634207)
Ellen Bober Moynihan (Mass. Bar No. 567598)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8900, ext. 8987 (Roffman)

3

## **Certificate of Service**

I, Ian D. Roffman, hereby certify that on January 10, 2006, a true and correct copy of the foregoing Surreply by Plaintiff Securities and Exchange Commission was served:

By overnight delivery to:

Stephen J. Crimmins
John J. Dempsey
BINGHAM MCCUTCHEN, LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036-3406
(202) 778-6150

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Michael Shane
Office of the Chief Counsel
U.S. Food and Drug Administration
5600 Fisher Lane, GCF-1
Rockville, MD 20857

Claire Whitaker
Assistant United States Attorney
U.S. Attorney's Office
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20520

COUNSEL FOR NON-PARTY
FOOD AND DRUG ADMINISTRATION

By facsimile and first class mail, postage prepaid to:

Robert A. Buhlman
Donald J. Savery
Michael D. Blanchard
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

COUNSEL FOR DEFENDANT
BIOPURE CORPORATION

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4046

COUNSEL FOR DEFENDANT
THOMAS MOORE

John D. Hughes
Cathy Fleming
Mary Patricia Cormier
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

COUNSEL FOR DEFENDANT
HOWARD RICHMAN

Dated: January 10, 2006

Thomas J. Dougherty
Justin J. Daniels
Scott T. Lashway
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

COUNSEL FOR DEFENDANT
JANE KOBER

Ian D. Roffman

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
                                              )
SECURITIES AND EXCHANGE                       )
COMMISSION,                                    )
                 Plaintiff,                    )
                                              )          Miscellaneous 05-00506 (RWR/AK)
        v.                                    )
                                              )
BIOPURE CORPORATION, *et al.*,                )
                 Defendants.                   )
_____)      )

## MEMORANDUM OPINION

        Pending before the Court is Defendant Biopure Corporation's Motion to Compel FDA

Compliance with Federal Subpoenas ("Motion to Compel") [1]; Plaintiff Securities and

Exchange Commission's ("SEC") Response thereto ("Response")[4]; Non-Party Respondent

United States Food and Drug Administration's (hereinafter "Respondent" or "FDA")

[consolidated] Motion to Quash Subpoenas Duces Tecum and Opposition to Motion to Compel

("Motion to Quash") [5/6]; Defendant Biopure Corporation's Reply Memorandum of Law in

Further Support of the Motion to Compel and in Opposition to the Motion to Quash

("Opposition") [7/8]; the SEC's Surreply [no docket number assigned]; and the Reply by the

Food and Drug Administration ("Reply") [11].[1]  Defendant Biopure Corporation ("Defendant" or

_____

[1]Biopure Corporation contests the Securities and Exchange Commission's standing to
challenge the Motion to Compel or enforcement of the subpoenas, on grounds that the  SEC "claims
no interest or privilege in the FDA documents at issue . . . ."  Motion to Compel at 16 (emphasis in
original). *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005)("A party
generally lacks standing to challenge a subpoena issued to a third-party absent a claim of privilege,
proprietary interests, or personal interest in the subpoenaed matter.") (citations omitted).  The Court
notes that this dispute centers around the arguments made by Biopure Corporation in its Motion to
Compel and by the FDA in it Motion to Quash.  The arguments in the SEC's Response and its
Surreply are encompassed within the FDA's pleadings and thus, the Court permitted the filing of

"Biopure") moves to compel the FDA to comply with three subpoenas served on the FDA by Biopure. *See* Motion to Compel Exhibits A-C (copies of the three subpoenas). The subpoenaed discovery is sought in connection with Biopure's defense in a federal, civil enforcement action pending in the United States District Court for the District of Massachusetts.[2]  For the reasons set forth herein, Defendant's Motion to Compel is denied and Respondent FDA's Motion to Quash is granted.  An appropriate Order accompanies this Memorandum Opinion.

