UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION,<br>THOMAS MOORE, HOWARD RICHMAN<br>and JANE KOBER,<br><br>                                      Defendants. | CIVIL ACTION NO.<br><br>05-CA-11853-PBS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR IMPOUNDMENT AND EXPEDITED TREATMENT, OR IN THE ALTERNATIVE, MOTION FOR TEMPORARY IMPOUNDMENT PENDING DISPOSITION**

Defendants Biopure Corporation ("Biopure"), Thomas Moore, Howard Richman, and Jane Kober respectfully submit this memorandum of law in support of their motion, pursuant to Local Rule 7.2, for an order requiring that the plaintiff, Securities and Exchange Commission ("SEC"), file its opposition to defendants' motion for partial summary judgment under seal if it contains confidential materials obtained from Defendants or FDA in the course of its investigation and discovery in this action. In the alternative, and in the interests of preserving the *status quo*, Defendants ask that this Court enter an interim order requiring that the SEC's opposition be filed under seal until such time that this motion for impoundment is ruled upon (the "Motion").

**ARGUMENT**

During the course of the SEC's two-year investigation, Defendants cooperated with the SEC by providing reams of confidential and proprietary documents and testimony concerning a wide array of matters directly bearing on Biopure's highly confidential scientific processes, business strategies and dealings with the Food and Drug Administration ("FDA"). Indeed, FDA regulations recognize the critical importance of maintaining confidentiality of data and

communications from product-sponsor companies, such as Biopure, in their pursuit of FDA approval. There can be no question that, in Biopure's case, its efforts towards achieving -- before its competitors -- the first-ever FDA approval of an oxygen therapeutic such as Hemopure, depend in large degree on protecting its trade secrets concerning its scientific processes, its business strategy and FDA's review. (Biopure does not yet have approval to market its product for humans in the United States, although its veterinary product has been approved.)

Biopure's cooperation with the SEC in providing its highly confidential information bearing on its FDA business was, at all times, expressly qualified by a standard request that the information provided be kept confidential. Indeed, the SEC's own regulations concerning Freedom of Information Act ("FOIA") requests provides specific safeguards that allow companies providing confidential information to regulators to seek protection from disclosure, and Biopure explicitly sought such protection for its highly confidential information. Furthermore, the investigation was *non public*.

Now that the SEC has filed suit against Defendants, it has apparently taken the position that the basic protections afforded to companies under its own regulations vis a vis the public by FOIA requests should be ignored, insisting that it will file confidential information obtained from Biopure publicly. By contrast, however, the SEC has said it will *not* file publicly information it received from the United States Food and Drug Administration ("FDA") *about* Biopure. It will honor its sister agency's confidentiality by regulation but it will *not* accord the same information confidential treatment if it comes from Biopure.

Biopure and its shareholders -- the persons whose interests the SEC purports to protect -- will be immediately and irreparably harmed by the SEC's public filing of Biopure's confidential scientific or business information.

I.     **BIOPURE'S FDA-RELATED MATERIAL IS HIGHLY CONFIDENTIAL**

Submissions made to the FDA, communications with the FDA and FDA's responses to submissions by sponsors of drugs and biologics under development are highly confidential *by*

- 2 -

*law*.  Indeed, under various Acts and Regulations, the FDA is *required* to maintain the confidentiality of submissions made regarding the testing and licensing of new drugs or medical products.  The Federal Food, Drug and Cosmetic Act provides generally for the protection of trade secrets from public disclosure. 21 U.S.C. § 331(j).  Notably, FDA's regulations generally exempt trade secrets and commercial or financial information submitted to the government, or information compiled for law enforcement reasons, from disclosure to the public.  21 C.F.R. §§ 20.60, 20.61 and 20.64.  Further, the Code of Federal Regulations provides specific confidentiality protection for submissions made regarding new drug applications.  *See* 21 C.F.R. § 314.430 (no data or information contained in a new drug application will be disclosed before an approval letter is sent to the applicant);  *see also* 21 C.F.R. § 601 (no data or information contained in a biological product file will not be disclosed before a biologics license application has been approved).

