## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 05-11853-PBS |
| BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER, | ) ) ) ) ) |
| Defendants. | ) |

## NOTICE OF FILING

Defendant Thomas A. Moore hereby notifies the Court that he has filed the

accompanying Motion to Compel Compliance with Federal Subpoenas by the United States

Food and Drug Administration in the U.S. District Court for the District of Columbia.

Respectfully submitted,

Date:  August 10, 2006
       Boston Massachusetts

/s/ Jeffrey S. Huang
Edward P. Leibensperger (BBO #292620)
Bobby R. Burchfield (*pro hac vice*)
Jason A. Levine (*pro hac vice*)
Jeffrey S. Huang (BBO# 651854(
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts  02109
(617) 535-4000 phone
(617) 535-3800 facsimile

*Counsel for Defendant Thomas A. Moore*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

       v.

BIOPURE CORPORATION, THOMAS
MOORE, HOWARD RICHMAN, and JANE
KOBER,

       Defendants.

CASE NUMBER   1:06MS00380

JUDGE: James Robertson

DECK TYPE: Miscellanous

DATE STAMP: 08/10/2006

(Related Case: Civ. No. 05-11853-PBS
Pending in the U.S. District Court
for the District of Massachusetts)

**Expedited Hearing Requested**

### MOTION OF DEFENDANT THOMAS A. MOORE TO COMPEL COMPLIANCE WITH FEDERAL SUBPOENAS BY THE UNITED STATES FOOD AND DRUG ADMINISTRATION

     Pursuant to Federal Rules of Civil Procedure 37 and 45, and the Local Rules of this

Court, defendant Thomas A. Moore requests that the Court order the United States Food and

Drug Administration ("FDA") to comply with five federal subpoenas issued out of this Court on

March 24, 2006. As explained in greater detail in the accompanying Memorandum of Law, the

FDA has complied only partially with one of these subpoenas for the production of documents,

and has failed to comply at all with the other four subpoenas for the testimony of its staffers,

thereby significantly prejudicing Mr. Moore's defense in this matter. Accordingly, the relief set

forth in the accompanying Memorandum of Law is appropriate.

### REQUEST FOR EXPEDITED ORAL HEARING

     Pursuant to Local Rule 7(f), Mr. Moore requests an expedited oral hearing on this Motion

if the Court is not inclined, for whatever reason, to grant the Motion on the basis of the parties'

written submissions alone. As explained in the accompanying Memorandum of Law, the

discovery sought by the subpoenas is the cornerstone of Mr. Moore's defense, and he will be

significantly prejudiced if the FDA does not promptly provide this discovery. For these reasons,

expedited treatment is warranted.

## STATEMENT PURSUANT TO LOCAL RULE 7(m)

Counsel for Mr. Moore have conferred with counsel for the FDA in a good faith attempt

to resolve the issues involved herein, and have been unable to reach agreement. This Motion

will be opposed.

Respectfully submitted,

Bobby R. Burchfield (D.C. Bar No.289124)
Jason A. Levine (D.C. Bar No. 449053)
McDermott Will & Emery LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000
Fax: (202) 756-8087

Edward P. Leibensperger
Jeffrey S. Huang
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
Tel.: (617) 535-4000
Fax: (617) 535-3800

Date:    August 10, 2006            *Counsel for Defendant Thomas A. Moore*

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA IN: ) | |
| ) | |
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MISC. No. _____ |
| v. ) | |
| ) | (Related Case: Civ. No. 05-11853-PBS |
| BIOPURE CORPORATION, THOMAS ) | Pending in the U.S. District Court |
| MOORE, HOWARD RICHMAN, and JANE ) | for the District of Massachusetts) |
| KOBER, ) | |
| ) | **Expedited Hearing Requested** |
| Defendants. ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THOMAS A. MOORE'S MOTION TO COMPEL COMPLIANCE WITH FEDERAL SUBPOENAS BY THE UNITED STATES FOOD AND DRUG ADMINISTRATION

Thomas Moore urges the Court to compel the United States Food and Drug Administration ("FDA") to comply with subpoenas issued out of this Court on March 24, 2006, in accordance with the D.C. Circuit's decision in *Yousuf v. Samantar*, 2006 U.S. App. LEXIS 14750 (D.C. Cir. June 16, 2006), which holds that federal agencies are susceptible to subpoenas issued pursuant to Fed. R. Civ. P. 45 even if they are not parties to the underlying litigation. *Id.* at *23-27. Even though instructed on March 16, 2006, by Judge Saris, the judge presiding over the underlying case, to comply with a proper discovery request "*immediately*," the FDA has taken *138 days* and still not come close to complete compliance. The documents and deposition testimony sought by Mr. Moore are crucial to his defense in this action, and the FDA's seemingly interminable delays will cause him serious prejudice if not halted by this Court.

The FDA has not produced the key documents, or authorized the depositions of four staffers, requested by Mr. Moore via subpoenas (and a "*Touhy*" request) dated *March 24*, 2006.

Exs. 1-5 (subpoenas to FDA and staffers) and 6 (*Touhy* request).[1] These documents, and the staffers' testimony, go to the heart of this case, but the FDA has failed even to advise Mr. Moore as to whether or when he will receive the documents or authorization to depose the staffers. Meanwhile, Mr. Moore suffers significant continuing harm to his reputation, employability, and income every day the action is pending. For this reason, merely acquiescing in the FDA's delays, and potentially a later trial date, is not a viable option for Mr. Moore. The D.C. Circuit has now agreed that unending delays by federal agencies in discovery are unacceptable, by ruling in *Yousuf* that they must comply with subpoenas in civil litigation even if they are not parties to the underlying suit. *See* 2006 U.S. App. LEXIS 14750 at *23-27.

Accordingly, Mr. Moore asks this Court to enforce his subpoenas directed to the FDA. Specifically, Mr. Moore requests that the Court order the FDA to: (1) produce all documents that are responsive to his FDA subpoena of March 24, 2006, no later than 10 calendar days from the date of the Order; and (2) produce for deposition the four FDA staffers identified by subpoenas of the same date, no later than 30 calendar days from the date of the Order.

## STATEMENT OF THE CASE

Mr. Moore's subpoenas arise out of a securities enforcement action brought by the SEC against Biopure Corporation, two of its former executives (Mr. Moore, the former Chief Executive Officer, and Howard Richman, a former Vice President), and its current General Counsel (Jane Kober) before Judge Saris in the United States District Court for the District of Massachusetts. *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853 (D. Mass., filed Sept. 14, 2005). The SEC alleges that the defendants engaged in a fraudulent scheme to misrepresent and conceal

---

[1] The FDA's *Touhy* regulations, 21 C.F.R. § 20.1 *et seq.*, govern its processing and treatment of document and deposition requests. *See Touhy v. Ragen*, 340 U.S. 462, 467 (1951) (federal agencies authorized to promulgate regulations governing procedures for producing documents and testimony).

from investors certain facts about Biopure's applications for FDA approval of Hemopure. The SEC's entire case is based upon the FDA's review of these applications, its communications with Biopure regarding the applications, and the steps the FDA and defendants believed were necessary to obtain marketing approval in the United States.

Despite these facts, by letter dated April 3, 2006, the FDA refused to comply with Mr. Moore's subpoenas and asked that they be withdrawn (which Mr. Moore did *not* do). Ex. 7 (FDA letter). After the submission of an inter-agency *Touhy* request by the United States Securities and Exchange Commission ("SEC") on April 21, 2006 (Ex. 8), the FDA has produced *some* of the documents sought by Mr. Moore. Ex. 9 (FDA transmittal letter). However, as discussed below, the FDA has not produces many of the key documents at issue, even though it expressly *waived* any pertinent privilege. *Id.* The FDA has also failed to indicate whether or when it will make the requested witnesses available for deposition.

Importantly, the FDA is no passive bystander in this case. Instead, it appears that the FDA referred the case to the SEC, and assisted with formulating the allegations contained in the Complaint. For example, an FDA letter to the SEC staff on August 8, 2003 – now one of the SEC's key Exhibits – opines that a press release issued by Biopure on August 1, 2003 "may not be a fair and accurate disclosure of information to public investors." Ex. 10. Even before the SEC filed its Complaint, the FDA produced selected documents to the SEC and made witnesses freely available for interviews and investigative depositions by SEC counsel – all without formal process. Yet the FDA has not timely responded to formal process from Mr. Moore.

The FDA has been on notice of Mr. Moore's personal need for the documents and testimony at issue since the defendants jointly filed a *Touhy* request on January 12, 2006. During a March 16, 2006 scheduling conference (prior to the decision in *Yousuf*), the presiding judge in

3

the District of Massachusetts, Judge Saris, admonished the SEC that, upon the submission of a

new *Touhy* request for documents and depositions, the FDA should comply "immediately" or

face a possible contempt citation *and* negative ramifications for the SEC's case at trial. *See* Mar.

16, 2006 Tr. at 7, 9-10 (Ex. 11). By agreement of all present, Judge Saris set a deadline of July 1

– 106 days later – for *all* document production, and specifically stated that it intended for this

deadline to apply to the FDA. *Id.* at 18. Judge Saris also indicated that counsel for the SEC, Ian

Roffman, should help defendants obtain discovery from the FDA, because otherwise the SEC's

case "is going to suffer." *Id.* at 9. Judge Saris also set a deadline of October 31, 2006, for the

close of all discovery, and set the trial date for January 15, 2007. *Id.* at 18, 24.

Acting promptly, on March 24, Mr. Moore submitted a proper, limited *Touhy* request

seeking, as did his subpoenas of the same date: (1) nine narrow categories of FDA documents,

including drafts of several individual documents; and (2) the depositions of four FDA staffers

who were deeply involved in the review of Hemopure that is central to this case – Mr. Franklin

Stephenson, and Drs. Toby Silverman, Laurence Landow, and Abdu Alayash. Ex. 6.[2]  Mr.

Moore's *Touhy* request was carefully targeted to obtain only highly relevant information and

imposed no undue burden on the FDA. Tellingly, the FDA has *not* objected to any aspect of Mr.

Moore's *Touhy* request.

Because of the compelling and time-sensitive need for the requested documents, Mr.

Moore sought expedited processing in accordance with 21 C.F.R. § 20.44(a). The FDA *denied*

this request by letter dated May 16, 2006, and stated that it would place Mr. Moore's *Touhy*

---

[2] In response to a concern voiced by the FDA to Mr. Roffman, Mr. Moore supplemented his *Touhy* request on April 24, 2006 (Ex. 12), to provide additional grounds for the deposition of Dr. Alayash, whom the SEC has not designated as a trial witness, unlike the other three identified FDA staffers.

document request at the back of the FOIA queue. Ex. 13. These actions guaranteed that the FDA would *not* produce documents in time for a January 2007 trial.

Apparently anticipating this outcome, on April 21, the SEC had submitted an inter-agency *Touhy* request on behalf of Mr. Moore, in an effort to receive a speedier response from the FDA as a sister agency. Ex. 8. Critically, however, the SEC's inter-agency request *omitted* two categories of documents that Mr. Moore sought in his subpoena and *Touhy* request – namely, documents relating to: (1) FDA-SEC communications about the defendants; and (2) inter-agency cooperation in enforcement matters. *Compare* Exs. 1, 6 *with* Ex. 8. These materials are relevant in view of the FDA's role as the *instigator* of this lawsuit. On May 3, 2006, counsel for Mr. Moore requested that the SEC conform its inter-agency request to his *Touhy* request. Ex. 14 (letter to Mr. Roffman). The SEC refused. Ex. 15 (letter from Mr. Roffman). Meanwhile, Mr. Moore's subpoena remained pending.

The FDA thereafter responded to the SEC's inter-agency request on Wednesday, June 28, 2006 – nearly the last possible day under the schedule set by Judge Saris. Ex. 9.[3] Of course, the FDA's production omitted the communications between the FDA and the SEC that Mr. Moore sought but the SEC did not request. The FDA also withheld substantive documents bearing upon the evaluation of Hemopure, including many attachments to produced e-mail communications, even though these documents were plainly responsive to several categories of the *Touhy* request (and to Mr. Moore's subpoena). Importantly, the FDA *waived* its "deliberative process privilege" with respect to these materials, and so has no grounds for

---

[3] Because Biopure required the opportunity to review the FDA's document production for purposes of ensuring their confidentiality *before* their dissemination to Mr. Moore, he did not ultimately receive the documents until *July 13*.

withholding them from production. *Id.* Moreover, FDA also did not respond to Mr. Moore's longstanding *Touhy* request to depose the four FDA staffers.

