UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-11853-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT THOMAS A. MOORE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S SETTLEMENTS WITH FORMER DEFENDANTS BIOPURE CORPORATION AND JANE KOBER, AND WITH CARL RAUSCH

On September 14, 2005, the Securities and Exchange Commission ("SEC") commenced this action against defendants Biopure Corporation, Thomas Moore, Howard Richman, and Jane Kober, alleging their violation of various securities laws individually and in combination.[1] As the result of mediation sessions held on March 10 and March 13, 2006, the SEC reached settlements with Biopure and Ms. Kober. The Court entered Consent Decrees embodying the settlements on September 5 for Biopure and September 8 for Ms. Kober, and simultaneously dismissed Biopure and Ms. Kober as defendants from this case. The SEC separately instituted a tag-along civil enforcement action – based on essentially the same allegations – against Carl

---

[1] Specifically, the SEC alleged: (1) violations of Exchange Act Section 10(b) and Exchange Act Rule 10b-5 against all defendants (Count I); (2) violation of Securities Act Section 17(a) against all defendants (Count II); (3) violation of Exchange Act Section 13(a) and Exchange Act Rules 12b-20, 13a-11 and 13a-13 against Biopure (Count III); (4) an aiding and abetting claim against Mr. Moore, Mr. Richman, and Ms. Kober (Count IV); and (5) violation of Exchange Act Rule 13a-14 against Mr. Moore (Count V).

Rausch, the founder and former Chief Executive Officer of Biopure, and simultaneously settled the matter with a Consent Decree that the Court entered on April 11, 2006. Given the SEC's strident allegations, these settlements are notably lenient. Ms. Kober and Mr. Rausch settled with no officer-director bars, narrow injunctions against future violations of the securities laws, and civil penalties of $40,000. Biopure settled with no civil penalty, but with a broader injunction and the requirement that it retain a consultant to review its public disclosure policies and compliance. *See* SEC Litigation Releases of April 11 & September 12, 2006 (Exs. 1-2)[2] Evidence of the existence and terms of these settlements should be excluded from the liability phase of the trial against Mr. Moore because it is flatly barred by Federal Rules of Evidence 402, 403, and 408.

> *First*, Rule 408 expressly provides, in relevant part, that:
>
> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . .

Fed. R. Evid. 408. Courts have repeatedly held that Rule 408 bars the admission at trial of evidence of settlements between a plaintiff and former co-defendants. *See, e.g., McInnis v. A.M.F. Inc.*, 765 F.2d 240, 246-52 (1st Cir. 1985) (holding, in a tort suit against a joint tortfeasor, that the admission of plaintiff's prior settlement with another joint tortfeasor over the same incident was prejudicial error requiring a new trial); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983) (holding that evidence of plaintiff's settlement with two defendants was inadmissible at trial of co-defendants); *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161,

---

[2] In stark contrast to these lenient settlements, the SEC demands from Mr. Moore: (1) an officer-director bar of five years; (2) a broad injunction against future violations of the securities laws; and (3) a civil penalty in excess of $100,000.

165-66 (5th Cir. 1983) (holding that plaintiff's covenant not to sue co-defendant was inadmissible at trial against a non-settling defendant).

*Second*, the existence and terms of these settlements are irrelevant to the SEC's allegations against Mr. Moore, and such evidence accordingly is barred by Federal Rule of Evidence 402. *See also* Fed. R. Evid. 408 advisory committee's note ("The evidence [of settlement] is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."); *McInnis*, 765 F.2d at 247 ("[E]vidence [of settlement] is of questionable relevance on the issue of liability . . . since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions."). The SEC's decision to settle its claims against Biopure, Ms. Kober, and Mr. Rausch on particular terms plainly has no bearing on Mr. Moore's liability.

