UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 05-11853-PBS |

## DEFENDANT THOMAS A. MOORE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF CERTAIN FACTS NOT ALLEGED IN THE COMPLAINT

Defendant Thomas A. Moore moves to preclude the Securities and Exchange Commission ("SEC") from offering evidence at trial of two categories of events that are *not pleaded* in the Complaint. *First*, after the time period asserted in the Complaint, Biopure withdrew its Biologics License Application ("BLA") for Hemopure. Evidence pertaining to this unpleaded event is irrelevant to Mr. Moore's liability because it occurred after his employment with Biopure ended, and he accordingly had no role in it. Moreover, this evidence would be unduly prejudicial to Mr. Moore, given its tendency to cast doubt – well after the fact – on his prior optimistic statements about the BLA's prospects for FDA approval.

*Second*, at Mr. Moore's deposition (which occurred after the formal close of discovery), the SEC for the first time signaled its intention to base its fraud claims at trial on statements and non-disclosures that Mr. Moore made during several in-person meetings with investors in 2003. Evidence pertaining to these unpleaded events should be excluded in view of the requirement

that fraud claims be pleaded with particularity. Fed. R. Civ. P. 9(b). *See, e.g.*, *Fisher v. Samuels*, 1998 WL 112196, at *1 (N.D. Ill. Oct. 20, 1988) (excluding evidence of misrepresentations that were not included in the Complaint); *John Does v. Covington Cty Sch Bd.*, 969 F. Supp. 1264, 1287 (M.D. Ala. 1997) (excluding fraud allegations that "lie outside the scope of the complaint").

## ARGUMENT

### I. BIOPURE'S WITHDRAWAL OF THE BLA IS NOT RELEVANT TO MR. MOORE'S LIABILITY AND IS UNDULY PREJUDICIAL IN ANY EVENT.

Months after Mr. Moore left Biopure, the company decided to withdraw its BLA from consideration by the FDA. This event has no relevance to the SEC's allegations against Mr. Moore, given that he had no role in it whatsoever. Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The actions of Biopure, taken without Mr. Moore's involvement after he left the company, plainly do not demonstrate that it was any more (or less) likely that Mr. Moore committed securities fraud during his tenure at Biopure. Such irrelevant evidence is inadmissible and should be excluded from trial. Fed. R. Evid. 402.

Further, even if Biopure's withdrawal of the BLA had a scintilla of probative value, this would be far outweighed by the danger of unfair prejudice that Mr. Moore would suffer if such evidence were disclosed at trial. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Fed. R. Evid. 403. Evidence of the BLA withdrawal could cause jurors to infer – contrary to law and fact – that Mr. Moore's challenged optimistic statements about the BLA's prospects for approval were *ipso facto* false or misleading *when made* many months

earlier. This evidence could also cause jurors to infer that Mr. Moore's challenged actions somehow caused Biopure to withdraw the BLA and harm investors, when this is not a pleaded ground for liability against Mr. Moore. Both potential forms of prejudice to Mr. Moore warrant excluding the irrelevant – or at most, marginally probative – evidence of the BLA withdrawal.

## II. THE SEC FAILED TO PLEAD MR. MOORE'S ALLEGED STATEMENTS AND NON-DISCLOSURES AT INVESTOR MEETINGS IN THE COMPLAINT.

The SEC's Complaint is devoid of *any* allegations relating to statements or non-disclosures made by Mr. Moore at in-person meetings with investors, yet the SEC has plainly signaled its intention to interject such allegations at trial, inquiring about these matters at length during Mr. Moore's deposition. *See, e.g.*, Moore Tr. 164:21 to 168:4 (Ex. 1). For the SEC now to premise its claims against Mr. Moore on these wholly unpleaded allegations would be contrary to Federal Rule of Civil Procedure 9(b), which requires that "all averments of fraud . . . shall be stated with particularity." This "particularity" requirement means that a Complaint must describe the "times, dates, places, and other details of the alleged fraudulent involvement of the actors." *Serabian v. Amoskeag Bank Shares*, 24 F.3d 357, 361 (1st Cir. 1994).