## I. Background

_____On November 4, 2005, Biopure served upon the FDA and one of its divisions, the Center for Biologics Evaluation and Review ("CBER"), three subpoenas seeking the production of business records and the depositions of the FDA and CBER record-keepers, as well as the deposition of Lawrence Landow, an employee of CBER.   By  Letter dated November 15, 2005, counsel for the FDA objected to the Biopure subpoenas on grounds that the subpoenas:

> (1) could not be used to obtain discovery from FDA because the United States is not a person within the meaning of Rule 45 and cannot be served with a third- party subpoena; (2) did not comply with the FDA's *Touhy* regulations governing requests for FDA testimony; (3) requested documents containing "proprietary, trade secret, . . . and/or agency deliberative process information" that is not subject to release; (4) were unduly burdensome, over[ly] broad, and would require an unreasonable commitment of agency resources; (5) were unduly burdensome in that they requested documents that may be maintained by agencies other than the FDA; (6) were unduly burdensome in that they requested documents that were already in Biopure's possession; (7) were unduly burdensome in that they requested "completed response letters" sent to entities other than Biopure, . . . ; and (8) did not give the FDA a reasonable time to respond.

*See* November 15, 2005 Letter attached as Motion to Compel Exhibit E.  FDA's counsel

---

such documents without specifically addressing the SEC's standing to object.

[2]Biopure indicates that trial in that matter is set to commence on May 8, 2006.  Motion to Compel at 3.

indicated that Plaintiff Securities and Exchange Commission ("SEC") had requested permission

to release to Biopure documents that were obtained from the FDA by the SEC.  The SEC has

now confirmed that "transcripts of [deposition] testimony [by FDA witnesses] and copies of all

documents released to the SEC by FDA have already been provided by the SEC to Biopure and

the other defendants."  Response at 1-2.

On December 9, 2005, Biopure filed the instant Motion to Compel.  On December 23,

2005, the SEC filed its response and non-party FDA responded by filing a consolidated

opposition and motion to quash (together referred to as the "Motion to Quash").  The Motion to

Compel and Motion to Quash have now been fully briefed and are ripe for determination by this

Court.[3]

## II. The FDA Challenges the Subpoenas
## A. Applicability of Fed. R. Civ. P. 45

Respondent FDA's foremost challenge to enforcement of the subpoenas is based on its

argument that Fed. R. Civ. P. 45 does not authorize subpoenas, or subpoena enforcement

proceedings, against non-party federal agencies or employees because under Rule 45, a

subpoena may only be directed to a "person" and that term does not include federal agencies or

its employees.[4]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ( "[T]he term

'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily

---

[3]Biopure requested an expedited oral hearing on the Motion to Compel but the Court
determined that a hearing is unnecessary.

[4]Rule 45 provides, in relevant part, that: "Every subpoena shall . . . command each person
to whom it is directed to attend and give testimony or produce and permit inspection and copying
of designated books, documents or tangible things in the possession, custody or control of that
person, . . . . " Fed. R. Civ. P. 45(a)(1)(C).

construed to exclude [the government].") (internal quotations omitted). *See also Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) ("[W]e must apply . . . our longstanding interpretive presumption that 'person' does not include the sovereign.")

Defendant Biopure challenges the FDA's assertion that Rule 45 does not authorize subpoenas against federal agencies, relying heavily on *Houston Bus. Journal, Inc. v. Office of the Comptroller, Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996), wherein the Court of Appeals for the D.C. Circuit stated that: "A federal-court litigant . . . can seek to obtain the production of documents from a federal agency by means of a federal subpoena." The Court of Appeals further noted that to the extent that a federal agency's regulation "may be to the contrary, it conflicts with Federal Rule of Civil Procedure 45 and exceeds the [agency's] authority under the Housekeeping Statute [also referred to as *Touhy* regulations]."[5] *Id.*