      Remarkably, in conferring about this motion, the Plaintiff SEC said it will *not* disclose materials provided to it *by FDA* because it *cannot* pursuant to regulations.  Nevertheless, SEC said it *will* file such information produced to it by Defendants *under compulsion of investigative subpoena*.  Such a double standard is clearly unfair as such a filing deprives Biopure of the property rights the FDA regulations are clearly intended to protect.  Such information comprising trade secrets or highly confidential business information is also protected from disclosure under the Federal Rules of Civil Procedure.  *See generally, Nixon v. Warner Communications, Inc.*, 435 U.S. 589 , 598 (1978) ("it is uncontested, however, that the right to inspect and copy judicial records is not absolute . . . courts have refused to permit their files to serve as  . . . sources of business information that might harm a litigant's competitive standing.") (internal citations omitted).  Indeed, records containing trade secrets are often sealed and remain sealed even after the disposition of the case.  *See In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 664 (D.N.J. 2004) ("The presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected form disclosure." Court ordered the redaction of all trade secret information prior to unsealing

summary judgment papers.); *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273 (S.D.N.Y. 1982) (protecting trade secret information contained in testimony and refusing to lift seal).

An order preventing public disclosure of Biopure's confidential FDA-related information (*i.e.* portions of Biopure's BLA, information taken from Biopure's proposed in-hospital trauma protocol, or communications to or from the FDA regarding the foregoing) is appropriate here.

II. **BIOPURE PROVIDED ITS FDA RELATED DATA, DOCUMENTS AND TESTIMONY TO THE SEC WITH AN EXPRESS REQUEST FOR PROTECTION FROM DISCLOSURE UNDER APPLICABLE FOIA REGULATIONS**.

The SEC's investigation was *non-public*. Furthermore, Biopure received subpoenas compelling the production of, among other things, its trade secrets. During the SEC's two year investigation, Biopure cooperatively produced reams of documents and testimony to the SEC. In doing so, Biopure and the Defendants made express that the information being provided was highly confidential, and that the Company would take all appropriate measures in protecting such material's disclosure in the event that any individual or entity sought the information pursuant to FOIA. Specifically, Biopure requested as follows:

> The enclosed information and documents are being provided to you on behalf of Biopure solely for the Staff's use in the above-referenced inquiry with the understanding that Biopure believes that business confidentiality pertains to each page. *The enclosed materials and the information contained therein are considered to be confidential or private internal documents that are commercially valuable and, as such, constitute or contain trade secrets, the disclosure of which may violate proprietary rights and could put Biopure at an unfair disadvantage.*
>
> Therefore, in accordance with the Staff's procedures with respect to Freedom of Information Act ("FOIA") requests (17 C.F.R. § 200.83), I hereby request confidential treatment of the information contained herein and all the pages of the documents provided to you that are labeled for confidential treatment. Each page has been appropriately labeled to indicate the intention to maintain the confidential status of the enclosed materials.
>
> All of the materials are submitted with the further request that they be kept in a non-public file and that access to them by any third party who is not a member of the SEC or its Staff be denied, except as provided by the Privacy Act of 1974, or

unless such access is specifically permitted by existing law.  In addition, I request that the materials be returned to the undersigned when the above-referenced inquiry is completed.

I understand that upon receipt of any FOIA requests for the enclosed materials, the Staff will make an initial determination as to whether access to the information should be granted.  If no ground appears to the Staff to exist which would justify the withholding of the information, the Staff will ask that within ten (10) days of receipt of the FOIA requests, I submit substantiation for affording continued confidential treatment and for withholding of the information.  Under such circumstances, Robert A. Buhlman should be telephoned as soon as possible at (617) 951-8717.  Confidential treatment of this letter is also requested.

The SEC's own regulations recognize the importance of companies being able to protect information provided to it during the course of an investigation from public disclosure.  The Code of Federal Regulations, 17 C.F.R. § 200.83, provides that companies may request confidential treatment from the SEC, and that the company be afforded the opportunity to prevent disclosure of its confidential documents and testimony to the public through FOIA requests.  While the SEC's regulation does not bar the SEC itself from disclosing such materials, it is difficult to comprehend why the SEC would not, at minimum, agree that its filings in this case be sealed, at least in the first instance, to allow Biopure the opportunity to prevent the same competitive harm that could result from a FOIA request that the SEC, in other contexts, is careful to protect against.

III. **SEC'S DISCLOSURE OF BIOPURE'S HIGHLY CONFIDENTIAL MATERIAL WILL CAUSE IMMEDIATE AND IRREPARABLE INJURY TO BIOPURE AND ITS SHAREHOLDERS -- THE PEOPLE SEC PURPORTS TO PROTECT**

In its periodic filings with the SEC, Biopure discloses to investors as a significant risk factor the possibility that its confidential or trade secret information may be protected:

> *If we are not able to protect our intellectual property, competition could force us to lower our prices, which might reduce profitability.*
>
> We believe that our patents, trademarks and other intellectual property rights, including our proprietary know-how, will be important to our success. Accordingly, the success of our business will depend, in part, upon our ability to defend our intellectual property against infringement by third parties.  We cannot guarantee that our intellectual property rights will protect us adequately from

competition from similar products or that additional products or processes we discover or seek to commercialize will receive adequate intellectual property protection.