On July 11, 2006, counsel for Mr. Moore wrote to the FDA, advising it of the D.C. Circuit's decision in the *Yousuf* case, and requesting prompt and full compliance with his subpoenas of March 24, 2006. Ex. 16. On July 28, counsel for Mr. Moore notified the FDA in writing of the shortcomings of its document production. Ex. 17. In response, on August 3, FDA Associate General Counsel Carl Turner verbally indicated that the FDA would seek to produce the missing email attachments on or about August 11, but he professed an inability to make any commitments about whether or when the FDA would produce the remainder of the documents or approve the deposition of the four staffers separately subpoenaed by Mr. Moore. During another conversation with Mr. Turner on August 9, he confirmed the FDA's intention to produce the missing email attachments on August 14, and stated that the FDA had authorized a search for the unproduced FDA-SEC communications and inter-agency enforcement materials, but he was not able to estimate how long that search would take. Mr. Turner had no further information about the FDA's timetable or intentions with respect to the depositions and other documents at issue.

**ARGUMENT**

**THE FDA SHOULD BE ORDERED TO COMPLY FULLY AND PROMPTLY WITH MR. MOORE'S SUBPOENAS OF MARCH 24, 2006.**

As the D.C. Circuit held in the recent *Yousuf* decision, the Government and its agencies are "persons" within the meaning of Fed. R. Civ. P. 45, and accordingly are subject to subpoena regardless of whether they are parties to the underlying litigation. 2006 U.S. App. LEXIS 14750, at *23-*27. The FDA falls squarely within the ambit of Rule 45 and is subject to Mr. Moore's subpoenas. Indeed, the FDA did *not* dispute its susceptibility to subpoena when advised of the *Yousuf* decision by letter dated July 11, 2006. Ex. 16. Yet despite the pendency of Mr. Moore's

6

subpoena (and identical *Touhy* request) for *138 days*, the FDA has failed to comply fully with his straightforward and limited document and deposition requests.

Mr. Moore's defense is already suffering from the FDA's delays. For example, on August 30, Mr. Moore's counsel will depose the SEC's testifying expert witness, whose expert opinions turn on his interpretation of certain communications to Biopure from the FDA. Yet Mr. Moore still has not received various internal documents from the FDA that are crucial to his effective deposition of this expert witness. Further, Mr. Moore's own expert disclosure is due on September 6, yet his testifying expert witness may require the full evaluative record of the FDA in order to form thorough opinions. Further delay from the FDA may gravely impede the work of Mr. Moore's testifying expert.

Mr. Moore's defense would be prejudiced even further if he were forced to proceed to trial without the full discovery he has sought from the FDA. Yet he would be equally prejudiced by any significant delay of the trial date to accommodate the agency, given the serious economic and reputational harms that he suffers from the mere pendency of this lawsuit. Mr. Moore, in other words, is caught between the proverbial "rock" and "a hard place." Against the background of the continuing harms he is suffering, the FDA's inaction may be more than mere bureaucratic inertia.

The SEC, in contrast, has had the benefit of full discovery from the FDA during the investigative phase of this case, and it now stands to gain from whatever impediments Mr. Moore faces in obtaining discovery from the FDA. For these reasons, at the scheduling conference held nearly five months ago (prior to the *Yousuf* decision), Judge Saris clearly instructed the FDA to comply with a reasonable *Touhy* request "*immediately*," not "when the agency gets around to it." March 16, 2006 Tr. at 7 (Ex. 11). The FDA has not done so.

Accordingly, Mr. Moore urges the Court to order the FDA to comply, finally and fully, with the outstanding subpoenas dated March 24, 2006. Given the exigencies of the situation, Mr. Moore requests that the Court order FDA to: (1) produce all remaining documents that are responsive to his document subpoena within 10 calendar days from the date of the Court's Order; and (2) produce the four subpoenaed FDA witnesses for depositions within 30 calendar days from the date of the Court's Order.

## CONCLUSION

For the foregoing reasons, Mr. Moore urges the Court to grant his Motion to Compel. A proposed Order to this effect is submitted herewith.

Respectfully submitted,

Bobby R. Burchfield (D.C. Bar No. 289124)
Jason A. Levine (D.C. Bar No. 449053)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000
Fax: (202) 756-8087

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Tel.: (617) 535-4000
Fax: (617) 535-3800

Date:   August 10, 2006                    *Counsel for Defendant Thomas A. Moore*

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA IN:<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>      v.<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER,<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>MISC. No. _____<br><br>(Related Case: Civ. No. 05-11853-PBS Pending in the U.S. District Court for the District of Massachusetts) |

## [PROPOSED] ORDER

The Court, having considered Defendant Thomas A. Moore's Motion to Compel, the Memoranda of Law in support thereof and in opposition thereto, and all pertinent argument, hereby ORDERS that the United States Food and Drug Administration ("FDA") shall:

(1)    produce all documents that are responsive to Mr. Moore's subpoena to the FDA of March 24, 2006, no later than 10 calendar days from the date of this Order; and

(2)    produce for deposition, no later than 30 days from the date of this Order, the following employees whose testimony was subject to Mr. Moore's subpoenas of March 24, 2006: (a) Mr. Franklin Stephenson; (b) Dr. Toby Silverman; (c) Dr. Laurence Landow; and (d) Dr. Abdu Alayash.

_____
United States District Judge

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing Motion to Compel and Memorandum of Law were served by hand delivery on this 10th day of August, 2006, upon

      Claire Whitaker, Esq.
      Assistant United States Attorney
      Office of the United States Attorney for the District of Columbia
      555 Fourth Street, N.W.
      Washington, D.C. 20001

      Carl Turner, Esq.
      Office of Chief Counsel
      U.S. Food and Drug Administration
      5600 Fishers Lane, Mail Code: GCF-1
      Rockville, MD 20857-0001

      *Counsel for United States Food and Drug Administration*

and by Federal Express, overnight delivery, upon

      Ian D. Roffman, Esq.
      U.S. Securities and Exchange Commission
      Boston District Office
      33 Arch Street
      Boston, MA 02110

      *Counsel for United States Securities and Exchange Commission*

              By: _____
                     Jason A. Levine

## TABLE OF CONTENTS

*In re Subpoena in SEC v. Biopure Corp., et al.*,  MISC. No. _____

**Description**                                                                                                                  **Tab**

Third-party Subpoena to Dr. Andrew C. von Eschenbach, Acting
Commissioner of FDA (Mar. 24, 2006)............................................................Exhibit 1

Third-party Subpoena to Dr. Toby Silverman (Mar. 27, 2006)..................................Exhibit 2

Third-party Subpoena to Dr. Laurence Landow (Mar. 27, 2006)..............................Exhibit 3

Third-party Subpoena to Franklin Stephenson (Mar. 27, 2006)................................Exhibit 4

Third-party Subpoena to Abdu Alayash (Mar. 27, 2006).........................................Exhibit 5

Moore *Touhy* Request Letter (Mar. 24, 2006).......................................................Exhibit 6

FDA Letter Objecting to Third-party Subpoenas and Requesting
Withdrawal (Apr. 3, 2006)..............................................................................Exhibit 7

SEC Inter-agency *Touhy* Request Letter (Apr. 21, 2006).........................................Exhibit 8

FDA Transmittal Letter (June 28, 2006)..............................................................Exhibit 9

FDA Letter to SEC Regarding Biopure Press Release (Aug. 8, 2003)......................Exhibit 10

Transcript of March 16, 2006 Proceedings before Judge Saris ..................................Exhibit 11

Moore Supplement to *Touhy* Request (Apr. 24, 2006)............................................Exhibit 12

FDA Letter Denying Expedited Processing (May 16, 2006)......................................Exhibit 13

Moore Letter Regarding Discovery Issues (May 3, 2006) .........................................Exhibit 14

SEC Letter Responding to Discovery Letter (May 3, 2006) ......................................Exhibit 15

Moore Letter Regarding *Yousuf* (July 11, 2006) ....................................................Exhibit 16

Moore Letter Regarding FDA Document Production (July 28, 2006)........................Exhibit 17

# EXHIBIT 1

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

March 24, 2006

## BY HAND DELIVERY

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane
Mail Code: GCF-1
Rockville, Maryland 20857-0001

      Re:    *S.E.C. v. Biopure Corp.,* Civ. No. 05-11853-PBS (D. Mass.)

Dear Mr. Shane:

Please find enclosed a third-party subpoena regarding the above referenced matter. Please note that we are simultaneously submitting a *Touhy* request for the same documents and witnesses to Dr. Andrew C. von Eschenbach, Acting Commissioner for the FDA. As a precaution only, we are serving upon the FDA the enclosed subpoena. We are aware of the pending litigation concerning the FDA's amenability to the subpoena power of federal courts, and we will withdraw the subpoena after the FDA satisfies our *Touhy* request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of
Columbia; admitted only in Maryland. Supervised
by principals of the Firm who are members of the
District of Columbia Bar.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF    COLUMBIA

U.S. Securities and Exchange Commission

V.

Biopure Corporation, Thomas Moore, Howard Richman, and Jane Kober

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-11853 -PBS

(Pending in U.S. District Court for the District of Massachusetts)

**TO:** Dr. Andrew C. von Eschenbach, Acting Commissioner Commissioner    U.S. Food and Drug Administration    Office of the

Parklawn Building    5600 Fishers Lane    Rockville, MD 20856

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): ☐☐    See Schedule A attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | May 1, 2006 |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Thomas A. Moore | March 24, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D.    In producing documents, all documents that are stored electronically (*e.g.*, word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

     G.    In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

     H.    If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

     I.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

     J.    All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

2

A.    "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B.    "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C.    "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D.    "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E.    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F.    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G.    The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.    The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.    The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

4

2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.    Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

    a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN:  125066/0);

5

e.   "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

f.   "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

g.   transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.   All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.   All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.   All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Michael Shane, for the U.S. Food and Drug Administration, was served on this 24th day of March, 2006 on the following in the manner indicated:

### By Hand Delivery

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane, GCF-1
Rockville, MD 20857-0001


By: _____
Heather L. Sidwell

# EXHIBIT 2

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

March 27, 2006

**BY HAND DELIVERY**

Toby A. Silverman, M.D., Chief
Clinical Review Branch
Division of Hematology
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike, HFM-392
Rockville, Maryland 20852

Re:    *S.E.C. v. Biopure Corp.*, Civ. No. 05-11853-PBS (D. Mass.)

Dear Dr. Silverman:

In connection with the above-referenced matter, please find the enclosed subpoena requiring you to appear for testimony on Thursday, June 22, 2006, at 10:00 a.m. at the office of McDermott Will & Emery LLP, located at 600 Thirteenth Street, N.W., Washington, DC 20005.

We have made a contemporaneous *Touhy* request for your testimony through Dr. Andrew C. von Eschenbach, Acting Commissioner of FDA. The enclosed subpoena is merely a precaution, and will be withdrawn once the FDA satisfies our *Touhy* request. Please note, therefore, that the date of your testimony (as set forth above) may be superseded by agreement with the FDA, based on its response to our *Touhy* request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of Columbia;
admitted only in Maryland. Supervised by principals of the
Firm who are members of the District of Columbia Bar.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF   COLUMBIA

U.S. Securities and Exchange Commission

V.

Biopure Corporation, Thomas Moore, Howard Richman,☐and Jane Kober

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-11853 -PBS ☐

(Pending in U.S. District Court for the District of Massachusetts)☐

TO:  Dr. Toby Silverman☐      U.S. Food and Drug Administration☐      1401 Rockville Pike☐      Rockville, MD 20852☐

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | June 22, 2006   10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): ☐☐                    See Schedule A attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | June 22, 2006 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Thomas A. Moore       *[signature]* | March 27, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | | PLACE |
|---|---|---|
| | SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

. (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply with production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D.    In producing documents, all documents that are stored electronically (*e.g.*, word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld:  date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

G.    In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information:  date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

H.    If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

I.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

J.    All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

2

A.    "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B.    "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C.    "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D.    "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E.    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F.    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G.    The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

3

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.     The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.     The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.     The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.     The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.     The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

4

2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2. All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3. Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4. The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5. All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6. All drafts and electronic copies (including metadata) of the following documents:

    a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

5

    e.    "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

    f.    "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

    g.    transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.    All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.    All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.    All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Toby A. Silverman was served on this 27th day of March, 2006, on the following in the manner indicated:

### By Hand Delivery

Toby A. Silverman, M.D., Chief
Clinical Review Branch
Division of Hematology
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike, HFM-392
Rockville, MD 20852


By: _Heather L. Sidwell_
  Heather L. Sidwell

# EXHIBIT 3

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

March 27, 2006

**BY HAND DELIVERY**

Laurence Landow, M.D.
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, Maryland 20852

Re:    _S.E.C. v. Biopure Corp._, Civ. No. 05-11853-PBS (D. Mass.)

Dear Dr. Landow:

In connection with the above-referenced matter, please find the enclosed subpoena requiring you to appear for testimony on Wednesday, June 21, 2006, at 10:00 a.m. at the office of McDermott Will & Emery LLP, located at 600 Thirteenth Street, N.W., Washington, DC 20005.