*Finally*, any potentially probative value of the settlements would be outweighed by the danger of jury confusion and unfair prejudice to Mr. Moore. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Here, the danger to Mr. Moore is that the SEC's settlements with Biopure and Ms. Kober, in particular, could lead the jury to infer that: (1) because they settled with the SEC, these former defendants must have been liable; and (2) as the former Chief Executive Officer of Biopure, to whom Ms. Kober reported in connection with the events alleged in the Complaint, Mr. Moore must also be liable. This prejudicial inference far outweighs any theoretical probative value the evidence of the settlements may have.

## CONCLUSION

For the foregoing reasons, evidence of the settlements between the SEC, Biopure, Ms. Kober, and Mr. Rausch should be excluded from the trial of Mr. Moore.

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned hereby certify that they have conferred on behalf of Mr. Moore with opposing counsel in an attempt to resolve and narrow the issues in the foregoing Motion.

Respectfully submitted,

/s/ Bobby R. Burchfield
Edward P. Leibensperger (BBO# 292620)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
617.535.4000 phone
617.535.3800 facsimile

Bobby R. Burchfield
Jason A. Levine
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
202.756-8000 phone
202.756-8087 facsimile

Date: November 29, 2006

*Counsel for Defendant Thomas A. Moore*

# EXHIBIT 1

Case 1:05-cv-11853-PBS    Document 139-2    Filed 11/29/2006    Page 1 of 3



**U.S. Securities and Exchange Commission**

**U.S. SECURITIES AND EXCHANGE COMMISSION**

**Litigation Release No. 19651 / April 11, 2006**

*SEC v. Carl Rausch*, Civil Action No. 06-10642-PBS (D. MA)

**SEC Files Settled Civil Injunctive Action Against Former Biopure Corporation Executive and Board Member**

The Commission today filed a civil injunctive action against Carl Rausch, former Vice Chairman of the Board of Directors and Senior Technology Officer of Biopure Corporation of Cambridge, Massachusetts, for his role in Biopure's misleading public statements about the company's efforts to obtain FDA approval for its primary product, a synthetic blood product. The action, filed in federal district court in Massachusetts, charges Rausch, 57, of Belmont, Massachusetts, with aiding and abetting violations of the reporting provisions of the federal securities laws in connection with materially misleading statements by Biopure between April and December, 2003. Without admitting or denying the Commission's allegations, Rausch consented to the entry of a final judgment permanently enjoining him from violating certain provisions of the federal securities laws and ordering him to pay a $40,000 civil penalty.

The Commission's Complaint alleges that, beginning in April 2003, Biopure received negative information from the FDA regarding its efforts to obtain FDA approval of its synthetic blood product, Hemopure, but failed to disclose the information, or falsely described it as positive developments. Specifically, the Complaint alleges that in April 2003, the FDA placed a clinical hold barring Biopure from conducting clinical trials of Hemopure on human trauma victims in hospitals because of safety concerns about Hemopure. As alleged, during the next eight months, Biopure failed to disclose the imposition of and reasons for the clinical hold while making public statements about its plans to obtain approval for trauma uses of Hemopure. In addition, according to the Complaint, in July 2003 the FDA informed Biopure that it had not approved Biopure's application for use of Hemopure in orthopedic surgery because of extensive and significant deficiencies in Biopure's application and because of concerns about the lack of safety and efficacy of Hemopure. Biopure, however, issued public statements and Commission filings beginning on August 1, 2003 describing the FDA's communication as good news, causing its stock price to increase by over 20%. The Complaint alleges that Biopure continued to make misleading statements until December 2003 while simultaneously raising over $35 million from investors. The Complaint further alleges that as the true status of Biopure's efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of December 2003, the company's stock price plummeted almost 66% from its August 1 price. According to the Complaint, Rausch was aware of the true status of Biopure's FDA

applications, yet reviewed, approved, and, in several instances, signed Biopure's misleading statements. The Commission previously filed a civil injunctive action on September 14, 2005 against Biopure and three other Biopure executives concerning their roles in this matter.

Simultaneously with the filing of the Complaint, Rausch, without admitting or denying the Commission's allegations, consented to the entry of a final judgment that permanently enjoins him from aiding and abetting violations of Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-11 and 13a-13 thereunder, and requires him to pay a civil penalty of $40,000.