For this reason, courts do not permit evidence at trial of purportedly fraudulent acts that are not alleged in the Complaint. *See Fisher*, 1998 WL 112196, at *1 (granting defendant's motion in limine and holding that because "fraud must be plead[ed] with particularity" under Rule 9(b), "actionable misrepresentations must be included within the complaint."); *John Does*, 969 F. Supp. at 1287 (striking plaintiff's allegations of fraud "which lie outside the scope of the complaint" pursuant to "the heightened pleading requirement placed on the plaintiff under Rule 9(b)"). These holdings comport with the underlying rationale of Rule 9(b), which is to provide defendants with specific notice of their conduct giving rise to claims of fraud. The Complaint provided no notice to Mr. Moore that the SEC would attempt to premise its securities fraud

claims upon statements and non-disclosures that he allegedly made during in-person meetings with investors. The SEC's apparent attempt to interject these unpleaded allegations into this action after the close of discovery is wholly inappropriate, and should be barred.

## CONCLUSION

For the foregoing reasons, the SEC should be precluded from offering at trial evidence pertaining to Biopure's withdrawal of the BLA, and Mr. Moore's alleged statements and non-disclosures made during in-person meetings with investors.

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned hereby certify that they have conferred on behalf of Mr. Moore with opposing counsel in an attempt to resolve and narrow the issues in the foregoing Motion.

Respectfully submitted,

/s/ Bobby R. Burchfield
Edward P. Leibensperger (BBO# 292620)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
617.535.4000 phone
617.535.3800 facsimile

Bobby R. Burchfield
Jason A. Levine
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
202.756-8000 phone
202.756-8087 facsimile

Date: November 29, 2006            *Counsel for Defendant Thomas A. Moore*

# EXHIBIT 1

Transcript of

# Moore, Thomas (Vol. 01) - 11/07/2006

Saturday, November 18, 2006, 6:29:38 PM

Page 1

```
 1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
 2     ------------------------------x
       U.S. SECURITIES AND             :
 3     EXCHANGE COMMISSION,            :
 4              Plaintiff,             :
 5        v.                           :  No. 05-11853-PBS
 6     BIOPURE CORPORATION et al.,     :
 7                                     :
                Defendants.            :
 8     ------------------------------x
 9                            Tuesday, November 7, 2006
              Videotaped deposition of
10                     THOMAS MOORE
       a Defendant, called for examination by counsel for
11     Defendants pursuant to notice and agreement of
       counsel, beginning at approximately 9:39 a.m. at the
12     offices of the U.S. Securities and Exchange
       Commission, 100 F Street, NE, Washington, D.C.,
13     before Karen Young of Beta Court Reporting, notary
       public in and for the District of Columbia, when
14     were present on behalf of the respective parties:
```

Transcript of Moore, Thomas (Vol. 01) - 11/07/2006
Saturday, November 18, 2006, 6:29:38 PM

Moore

Page 2

```
1    APPEARANCES:
2       On behalf of Defendants:
3          IAN D. ROFFMAN, ESQUIRE
           DANIEL O'CONNOR, ESQUIRE
4          ELLEN MOYNIHAN, ESQUIRE
           U.S. Securities and Exchange Commission
5          Division of Enforcement
           Boston District Office
6          Arch Street
           Boston, Massachusetts  02110-1424
7          roffmani@sec.gov
           (617) 573-8987
8
        On behalf of Deponent:
9
           BOBBY R. BURCHFIELD, ESQUIRE
10         JASON A. LEVINE, ESQUIRE
           McDermott Will & Emery, LLP
11         600 Thirteenth Street, NW
           Washington, D.C.  20005-3096
12         bburchfield@mwe.com
           (202) 756-8003
13
        On behalf of Howard Richman:
14
           CATHY FLEMING, ESQUIRE
15         Edwards Angell Palmer & Dodge, LLP
           750 Lexington Avenue
16         New York, New York  10022
           (212) 308-4411
17
     ALSO PRESENT:
18
           Bryce Hixson, Videographer
19
20
21
22
                    BETA COURT REPORTING
                    www.betareporting.com
         202-464-2400                    800-522-2382
```

```
 1   fact a registered direct deal?
 2       A    Frankly, I don't recall the
 3   terminology of the deal, so I'm prepared to
 4   take your word for it, Mr. Roffman.
 5       Q    I don't want you to do that --
 6            MR. BURCHFIELD:  Neither do I.
 7            BY MR. ROFFMAN:
 8       Q    On this particular point at least.
 9   Not that it's particularly controversial, but
10   is it consistent with your -- with your
11   understanding of the transaction that Biopure
12   was selling stock directly to funds?
13       A    Yes.
14       Q    And that ThinkEquity was
15   facilitating those sales?
16       A    Yes.
17       Q    And that ThinkEquity was earning a
18   commission in connection with their
19   facilitation of those sales?
20       A    Yes.
21       Q    And in connection with that
22   ThinkEquity deal, did you go on a road show
```