In *Houston Bus. Journal*, a private company sought to compel the Office of the Comptroller to comply with subpoenas issued in connection with a state court libel action in which the company was a defendant. The Comptroller refused to comply with the subpoenas, citing its regulations governing the testimony of agency employees enacted under "*Touhy* regulations," codified at 5 U.S.C. §301. The D.C. Circuit affirmed the District Court's denial of the motion to compel, holding that because the underlying litigation was in state court, the district court did not have jurisdiction to issue the subpoena. It is that context in which the Court of Appeals engaged in its discourse on the [differences between procedures available to

---

[5] *See Touhy v. Ragen*, 340 U.S. 462, 467 (1951) (holding that federal agencies, in the interest of internal administration, may promulgate regulations governing an agency's procedures for producing documents and testimony under certain circumstances.)

state court and] federal court litigants seeking documents from a non-party government agency.

The FDA notes that the *Houston Business Journal* case did "not involve the questions of whether Rule 45's reference to 'person' included the government, so the Court's statement about that issue was dicta." Reply at 8. Respondent further alleges that the dicta from *Houston Bus. Journal* cited by Biopure is superceded by the holdings in *Vermont Agency of Natural Resources, supra.* at 781 (courts should presume that "person" excludes the government absent an "affirmative showing of statutory intent to the contrary") and *Al Fayed v. CIA*, 229 F.3d 272, 312-13 (D.C. Cir. 2000) (where the D.C. Circuit affirmed the district court's order quashing a subpoena issued under a statute similar in effect to Rule 45 because there was no "affirmative evidence to disturb the presumption that 'person' excludes the sovereign.")

*See also Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001) ("Although our past decisions have assumed that 'person' in Rule 45 included the federal government, we have never expressly so held and our assumption may need to be reexamined in light of *Al Fayed*) and *AlohaCare, Inc. v. Haw. Dep't of Human Servs.* (*In re: Subpoena Duces Tecum to Tommy G. Thompson*), Misc. No. 04-498 (D.D.C. June 28, 2005) (an unreported case in which the Honorable Colleen Kollar-Kotelly noted that, in *Linder, id.* at 180, the D.C. Circuit "dropped significant hints that the federal government [is] outside the purview of Rule 45[,]" and she thus concluded [Memorandum Opinion at 9] that the term "person" in Rule 45 does not include the federal government.) Biopure's reliance on dicta from *Houston Business Journal* is not persuasive in light of the D.C. Circuit's language in *Al Fayed* and *Linder*, and the *AlohaCare* case.

Biopure also cites Fed. R. Civ. P. 30(b)(6) in support of its contention that a

governmental agency is subject to a subpoena.  That contention was discussed and dismissed in

*AlohaCare, id.*, where that Court held that [t]here is a clear distinction between Rule 30 and
Rule 45 that Aloha Care has ignored; Rule 30 and Rule 45, drafted over three decades apart,
serve vastly different purposes.  Rule 45 deals with subpoenas exclusively, while Rule 30 deals
with subpoenas in the limited context of their application to oral depositions. * * * Rule
30(b)(6) simply establishes a discrete procedure for a narrow circumstance in which a party
seeks testimony from an organizational entity, and obliges that party to identify the natural
person who will testify.  The Rule applies to both a party ("notice") and to non-party
("subpoena") depositions. . . . If the Government is a party, Rule 30(b)(6) certainly applies to it;
however, when it is not a party, the availability of a subpoena is governed by Rule 45.  If Rule
45 was intended to extend to the federal government, the Judicial Conference and Congress had
ample opportunity to amend the Rule in conformity with the language of Rule 30.  Given both
the lack of clear expression of such an intent and the governing rules of statutory construction,
the Court rejects AlohaCare's request for it to judicially amend the Federal Rules of Civil
Procedure and instead emphasizes the clear distinction between the scope of the twin Rules.