Similarly, Biopure has specifically warned investors that the business environment within which it operates is extremely competitive:

***Intense competition could harm our financial performance.***

The biotechnology and pharmaceutical industries are highly competitive. There are a number of companies, universities and research organizations actively engaged in research and development of products that may be similar to, or alternatives to, Hemopure for trauma or ischemia indications. We are aware that at least one public company competitor, Northfield Laboratories Inc., is in the advanced stages of developing a hemoglobin-based oxygen carrier produced from human blood that has passed its expiration date for human transfusion. Northfield's product is in a Phase 3 clinical trial for a trauma indication. We are also aware that other companies are conducting preclinical studies and clinical trials of hemoglobin-based or perfluorocarbon oxygen carriers. The products being developed by these companies are intended for use in humans and as such could compete, if approved by regulatory authorities, with Hemopure. We may also encounter competition in ischemia indications from medical devices and drugs on the market or currently under development.

.Biopure's 10-K filed 1/17/06, from pp. 23 and 25.

It is sadly ironic that the very regulatory authority which provides the rubric for disclosures of such risks -- the SEC -- could be the culprit in causing that same risk to materialize. That is precisely what the SEC may do here.

Furthermore, Biopure's current Chief Executive Officer, Zafiris G. Zafirelis, has attested to the harm to the Company if its trade secrets or FDA communications are disclosed. *See* Affidavit of Zafiris G. Zafirelis, filed herewith.

Admittedly, Biopure does not know exactly what the SEC plans to file in any of its submissions to the Court. But once the material is filed, especially given electronic filing and the public's immediate access to such filings through PACER, the harm will have already occurred. It makes eminent sense that such potential egregious harm, translating into losses by the company's owners -- it's shareholders -- be avoided by simply requiring that the SEC file documents and transcript testimony in the categories indicated in the Motion under seal, at

minimum until the Court can assess whether such material must be kept from the public and Biopure's competitors.

## Conclusion

For the foregoing reasons, Biopure respectfully submits that its Motion be granted.

| | |
|---|---|
| **JANE KOBER,** | **BIOPURE CORPORATION,** |
| By her attorneys, | By its attorneys, |
| /s/ Thomas J. Dougherty<br>Thomas J. Dougherty BBO #132300<br>Justin J. Daniels BBO #656118<br>Scott T. Lashway BBO #655268<br>Skadden, Arps, Slate,<br>  Meagher & Flom LLP<br>One Beacon Street<br>Boston, MA 02108<br>(617) 573-4800 | /s/ Robert A. Buhlman<br>Robert A. Buhlman, BBO #554393<br>Donald J. Savery, BBO #564975<br>Michael D. Blanchard, BBO #636860<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110-1726<br>(617) 951-8000 |
| **HOWARD RICHMAN,** | **THOMAS MOORE,** |
| By his attorneys, | By his attorneys, |
| /s/John D. Hughes<br>John D. Hughes BBO #243660<br>Cathy A. Fleming (*pro hac vice*)<br>Mary P. Cormier BBO #635756<br>Edwards & Angell, LLP<br>101 Federal Street<br>Boston, MA 02110<br>617-951-2225 | /s/Edward P. Leibensperger<br>Edward P. Leibensperger BBO #292620<br>Jeffrey S. Huang BBO #651854<br>McDermott, Will & Emery LLP<br>28 State Street<br>Boston, MA 02109<br>617-535-4046 |

Dated:      January 27, 2006
                 Boston, Massachusetts

## RULE 7.1(A)(2) CERTIFICATION

    I, Michael D. Blanchard, hereby certify that I conferred with Ian D. Roffman, attorney for plaintiff, and attempted in good faith to resolve or narrow the issues presented in the within motion.

Dated: January 27, 2006
       Boston, Massachusetts

                                      /s/ Michael D. Blanchard
                                      Michael D. Blanchard

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above pleading was served electronically upon the attorney(s) of record for all parties on January 27, 2006.

                                      /s/ Michael D. Blanchard
                                      Michael D. Blanchard