We have made a contemporaneous _Touhy_ request for your testimony through Dr. Andrew C. von Eschenbach, Acting Commissioner of FDA. The enclosed subpoena is merely a precaution, and will be withdrawn once the FDA satisfies our _Touhy_ request. Please note, therefore, that the date of your testimony (as set forth above) may be superseded by agreement with the FDA, based on its response to our _Touhy_ request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of Columbia;
admitted only in Maryland. Supervised by principals of the
Firm who are members of the District of Columbia Bar.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF ___COLUMBIA___

U.S. Securities and Exchange Commission

V.

Biopure Corporation, Thomas Moore, Howard Richman,☐and Jane Kober

**SUBPOENA IN A CIVIL CASE**

Case Number:¹ 05-11853 -PBS ☐
(Pending in U.S. District Court for the District of Massachusetts)☐

TO: Dr. Laurence Landow☐    U.S. Food and Drug Administration☐    1401 Rockville Pike☐    Rockville, MD 20852☐

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | DATE AND TIME June 21, 2006  10:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): ☐☐    See Schedule A attached hereto.

| PLACE McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | DATE AND TIME June 21, 2006 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below:

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Defendant Thomas A. Moore | DATE March 27, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | |
|---|---|
| DATE | PLACE |
| SERVED: | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D,    In producing documents, all documents that are stored electronically (*e.g.*, word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

G.      In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information:  date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

H.      If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

I.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

J.      All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

2

A. "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B. "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C. "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D. "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E. The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F. The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G. The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

3

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.     The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.     The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.     The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.     The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.     The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

4

2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.    Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

    a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

e.  "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

f.  "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times: March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

g.  transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.  All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.  All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.  All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Laurence Landow was served on this 27th day of March, 2006, on the following in the manner indicated:

### By Hand Delivery

Laurence Landow, M.D.
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, MD 20852

By: _Heather L. Sidwell_

Heather L. Sidwell

# EXHIBIT 4

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

March 27, 2006

## BY HAND DELIVERY

Franklin T. Stephenson
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, Maryland 20852

Re:    *S.E.C. v. Biopure Corp.*, Civ. No. 05-11853-PBS (D. Mass.)

Dear Mr. Stephenson:

In connection with the above-referenced matter, please find the enclosed subpoena requiring you to appear for testimony on Tuesday, June 20, 2006, at 10:00 a.m. at the office of McDermott Will & Emery LLP, located at 600 Thirteenth Street, N.W., Washington, DC 20005.

We have made a contemporaneous *Touhy* request for your testimony through Dr. Andrew C. von Eschenbach, Acting Commissioner of FDA. The enclosed subpoena is merely a precaution, and will be withdrawn once the FDA satisfies our *Touhy* request. Please note, therefore, that the date of your testimony (as set forth above) may be superseded by agreement with the FDA, based on its response to our *Touhy* request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of Columbia;
admitted only in Maryland. Supervised by principals of the
Firm who are members of the District of Columbia Bar.

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington, D.C. 20005-3096  Telephone: 202.756.8000  Facsimile: 202.756.8087  www.mwe.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF ___ COLUMBIA

| | |
|---|---|
| U.S. Securities and Exchange Commission<br>V.<br>Biopure Corporation, Thomas Moore, Howard Richman,□and Jane Kober | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:¹ 05-11853 -PBS □<br>(Pending in U.S. District Court for the District of Massachusetts)□ |

TO: Franklin Stephenson□     U.S. Food and Drug Administration□     1401 Rockville Pike□     Rockville, MD 20852□

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | DATE AND TIME<br>June 20, 2006   10:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): □□     See Schedule A attached hereto.

| PLACE<br>McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | DATE AND TIME<br>June 20, 2006 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Thomas A. Moore   /signature/ | DATE<br>March 27, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc.<br>www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|
| | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D.    In producing documents, all documents that are stored electronically (*e.g.*, word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

G.    In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

H.    If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

I.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

J.    All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

A.    "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B.    "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C.    "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D.    "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E.    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F.    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G.    The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

3

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.      The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.      The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.      The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.      The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.      The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.      All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

4

2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.    Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

    a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference:  BB-IND 10962);

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN:  125066/0);

5

e.  "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

f.  "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

g.  transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.  All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.  All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.  All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Franklin T. Stephenson was served on this 27th day of March, 2006, on the following in the manner indicated:

### By Hand Delivery

Franklin T. Stephenson
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, MD 20852

By: _____
Heather L. Sidwell

# EXHIBIT 5

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

March 27, 2006

## BY HAND DELIVERY

Abdu Alayash, Ph.D.
Laboratory of Biochemistry and Vascular Biology
Division of Hematology
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, Maryland 20852

Re:    *S.E.C. v. Biopure Corp.*, Civ. No. 05-11853-PBS (D. Mass.)

Dear Dr. Alayash:

In connection with the above-referenced matter, please find the enclosed subpoena requiring you to appear for testimony on Monday, June 19, 2006, at 10:00 a.m. at the office of McDermott Will & Emery LLP, located at 600 Thirteenth Street, N.W., Washington, DC 20005.

We have made a contemporaneous *Touhy* request for your testimony through Dr. Andrew C. von Eschenbach, Acting Commissioner of FDA. The enclosed subpoena is merely a precaution, and will be withdrawn once the FDA satisfies our *Touhy* request. Please note, therefore, that the date of your testimony (as set forth above) may be superseded by agreement with the FDA, based on its response to our *Touhy* request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of Columbia;
admitted only in Maryland. Supervised by principals of the
Firm who are members of the District of Columbia Bar.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF  COLUMBIA

U.S. Securities and Exchange Commission

V.

Biopure Corporation, Thomas Moore, Howard Richman,□and Jane Kober

TO:  Abdu Alayash□        U.S. Food and Drug Administration□

### SUBPOENA IN A CIVIL CASE

Case Number:¹ 05-11853 -PBS □
(Pending in U.S. District Court for the District of Massachusetts)□
1401 Rockville Pike□        Rockville, MD 20852□

---

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☒ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | June 19, 2006  10:00 a.m. |

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): □□                    See Schedule A attached hereto.

| PLACE | DATE AND TIME |
| --- | --- |
| McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | June 19, 2006 |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Attorney for Defendant Thomas A. Moore   [signature] | March 27, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| DATE<br>SERVED: | PLACE |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

Produced by the DocuNIP.com<br>www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D,    In producing documents, all documents that are stored electronically (*e.g.*, word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld:  date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

G.     In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information:  date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

H.     If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

I.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

J.     All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

2

A.    "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B.    "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C.    "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D.    "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E.    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F.    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G.    The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

3

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.    The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.    The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.    Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

    a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

5

e.   "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

f.   "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

g.   transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.   All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.   All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.   All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Abdu Alayash was served on this 27th day of March, 2006, on the following in the manner indicated:

### By Hand Delivery

Abdu Alayash, Ph.D.
Laboratory of Biochemistry and Vascular Biology
Division of Hematology
Office of Blood Research and Review
Center for Biologics Evaluation and Research (CBER)
Food and Drug Administration
1401 Rockville Pike
Rockville, MD 20852

By: _Heather L. Sidwell_____
Heather L. Sidwell

# EXHIBIT 6

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202.756.8021

March 24, 2006

**VIA FACSIMILE AND COURIER**

Dr. Andrew C. von Eschenbach
Acting Commissioner
United States Food and Drug Administration
Office of the Commissioner
Parklawn Building
Mail Code: HF-1
5600 Fishers Lane
Rockville, Maryland 20856

      Re:    *Touhy* Request for *S.E.C. v. Biopure Corp.,* Civ. No. 05-11853-PBS (D. Mass)

Dear Commissioner von Eschenbach:

Pursuant to 21 C.F.R. §§ 20.1(c) and 20.2(a), on behalf of Thomas A. Moore, the former Chief
Executive Officer of Biopure Corporation ("Biopure") and a defendant in the above-captioned
SEC enforcement action, we hereby request the production of certain FDA documents and
records, and the production of certain FDA witnesses for deposition. For the following reasons,
this request complies with FDA's *Touhy* regulations.[1]

**A.**    **Mr. Moore Has a Compelling Need for the Requested Documents and Testimony,**
        **Which Are Narrowly Tailored To Minimize the Burden Upon the FDA.**

This case concerns public statements and disclosures that Mr. Moore and the other defendants
made regarding the FDA's pre-market review of Hemopure®, a biologic developed by Biopure.
With a trial date of January 15, 2007, the Court recently set deadlines of May 15, 2006 for
document requests, July 1, 2006 for the production of documents, and October 31, 2006 for all
depositions. The requested documents and testimony are central to Mr. Moore's defense. In
addition, the Court stated on the record during a scheduling conference on March 16, 2006, that
the FDA's failure to comply timely with a *Touhy* request would severely jeopardize the SEC's
ability to proceed with its case. Accordingly, from the perspective of Mr. Moore and the SEC,
there is a compelling need for satisfaction of Mr. Moore's request. *See* 21 C.F.R. § 20.44(a).

---

[1] As a precaution only, we are separately serving upon the FDA subpoenas for production of the same documents
and witnesses. We are aware of the pending litigation concerning the FDA's amenability to the subpoena power of
federal courts, and we will withdraw the subpoenas after the FDA satisfies this *Touhy* request.

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W.  Washington, D.C.  20005-3096  Telephone: 202.756.8000  Facsimile: 202.756.8087  www.mwe.com

Acting Commissioner von Eschenbach
March 24, 2006
Page 2

Further, the request is narrowly tailored to seek only those documents and witnesses that are essential to Mr. Moore's defense. Responding to the request should not cause the FDA any undue burden. Indeed, in the investigatory phase of this case, the FDA produced three of its employees for sworn testimony, taken by the SEC, within seven days of the SEC's request. Mr. Moore now requests the opportunity to take the depositions of these same individuals. The FDA also produced certain documents to the SEC within nine days of the SEC's request. Hence, timely compliance with Mr. Moore's *Touhy* request should not burden the FDA, nor should any follow-up request by Mr. Moore that the FDA's responsive documents or testimony may necessitate.

In addition, Mr. Moore's depositions of the FDA employees identified herein would serve both the public interest and the FDA's own objectives. The SEC and the FDA have announced a joint task force to help protect the investing public and maintain the integrity of the securities markets. A necessary component of both goals is the right of an accused to defend himself against the SEC's allegations, particularly in view of the FDA's policy of neutrality in matters unrelated to official FDA business. *See* 21 C.F.R. § 20.1(c); FDA Regulatory Procedures Manual 10-12. Because the SEC intends to call the identified FDA employees as witnesses at trial of this case, it is crucial that Mr. Moore have a full opportunity to take their depositions. We will conduct these depositions in Washington, D.C., to minimize travel time and cost for the FDA.

**B.     Request for Production of Documents and Records Pursuant to 21 C.F.R. § 20.2(a).**

Mr. Moore hereby requests that the FDA produce to the undersigned, as promptly as possible but no later than May 1, 2006, the following documents and records:

1.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.     Other handwritten or typed notes or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.     The final July 30, 2003 letter relating to Biopure's BLA, including any FDA "concurrence" sheets.

Acting Commissioner von Eschenbach
March 24, 2006
Page 3

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30,
       2004, relating to Biopure or Hemopure for which one or more of the following
       FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients:
       Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby
       Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

       a.    April 25, 2003 Basil Golding letter to Howard Richman regarding
              Biopure's IND application (FDA Reference:  BB-IND 10962);

       b.    May 30, 2003 Basil Golding letter to Howard Richman regarding
              Biopure's IND application (FDA Reference:  BB-IND 10962);

       c.    July 30, 2003 Basil Golding letter to Howard Richman regarding
              Biopure's IND application (FDA Reference:  BB-IND 10962);

       d.    July 30, 2003 Basil Golding letter to Howard Richman regarding
              Biopure's Hemopure BLA (FDA Reference STN:  125066/0);

       e.    "Telecon with Biopure" memoranda by Franklin Stephenson dated July
              31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and
              September 16, 2003;

       f.    "Record of Telephone Conversation" memoranda concerning telephone
              contact with Howard Richman on the following dates and times:  March
              13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at
              16:05:48;

       g.    transcription of September 10, 2003 Howard Richman voicemail to
              Franklin Stephenson.

7.    All communications between the FDA and the SEC (and any notes or memoranda
       reflecting such communications) since July 31, 2002, relating to Biopure
       Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.    All documents describing or concerning the policy of inter-agency cooperation
       between the FDA and the SEC to increase the public's protection from false and
       misleading statements, including communications between the FDA and the SEC.

9.    All documents describing or concerning proposed or actual revisions to CBER's
       Standard Operating Procedures and Policies 8405, versions #2 and #3.