For further information, see Litigation Release No. 19376 (September 14, 2005)(Biopure and others charged by the Commission).

➤ SEC Complaint in this matter

http://www.sec.gov/litigation/litreleases/2006/lr19651.htm

Home | Previous Page                                    Modified: 04/11/2006

# EXHIBIT 2



**U.S. Securities and Exchange Commission**

## U.S. SECURITIES AND EXCHANGE COMMISSION

**Litigation Release No. 19825 / September 12, 2006**

*SEC v. Biopure Corporation, et al.*, Civil Action No. 05-11853-PBS (D. MA)

### SEC Settles Civil Injunctive Action Against Biopure Corporation and Its General Counsel

The Commission announced today that final judgments by consent were entered by the United States District Court of the District of Massachusetts against Biopure Corporation and its general counsel, Jane Kober, in a previously-filed action alleging misleading public statements about the company=s efforts to obtain FDA approval for its primary product, Hemopure, a synthetic blood product. The final judgment against Biopure, entered on September 5, 2006, permanently enjoins it from violating antifraud provisions of the federal securities laws and requires the company to retain an independent consultant to review Biopure=s disclosure, compliance and other policies and procedures. The final judgment against Kober, entered on September 8, 2006, permanently enjoins Kober from aiding and abetting violations of the reporting provisions of the federal securities laws and orders her to pay a $40,000 civil penalty.

The Commission=s Complaint, filed September 14, 2005, alleges that, beginning in April 2003, Biopure received negative information from the FDA regarding its efforts to obtain FDA approval of its synthetic blood product Hemopure but failed to disclose the information, or falsely described it as positive developments. Specifically, the Complaint alleges that in April 2003, the FDA placed a clinical hold barring Biopure from conducting clinical trials of Hemopure in trauma settings such as emergency rooms, because of safety concerns about Hemopure. As alleged, during the next eight months, the company concealed the imposition of the clinical hold while making public statements about its plans to obtain approval for trauma uses of Hemopure. In addition, according to the Complaint, in July 2003 the FDA informed Biopure that it had not approved Biopure=s application for use of Hemopure in orthopedic surgery, and instead conveyed serious concerns about whether the materials Biopure had submitted in support of its application were reliable and questioning the safety of Hemopure. According to the Complaint, Biopure, however, issued public statements beginning on August 1, 2003 describing the FDA=s communication as good news, causing its stock price to increase by over 20%. The Complaint alleges that Biopure continued to make misleading statements until December 2003. During this period, Biopure raised over $35 million from investors. The Complaint further alleges that as the true status of Biopure=s efforts to obtain FDA approval gradually became public, through a series of incomplete and misleading disclosures between late October and the end of December 2003, the company=s stock price

plummeted almost 66% from its August 1 price.

To settle the Commission=s charges, Biopure consented, without admitting or denying the allegations of the Complaint, to the entry of a final judgment permanently enjoining it from committing future violations of Section 17(a) of the Securities Act of 1933 (ASecurities Act@) and Sections 10(b) and 13(a) of the Securities Exchange Act of 1934 (AExchange Act@) and Rules 10b 5, 12b 20, 13a 11 and 13a 13 thereunder and requiring the company to retain an independent consultant to conduct a comprehensive review of its disclosure, compliance and other policies and procedures designed to prevent and detect federal securities violations of the nature described in the Complaint. Biopure is required to adopt the recommendations of the consultant. Kober consented, without admitting or denying the allegations of the Complaint, to entry of a final judgment permanently enjoining her from aiding and abetting future violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11 and 13a-13 thereunder and imposing a civil penalty in the amount of $40,000. The Commission has stipulated to the dismissal of charges under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act against Kober.

For further information, see Litigation Release No. 19651 (April 11, 2006) (SEC Settles with Former Biopure Executive) and Litigation Release No. 19376 (September 14, 2005) (Biopure and others charged by the Commission).

*http://www.sec.gov/litigation/litreleases/2006/lr19825.htm*