Transcript of Moore, Thomas (Vol. 01) - 11/07/2006
Saturday, November 18, 2006, 6:29:38 PM

Moore

Page 165

```
 1   as well in June and July of 2003?
 2        A    Yes, I did.
 3        Q    And did Sapna Srivastava
 4   participate in that road show as well?
 5        A    I know she did not participate in
 6   significant portions of it.  She may have
 7   participated in some of the presentations,
 8   but I'd say at most of them she did not
 9   participate in.
10        Q    Was Sapna Srivastava involved in
11   speaking with investors in connection with
12   the ThinkEquity transaction?
13        A    Some investors I'm sure.
14        Q    What if any disclosures did you
15   make to investors that participated in the
16   ThinkEquity transaction about the clinical
17   hold?
18        A    None.
19        Q    What disclosures, if any, did you
20   make to investors who participated in the
21   ThinkEquity transaction about the FDA's
22   review of the BLA in connection with the
```

Transcript of Moore, Thomas (Vol. 01) - 11/07/2006
Saturday, November 18, 2006, 6:29:38 PM

Moore

Page 166

1   clinical hold?

2           MR. BURCHFIELD: Object to form.

3           THE WITNESS: I guess I didn't

4   think there was any relationship between the

5   two.

6           BY MR. ROFFMAN:

7       Q   There was no relationship between

8   the FDA's review of the BLA and the clinical

9   hold you're saying.

10      A   Right.

11      Q   What disclosures, if any, did you

12  make to investors who participated in the

13  ThinkEquity transaction concerning the

14  information contained in the April 25th, 2003

15  letter from the FDA?

16      A   I made no such disclosures.

17      Q   What disclosures, if any, did you

18  make to investors who participated in the

19  ThinkEquity transaction concerning

20  information contained in the May 30th letters

21  from the FDA?

22      A   I disclosed the extension of the

Transcript of Moore, Thomas (Vol. 01) - 11/07/2006
Saturday, November 18, 2006, 6:29:38 PM

Moore

Page 167

1  review cycle, I disclosed the reasons for
2  that extension.  I think those are the
3  principal things that were disclosed.
4      Q    When you say you disclosed the
5  reasons for that extension, did you say
6  anything to investors who participated in the
7  ThinkEquity transaction that were different
8  from the statements you made during the May
9  30 investor conference call?
10     A    Not that I recall.
11     Q    What reasons did you provide to
12 investors who participated in the ThinkEquity
13 transaction about the reasons for the
14 extension?
15     A    I said that there had been
16 additional analysis on some of the clinical
17 data which had been submitted to the BLA and
18 that the FDA had viewed that as a major
19 amendment and thereby invoked their right to
20 extend the review period by 90 days.
21     Q    Did you disclose to investors who
22 participated in the ThinkEquity transaction

Transcript of Moore, Thomas (Vol. 01) - 11/07/2006
Saturday, November 18, 2006, 6:29:38 PM

Moore

Page 168

```
 1   that the information Biopure submitted to the
 2   FDA was submitted for the purpose of lifting
 3   a clinical hold that was in place?
 4        A    No, I did not.
 5        Q    I'd like to show you what's been
 6   previously marked as Exhibit 284.
 7   Exhibit 284 is a copy of the Rule 424(b)(5)
 8   prospectus supplement filed by Biopure in
 9   connection with the ThinkEquity transaction;
10   is that correct?
11        A    Yes, it is.
12        Q    What was your role with respect to
13   the preparation or filing of this document
14   with the SEC?
15        A    I reviewed the filing before it was
16   made with the SEC.
17        Q    Was your approval required prior to
18   filing the document with the SEC?
19        A    My approval, the approval of Jane
20   Kober, I'm sure the approval of ThinkEquity
21   counsel as well, but I believe all those
22   approvals were required, as well as probably
```