In addition to United States District Court Judge Kollar-Kotelly's decision in

*AlohaCare*, several other judges from this Court have recently addressed whether, as a matter of

interpretation, the word "person" in Fed. R. Civ. P. 45 includes the federal government, and all

have concluded that it does not. *See Yousuf. v. Samantar*, Misc. No. 05-110, 2005 U.S. Dist.

LEXIS 8488, at *14 (D.D.C. May 3, 2005) (where the Honorable Reggie Walton found that "a

federal government agency is not a 'person' within the meaning of Rule 45 and thus [a court]

cannot enforce a Rule 45 subpoena served on such an agency.")[6]  *See also United States ex rel.*

*Taylor v. Gabelli*, Misc. No. 04-534, 2005 U.S. Dist. LEXIS 8489, at *7 (D.D.C. May 2, 2005)

(wherein the Honorable Richard Leon held that "the term 'person' in Rule 45, in the absence of

a satisfactory basis to override this interpretive presumption [that 'person' excludes the

sovereign], does not include the federal government"); *Lerner v. District of Columbia*, Civil

---

[6]This decision has been appealed.  *See* 2005 U.S. App. LEXIS 21043 (D.C. Cir. Sept. 26,
2005).

Action No. 00-1590, 2005 U.S. Dist. LEXIS 10154, at *17 (D.D.C. Jan. 7, 2005) (where the Honorable Gladys Kessler found that the Court lacked jurisdiction to subpoena two federal agencies because "the 'requisite affirmative indications' that the term 'person' in Rule 45 includes the federal government [we]re absent"); and *Truex v. Allstate Ins. Co.*, Misc. No. 05-439, 2006 U.S. Dist. LEXIS 424, at *11 (D.D.C.  Jan. 1, 2006) ("In response to *Al Fayed* and *Linder*, the District Court has re-examined the assumption that Rule 45 applies to the federal government and held that 'person' as used in Rule 45 does not include the federal agencies.") *See generally Chen v. Ho*, 368 F. Supp.2d 97,98 (D.D.C. 2005) ("[W]hen a federal agency, pursuant to so-called *Touhy* regulations, prohibits its employees from responding to a *subpoena ad testificandum* without agency approval and declines to grant that approval . . . , the requesting party must then proceed under the APA, and a federal court will review the agency's decision  . . ..") (citation omitted).

In footnote 5 of its Opposition, Biopure cites two cases from this District Court, which allegedly counter the impact of the aforementioned recent decisions.  *See Providian Financial Corp. Securities Litigation*, 222 F.R.D. 22 (D.D.C. 2004), and *Ho v. United States*, 374 F. Supp.2d 82 (D.D.C. 2005).   It does not appear however that the governmental parties in these two cases raised the argument that they were not persons within the meaning of Rule 45.  *See Providian*, *supra*.(summarizing relevancy and privilege based objections made by the Comptroller of the Currency) and *Ho v. United States,* 374 F. Supp.2d 82, (D.D.C. 2005) (accepting the Department of Homeland Security's argument that it could not be compelled to respond to the plaintiff's Rule 45 subpoena because the agency had enacted valid *Touhy* regulations).

Biopure attempts to distinguish the recent decisions from this Court, cited by FDA, by noting that "in contrast to the litigation here, in none of these cases was the federal government the plaintiff." Motion to Compel at 6. Biopure does not cite any cases to support this proposition; instead, it asserts that the FDA has provided "active assistance" to the SEC, and accordingly, "under the particular circumstances of this case, any claim that the FDA should not be required to comply with a federal subpoena, issued out of court whose jurisdiction was invoked by the federal government with the cooperation of the FDA, is frivolous and should be rejected." Motion to Compel at 9. The FDA argues that Biopure's suggestion that, in cases brought by one federal agency, the entire federal government and all of its agencies are to be treated as parties to the litigation for purposes of discovery, is unsupported by any authority.[7]

Following the Court of Appeals' reasoning in *Al Fayed, supra.* and the recent cases from this Court determining that the Government is not a party subject to the subpoena power of Rule 45, and finding no support for Biopure's proposition that because the SEC [Government] is a party, then other branches of the Government such as the FDA should also be treated as a party, the Court finds that the word "person" in Rule 45 does not apply to the FDA, and accordingly Biopure's subpoenas are not enforceable against the FDA.