Acting Commissioner von Eschenbach
March 24, 2006
Page 4

**C.    Request for Production of Witnesses for Deposition Pursuant to 21 C.F.R. § 20.1(c).**

Mr. Moore hereby requests that the FDA produce, as promptly as possible, but no later than <u>August 1, 2006,</u> the following FDA employees for deposition:

1.    Abdu Alayash (date and time to be determined)

2.    Dr. Lawrence Landow (date and time to be determined)

3.    Dr. Toby Silverman (date and time to be determined)

4.    Franklin Stephenson (date and time to be determined)

\*    \*    \*    \*    \*

Thank you for your cooperation. Please do not hesitate to contact me at (202) 756-8021 with any questions or concerns about the foregoing.

Sincerely,

Jason A. Levine

On this 24th day of March, 2006, before me, the undersigned notary public, personally appeared Jason A. Levine, whom I personally know, who signed the preceding document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

(official signature and seal of notary)

My Commission expires: *June 30, 2006*

cc:    Thomas A. Moore
        Robert Buhlman, Esq. (counsel to Biopure Corporation)
        Thomas Dougherty, Esq. (counsel to Jane Kober)
        Cathy Fleming, Esq. (counsel to Howard Richman)
        Ian Roffman, Esq. (SEC counsel)

# EXHIBIT 7

**DEPARTMENT OF HEALTH & HUMAN SERVICES**　　　　　Office of the General Counsel

_____

Office of the Chief Counsel
Food and Drug Administration
5600 Fishers Lane, GCF-1
Rockville, MD 20857

April 3, 2006

**VIA FACSIMILE AND**
**U.S. MAIL (202)-756-8087**

Heather L. Sidwell
McDermott, Will & Emery LLP
60 Thirteenth Street, N.W.
Washington, D.C. 20005

> Re:　Securities and Exchange Commission v. Biopure Corp., et al.,
> Civil Action No. 05-11853-PBS

Dear Ms. Sidwell:

I write on behalf of the United States Food and Drug Administration ("FDA") in response to the five third-party subpoenas that were served on the Department of Health and Human Services on March 24 and 27, 2006. The March 24 subpoena, issued on behalf of Thomas A. Moore, seeks documents from Dr. Andrew C. von Eschenbach, Acting Commissioner of the FDA, for use in the referenced case. Four March 27 subpoenas, also issued on behalf of Thomas Moore, seek testimony and documents from four FDA employees (Toby Silverman, Abdu Alayash, Lawrence Landow, and Franklin Stephenson). As you are aware, on January 20, 2006, United States Magistrate Judge Alan Kay granted the FDA's motion to quash third-party subpoenas issued by Biopure Corporation (your co-defendant in the referenced case) and denied Biopure's motion to compel discovery in case number 1:05-mc-00506-RWR-AK (the "January 20 Order"). For the reasons discussed below, those stated in our pleadings concerning Biopure's third-party subpoenas, as well as those stated in the January 20 Order, FDA, a non-party in the above-referenced action, objects to Defendant Moore's March 24 and March 27 subpoenas and requests that they be withdrawn.

As explained in Magistrate Kay's January 20 Order, FDA cannot be compelled to testify or produce records in response to subpoenas issued pursuant to Rule 45 of the Federal Rules of Civil Procedure. Rule 45 provides, in part, that "[e]very subpoena shall . . . command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated . . . documents." Fed. R. Civ. P. 45(a)(1)(C). The Supreme Court has consistently held that, as a matter of plain meaning, "the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude [the government]." Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989) (first two alterations in original) (citation omitted); see also Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 780-81 (2000). Lower courts have therefore held that a subpoena issued pursuant to Rule 45 may not be used to seek discovery from an agency of the federal government because the term "person" as used in that Rule does not include the federal government. See

Yousuf v. Samantar, No. 05-110, 2005 U.S. Dist. LEXIS 8488, at *14 (D.D.C. May 3, 2005) (holding that Rule 45 cannot be used to compel a federal agency to produce documents when it is not a party to the case); United States ex rel. Taylor v. Gabelli, No. 04-534, 2005 U.S. Dist. LEXIS 8489, at *7 (D.D.C. May 2, 2005) (stating that "the term 'person' in Rule 45, in the absence of a satisfactory basis to override this interpretive presumption [that 'person' excludes the sovereign], does not include the federal government"); Lerner v. District of Columbia, No. 00-1590, 2005 U.S. Dist. LEXIS 10154, at *17 (D.D.C. Jan. 7, 2005) (finding that the court lacked jurisdiction to subpoena the federal government because the 'requisite affirmative indications' that the term 'person' in Rule 45 includes the federal government are absent"); see also Al-Fayed v. CIA, 229 F.3d 272, 276-77 (D.C. Cir. 2000) (affirming the district court's quashing of a subpoena issued under 28 U.S.C. § 1782 because there was no "affirmative evidence to disturb the presumption that 'person' excludes the sovereign"); but see In re Vioxx, No. MDL No. 1657 (E.D. La. Mar. 13, 2006).

Furthermore, even if FDA could properly be compelled to produce records and testimony in response to subpoenas issued pursuant to Rule 45, the agency objects to Moore's March 24 and March 27 subpoenas on the following additional grounds[1]:

    (1)    The subpoenas may require disclosure of information that is or contains proprietary, trade secret, confidential commercial, personal privacy, investigatory, pre-decisional, and/or agency deliberative process information that is protected from disclosure under the applicable laws, regulations, or privileges;

    (2)    The subpoenas are unduly burdensome in that they requests documents that may be maintained by agencies other than the FDA;

    (3)    The subpoenas are unduly burdensome in that they request documents, many of which are already in defendant's possession;

    (4)    The subpoenas are unduly burdensome in that they request documents regarding communications between FDA and Securities and Exchange Commission ("SEC") that Moore can request directly from the plaintiff in the underlying litigation;

    (5)    The subpoenas fail to allow reasonable time for the agency to comply. Given the breath of the subpoenas, it is simply impossible for the FDA to obtain, review, and redact the requested documents within the short window provided in the subpoenas.

Without waiving any of the objections above – and in light of the fact that on March 24, 2006, you requested the same documents and testimony pursuant to FDA's *Touhy* regulations – please note that FDA will process your requests in accordance with its established *Touhy* procedures.

---

    [1]    This written objection to producing documents does not preclude FDA from asserting at a later time additional bases for objecting to disclosure of FDA documents.

Your request for documents (pursuant to 21 C.F.R. § 20.2) will be forwarded to the appropriate offices and divisions within the agency. Furthermore, pursuant to FDA regulations, FDA anticipates providing releasable documents to SEC so that they can be turned over to your client, provided that appropriate releases are obtained for any documents that contain confidential Biopure information or information otherwise protected from public disclosure. Moreover, it is my understanding that the SEC has already released to your client all FDA documents that were provided to SEC by FDA, as well as transcripts of investigative testimony provided by FDA employees.

Your request for testimony pursuant to 21 C.F.R. § 20.1(c) will be reviewed by FDA's Office of Enforcement, Division of Compliance Policy, which handles such testimony requests. If depositions are authorized in response to your request under 21 C.F.R § 20.1, FDA will coordinate with you to arrange the dates and times.

Finally, I am returning four checks (numbers 6152, 6153, 6154, and 6155), each for $42.50, that were attached to your subpoenas. Please feel free to contact me at (301) 827-2802 if you would like to discuss this matter further.

Sincerely,

Michael Shane
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration

cc:    Anne P. Smith, Testimony Specialist, FDA
       AUSA Claire Whitaker

3

# EXHIBIT 8



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BOSTON DISTRICT OFFICE
33 ARCH STREET
23ᴿᴰ FLOOR
BOSTON, MA 02110-1424
PHONE: 617-573-8800
FACSIMILE: 617-573-4590

IAN D. ROFFMAN
PHONE: 617-573-8987
EMAIL: ROFFMANI@SEC.GOV

April 21, 2006

<u>Via Overnight Delivery</u>

Gilliam B. Conley
Center for Biologics Evaluation and Research
Office of Compliance and Biologics Quality (HFM-654)
Division of Inspections and Surveillance
Woodmont Office Complex 1
1401 Rockville Pike, Room 400S
Rockville, MD 20852

Re:    <u>SEC v. Biopure, Civ. A. No. 05-11853-PBS (D. Mass.)</u>

Dear Mr. Conley:

Pursuant to 21 C.F.R. § 20.85, the Securities and Exchange Commission ("Commission") is requesting that the Food and Drug Administration ("FDA") produce the documents listed below and authorize the Commission to disclose these documents to defendants in the above-referenced action. I understand that FDA is prohibited pursuant to 21 U.S.C. 331(j) from disclosing trade secret information outside the Department of Health and Human Services. To the extent that the requested documents contain confidential commercial information that belongs to Biopure Corporation ("Biopure"), the individual defendants are in the process of obtaining Biopure's consent for disclosure in connection with this matter. I will forward that consent to you when I received it.

As counsel for the Commission has discussed with FDA counsel and with counsel for the defendants, the documents requested in this letter have been requested by defendants in the above-referenced action. The Commission is submitting this request to facilitate FDA's production of documents in compliance with FDA regulations. In making this request, the Commission expressly states that it is not taking a position as to the appropriateness of the document requests or as to the relevance or admissibility of responsive documents in the above-referenced action. The Commission further expressly reserves any and all of its rights to object to production of the requested document or to their use or admissibility in any pre-trial, trial or post-trial proceeding for any reason. Please note that the requested documents have also been the subject of other requests submitted by the defendants to the FDA in connection with this matter, and this letter is not intended to supercede defendants' other requests or to take a position as to

Letter to Gilliam B. Conley
April 21, 2006
Page 2

their compliance with applicable law or their enforceability.

**Requested Documents**

1.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.     All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons <u>other than</u> Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.     Other handwritten or typed notes or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31,2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.     The final July 30, 2003 letter relating to Biopure's BLA, including any FDA "concurrence" sheets.

5.     All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.     All drafts and electronic copies (including metadata) of the following documents:

   a.     April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

   b.     May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

   c.     July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

Letter to Gilliam B. Conley
April 21, 2006
Page 3

    d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

    e.    "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

    f.    "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

    g.    transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.    All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

8.    Personnel files of the following individuals:  Lawrence Landow, Toby Silverman and Franklin Stephenson.

9.    All "complete response letters" issued by the FDA between the dates January 1, 2003 and December 31, 2003.

If you have any questions about these requests or would like to discuss this matter further, please do not hesitate to contact me at 617-573-8987.

Very truly yours,

Ian D. Roffman

cc:    Jason A. Levine, counsel for defendant Thomas Moore
    Mary-Pat Cormier, counsel for defendant Howard Richman
    Michael Druckman, Michael Shane, counsel for FDA

# EXHIBIT 9



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

June 28, 2006

Securities and Exchange Commission
Boston District Office
6th Floor
73 Tremont Street
Boston, Massachusetts 02108

Attention: Ian D. Roffman

Dear Mr. Roffman:

This letter responds to your April 21, 2006, request pursuant to 21 CFR 20.85 for documents that the defendants in SEC v. Biopure, Civ. A. No. 05-11853-PBS (D.Mass.) seek as discovery in that case, and for further authorization to disclose those documents to the defendants.

I have authorized Mr. Gilliam Conley and Dr. Maureen Knippen from FDA's Center for Biologics Evaluation and Research to provide directly to you the documents that you request, subject to the following limitations. First, as you acknowledge in your request, the U.S. Food and Drug Administration (FDA) is prohibited by 21 U.S.C. § 331(j) from disclosing trade secret information outside the Department of Health and Human Services. All trade secret information will be redacted from those documents.

Second, as you also acknowledge in your letter, many of the responsive documents contain confidential commercial information (CCI) that belongs to Biopure Corporation ("Biopure"). You represented in your request that the individual defendants were in the process of obtaining Biopure's consent to disclose to them in this case any and all CCI that is contained in responsive documents. To date, we have not received a copy of Biopure's consent. Consequently, our authorization for you to further disclose these documents to the defendants in this case other than Biopure is contingent on your obtaining and providing FDA with a copy of Biopure's consent.

Third, many of the responsive documents contain deliberative process documents that are privileged. FDA has delegated authority to waive that privilege in appropriate circumstances. In this matter, FDA has determined that it is appropriate to waive the privilege for documents that reveal FDA's deliberative process for decisions that have already been made, such as to place Biopure's Investigational New Drug application (IND) on clinical hold and to send Biopure a Complete Response letter in response to its Biologics License Application (BLA). However, FDA has determined that it is not appropriate to waive the deliberative process privilege for records that reflect FDA's current deliberations about determinations that have not yet been

SEC LIT 0001099

made. For that reason, FDA will withhold any documents that disclose deliberations on decisions that have not been made.