_____

[7]The FDA proffers that it has located one case from this district holding that different agencies should be subject to discovery in a case brought by a single agency. *See United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978). FDA explains that the *AT&T* case is inapposite because it involved "unique" circumstances and "peculiar facts, which involve[d] massive and wide-ranging allegations, and . . . many departments and their evidence," such that the government could not "claim to be merely the Department of Justice." *Id.* at 1334. The court in *AT&T* cautioned that its holding should be limited to that particular case because if not so confined, it "might encourage other litigants in other cases to rummage through the files of the entire government, and so paralyze both the work of numerous agencies and that of the court." *Id.* The FDA contends that because this case deals with issues within the purview of the SEC, an independent agency, it should not be subjected to discovery which would paralyze the FDA and keep it from performing its functions.

## B. *Touhy* Regulations

Even assuming *arguendo* that the FDA is treated as a "person" under Rule 45, Biopure

has not complied with the FDA's *Touhy* regulations in crafting its subpoena requests.  The FDA

asserts that "[c]ounsel for Biopure was informed that Biopure's third-party subpoenas did not

constitute a proper request for testimony pursuant to the FDA's <u>Touhy's</u> regulations."  Motion

to Quash at 6; *see* 21 C.F.R. §20.1.  "In order to obtain the testimony of the FDA records

custodians, Biopure must submit a written request to the Commissioner of Food and Drugs."

*Id*.  There is no evidence in the record before this Court that Biopure has complied with the

FDA's *Touhy* regulations in its efforts to obtain the testimony of FDA employees.  The FDA

further asserts that "[e]ven if Biopure's subpoenas could be construed as a valid request for

FDA documents, . . ., it will be approximately three years before FDA will be able to begin its

search for responsive documents . . . ."  Motion to Quash at 7; *see* Declaration of Joanne

Binkley, ¶35, attached as Exhibit 1. The FDA has suggested that Biopure "convert its subpoenas

into a request for documents pursuant to FOIA," with the understanding that a narrowing of the

request will "expedite production of the documents."  Motion to Quash at 6-7; Binkley Decl. at

¶36.[8]  Biopure alleges that the FDA's refusal to provide testimony is particularly unfair in light

of the FDA's providing documents and testimony to the SEC pursuant to a "blanket

authorization" enabling FDA employees to share information with the SEC.  Reply at 18.  The

_____

[8]Biopure states that "[p]ursuant to FDA regulations, service of the subpoenas automatically triggers the FOIA process."  Opposition at 5 n.8, citing 21 C.F.R.§20.2(a). The FDA suggests that as an alternative to granting the Motion to Quash, the Court should enter an order directing the parties to confer for the purpose of narrowing the scope of Biopure's request and allowing the FDA a reasonable amount of time to respond, and requiring Biopure to pay the costs associated with document production.  FDA Reply at 21.

FDA contradicts this allegation, noting that it provided documents to the SEC through its "regulations permitting the inter-agency disclosure of documents, 21 C.F.R. §20.85" and furthermore, "unlike Biopure, the SEC complied with FDA's _Touhy_ regulations in order to obtain testimony from FDA employees."  Motion to Quash at 16.  Moreover, the documents that were given to the SEC by the FDA have also been provided to Biopure.  There is no indication that Biopure has complied with the FDA's _Touhy_ regulations in an effort to obtain discovery and accordingly, Biopure's Motion to Compel should also be denied on those grounds and the FDA's Motion to Quash should be granted.