Fourth, to the extent the documents contain information revealing confidential information that an entity other than Biopure owns, or that would be protected from a public disclosure request under 5 U.S.C. § 552(b)(6) or (b)(7), FDA will withhold those documents or redact the documents to the extent necessary to protect that confidential information.

Finally, as you communicated by voicemail to Associate Chief Counsel Mike Druckman, the defendants have agreed, at least for the time being, to stay their requests for personnel files of certain individuals (item 8 in your letter) and for complete response letters (item 9 in your letter).

If you have any questions, please contact Dave Krawetz of my office at 240-632-6841. Additionally, you may also contact the following individuals: Gilliam B. Conley, CBER, at 301-827-6220 or by email at gilliam.conley@fda.hhs.gov; Dr. Maureen Knippen, CBER, at 301-827-6351 or by email at Maureen.knippen@fda.hhs.gov, or Mike Druckman, Esq., at 301-827-5168, or by email at Michael.druckman@fda.hhs.gov.

Sincerely,

*for Carl C. Berger*

David K. Elder
Director, Office of Enforcement

SEC LIT 0001100

DEPARTMENT OF HEALTH & HUMAN SERVICES

Food and Drug Administration
Rockville, MD  20857

June 28, 2006

Securities and Exchange Commission
Boston District Office
6th Floor
73 Tremont Street
Boston, Massachusetts  02108

Attention: Ian D. Roffman

Dear Mr. Roffman:

The Center for Biologics Evaluation and Research (CBER) has concluded its review and redaction of certain documents you requested, pursuant to 21 C.F.R. § 20.85, in your April 21, 2006 letter to Gilliam B. Conley, Director of the Division of Inspections and Surveillance within the Office of Compliance and Biologics Quality. In that letter, you requested certain documents that the defendants in SEC v. Biopure, Civ. A. No. 05-118653-PBS (D. Mass.) seek as discovery in that case. You also sought authority to further disclose those documents to the defendants.

Mr. Elder authorized me to review the documents you have identified, and to provide you with the records you seek, subject to the limitations set forth in her letter, a copy of which is attached hereto. I have done that, and enclosed those records with this letter. As Mr. Elder's letter states, you may not disclose these documents to the defendants in that case until you obtain consent from Biopure to disclose its CCI to those defendants and provide FDA with a copy of the letter or document memorializing Biopure's consent.

If you have any questions, please contact me at 301-827-6350 or by email at Gilliam. Conley@fda.hhs.gov or Mike Druckman, Esq., at 301-827-5168, or by email at Michael.druckman@fda.hhs.gov.

Sincerely,

Gilliam B. Conley
Director, Division of Inspections and Surveillance
Office of Compliance and Biologics Quality
Center for Biologics Evaluation and Research

Enclosures

SEC LIT 0001098

# EXHIBIT 10

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration

Center for Biologics Evaluation and
Research
1401 Rockville Pike
Rockville MD 20852-1448

August 8, 2003

Laurie Stegman
Special Counsel to the Director
Division of Enforcement
Securities and Exchange Commission
450 Fifth Street NW
Washington, DC 20549

Certified Mail Return Receipt

Re:     Biopure Corporation
        11 Hurley Street
        Cambridge, MA 02141

Dear Ms. Stegman:

This letter is in follow-up to a recent phone conversation between you and
Ms. Coleen Klasmeier of the Office of the Chief Counsel of the Food and
Drug Administration (FDA). It has come to the attention of the FDA that
information in a press release dated 8/1/2003 and posted by Biopure
Corporation on its internet website, http://www.biopure.com, may not be a fair
and accurate disclosure of information to public investors. The press release
may not accurately reflect the magnitude of concerns expressed by FDA's
Center for Biologics Evaluation and Research (CBER) about deficiencies in
the biologics license application (BLA) for the firm's investigational product
"Hemopure." We enclose a copy of CBER's July 30, 2003 letter (redacted to
remove trade secret information that, under 21 USC 331(j), we are not
permitted to release outside of the Department of Health and Human
Services) to Biopure Corporation, so that the SEC can determine whether or
not the press release complies with the registrant's statutory requirements for
disclosure to public investors.

For your information, the SEC's letter of February 5, 2003 (Jeffrey P. Riedler,
Assistant Director, Division of Corporation Finance) asked CBER to review
the S-3 registration filed by Biopure Corporation on 1/29/03 and the annual
report on form 10-K for the fiscal year ending 10/31/02, SEC file #333-
102786. We replied (letter of 3/26/2003) "The information in the registration
statement is accurate as it pertains to Hemopure [hemoglogin glutamer-250

SEC LIT 000325

L. Stegman, p.2

(bovine), or HBOC-201] for human use." The records enclosed with this letter to you provide facts or additional information to supplement our previous communication concerning Biopure Corporation.

Please note that under the SEC's existing agreement with FDA, the information provided is not publicly disclosable without written permission from FDA. If you have any questions, please call me at 301-827-6220.

Sincerely,

Elaine Knowles Cole
Director, Division of Inspections
 and Surveillance (HFM-650)
Office of Compliance and Biologics
Quality

Enclosure: as stated

Cc: C. Klasmeier GCF-1

SEC LIT 000326

L. Stegman, p.3

Bcc:
Reference- STN 125066/0
HFM-1 Goodman
HFM-4 Elengold
HFM-600 Masiello
HFM-600 Cohen
HFM-650 Cole
HFM-650 J.Davis
HFM-664 R.Wesley
HFM-664 P. Holobaugh
HFM-340 Golding
HFM- 300 J. Epstein
HFM-44 J.Binkley
HFC-200 D.Elder
HFC-230 S.Sheehan
HF-1 S.Gottlieb
Redactions reviewed by OCTMA (Binkley/Brockner Ryan) 8/8/2003
EKCole:ekc:8/8/2003

SEC LIT 000327

EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


SECURITIES AND EXCHANGE COMMISSION,)
                                   )
                Plaintiff          )
                                   )
        -VS-                       ) CA No. 05-11853-PBS
                                   ) Pages 1 - 27
BIOPURE CORPORATION, et al,        )
                                   )
                Defendants         )


STATUS CONFERENCE

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
March 16, 2006, 3:30 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

Page 2

1    A P P E A R A N C E S:

2        IAN D. ROFFMAN, ESQ., R. DANIEL O'CONNOR, ESQ., and
     ELLEN E. BOBER MOYNIHAN, ESQ., Securities and Exchange
3    Commission MA, 33 Arch Street, 23rd Floor, Boston,
     Massachusetts, 02110-1424, for the Plaintiff.
4
         ROBERT A. BUHLMAN, ESQ. and DONALD J. SAVERY, ESQ.,
5    Bingham McCutchen, LLP, 150 Federal Street, Boston,
     Massachusetts, 02110, for the Defendant, Biopure Corporation.
6
         BOBBY R. BURCHFIELD, ESQ. and EDWARD P. LEIBENSPERGER,
7    ESQ., McDermott, Will & Emery, 28 State Street, Boston,
     Massachusetts, 02109-1775, for the Defendant, Thomas Moore.
8
         CATHY A. FLEMING, ESQ. and MARY-PAT CORMIER, ESQ.,
9    Edwards Angell Palmer & Dodge, 101 Federal Street, Boston,
     Massachusetts, 02110, for the Defendant, Howard Richman.
10
         JUSTIN J. DANIELS, ESQ., Skadden, Arps, Slate, Meagher
11   & Flom, LLP, One Beacon Street, 31st Floor, Boston,
     Massachusetts, 02108, for the Defendant, Jane Kober.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2            THE CLERK:  The case of the Securities and Exchange

3    Commission V. Biopure Corp., et al, Civil Action

4    No. 05-11853, will now be heard before this Court.  Will

5    counsel please identify themselves for the record.

6            MR. ROFFMAN:  Good afternoon, your Honor.  Ian

7    Roffman with Dan O'Connor and Ellen Moynihan on behalf of the

8    SEC.

9            MS. FLEMING:  Good afternoon, your Honor.  Cathy

10   Fleming with Mary-Pat Cormier, Edwards Angell Palmer &

11   Dodge.  We're here on behalf of the defendant, Howard

12   Richman.

13           MR. DANIELS:  Good afternoon, your Honor.  Justin

14   Daniels with Skadden Arps on behalf of the defendant, Jane

15   Kober.

16           MR. SAVERY:  Donald Savery, Bingham McCutchen, on

17   behalf of Biopure Corporation.

18           MR. BUHLMAN:  Good afternoon, your Honor.  Robert

19   Buhlman, Bingham McCutchen, also on behalf of Biopure

20   Corporation.

21           MR. BURCHFIELD:  Good afternoon, your Honor.  Bobby

22   Burchfield, McDermott, Will & Emery, on behalf of defendant,

23   Thomas Moore.

24           MR. LEIBENSPERGER:  Ed Leibensperger, McDermott

25   Will, on behalf of defendant, Thomas Moore.

Page 4

1          THE COURT:  Okay, so I got notice that part of this

2     has settled, or at least contingent on full submission of

3     proof.  Is that right?  So that's Biopure and Jane Kober?

4          MR. ROFFMAN:  Yes, your Honor, that's right.  We

5     participated in a mediation.  As you know, all settlements

6     that the Commission enters into have to be approved by the

7     Commissioners, and so we've started that process, but we have

8     an agreement in principle with Biopure.

9          THE COURT:  If you were a betting man, what would

10    you say?  More than 50 percent likelihood?

11         MR. ROFFMAN:  I think it is, yes, your Honor.  But,

12    of course, they are our client, so they will have the

13    ultimate authority.

14         THE COURT:  Of course.  So now we're dealing with

15    the other two defendants and what they want to happen.  Are

16    there settlement discussions ongoing with them?

17         MR. ROFFMAN:  I believe so, your Honor.  I would

18    probably ask them to answer that question more directly.

19    I've had some preliminary discussions with Mr. Richman's

20    counsel.  She participated in the mediation, and we've talked

21    about continuing that process.  Mr. Moore --

22         THE COURT:  But right now, it sounds like -- go

23    ahead.

24         MR. ROFFMAN:  Mr. Moore's counsel was on trial and

25    had a scheduling conflict, and so he wasn't able to

Page 5

1   participate in it.  But we have had a discussion about having

2   a discussion, and I think that's sort of where things stand

3   at the moment.

4        THE COURT:  Okay.  Obviously I'm asking for a

5   reason because we need a trial.  The only reason I expedited

6   this was because Biopure wanted me to expedite this.  It's an

7   unusually fast schedule for something of this complexity, so

8   I have no vested interest in having the trial in May.  On the

9   other hand, that tends to focus the attention.

10       So let me hear from counsel for Richman and Moore,

11  what you want me to do.

12       MS. FLEMING:  Your Honor, well, let me fill you in

13  on what we've done in the mediation.  There were two days, a

14  Thursday and then a Saturday, and Dr. Richman through me did

15  participate, but we were very much the third party as the

16  main negotiations were going on.  They continued on the

17  Saturday.  I just physically couldn't be there, I had a

18  family bar mitzvah, and we have had ongoing discussions about

19  continuing it.

20       The reason for the expedited track, which we all

21  had pushed for very hard in the beginning, and particularly

22  because Biopure -- candidly, I would have liked to have done

23  it very fast, but we've had a real stop with the FDA

24  discovery, which has been a problem for us, so we're now

25  asking for an adjournment.  We would suggest that we work out

Page 6

1    some dates with the SEC to get things accomplished and done

2    and take it from there.

3        THE COURT:  No.  I want to set the date now.

4    That's what I sort of want to do.  I have no vested --

5    really, May was going to be pressing us all up against the

6    wall, partly because of the FDA thing and partly because of

7    my trial schedule.  It was really because Biopure had been so

8    absolutely insistent on it that I kept it there.  And I guess

9    that's one of the reasons this settled, so that's a good

10   thing.  I don't want this to fall off a cliff, though, the

11   rest of it.

12       So let me just talk to you for a minute about the

13   FDA thing.  I, for the life of me, don't understand why you

14   didn't just follow those regulations.

15       MS. FLEMING:  We had, your Honor.  We filed a

16   Freedom of Information Act request before we were charged.

17       THE COURT:  No.  There's a very simple -- I think

18   they're called Touhy?

19       MS. FLEMING:  We have, your Honor, and we've had

20   responses, but the responses are that it will take until 2009

21   to get us the documents.

22       THE COURT:  Do this.  Do the rule, follow the rule,

23   okay, because I'm not putting off the trial unless you follow

24   the rule.  Okay, follow the rule.  Then, if they do not

25   comply in a timely way, which means by the time of my trial,

1   the SEC is going to have a problem, okay.  But follow the

2   rule because without that, I'm going to deny any request for

3   a continuance.  The rule has been there from the beginning of

4   time.