DATED: January 20, 2006                    _____

                                           ALAN KAY
                                           UNITED STATES MAGISTRATE JUDGE

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

—————————————————————
SECURITIES AND EXCHANGE          )
COMMISSION,                      )
     Plaintiff,                )
                         )     Miscellaneous 05-00506 (RWR/AK)
     v.                        )
                         )
BIOPURE CORPORATION, *et al.*,   )
     Defendants.               )
—————————————————————)

## **<u>ORDER</u>**

Upon consideration of Defendant Biopure Corporation's Motion to Compel FDA Compliance with Federal Subpoenas ("Motion to Compel") [1], and Non-Party Respondent United States Food and Drug Administration's [consolidated] Motion to Quash Subpoenas Duces Tecum and Opposition to Motion to Compel ("Motion to Quash") [5/6], and the documents associated with both motions, in support and in opposition thereto, for the reasons set forth in detail in the accompanying Memorandum Opinion, it is this 20th day of January, 2006,

ORDERED that Biopure's Motion to Compel [1] is DENIED, and it is further,

ORDERED that the FDA's Motion to Quash [5/6] is GRANTED, and it is further

ORDERED that pursuant to the FDA's suggestion that the Court enter an order directing the parties to confer for the purpose of narrowing the scope of Biopure's requests and allowing the FDA a reasonable amount of time to respond, and directing the Biopure shall assume the costs associated with the requests, the parties are directed to meet and confer at a mutually convenient place and time, to make a good faith effort to effect a resolution of this dispute.

————————————————————
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT D



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BOSTON DISTRICT OFFICE
6TH FLOOR
73 TREMONT STREET
BOSTON, MASSACHUSETTS 02108

IN REPLYING PLEASE QUOTE

_____

IAN D. ROFFMAN
Tel: (617) 573-8987
Fax: (617) 424-5940

November 4, 2005

**Via Facsimile and U.S. Mail**
617-951-8736

Robert A. Buhlman
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02101

    Re:    <u>SEC v. Biopure, Civ. A. No. 05-11853-PBS</u>

Dear Mr. Buhlman:

    This letter is in reply to (1) your letter to me dated October 27, 2005, in which you responded to my proposed discovery schedule and my subsequent conversation on that topic with Mike Blanchard; and (2) the three deposition notices, dated November 2, 2005, you recently sent to me.

    While I agree with you in principle that discovery in this matter need not take an extraordinary amount of time, I cannot agree to the discovery schedule in your counterproposal because it is simply not realistic. As you know, a large number of potential trial witnesses in this case are outside of the subpoena power of the Court, and thus, their testimony may have to be preserved for trial. Biopure's own initial disclosures identify 23 witnesses in this category. Moreover, although the Commission staff did take investigative testimony from many witnesses, Biopure's initial disclosures identify an additional 19 individuals whose testimony was not taken in the investigation. Initial disclosures of the three other defendants identify similar numbers of out-of-jurisdiction witnesses and new witnesses whose depositions may likely have to be taken. In addition, the Commission intends to exercise its rights under the Federal Rules to seek fact discovery from individuals who the staff did not speak with during the investigation. Given the extensive amount of fact discovery that, based on the parties' initial disclosures, will likely have to take place, your proposal to brief summary judgment motions this month, require expert reports in two months and complete all discovery in three months seems very unrealistic.

    In light of the parties' initial disclosures, I encourage you to reconsider the schedule I proposed to the defendants, which provided for a six month period for fact discovery, followed, as is customary, by expert discovery. Given the complexities of this case and large number of

Robert A. Buhlman
November 4, 2005
Page 2

witnesses identified by Biopure and the other defendants, it may prove challenging to complete fact discovery even within that amount of time. Of course, if all defendants agree not to call at trial any out-of-jurisdiction witnesses or any witnesses whose investigative testimony was not taken by the Commission staff, the discovery period could be shortened considerably.