5          Now, maybe you didn't know about it then, but you

6   sure know about it now, and I don't understand why you

7   haven't followed the rule.  That puts the laboring oar on

8   them to do it in a timely way by the time a federal judge has

9   scheduled the trial.

10         Let me ask you this:  Is there any principled

11  reason why the FDA hasn't complied other than this

12  regulation?  I mean, is there something like national

13  security, terrorism, something I'm not familiar with?

14         MR. ROFFMAN:  Your Honor, it's actually all of

15  them.  There's two separate issues.  One is documents, and

16  the other is depositions.  For depositions, it really is,

17  they just haven't followed the rule.  And as soon as they

18  submit the request, the FDA will process it, and I think that

19  they'll be able to get the depositions.

20         THE COURT:  Immediately, immediately, I mean,

21  because they can't -- you know, I know the federal

22  government, okay.  I used to be chief of civil in the U.S.

23  Attorney's office a million years ago, and also -- also --

24  I've been a judge now for twelve years here, twenty years all

25  together, okay?  So it can't be when the agency gets around

Page 8

1    to it.  It's got to be immediately.  But you have to cross

2    the T and dot the I.

3                MS. FLEMING:  Your Honor, we have.  We have

4    submitted the requests.  We have done the alternate paths.

5                THE COURT:  Well, when I got all that screaming and

6    yelling back and forth, that wasn't what was said in my

7    brief.

8                MS. FLEMING:  I think what we did is cited it down

9    in the footnotes, what steps we had taken as well to comply

10   with -- not only with doing it under the rules of discovery

11   in this court, but that we had taken steps to comply with the

12   Touhy regulations, that we were doing this --

13               THE COURT:  I wish somebody, instead of screaming

14   about the Constitution, it would have been a lot quicker to

15   have just told me you did the regulation and that they're

16   just slow in responding, instead of the volumes of briefs

17   that I got.  I didn't see the fine print in some footnote

18   somewhere.

19               All right, now, is it correct she's now followed

20   the regulations?

21               MR. ROFFMAN:  Your Honor, with respect to -- I

22   don't think they have with respect to depositions, but --

23               THE COURT:  Why?  What haven't they done it?

24               MR. ROFFMAN:  What they have to do is write a

25   letter that explains the reason why they need testimony

Page 9

1    addressed to the Commissioner of the FDA.

2            THE COURT:  Would you help because your case is

3    going to suffer?

4            MR. ROFFMAN:  I will.  And if they've done it, I've

5    never seen it.

6            THE COURT:  Do you have the letter that you've

7    written?

8            MS. FLEMING:  I don't have the letter with me, your

9    Honor.  I have the footnote which refers to the steps --

10           THE COURT:  You know, the briefing was annoying

11   because it was talking -- it's a very -- it puts the thing in

12   a totally different setting when you're talking about due

13   process clause and you don't tell me you followed the

14   regulation.  So why don't you file with me exactly what you

15   did on the Touhy regulation, all right?

16           MS. FLEMING:  We will do it, your Honor.  We will

17   do it.

18           THE COURT:  So let's assume that they've done it.

19   What is the FDA telling you about how quickly they can get a

20   turnaround on it?

21           MR. ROFFMAN:  Well, can I just address the

22   documents for a second because I think that's a separate

23   issue.  The FDA really has an agencywide and, I think,

24   legitimate concern about documents because they get

25   subpoenas, Congressional requests, terrorism-related

Page 10

1    requests, and they have an enormous backlog.  But what we can

2    do to try and get through that is -- and I've spoken briefly

3    with Mr. Moore's counsel about this -- if the defendants can

4    have what's a reasonable narrowly tailored request, there is

5    a regulation which allows us as another federal agency to

6    request outside of the FOIA regulations, and we will make the

7    request for those documents.

8         THE COURT:  This isn't FOIA.  This is discovery.

9    We're not talking FOIA; we're talking discovery.  And so what

10   T does she have to cross and I to dot to get the documents,

11   the Touhy regulations again?

12        MR. ROFFMAN:  Again, it's the Touhy regulations.

13        THE COURT:  Has she done that?

14        MR. ROFFMAN:  With the Touhy regulations, the FDA

15   takes the position, as they're entitled to under the law,

16   that a document subpoena gets put in the FOIA cue.

17        THE COURT:  You know what?  I'll find them in

18   contempt.  They'll subpoena the stuff to court here.  That's

19   not acceptable.  Now, it has to be narrowly tailored.  I'll

20   be sympathetic if it's everything but the kitchen sink, but

21   if there's an ongoing trial which the government is pressing

22   forward with, they can't do that.

23        MR. ROFFMAN:  As long as it's narrowly tailored, we

24   can get the documents.

25        THE COURT:  Good.

9f710079-b8d3-4592-a64a-0ab673502085

Page 11

1    MR. ROFFMAN:  But they have been asking for the

2  whole world, though.

3    THE COURT:  No, but it's just the whole world of --

4  what's this thing called, the cow blood?

5    MR. BUHLMAN:  Hemopure, your Honor.

6    THE COURT:  All right, so it's just about that

7  drug.

8    MR. ROFFMAN:  But that drug has been in development

9  for 20 years, and it's just millions and millions upon pages

10  of documents.

11    THE COURT:  All right, that's fair enough, so let

12  them prioritize for you the recent stuff.  We're not talking

13  about the 20 years' worth.  You're claiming they defrauded

14  their investors by something recent.

15    MR. ROFFMAN:  I agree, I agree one hundred percent.

16    THE COURT:  So that's what, about a year's worth?

17    MR. ROFFMAN:  Whatever it is, as long as it is

18  narrow and relevant to the case, we can help expedite it.

19    THE COURT:  Yes.  When did the alleged fraud take

20  place?

21    MR. ROFFMAN:  2003 over a nine-month period.

22    THE COURT:  Okay, so why don't we just say every

23  document in that year or two years or something like that.

24  Does that make sense?

25    MR. BURCHFIELD:  Your Honor, Bobby Burchfield on

Page 12

1    behalf of Tom Moore.  I have had discussions with

2    Mr. Roffman, which I believe he referred to earlier, in which

3    we have committed on behalf of Mr. Moore, and we'll work with

4    Ms. Fleming on behalf of her client, to try to submit a

5    targeted request to the FDA.  And I believe Mr. Roffman -- he

6    can correct me if I'm wrong -- Mr. Roffman has said that he

7    will make efforts on behalf of the Securities and Exchange

8    Commission to get compliance with that narrowed request.

9            THE COURT:  So, okay.

10           MR. BURCHFIELD:  So that we are going to do.  We've

11   already had discussions about that.

12           THE COURT:  Great, great.

13           MR. BURCHFIELD:  And I take Mr. Roffman at his word

14   that he'll help us.  If we have problems on that score, we

15   will certainly be back to your Honor on it.

16           THE COURT:  Yes.

17           MR. BURCHFIELD:  But I'm optimistic that working

18   together with a narrowed request, we can get this logjam --

19           THE COURT:  And what's happening in Washington?

20           MR. BURCHFIELD:  Your Honor, I'm from Washington,

21   and there's too much going on in Washington for me to answer

22   that question.  I don't know what the FDA --

23           THE COURT:  I don't mean generically.  I know

24   there's a lot going on.  I just meant with respect to the

25   court and this motion.

1          MR. BURCHFIELD:  I think, my read of it, your

2     Honor -- Mr. Roffman may have more to say about this -- is

3     that the FDA gets a lot of requests from people and all sorts

4     of product liability issues, terrorism cases, and they get

5     their back up when they think that you're --

6          THE COURT:  I understand that.  But all I want is,

7     I don't want to interfere with the Washington Federal Court's

8     processes.  They've got a magistrate judge who ruled.  You

9     appealed it to the District Court.  What's the status of

10    that?  I should have been more precise.

11         MR. ROFFMAN:  Your Honor, if I may interrupt.

12         MR. BURCHFIELD:  Go ahead.

13         MR. ROFFMAN:  My understanding is that the appeal

14    to the District Court judge has been fully briefed, and it's

15    awaiting a decision.

16         THE COURT:  Okay, who's the judge?

17         MR. ROFFMAN:  The judge is --

18         MR. BURCHFIELD:  Judge Robertson, your Honor.

19         THE COURT:  All right, so the big question is

20    whether or not -- this has been fully briefed, and I'm not

21    going to interfere with that process.  That having been said,

22    I'm going to set a trial date, and at some point, I'm not

23    going to wait through some long cue for them to get documents

24    they need, as long as they've done what they have to do.

25         MR. BURCHFIELD:  And, your Honor, we're hoping by

9f710079-b8d3-4592-a64a-0ab673502085

Page 14

1  working with Mr. Roffman on a narrowed request, that we can

2  circumvent the logjam there in the District Court in D.C. and

3  get this matter moving.  That's our fervent hope, and I think

4  he shares that hope, so --

5          THE COURT:  And the FDA should want to do this

6  because they were obviously upset enough to call the FCC.  So

7  this is some sort of a concern, a matter of importance, a

8  matter of interest to the FDA, so I'm assuming that they're

9  going to want to put their best foot forward as well.  But I

10  don't want to interfere with Judge Robertson's proceedings if

11  they're ongoing and fully vetted, that's all I meant, and so

12  I'm not going to make rulings on it.  But at some point I

13  need to set a trial date in a way that's realistic for you to

14  get the documents, for you to get the depositions.

15          Can we say that all discovery would be done by

16  October 30?  Does that seem to be fair?  No one's on a fast

17  track anymore, right?

18          MR. ROFFMAN:  Your Honor, I think that's more than

19  enough time.

20          THE COURT:  Is that more than ample?

21          MS. FLEMING:  I think that's fine.  I don't think

22  the SEC is part of the logjam.

23          May I give your Honor a specific example of

24  something just for depositions because it's why the documents

25  are important.  There's a significant FDA witness named

Page 15

1    Franklin Stevenson.  He referred to notes during his

2    deposition.  Before I take his deposition, I'd like those

3    notes.  They don't have them, and the FDA has that --

4              THE COURT:  I understand.  They're obviously

5    important.  They are the case.  On the other hand, what I

6    didn't read, footnote number -- what page was it on?

7              MS. CORMIER:  Footnote No. 2, your Honor, on

8    Page 3.

9              THE COURT:  Then why didn't you just brief the fact

10   that "We've done it, and they haven't complied"?  Why is it

11   all about the Constitution and FOIA and this and that?  It's

12   a different kind of case.  We shouldn't have to do this, you

13   say, right?

14             MS. FLEMING:  Well, the reasoning is, your Honor,

15   that I think that on the FOIA stuff, candidly, if they're

16   going to go to the District Court down in Washington, I think

17   that's fine.  But I think, when the FDA becomes part of a

18   litigation, I think the trial court that is supervising that

19   litigation, where the government is the plaintiff, I think

20   there is an additional obligation on behalf of them to let go

21   of the FOIA request and comply with discovery as any other

22   litigant.

23             THE COURT:  I'm not talking about a FOIA request.

24   I'm talking about a Touhy request.

25             MS. FLEMING:  I was shorthanding it because the FDA

Page 16

1    does treat Touhy requests in the FOIA lines.  That's how they

2    categorize them.

3            THE COURT:  Maybe that's where my confusion came

4    from because it looks as if you just filed FOIA requests.

5            MS. FLEMING:  No.  We did the FOIA requests, and

6    then we did the Touhy's, and the regulations themselves

7    indicate that when --

8            THE COURT:  Why in all your briefs did you say they

9    didn't do what they were supposed to do?

10           MR. ROFFMAN:  They didn't do what they were

11   supposed to do with respect to testimony, the depositions.

12   And with respect to documents, when the FDA -- I'm sorry, go

13   ahead.

14           THE COURT:  Excuse me.  Have they done it now?

15           MR. ROFFMAN:  I have never seen that request.  They

16   say they have.  Maybe they have.  I don't --

17           MR. DANIELS:  Yes, your Honor, the Touhy requests

18   for testimony were submitted two weeks ago.

19           THE COURT:  All right, two weeks, so I'm not making

20   this up.  Okay.  So that with the depositions, that hadn't

21   been done, right?

22           MS. FLEMING:  They have been done.

23           THE COURT:  All right, but it's been done now,

24   right?

25           MS. FLEMING:  It has been done, yes.

Page 17

1          MR. DANIELS:  One of the issues, your Honor, just

2    with the Touhy requests, the standard of review, the

3    arbitrary and capricious standard applies to the FDA decision

4    whether --

5          THE COURT:  Then you'll challenge that under the

6    Constitution, if you must, but it needs to be done for

7    depositions.  It's just always been the law, always.  I have

8    it coming up in a criminal case soon.  I mean, it's been part

9    of what you have to do to get a government witness to testify

10   for over twenty years.  It's not a big surprise.

11         MS. FLEMING:  It is, your Honor.  This is a little

12   different when the government is the litigant.