With regard to the deposition notices, dated November 2, 2005, that you recently sent me scheduling three depositions for the week of November 14, due to scheduling conflicts, I am unable to attend depositions on the requested days. I therefore ask that we attempt to find a mutually convenient time for the depositions. I will do my best to accommodate the witnesses' availability and yours (and I hope that defendants' counsel will extend the same courtesy for depositions that I plan to take). I also point out, as I mentioned in the voicemail message I left for you on Wednesday, that FDA regulations, specifically 21 C.F.R. § 20.1, require a certain process before FDA employees are permitted to provide deposition testimony. I bring this to your attention so that you can begin whatever process is required under the regulations at your earliest convenience.

Please contact me if you would like to discuss any of these matters further.

Very truly yours,

Ian D. Roffman

cc:    Bernard J. Bonn, III, Esq (counsel for defendant Moore)
        Thomas J. Dougherty, Esq. (counsel for defendant Kober)
        Cathy A. Fleming, Esq. (counsel for defendant Richman)

# EXHIBIT E

**DEPARTMENT OF HEALTH & HUMAN SERVICES**            Office of the General Counsel

_____

Office of the Chief Counsel
Food and Drug Administration
5600 Fishers Lane, GCF-1
Rockville, MD 20857

November 15, 2005

**VIA FACSIMILE AND U.S. MAIL**
**617-951-8736**

Robert A. Buhlman
Bingham McCutchen LLP
150 Federal Street
Boston MA 02110

Re:   Securities and Exchange Commission v. Biopure Corp., et al.,
        Civil Action No. 05-11853-PBS

Dear Mr. Buhlman:

I write on behalf of the United States Food and Drug Administration ("FDA") in response to the
three November 2, 2005 subpoenas for testimony and documents directed to: (1) Keeper of
Records of FDA, (2) Keeper of Records of the FDA Center for Biologics Evaluation and
Research ("CBER"), and (3) Lawrence Landrow, CBER. For the reasons discussed below, FDA,
a non-party in the above-referenced action, objects to the subpoenas and requests that they be
withdrawn.

First, FDA cannot be compelled to testify or produce records in response to a subpoena issued
pursuant to Rule 45 of the Federal Rules of Civil Procedure. Rule 45 provides, in part, that
"[e]very subpoena shall . . . command each person to whom it is directed to attend and give
testimony or to produce and permit inspection and copying of designated . . . documents." Fed.
R. Civ. P. 45(a)(1)(C). The Supreme Court has consistently held that, as a matter of plain
meaning, "the term 'person' does not include the sovereign, [and] statutes employing the [word]
are ordinarily construed to exclude [the government]." Will v. Mich. Dep't of State Police, 491
U.S. 58, 64 (1989) (first two alterations in original) (citation omitted); see also Vt. Agency of
Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 780-81 (2000). Lower courts have
therefore held that a subpoena issued pursuant to Rule 45 may not be used to seek discovery from
an agency of the federal government because the term "person" as used in that Rule does not
include the federal government. See Yousuf v. Samantar, No. 05-110, 2005 U.S. Dist. LEXIS
8488, at *14 (D.D.C. May 3, 2005) (holding that Rule 45 cannot be used to compel a federal
agency to produce documents when it is not a party to the case); United States ex rel. Taylor v.
Gabelli, No. 04-534, 2005 U.S. Dist. LEXIS 8489, at *7 (D.D.C. May 2, 2005) (stating that "the
term 'person' in Rule 45, in the absence of a satisfactory basis to override this interpretive
presumption [that 'person' excludes the sovereign], does not include the federal government");
Lerner v. District of Columbia, No. 00-1590, 2005 U.S. Dist. LEXIS 10154, at *17 (D.D.C. Jan.

7, 2005) (finding that the court lacked jurisdiction to subpoena the federal government because "the 'requisite affirmative indications' that the term 'person' in Rule 45 includes the federal government are absent"); see also Al-Fayed v. CIA, 229 F.3d 272, 276-77 (D.C. Cir. 2000) (affirming the district court's quashing of a subpoena issued under 28 U.S.C. § 1782 because there was no "affirmative evidence to disturb the presumption that 'person' excludes the sovereign").