13         THE COURT:  You know what, you've filed it, so

14   we're past it.  So we're going to set a deadline for

15   October 31 for discovery.  Does that seem fair?

16         MS. FLEMING:  Is that for the documents or all

17   discovery?

18         THE COURT:  All discovery.

19         MS. FLEMING:  If we can get the FDA to comply, your

20   Honor, it will be fine.

21         THE COURT:  Let's set a deadline for when --

22   assuming -- why don't you take a look at their letter and

23   make sure they agree.  When do you think that it's fair?  Why

24   don't I say July 1 for all documents?  Does that seem fair?

25         MR. ROFFMAN:  Your Honor, I think it's hard to

Page 18

1    answer that question without having seen their request.  I

2    think we've all agreed that we're going to sit down and talk

3    about it and try to work through the logjam.

4         THE COURT:  Why don't I put down July 1.  It at

5    least gets us somewhere.

6         MR. ROFFMAN:  Is that for all FDA documents, or is

7    that document discovery for the entire case?

8         THE COURT:  That's a good question.  I mean, I've

9    been so focused on the FDA.

10        MR. ROFFMAN:  I think, I mean, I don't know why we

11   would need to cut off document discovery before the end of

12   discovery.

13        THE COURT:  Is everyone happy with all document

14   discovery open until July 1?

15        MS. FLEMING:  If we can make the FDA have that

16   cutoff, we're fine with July 1.

17        THE COURT:  All right, July 1 for all document

18   production.  So any document request because, obviously, I

19   would assume it's already been filed.  Is that right?

20        MR. ROFFMAN:  Yes.

21        THE COURT:  So no new requests at this point unless

22   it's newly discovered something, but basically all document

23   production, including that by the FDA, should be done by

24   July 1, and then all depositions by October 31.

25             Now, do we want to do motions for summary

1    judgment?  I've got some -- essentially those must be mooted

2    out that I've got upstairs, right?

3              MS. FLEMING:  No.  The partial summary judgment

4    motion that's before your Honor is on behalf of all

5    defendants.  It goes to an issue in the case as opposed to

6    parties in the case.

7              THE COURT:  So do we have a hearing set for that?

8              MS. FLEMING:  No, your Honor.  I don't think you've

9    ever set a hearing date.

10             THE COURT:  Why don't we set something up in, let's

11   say, May or something?  Does that make sense?

12             MR. ROFFMAN:  That's fine, your Honor.

13             MR. BURCHFIELD:  Your Honor, depending on what

14   discovery discloses in this case, we may or may not want to

15   amend or modify, supplement the summary judgment motion.  On

16   behalf of my client, Mr. Moore, I would just as soon have the

17   Court defer a decision on that until we have the opportunity

18   to --

19             THE COURT:  Or I'll deny it without prejudice or

20   something like that until the fact discovery is over?  I

21   don't want it sitting on my list basically.

22             MR. BURCHFIELD:  I would not object to that, your

23   Honor.

24             MS. FLEMING:  No, actually, your Honor, I'd prefer

25   that you rule on it, I guess.  I don't think we need to

Page 20

1    supplement on that issue.  It's a very narrow issue.

2          THE COURT:  Why don't I set up a hearing for it

3    sometime this summer, and that way, when all the documents

4    come in, Mr. Moore, you can realistically tell me whether you

5    think you need the supplementation or not.  Not Mr. Moore --

6          MR. BURCHFIELD:  That's fair.

7          THE COURT:  Burchfield, right?

8          MR. BURCHFIELD:  Correct.

9          THE COURT:  For Mr. Moore.  So we'll set something

10   up, like, in the middle-end of July, and we'll decide whether

11   or not we really want to do it then or whether or not we want

12   to defer it.

13         MR. ROFFMAN:  Your Honor, I apologize.  You had

14   mentioned with respect to document production no new

15   requests, and I just want to make sure I -- we had intended

16   before we started the settlement discussions and mediation to

17   do some third-party document requests that we haven't done

18   yet, and we would still like to be able to do those.

19         MR. BURCHFIELD:  A fair point, your Honor, and my

20   proposal would be that perhaps we have a date between now and

21   July 1, say perhaps May 15, by which point the parties would

22   serve supplemental document requests.

23         THE COURT:  All right, fine.  So any document,

24   that's fair enough.  Good, all right.  May 15, document

25   requests; July 1, all productions.  Hopefully Judge Robertson

1    will have a chance to rule.  If he doesn't or hasn't had a

2    chance or whatever, I'm going to set a trial date sometime --

3    tell me when you want it.

4         MS. FLEMING:  At the Court's pleasure.

5         MR. BURCHFIELD:  Your Honor, we had suggested in

6    our paper anytime October or at the Court's convenience

7    thereafter, so --

8         THE COURT:  Set something up in -- well, if

9    discovery isn't done until the 31st --

10        MR. BURCHFIELD:  Right.  So probably, if discovery

11   is finished on the 31st, it would be reasonable to allow at

12   least two months from that point to get ready for trial.

13        THE COURT:  Early January?  Is everyone happy with

14   that?

15        MR. ROFFMAN:  That's fine, your Honor.

16        THE COURT:  It takes the heat off of you for

17   settlement, which I'm always reluctant to do, but I imagine

18   the expense -- these are people individually, right?

19        MS. FLEMING:  Yes.

20        THE COURT:  Do they have insurance covering them?

21        MS. FLEMING:  Yes, your Honor.

22        THE COURT:  And what's the holdup in settlement?

23   Is it that, A, they're innocent?  B, it's money?  All of the

24   above?  I mean, I'm just trying to understand what the

25   dynamic was with one as opposed to the other two.

1          MR. ROFFMAN:  I'm not sure who is the right person

2     to answer that.  With respect to Mr. Richman, Ms. Fleming and

3     I have talked about continuing the momentum from the

4     mediation discussions in the next couple of weeks.

5     Mr. Moore, frankly, we haven't quite gotten as far in

6     discussions.

7          THE COURT:  They have been busy or --

8          MR. ROFFMAN:  I believe so, yes.

9          MR. BURCHFIELD:  Your Honor, it was my impression

10    that from an institutional perspective -- well, from the

11    standpoint of the mediation, the mediation was scheduled at a

12    point where my colleague and I had a trial in a long-pending

13    case scheduled in Fayetteville, West Virginia, a nice place

14    to visit but I wouldn't want to live there.  And it was my

15    perception that the SEC institutionally thought it probably

16    more important to talk to the company and the existing

17    employee, Ms. Kober, of the company before dealing with the

18    former employee, my client, Mr. Moore, and perhaps

19    Mr. Richman.  We are certainly amenable to talking to the SEC

20    about settling this case, assuming a level of reasonableness

21    on their part about what they would --

22          THE COURT:  But there's insurance and that kind of

23    stuff, right?

24          MS. FLEMING:  That's not the issues, though, your

25    Honor, because this involves things such as bars in terms of

Page 23

1   serving as officers and directors of companies which affects

2   directly their livelihoods.  So it's not a question of the

3   number of dollars, not --

4           THE COURT:  Was Ms. Kober's settled with or without

5   a bar?

6           MS. FLEMING:  She has no bar.

7           THE COURT:  So that's on the table or not?  Are

8   they just different situations?

9           MR. ROFFMAN:  Your Honor, we believe that it is a

10  different situation factually.  That said, we're absolutely

11  willing to engage in discussions with both of their counsel.

12          MS. FLEMING:  With us, Judge, we really just ran

13  out of clock.  They were focused with Ms. Kober and the

14  company much more.

15          THE COURT:  So maybe we won't see you, but, in any

16  event, we've now got a date.  What's the date for trial and

17  the date for hearing?

18          THE CLERK:  The summary judgment hearing is July 19

19  at 2:00 p.m.

20          THE COURT:  Am I destroying anyone's summer

21  vacation?

22          MS. FLEMING:  Your Honor, I can't believe that you

23  picked this date, but I'm actually being sworn in either on

24  the 18th, the 19th, or the 20th as the president of the

25  National Association of Women Lawyers.  Could we do it the

Page 24

1    next week?

2              THE CLERK:  July 26 at 2:00 o'clock.

3              MS. FLEMING:  Great, thank you.

4              THE COURT:  Where is that going to take place?

5              MS. FLEMING:  New York City.  It's supposed to take

6    place at the ABA, but that's in Honolulu.

7              THE COURT:  And you're picking New York?

8              MS. FLEMING:  I did not, but the people who don't

9    have big firm support behind them thought it would be better

10   to do it in New York.  Unfortunately, our constitution

11   requires that I attend the ABA in Honolulu, so --

12             THE COURT:  So we'll do it the following week, the

13   26th.

14             MS. FLEMING:  Thank you.

15             THE CLERK:  And the trial is January 15 at 9:00,

16   final pretrial January 9 at 2:00 p.m.

17             THE COURT:  Okay?  One thing this does not provide

18   for -- let's be clear -- it doesn't set out a window for

19   additional motions for summary judgment.  So that

20   realistically, if someone files one, I will not get to it

21   because this is so tight following the close of discovery.

22   So if you want to file another motion for summary judgment,

23   you probably will need to do that really early on.  Don't do

24   it at the last minute.  The other issue it doesn't build in

25   for is expert discovery.

Page 25

1          MR. ROFFMAN:  Your Honor, if I may address that?

2          THE COURT:  Yes.

3          MR. ROFFMAN:  Because we are working on the

4    expedited schedule, the Commission has already served its

5    expert designations and report, and right now we're in the

6    period in between ours and the defendant's, and so ours is

7    outstanding.  I think it would be appropriate to set a date

8    for --

9          THE COURT:  When can you give your expert report?

10         MR. BURCHFIELD:  Your Honor, it would be immensely

11   helpful for our expert to be able to see the documents from

12   the FDA before, so I would suggest maybe August 15, if we

13   have the documents by the 1st.

14         THE COURT:  Fine.

15         MR. BURCHFIELD:  Thank you.

16         THE COURT:  Then you can do discovery.  That will

17   give you enough time to do it by October 31.

18         MS. FLEMING:  I'm sorry, so August 15 is

19   designation, and August 31, is that discovery?

20         THE COURT:  You file your expert reports in August,

21   and then you can use up that remaining period of time to do

22   expert depositions, if you feel as if you need to, as well as

23   cleaning up fact discovery.  Everyone's happy?

24         So if you were betting people, is this going to

25   trial?  I'd say probably not?  If two settled, it's likely,

9f710079-b8d3-4592-a64a-0ab673502085

1  but I'll look forward to it.  But I guess what I don't want

2  to do is let the momentum from settlement go, so should I be

3  referring this to anyplace, or are you all on top of this?

4          MS. FLEMING:  We'll keep -- I think Eric Green was

5  terrific, and I think we'll continue with him.

6          THE COURT:  Oh, he's doing it?

7          MS. FLEMING:  Yes.

8          THE COURT:  Okay.

9          MR. ROFFMAN:  That's fine with us, your Honor.

10         THE COURT:  Well, congratulations on your

11 settlement, and we'll see you -- what date did we have for

12 the hearing?

13         THE CLERK:  The summary judgment hearing, July 26.

14         THE COURT:  Okay?

15         MS. FLEMING:  Thank you, your Honor.

16         THE COURT:  And just one last thing on the record.

17 Would you just confer, make sure they've done what they need

18 to do so we're not back at this blockage point; you know,

19 that they've done exactly what the regs require.  So if you

20 could confer and make sure that that happens so we're not

21 back with this flurry of paper on the due process clause,

22 okay?

23         And Mr. Alba has a suggestion.  Why don't you all

24 just confer and come up with a joint scheduling order with

25 all those dates.  We've got them down, but he just wants to

9f710079-b8d3-4592-a64a-0ab673502085

Page 27

1    make sure that he's got them all correctly.

2              MS. FLEMING:  We'll be happy to do that.

3              THE CLERK:  Court is in recess.

4              (Adjourned, 4:00 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

    UNITED STATES District Court )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
5

6

7

8           I, Lee A. Marzilli, Official Federal Court

9   Reporter, do hereby certify that the foregoing transcript,

10  Pages 1 through 27 inclusive, was recorded by me

11  stenographically at the time and place aforesaid in Civil

12  Action No. 05-11853-PBS, Securities and Exchange Commission

13  Vs. Biopure Corporation, et al, and thereafter by me reduced

14  to typewriting and is a true and accurate record of the

15  proceedings.

16          In witness whereof I have hereunto set my hand this

17  22nd day of March, 2006.