Second, the subpoenas do not comply with the criteria set forth in FDA's regulations, 21 C.F.R. part 20, governing requests for the testimony of FDA employees. These regulations describe the procedures that must be followed when litigants request testimony from an officer or employee of FDA. The regulations specifically prohibit officers and employees of FDA from testifying about FDA functions or information acquired in the discharge of their official duties. 21 C.F.R. § 20.1(a). Any person who desires testimony from an FDA employee must submit a written request to the Commissioner in accordance with the procedures set forth in 21 C.F.R. § 20.1(c). Both the Supreme Court and the United States Court of Appeals for the Fourth Circuit have held that, under the principles of sovereign immunity, an administrative agency may promulgate regulations that limit the extent to which demands for the testimony of agency employees and documents will be honored in civil litigation in which the agency is not a party. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951); COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 278 (4th Cir. 1999); Boron Oil Co. v. Downie, 873 F.2d 67, 71 (4th Cir. 1989).

Third, even if FDA could properly be compelled to give testimony or produce records in response to subpoenas issued pursuant to Rule 45, the agency objects to the subpoenas on the following additional grounds:

     (1)    The subpoenas may require disclosure of information that is or contains proprietary, trade secret, confidential commercial, personal privacy, investigatory, pre-decisional, and/or agency deliberative process information that is protected from disclosure under the applicable laws, regulations, or privileges;

     (2)    The subpoenas, which request twenty-three broad categories of documents, several of which contain up to fifteen additional subcategories, are unduly burdensome and over broad, particularly in that they request documents and correspondence (relating to Biopure and Hemopure) that are decades old. In order to fully respond to the subpoenas, the agency would need to search for and obtain documents from federal records storage areas and archives. Therefore, compliance with the subpoenas would require an unreasonable commitment of agency resources;

     (3)    The subpoenas are unduly burdensome in that they request documents that may be maintained by agencies other than the FDA;

     (4)    The subpoenas are unduly burdensome in that they request documents, many of which are already in defendant's possession;

2

(5)    The subpoenas are unduly burdensome in that they request "complete response" letters sent to entities other than Biopure, including all complete response letters "sent out by FDA at any time." Even assuming that the requests were limited to complete response letters issued by CBER, in order to respond to this request, FDA would be required to conduct a search of thousands of documents relating to virtually every BLA application and supplement received by CBER from any BLA applicant. Responding to this broadly-drafted request would require extensive resources, significantly affecting the agency's ability to pursue its public health mission. Furthermore, these documents would require significant redaction because they contain trade secret and other confidential commercial and otherwise protected information that may not be disclosed; and

(6)    The subpoenas fail to allow reasonable time for the agency to comply. The subpoenas were served on the Department of Health and Human Services on November 4, 2005, and I did not receive a copy of them until November 10, 2005. Given the breath of the subpoenas, it is simply impossible for the FDA to obtain, review, and redact the requested documents within the short window provided in the subpoenas. Upon preliminary review of the subpoenas, CBER's Division of Disclosure and Oversight Management estimates that, given CBER's limited resources, current queue of requests, and public health priorities, it would take over a year to search for, identify, and copy responsive documents. Redaction of responsive documents would require an additional six months to a year.

Without waiving any of the objections above, I am available to discuss with you other avenues for obtaining information from the agency, including, if you wish, placing your requests for documents in CBER's Freedom of Information Act queue. Moreover, it is my understanding that the Securities and Exchange Commission ("SEC") has asked the FDA for permission to release all FDA documents that were provided to SEC by FDA, as well as transcripts of investigative testimony provided by FDA employees. FDA has begun the process of reviewing those materials, and plans to respond to SEC's request as soon as that review is completed. Please feel free to contact me at (301) 827-2802 if you would like to discuss this matter further.

Sincerely,

Michael Shane
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration


cc:    Anne P. Smith, Testimony Specialist, FDA

3