18

19

20

21

22

23          _____
            LEE A. MARZILLI, CRR
24          OFFICIAL FEDERAL COURT REPORTER

25

# EXHIBIT 12

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202.756.8021

April 24, 2006

## VIA FACSIMILE AND COURIER

Dr. Andrew C. von Eschenbach
Acting Commissioner
United States Food and Drug Administration
Office of the Commissioner
Parklawn Building
Mail Code: HF-1
5600 Fishers Lane
Rockville, Maryland 20856

Re:     Supplement to *Touhy* Request for *SEC v. Biopure Corp., et al.,*
        Civ. No. 05-11853-PBS (D. Mass.)

Dear Commissioner von Eschenbach:

This letter supplements and incorporates by reference our *Touhy* Request submitted on March 24, 2006 on behalf of Thomas A. Moore, a defendant in the above-captioned SEC enforcement action. (*See* attachment hereto). In that Request, among other FDA witnesses, we sought the production of Dr. Abdu Alayash for deposition in this case, to occur no later than *August 1, 2006*. Counsel for the SEC has advised us that because the SEC did not designate Dr. Alayash as a potential trial witness, the FDA may require additional justification for Mr. Moore to take his deposition. Although we are quite confident that our initial *Touhy* Request provided sufficient justification, this letter clarifies the precise basis for Dr. Alayash's testimony.

As we previously explained, the case concerns public statements and disclosures that Mr. Moore and other defendants made regarding the FDA's pre-market review of Hemopure®, a biologic developed by Biopure Corporation ("Biopure"). Many of the SEC's allegations concern FDA correspondence and communications involving a Biologics License Application ("BLA") that Biopure submitted for a particular indication of Hemopure.

*Dr. Alayash was the FDA's scientific lead for the Hemopure BLA during the relevant time period.* He therefore was an important evaluator and decisionmaker in the FDA's review of the BLA. Furthermore, according to the SEC testimony of FDA employee Franklin Stephenson, Dr. Alayash's input was incorporated into the FDA's written response to the BLA of July 30, 2003, which is arguably the single most important document in this case. For the reasons, the testimony of Dr. Alayash is indispensable to Mr. Moore's defense.

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington, D.C. 20005-3096   Telephone: 202.756.8000   Facsimile: 202.756.8087   www.mwe.com

Acting Commissioner von Eschenbach
April 24, 2006
Page 2

Although we have received no response from the FDA to our *Touhy* Request of March 24, 2006, we look forward to receiving the FDA's prompt consent to Mr. Moore's deposition of all four FDA witnesses identified therein, including Dr. Alayash. Please do not hesitate to contact me at (202) 756-8021 with any questions or concerns about the foregoing.

Sincerely,

Jason A. Levine

On this 27th day of April, 2006, before me, the undersigned notary public, personally appeared Jason A. Levine, whom I personally know, who signed the preceding document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

(official signature and seal of notary)

My Commission expires: June 30, 2006

cc:    Thomas A. Moore
       Cathy Fleming, Esq. (counsel to Howard Richman)
       Ian Roffman, Esq. (SEC counsel)

# EXHIBIT 13



DEPARTMENT OF HEALTH & HUMAN SERVICES

---

Food and Drug Administration
Rockville MD 20857

MAY 1 6 2006

Jason A. Levine
McDermott, Will & Emery
600 Thirteenth St., NW
Washington, DC 20005

In Reply Refer To: 06-4926

Dear Mr. Levine:

This is in response to your request for expedited processing of your Freedom of Information Act (FOIA) request for copies of records relating to Biopure.

The Electronic Freedom of Information Act (EFOIA) Amendments of 1996 amended the FOIA by adding section (a)(6)(E), 5 U.S.C. 552(a)(6)(E), to require agencies to consider requests for expedited processing and grant them whenever a "compelling need" is shown and in other cases as determined by the agency. The term "compelling need" is defined as (1) involving "an imminent threat to the life or physical safety of an individual," or (2) in the case of a request made by "a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."

I have determined that your request for expedited processing does not meet the criteria under the FOIA. You have not demonstrated a compelling need that involves an imminent threat to the life or physical safety of an individual. Neither have you demonstrated that there exists an urgency to inform the public concerning actual or alleged Federal Government activity. Therefore, I am denying your request for expedited processing. The responding agency office will process your request in the order in which it was received.

You may appeal this decision not to provide expedited processing of your request by writing to the Deputy Assistant Secretary for Public Affairs (Media), U.S. Department of Health and Human Services, Room 17A46, 5600 Fishers Lane, Rockville, MD 20857. You should file any such appeal within 30 days.

Sincerely yours,

Julie Zawisza
Acting Assistant Commissioner for Public Affairs

# EXHIBIT 14

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202 756 8021

May 3, 2006

**VIA FACSIMILE AND U.S. MAIL**

Ian D. Roffman, Esq.
U.S. Securities and Exchange Commission
Boston District Office
33 Arch Street
Boston, MA 02110

Re:    *SEC v. Biopure*, Civ. A. No. 05-11853-PBS (D. Mass.)

Dear Ian:

On behalf of Tom Moore, I am writing to address three discovery issues in this case.

*First,* we have not received, and we hereby request, a privilege log of documents withheld from the SEC's document production. In its Responses and Objections to Defendants' Request for the Production of Documents, dated February 26, 2006, the SEC withheld various documents that purportedly are protected from disclosure by the attorney work product doctrine and the attorney-client, "deliberative process," and "law enforcement" privileges, among others. Federal Rule of Civil Procedure 26(b)(5) requires the SEC to supply defendants with a privilege log. Please provide it to us no later than May 17, two weeks from today.

*Second,* in accordance with the offer you made in your email message to me of April 19, we would appreciate an update on the FDA's document collection efforts and deposition authorization. We will contact the FDA directly as well, but we are mindful of your admonition that, as a sister agency, the SEC is in a better position to obtain information on these subjects.

*Finally,* I remind you of my letter of April 24, which you have not answered despite my request that you do so by April 28. Absent your prompt addition to the SEC's *Touhy* request of Mr. Moore's categories 7 and 8, we will be forced to seek relief from the Court.

Please call me if you wish to discuss any of these issues further.

Sincerely yours,

Jason A. Levine

Ian Roffman, Esq.
May 3, 2006
Page 2

cc:     Thomas A. Moore
        Mary-Pat Cormier, Esq.
        Thomas Dougherty, Esq.
        Robert Buhlman, Esq.
        Michael Shane, Esq.

# EXHIBIT 15

05/03/06  WED 16:09 FAX 617 424 5940      SEC-BDO                                    Ø002



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BOSTON DISTRICT OFFICE
33 ARCH STREET
23ᴿᴰ FLOOR                         IAN D. ROFFMAN
BOSTON, MA 02110-1424             PHONE: 617-573-8987
PHONE: 617-573-8800              EMAIL: ROFFMANI@SEC.GOV
FACSIMILE: 617-573-4590


May 3, 2006


<u>**Via Facsimile and U.S. Mail**</u>

Jason A. Levine
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

   Re: <u>SEC v. Biopure, Civ. A. No. 05-11853-PBS (D. Mass.)</u>

Dear Jason:

   I am writing in response to your letter dated today, May 3, 2006 regarding three discovery issues.

   First, the Commission will agree to compile a privilege log, as you now request, provided that there is a simultaneous, mutual exchange of privilege logs among the remaining parties. Although the settlements with Biopure and Ms. Kober have not yet been finalized, I would not expect them to participate in any exchange of privilege logs. In addition, I would propose that we have a discussion in advance of producing logs so that we can come to an agreement about the scope of our respective logs.

   Second, after receiving your letter today, I contacted the FDA attorney working on this matter. My understanding is that the FDA is continuing to collect and review responsive documents in good faith. As you know, your request for documents is broad and requires FDA employees to spend considerable time searching for documents that are several years old. They have been collecting and continue to collect responsive documents, but must also balance that obligation with their primary public health-related responsibilities. I have arranged to get another update on the status of production on Monday, and I will contact you then with any additional information.

   Finally, I apologize for not responding to your April 24 letter on the time-table you requested. I have been tied-up on another matter and was not able to comply with your demand for a quick response to your letter. As for your requests No. 7 and 8, I do not believe that you have a basis to burden a non-party with a request for duplicate production of documents that you already have. When I raised this point during our last conversation, you appeared unwilling to

05/03/06  WED 16:09 FAX 617 424 5940          SEC-BDO                                    ☑003

Letter to Jason A. Levine
May 3, 2006
Page 2

narrow your requests. Now, in your April 24 letter, you state that the Commission "implicitly acknowledges" that it has not retained or produced all responsive documents. I do not understand what you mean by this statement — are you referring to those categories that we have already discussed that we have not produced (such as attorney notes) or do you mean something else? Perhaps the most effective way to resolve this issue would be to have a telephone conversation so that I can better understand what you are seeking and if there are any documents (or categories of documents) that you believe you do not already have. I will be in a deposition all day tomorrow, but would be available to speak with you Friday or early next week.

        Please let me know if you have any questions or would like to discuss any of these matters further.

                        Very truly yours,

                        Ian D. Roffman

cc:  Michael Shane, Esq. and Michael Druckman, Esq., FDA

# EXHIBIT 16

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D C

Jason A Levine
Partner
jlevine@mwe.com
202 756.8021

July 11, 2006

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane, Mail Code: GCF-1
Rockville, MD 20857-0001

Re:     *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853-PBS (D. Mass.)
        **FDA Compliance With Subpoena Under Fed. R. Civ. P. 45**

Dear Mr. Shane:

On March 24, 2006, on behalf of Thomas Moore we served a subpoena *duces tecum* upon the FDA in the above matter.  By fax dated April 3, you requested that we withdraw the subpoena (which we did *not* do), on the grounds that the FDA is not a "person" subject to subpoena under Fed. R. Civ. P. 45.  As you may be aware, on June 16, the D.C. Circuit issued its decision in the case of *Yousuf v. Department of State*, 2006 U.S. App. LEXIS 14750 (D.C. Cir. June 16, 2006).  In *Yousuf*, the court decisively held that the United States is a "person" within the meaning of Fed. R. Civ. P. 45, and accordingly is subject to subpoena regardless of whether it is a party to the underlying litigation.  A copy of the *Yousuf* decision is attached for your convenience.

In accordance with *Yousuf*, we reiterate our request that the FDA promptly comply with our subpoena.  Please let me know if you require an additional copy.  Given the significant time that has elapsed since our subpoena was served, we must request the FDA's response by August 1, 2006.  Please recall that a much broader subpoena was previously served upon the FDA in this matter by Biopure Corporation as well.  If the FDA is accommodating in complying with our subpoena, we will refrain from seeking compliance with Biopure's more burdensome one.

Sincerely,

Jason A. Levine

Attachment

cc w/attach:   Claire Whitaker, Esq.
               Ian Roffman, Esq.

# EXHIBIT 17

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202.756.8021

July 28, 2006

**BY FACSIMILE & U.S. MAIL**

Michael N. Druckman, Esq.
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane
Mail Code: GCF-1
Rockville, MD 20857-0001

Claire Whitaker, Esq.
Assistant United States Attorney
United States Department of Justice
555 Fourth Street, N.W.
Civil Division
Washington, D.C. 20530

> Re: *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853-PBS (D. Mass.)
> **FDA Document Production**

Dear Mr. Druckman and Ms. Whitaker:

After receiving them on July 13, we have reviewed the documents produced by the FDA in response to the SEC's *Touhy* request (which, as you know, duplicated seven of the nine categories contained in Thomas Moore's *Touhy* request and subpoena of March 24, 2006). Despite their responsiveness to several of the requests, internal FDA memoranda and attachments to various emails pertaining to the actual evaluation of the BLA and IND for Hemopure were *not* included in the FDA's document production. We find this puzzling in view of the letter dated June 28, 2006, from David Elder to the SEC, indicating that the FDA "has determined that *it is appropriate to waive the privilege* for documents that reveal FDA's deliberative process *for decisions that have already been made*, such as to place Biopure's [IND] on clinical hold and to send Biopure a Complete Response Letter in response to its [BLA]." Mr. Elder's letter is attached for your reference.

In view of the FDA's voluntary waiver of the deliberative process privilege, we must request the immediate production of all internal memoranda and other documents pertaining to the aforementioned evaluation of Biopure's BLA and IND for Hemopure, such as the many evaluative attachments to emails that were produced without their attachments. These materials are important for Mr. Moore's defense and for his testifying expert's reference, and the FDA itself acknowledged the absence of grounds upon which to withhold them. Given the importance of this matter and our court-imposed time constraints, we will be forced to move to compel the production of these documents in the absence of a full response by Friday, August 4.

Michael Druckman, Esq.
Claire Whitaker, Esq.
July 28, 2006
Page 2


Please contact me if you wish to discuss this matter further or require additional details to help expedite the FDA's review process, including the identification of emails that were produced without their plainly responsive attachments.

Sincerely,

Jason A. Levine

Attachment

cc w/attach:    Michael Shane, Esq.
                Ian Roffman, Esq.
                Cathy Fleming, Esq.