## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-11853-PBS |
| BIOPURE CORPORATION, et al., | ) ) | |
| Defendants. | ) ) | |

## DEFENDANT THOMAS A. MOORE'S MOTION FOR EQUITABLE RELIEF OR SANCTIONS AGAINST PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

Pursuant to this Court's inherent authority to grant equitable relief, and to enforce its discovery rulings of March 16, 2006 under Federal Rule of Civil Procedure 37(b)(2), Thomas Moore requests that the Court grant him relief in view of the failure of the Securities and Exchange Commission ("SEC") to assist him in his discovery efforts against the U.S. Food and Drug Administration ("FDA"). As explained in greater detail in the accompanying Memorandum of Law, on March 16, 2006, the Court instructed the SEC to assist Mr. Moore in obtaining document discovery from the FDA, and admonished the SEC that failure to do so would cause its case at trial to "suffer." Over the last eight months, the FDA has failed to comply with Mr. Moore's limited discovery requests, and just last month realized that it previously overlooked vast databases of potentially responsive documents that must now be searched for the first time. The FDA's egregious delays, in which the SEC apparently has acquiesced contrary to court order, have caused prejudice to Mr. Moore's defense.

Accordingly, as explained in greater detail in the accompanying Memorandum of Law, Mr. Moore requests that the Court grant the following items of equitable relief: (1) an

instruction at trial that the jury may draw an "adverse inference" against the SEC, to the effect that the documents not produced to Mr. Moore were either harmful to the SEC, helpful to Mr. Moore, or both; and (2) a bar against the SEC's presentation at trial of live testimony from FDA personnel.

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned hereby certify that they have conferred on behalf of Mr. Moore with opposing counsel in an attempt to resolve and narrow the issues in the foregoing Motion.

Respectfully submitted,

/s/ Jason A. Levine
Edward P. Leibensperger (BBO # 292620)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Tel.: (617) 535-4000

Bobby R. Burchfield (admitted pro hac vice)
Jason A. Levine (admitted pro hac vice)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000

Date: December 1, 2006

*Counsel for Defendant Thomas A. Moore*

2

**APPENDIX OF EXHIBITS IN SUPPORT OF DEFENDANT
THOMAS A. MOORE'S MOTION FOR EQUITABLE RELIEF OR SANCTIONS
AGAINST PLAINTIFF SECURITIES AND EXCHANGE COMMISSION**

## TABLE OF CONTENTS

**Exhibit**      **No.**

Status Conference Transcript (Mar. 16, 2006) (excerpts) ...........................1

Letter from Jason Levine to Acting FDA Commissioner (Mar. 24, 2006) ...2

Third-Party Subpoena Duces Tecum (Mar. 24, 2006) ..................................3

Joanne Binkley Testimony (excerpts) .........................................................4

Letter from Ian Roffman to Gilliam B. Conley (Apr. 21, 2006) ..................5

SEC Letter to Acting FDA Commissioner (Nov. 30, 2006) .........................6

FDA Transmittal Letter (June 28, 2006) ......................................................7

Letter from Jason Levine to Michael Shane (July 11, 2006)........................8

Letter from Jason Levine to Michael N. Druckman and Claire Whitaker
(July 28, 2006)..............................................................................................9

Motion to Compel Compliance with Federal Subpoenas (Aug. 10, 2006) ...10

FDA Opposition to Motion to Compel (Oct. 3, 2006) .................................11

Franklin Stephenson Testimony (excerpts) .................................................12

Toby Silverman Testimony (excerpts) .........................................................13

Emergency Request for Hearing on Motion to Compel (Oct. 23, 2006).......14

Letter from Heather Sidwell to Claire Whitaker (Oct. 26, 2006)..................15

Proposed Stipulation......................................................................................16

Motions Hearing Transcript (Oct. 30, 2006) (excerpts) ...............................17

# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,)
                                    )
              Plaintiff             )
                                    )
       -VS-                         ) CA No. 05-11853-PBS
                                    ) Pages 1 - 27
BIOPURE CORPORATION, et al,         )
                                    )
              Defendants            )


STATUS CONFERENCE

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE


United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
March 16, 2006, 3:30 p.m.


LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA 02210
(617)345-6787

```
 1    A P P E A R A N C E S:

 2         IAN D. ROFFMAN, ESQ., R. DANIEL O'CONNOR, ESQ., and
      ELLEN E. BOBER MOYNIHAN, ESQ., Securities and Exchange
 3    Commission MA, 33 Arch Street, 23rd Floor, Boston,
      Massachusetts, 02110-1424, for the Plaintiff.
 4
           ROBERT A. BUHLMAN, ESQ. and DONALD J. SAVERY, ESQ.,
 5    Bingham McCutchen, LLP, 150 Federal Street, Boston,
      Massachusetts, 02110, for the Defendant, Biopure Corporation.
 6
           BOBBY R. BURCHFIELD, ESQ. and EDWARD P. LEIBENSPERGER,
 7    ESQ., McDermott, Will & Emery, 28 State Street, Boston,
      Massachusetts, 02109-1775, for the Defendant, Thomas Moore.
 8
           CATHY A. FLEMING, ESQ. and MARY-PAT CORMIER, ESQ.,
 9    Edwards Angell Palmer & Dodge, 101 Federal Street, Boston,
      Massachusetts, 02110, for the Defendant, Howard Richman.
10
           JUSTIN J. DANIELS, ESQ., Skadden, Arps, Slate, Meagher
11    & Flom, LLP, One Beacon Street, 31st Floor, Boston,
      Massachusetts, 02108, for the Defendant, Jane Kober.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

1   the SEC is going to have a problem, okay.  But follow the

2   rule because without that, I'm going to deny any request for

3   a continuance.  The rule has been there from the beginning of

4   time.

5          Now, maybe you didn't know about it then, but you

6   sure know about it now, and I don't understand why you

7   haven't followed the rule.  That puts the laboring oar on

8   them to do it in a timely way by the time a federal judge has

9   scheduled the trial.

10          Let me ask you this:  Is there any principled

11  reason why the FDA hasn't complied other than this

12  regulation?  I mean, is there something like national

13  security, terrorism, something I'm not familiar with?

14          MR. ROFFMAN:  Your Honor, it's actually all of

15  them.  There's two separate issues.  One is documents, and

16  the other is depositions.  For depositions, it really is,

17  they just haven't followed the rule.  And as soon as they

18  submit the request, the FDA will process it, and I think that

19  they'll be able to get the depositions.

20          THE COURT:  Immediately, immediately, I mean,

21  because they can't -- you know, I know the federal

22  government, okay.  I used to be chief of civil in the U.S.

23  Attorney's office a million years ago, and also -- also --

24  I've been a judge now for twelve years here, twenty years all

25  together, okay?  So it can't be when the agency gets around

Page 8

1    to it.  It's got to be immediately.  But you have to cross

2    the T and dot the I.

3              MS. FLEMING:  Your Honor, we have.  We have

4    submitted the requests.  We have done the alternate paths.

5              THE COURT:  Well, when I got all that screaming and

6    yelling back and forth, that wasn't what was said in my

7    brief.

8              MS. FLEMING:  I think what we did is cited it down

9    in the footnotes, what steps we had taken as well to comply

10   with -- not only with doing it under the rules of discovery

11   in this court, but that we had taken steps to comply with the

12   Touhy regulations, that we were doing this --

13             THE COURT:  I wish somebody, instead of screaming

14   about the Constitution, it would have been a lot quicker to

15   have just told me you did the regulation and that they're

16   just slow in responding, instead of the volumes of briefs

17   that I got.  I didn't see the fine print in some footnote

18   somewhere.

19             All right, now, is it correct she's now followed

20   the regulations?

21             MR. ROFFMAN:  Your Honor, with respect to -- I

22   don't think they have with respect to depositions, but --

23             THE COURT:  Why?  What haven't they done it?

24             MR. ROFFMAN:  What they have to do is write a

25   letter that explains the reason why they need testimony

9f710079-b8d3-4592-a64a-0ab673502085

1    addressed to the Commissioner of the FDA.

2              THE COURT:  Would you help because your case is

3    going to suffer?

4              MR. ROFFMAN:  I will.  And if they've done it, I've

5    never seen it.

6              THE COURT:  Do you have the letter that you've

7    written?

8              MS. FLEMING:  I don't have the letter with me, your

9    Honor.  I have the footnote which refers to the steps --

10             THE COURT:  You know, the briefing was annoying

11   because it was talking -- it's a very -- it puts the thing in

12   a totally different setting when you're talking about due

13   process clause and you don't tell me you followed the

14   regulation.  So why don't you file with me exactly what you

15   did on the Touhy regulation, all right?

16             MS. FLEMING:  We will do it, your Honor.  We will

17   do it.

18             THE COURT:  So let's assume that they've done it.

19   What is the FDA telling you about how quickly they can get a

20   turnaround on it?

21             MR. ROFFMAN:  Well, can I just address the

22   documents for a second because I think that's a separate

23   issue.  The FDA really has an agencywide and, I think,

24   legitimate concern about documents because they get

25   subpoenas, Congressional requests, terrorism-related

Page 10

1    requests, and they have an enormous backlog.  But what we can

2    do to try and get through that is -- and I've spoken briefly

3    with Mr. Moore's counsel about this -- if the defendants can

4    have what's a reasonable narrowly tailored request, there is

5    a regulation which allows us as another federal agency to

6    request outside of the FOIA regulations, and we will make the

7    request for those documents.

8            THE COURT:  This isn't FOIA.  This is discovery.

9    We're not talking FOIA; we're talking discovery.  And so what

10   T does she have to cross and I to dot to get the documents,

11   the Touhy regulations again?

12           MR. ROFFMAN:  Again, it's the Touhy regulations.

13           THE COURT:  Has she done that?

14           MR. ROFFMAN:  With the Touhy regulations, the FDA

15   takes the position, as they're entitled to under the law,

16   that a document subpoena gets put in the FOIA cue.

17           THE COURT:  You know what?  I'll find them in

18   contempt.  They'll subpoena the stuff to court here.  That's

19   not acceptable.  Now, it has to be narrowly tailored.  I'll

20   be sympathetic if it's everything but the kitchen sink, but

21   if there's an ongoing trial which the government is pressing

22   forward with, they can't do that.

23           MR. ROFFMAN:  As long as it's narrowly tailored, we

24   can get the documents.

25           THE COURT:  Good.

Page 18

1    answer that question without having seen their request.  I

2    think we've all agreed that we're going to sit down and talk

3    about it and try to work through the logjam.

4            THE COURT:  Why don't I put down July 1.  It at

5    least gets us somewhere.

6            MR. ROFFMAN:  Is that for all FDA documents, or is

7    that document discovery for the entire case?

8            THE COURT:  That's a good question.  I mean, I've

9    been so focused on the FDA.

10           MR. ROFFMAN:  I think, I mean, I don't know why we

11   would need to cut off document discovery before the end of

12   discovery.

13           THE COURT:  Is everyone happy with all document

14   discovery open until July 1?

15           MS. FLEMING:  If we can make the FDA have that

16   cutoff, we're fine with July 1.

17           THE COURT:  All right, July 1 for all document

18   production.  So any document request because, obviously, I

19   would assume it's already been filed.  Is that right?

20           MR. ROFFMAN:  Yes.

21           THE COURT:  So no new requests at this point unless

22   it's newly discovered something, but basically all document

23   production, including that by the FDA, should be done by

24   July 1, and then all depositions by October 31.

25           Now, do we want to do motions for summary

9f710079-b8d3-4592-a64a-0ab673502085

Page 24

1    next week?

2            THE CLERK:  July 26 at 2:00 o'clock.

3            MS. FLEMING:  Great, thank you.

4            THE COURT:  Where is that going to take place?

5            MS. FLEMING:  New York City.  It's supposed to take

6    place at the ABA, but that's in Honolulu.

7            THE COURT:  And you're picking New York?

8            MS. FLEMING:  I did not, but the people who don't

9    have big firm support behind them thought it would be better

10   to do it in New York.  Unfortunately, our constitution

11   requires that I attend the ABA in Honolulu, so --

12           THE COURT:  So we'll do it the following week, the

13   26th.

14           MS. FLEMING:  Thank you.

15           THE CLERK:  And the trial is January 15 at 9:00,

16   final pretrial January 9 at 2:00 p.m.

17           THE COURT:  Okay?  One thing this does not provide

18   for -- let's be clear -- it doesn't set out a window for

19   additional motions for summary judgment.  So that

20   realistically, if someone files one, I will not get to it

21   because this is so tight following the close of discovery.

22   So if you want to file another motion for summary judgment,

23   you probably will need to do that really early on.  Don't do

24   it at the last minute.  The other issue it doesn't build in

25   for is expert discovery.

# EXHIBIT 2

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202 756.8021

March 24, 2006

**VIA FACSIMILE AND COURIER**

Dr. Andrew C. von Eschenbach
Acting Commissioner
United States Food and Drug Administration
Office of the Commissioner
Parklawn Building
Mail Code: HF-1
5600 Fishers Lane
Rockville, Maryland 20856

　　　　Re:　　*Touhy* Request for *S.E.C. v. Biopure Corp.*, Civ. No. 05-11853-PBS (D. Mass)

Dear Commissioner von Eschenbach:

Pursuant to 21 C.F.R. §§ 20.1(c) and 20.2(a), on behalf of Thomas A. Moore, the former Chief
Executive Officer of Biopure Corporation ("Biopure") and a defendant in the above-captioned
SEC enforcement action, we hereby request the production of certain FDA documents and
records, and the production of certain FDA witnesses for deposition. For the following reasons,
this request complies with FDA's *Touhy* regulations.[1]

**A.　　Mr. Moore Has a Compelling Need for the Requested Documents and Testimony,
　　　　Which Are Narrowly Tailored To Minimize the Burden Upon the FDA.**

This case concerns public statements and disclosures that Mr. Moore and the other defendants
made regarding the FDA's pre-market review of Hemopure®, a biologic developed by Biopure.
With a trial date of January 15, 2007, the Court recently set deadlines of May 15, 2006 for
document requests, July 1, 2006 for the production of documents, and October 31, 2006 for all
depositions. The requested documents and testimony are central to Mr. Moore's defense. In
addition, the Court stated on the record during a scheduling conference on March 16, 2006, that
the FDA's failure to comply timely with a *Touhy* request would severely jeopardize the SEC's
ability to proceed with its case. Accordingly, from the perspective of Mr. Moore and the SEC,
there is a compelling need for satisfaction of Mr. Moore's request. *See* 21 C.F.R. § 20.44(a).

---

[1] As a precaution only, we are separately serving upon the FDA subpoenas for production of the same documents
and witnesses. We are aware of the pending litigation concerning the FDA's amenability to the subpoena power of
federal courts, and we will withdraw the subpoenas after the FDA satisfies this *Touhy* request.

Acting Commissioner von Eschenbach
March 24, 2006
Page 2

Further, the request is narrowly tailored to seek only those documents and witnesses that are
essential to Mr. Moore's defense. Responding to the request should not cause the FDA any
undue burden. Indeed, in the investigatory phase of this case, the FDA produced three of its
employees for sworn testimony, taken by the SEC, within seven days of the SEC's request. Mr.
Moore now requests the opportunity to take the depositions of these same individuals. The FDA
also produced certain documents to the SEC within nine days of the SEC's request. Hence,
timely compliance with Mr. Moore's *Touhy* request should not burden the FDA, nor should any
follow-up request by Mr. Moore that the FDA's responsive documents or testimony may
necessitate.

In addition, Mr. Moore's depositions of the FDA employees identified herein would serve both
the public interest and the FDA's own objectives. The SEC and the FDA have announced a joint
task force to help protect the investing public and maintain the integrity of the securities markets.
A necessary component of both goals is the right of an accused to defend himself against the
SEC's allegations, particularly in view of the FDA's policy of neutrality in matters unrelated to
official FDA business. *See* 21 C.F.R. § 20.1(c); FDA Regulatory Procedures Manual 10-12.
Because the SEC intends to call the identified FDA employees as witnesses at trial of this case, it
is crucial that Mr. Moore have a full opportunity to take their depositions. We will conduct these
depositions in Washington, D.C., to minimize travel time and cost for the FDA.

**B.    Request for Production of Documents and Records Pursuant to 21 C.F.R. § 20.2(a).**

Mr. Moore hereby requests that the FDA produce to the undersigned, as promptly as possible but
no later than <u>May 1, 2006</u>, the following documents and records:

1.    All handwritten or typed notes made by the following FDA employees relating to
      or reflecting conversations with Biopure or any of its agents or attorneys, since
      July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and
      Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to
      or reflecting conversations about Biopure or Hemopure with persons <u>other than</u>
      Biopure or any of its agents or attorneys, including any staff of the SEC, since
      July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and
      Dr. Toby Silverman.

3.    Other handwritten or typed notes or personal files of the following FDA
      employees relating to Biopure or Hemopure, since July 31, 2002: Abdu Alayash,
      Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's BLA, including any FDA
      "concurrence" sheets.

Acting Commissioner von Eschenbach
March 24, 2006
Page 3

5. All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6. All drafts and electronic copies (including metadata) of the following documents:

   a. April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

   b. May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

   c. July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

   d. July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

   e. "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

   f. "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times: March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

   g. transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7. All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8. All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9. All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

Acting Commissioner von Eschenbach
March 24, 2006
Page 4

**C.    Request for Production of Witnesses for Deposition Pursuant to 21 C.F.R. § 20.1(c).**

Mr. Moore hereby requests that the FDA produce, as promptly as possible, but no later than <u>August 1, 2006,</u> the following FDA employees for deposition:

1.    Abdu Alayash (date and time to be determined)

2.    Dr. Lawrence Landow (date and time to be determined)

3.    Dr. Toby Silverman (date and time to be determined)

4.    Franklin Stephenson (date and time to be determined)

\*    \*    \*    \*    \*

Thank you for your cooperation. Please do not hesitate to contact me at (202) 756-8021 with any questions or concerns about the foregoing.

Sincerely,

Jason A. Levine

On this 24th day of March, 2006, before me, the undersigned notary public, personally appeared Jason A. Levine, whom I personally know, who signed the preceding document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

(official signature and seal of notary)

My Commission expires: _June 30, 02006_

cc:    Thomas A. Moore
       Robert Buhlman, Esq. (counsel to Biopure Corporation)
       Thomas Dougherty, Esq. (counsel to Jane Kober)
       Cathy Fleming, Esq. (counsel to Howard Richman)
       Ian Roffman, Esq. (SEC counsel)

# EXHIBIT 3

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

March 24, 2006

**BY HAND DELIVERY**

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane
Mail Code: GCF-1
Rockville, Maryland 20857-0001

Re:     _S.E.C. v. Biopure Corp._, Civ. No. 05-11853-PBS (D. Mass.)

Dear Mr. Shane:

Please find enclosed a third-party subpoena regarding the above referenced matter. Please note that we are simultaneously submitting a _Touhy_ request for the same documents and witnesses to Dr. Andrew C. von Eschenbach, Acting Commissioner for the FDA. As a precaution only, we are serving upon the FDA the enclosed subpoena. We are aware of the pending litigation concerning the FDA's amenability to the subpoena power of federal courts, and we will withdraw the subpoena after the FDA satisfies our _Touhy_ request.

Sincerely,

Heather L. Sidwell

Enclosure

Not admitted to practice in the District of
Columbia; admitted only in Maryland. Supervised
by principals of the Firm who are members of the
District of Columbia Bar.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

<div style="text-align: center;">

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF  COLUMBIA

</div>

| | |
|---|---|
| U.S. Securities and Exchange Commission<br>V. | **SUBPOENA IN A CIVIL CASE** |
| Biopure Corporation, Thomas Moore, Howard Richman,☐and Jane Kober | Case Number:[1] 05-11853 -PBS ☐<br>(Pending in U.S. District Court for the District of Massachusetts)☐ |

TO: Dr. Andrew C. von Eschenbach, Acting Commissioner☐   U.S. Food and Drug Administration☐   Office of the Commissioner
Parklawn Building☐   5600 Fishers Lane☐   Rockville, MD 20856☐

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): ☐☐            See Schedule A attached hereto.

| PLACE<br>McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 | DATE AND TIME<br>May 1, 2006 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Thomas A. Moore | DATE<br>March 24, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason A. Levine / McDermott Will & Emery LLP / 600 13th Street, NW / Washington, DC 20005 / 202.756.8000

<div style="text-align: center;">(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)</div>

[1]If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc.<br>www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person. except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## SCHEDULE A

## INSTRUCTIONS

A.    Each request for documents seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

B.    Where any copy (or copies) of any document sought is (or are) are not identical to any other copy thereof, by reason of any alterations, notes, comments or other material contained thereon, or attached thereto or otherwise, all such non-identical copies shall be produced separately.

C.    In producing documents, all documents that are physically attached to each other in files shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs or any other method, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained.

D.    In producing documents, all documents that are stored electronically (e.g., word processing files, electronic mail and databases) must be produced. For retrievable information stored in computers, please provide a copy both in paper and on magnetic media and provide or identify a suitable program or method for retrieving the information.

E.    If any document requested was, but no longer is, in your possession, custody, or control, or is no longer in existence, please provide information sufficient to identify the document(s) and the reason(s) why such document(s) is (or are) no longer in your possession, custody, or control

F.    If any document covered by this Subpoena is withheld by reason of a claim of privilege or exemption, a list is to be furnished at the time that documents are produced identifying any such documents for which the privilege is claimed together with the following

information with respect to any such document withheld: date, sender, recipient, any person to whom copies were furnished and the identity of any person, general subject matter, basis on which privilege is claimed, and the paragraph of this Subpoena to which such document relates.

      G.     In the event that any document has been destroyed, lost, discarded or otherwise disposed of within the twelve months preceding the date of this Subpoena, any such document is to be identified as completely as possible, including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

      H.     If you have any objections to this Subpoena, a written statement containing those objections is to be furnished at the time specified herein for the production of documents.

      I.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Subpoena shall be deemed continuing so as to require further and supplemental production if the Food and Drug Administration or the Center for Biologics Evaluation and Research obtains or discovers additional documents between the time of initial production and the time of hearing or trial.

      J.     All documents are to be produced as they are kept in the usual course of business so that the Defendant can ascertain the file in which they are located, their relative order in such files, and how such files were maintained.

## DEFINITIONS

Defendant incorporates by reference the Uniform Definitions in Discovery Subpoenas as set forth in United States District Court for the District of Massachusetts Local Rule 26.5. Additionally, the following definitions and instructions shall apply:

2

A.    "Biopure" includes Biopure Corporation, Inc. and all parents, subsidiaries, wholly-owned or otherwise, affiliates, officers, directors, employees, representatives, agents, and all other persons or entities acting on its behalf.

B.    "Hemopure" means Biopure's hemoglobin-based oxygen therapeutic [hemoglobin glutamer – 250 (bovine), or HBOC-201] developed for human use.

C.    "BLA" means the Biologic License Application submitted by Biopure on or around July 31, 2002 for the use of Hemopure in the treatment of acute anemia in adult patients undergoing orthopaedic surgery, and for the purpose of eliminating, delaying, or reducing the need for allogenic red blood cell transfusions in these patients.

D.    "IND application" means the Investigational New Drug Application (IND 10962) submitted by Biopure on or around March 7, 2003 entitled, "A Multi-center Study to Evaluate the Safety and Tolerability of Hemoglobin-based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects."

E.    The "Food and Drug Administration" and "FDA" includes the Food and Drug Administration, CBER, CDER, and each of their respective officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

F.    The "Center for Biologics Evaluation and Research" and "CBER" include the Center for Biologics Evaluation and Research and each of its officers, employees, agents, representatives, attorneys, and/or any other individual or entity presently or formerly acting at its/his request or on its behalf.

G.    The "U.S. Securities and Exchange Commission" and "SEC" include the U.S. Securities and Exchange Commission and each of its Commissioners, employees, agents,

3

representatives, attorneys, and/or any other individual or entity presently or formerly acting at its request or on its behalf.

H.    The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail, or other recorded forms of communication. It includes, but it not limited to, documents, meetings, and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

I.    The term "person" includes natural persons, or any business, legal, or governmental entity or association.

J.    The term "relating to" means referring to, concerning, describing, referencing, evidencing, summarizing, recording, regarding, mentioning, or constituting.

K.    The term "reflecting" means evidencing, demonstrating, touching upon, mentioning, commenting on, incorporating, analyzing, transcribing, noting, evaluating, reviewing, reporting on, critiquing, criticizing, or showing in any way.

L.    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "include" or "including" means including without limitation.

## DOCUMENTS TO BE PRODUCED

1.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,

2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2. All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons other than Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3. Other handwritten or typed notes, or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31, 2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4. The final July 30, 2003 letter relating to Biopure's Hemopure BLA, including any FDA "concurrence" sheets.

5. All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6. All drafts and electronic copies (including metadata) of the following documents:

    a. April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    b. May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    c. July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

    d. July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

      e.     "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

      f.     "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times: March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

      g.     transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.     All communications between the FDA and the SEC (and any notes or memoranda reflecting such communications) since July 31, 2002, relating to Biopure Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

8.     All documents describing or concerning the policy of inter-agency cooperation between the FDA and the SEC to increase the public's protection from false and misleading statements, including communications between the FDA and the SEC.

9.     All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Subpoena to Michael Shane, for the U.S. Food and Drug Administration, was served on this 24th day of March, 2006 on the following in the manner indicated:

### By Hand Delivery

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane, GCF-1
Rockville, MD 20857-0001

By: _____
Heather L. Sidwell

# EXHIBIT 4

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

1 (Pages 1 to 4)

**Page 1**

1        UNITED STATES DISTRICT COURT
2          DISTRICT OF MASSACHUSETTS
3    ------------------------------x
4    SECURITIES AND EXCHANGE COMMISSION,:
5          Plaintiff    :    Case No.
6          v.          :  05-11853-PBS
7    BIOPURE CORPORATION, THOMAS, MOORE,:
8    HOWARD RICHMAN AND JANE KOBER,    :
9          Defendants    :
10   ------------------------------x
11
12        Deposition of JOANNE BINKLEY
13          Rockville, Maryland
14        Tuesday, November 14, 2006
15          9:21 a.m.
16   Job No.: 1-90194
17   Pages 1 - 131
18   Reported by: Alda Mandell, RPR
19
20
21
22

**Page 2**

1        Deposition of JOANNE BINKLEY, held at the
2    offices of:
3
4          FOOD AND DRUG ADMINISTRATION
5          5600 Fishers Lane
6          Room 13B39
7          Rockville, Maryland 20852
8          (301)827-1187
9
10       Pursuant to agreement, before Alda Mandell,
11   Registered Professional Reporter and Notary Public of
12   the State of Maryland.
13
14
15
16
17
18
19
20
21
22

**Page 3**

1        A P P E A R A N C E S
2
3    ON BEHALF OF THE FOOD AND DRUG
4    ADMINISTRATION:
5          CLAIRE WHITAKER, ESQUIRE
6          UNITED STATES ATTORNEY'S OFFICE
7          555 Fourth Street, Northwest
8          E-4204
9          Washington, D.C. 20530
10         (202)514-7137
11
12         MICHAEL SHANE, ESQUIRE
13         Office of the Chief Counsel
14         Food and Drug Administration
15         5600 Fishers Lane
16         Rockville, Maryland 20857
17         (301)827-2802
18
19
20
21
22

**Page 4**

1        A P P E A R A N C E S (Continued)
2
3    ON BEHALF OF THE SECURITIES AND EXCHANGE
4    COMMISSION:
5          R. DANIEL O'CONNOR, ESQUIRE
6          SECURITIES AND EXCHANGE COMMISSION
7          BOSTON DISTRICT OFFICE
8          33 Arch Street
9          Boston, Massachusetts 02110-1424
10         (617)573-8987
11
12   ON BEHALF OF DEFENDANT THOMAS MOORE:
13         HEATHER L. SIDWELL, ESQUIRE
14         McDERMOTT, WILL & EMERY, LLP
15         600 Thirteenth Street, Northwest
16         Washington, D.C. 20005-3096
17         (202)756-8021
18
19
20
21
22

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

2 (Pages 5 to 8)

5

1 ON BEHALF OF DEFENDANT HOWARD RICHMAN, M.D.:
2 CATHY FLEMING, ESQUIRE
3 EDWARDS, ANGELL, PALMER & DODGE
4 750 Lexington Avenue
5 New York, New York 10022
6 (212)912-2743
7
8 CONTENTS
9 EXAMINATION OF JOANNE BINKLEY        PAGE
10 By Ms. Sidwell                8
11 By Mr. O'Connor              124
12
13
14
15
16
17
18
19
20
21
22

7

1 PROCEEDINGS
2 JOANNE BINKLEY
3 having been duly sworn, testified as follows:
4 MS. SIDWELL: Heather Sidwell from
5 McDermott, Will & Emery on behalf of Thomas Moore, one
6 of the defendants.
7 MS. FLEMING: Kathy Fleming on behalf of Dr.
8 Richman, who is one of the defendants. It is our
9 position -- because this case has been severed and
10 stayed -- but we have been requested to continue in
11 the discovery and will be given the opportunity to
12 clean up testimony if his health improves.
13 MR. O'CONNOR: Dan O'Connor for Plaintiff
14 Securities and Exchange Commission.
15 MR. SHANE: Michael Shane for the Food and
16 Drug Administration.
17 MS. WHITAKER: Claire Whitaker, Assistant
18 U.S. attorney for FDA. And I think your associate may
19 want to introduce herself.
20 MS. KATZBECK: I'm sorry Susan Katzbeck.
21 I'm from McDermott, Will & Emery.
22 EXAMINATION BY COUNSEL FOR DEFENDANT MOORE

6

1 EXHIBITS
2 (Attached to the Transcript)
3 DEFENDANT'S (Moore)            PAGE
4 1   Letter with subpoena - 10/10/06     11
5     Sidwell to Shane
6 2   Emails from Binkley - 10/30 and 10/31/06   46
7     to Silverman and others
8 3   Emails - Shane to Binkley - 11/2/06 and   48
9     Binkley to D'Agnillo and others - 11/2/06
10 4   Letter with subpoena - 3/24/06     68
11     Sidwell to Shane
12 5   Letter - 3/24/06 - Levine to Eschenbach   68
13 6   Letters - 4/21/06 - Roffman to Cormier   68
14     and Levine and 4/21/06 - Roffman to
15     Conley
16
17
18
19
20
21
22

8

1 BY MS. SIDWELL:
2 Q   My name is Heather Sidwell and I'm an
3 attorney with the law firm of McDermott, Will & Emery
4 and my firm represents Thomas A. Moore who is one of
5 defendants in this case. Now, this deposition is
6 being taken pursuant to the Federal Rules of Civil
7 Procedure, Numbers 26 and 30(b)(6) in the matter of
8 SEC versus Biopure. It's currently pending in the
9 United States District Court for the District of
10 Massachusetts.
11 Would you please state your name, employer
12 and job title.
13 A   Sure. My name is Joanne Binkley and I am
14 employed by the Food and Drug Administration and I am
15 currently serving as the Division Director of the
16 Division of Disclosure and Oversight Management in the
17 Center for Biologics Evaluation and Research.
18 Q   Ms. Binkley, have you ever been deposed
19 before?
20 A   I believe once when I was 18, 17, 18?
21 Q   And was that in your personal capacity?
22 A   In my personal capacity. Yes.

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

3 (Pages 9 to 12)

9

1    Q   So you may or may not remember. But please
2  understand that my questions and your answers will be
3  recorded by the court reporter sitting here. And
4  you'll need to speak up and give only verbal answers,
5  so yes or no.
6    A   Okay.
7    Q   And please elaborate where appropriate. The
8  court reporter will not be able to record any head
9  nods or bodily movements so you will need to -- you
10  will need to speak up. Also if you need a break at
11  anytime, just please let us know. We'll try to be
12  able to accommodate that. As long as there's no
13  question pending, we should be able to accommodate
14  that.
15    A   Thank you.
16    Q   Also if you realize later that you've
17  omitted something from an earlier question, please
18  feel free to, you know, take a moment and go ahead
19  and, you know, elaborate on that earlier answer. We'd
20  appreciate that.
21    A   Okay.
22    Q   And lastly, Ms. Whitaker, who's representing

10

1  the FDA here may object to some of my questions. And
2  that's okay. Unless she expressly instructs you not
3  to answer, you do need to answer the question. Do you
4  understand that?
5    A   I do.
6    Q   Great. Do you understand what a Rule
7  30(b)(6) deposition is?
8    A   It's been somewhat explained to me I guess.
9    Q   Okay.
10    A   It's a deposition -- well, go ahead and
11  explain it probably better than I can.
12    Q   Well, go ahead and explain what it is that
13  you do understand.
14    A   I understand I'm to be deposed on the
15  process of the -- the current process for collecting
16  documents responsive to the subpoena as it was --
17    Q   Go ahead.
18    A   As it was narrowed.
19    Q   Okay. And do you understand that your
20  answers are binding on the agency, on FDA?
21    A   Yes.
22    Q   So your answers are to be based not only on

11

1  your own personal knowledge but also on the knowledge
2  of the agency. Do you understand that?
3    A   Yes. To the best of my knowledge.
4    Q   And we'll be discussing generally four
5  categories that were outlined in the subpoena which
6  was served on October 10th of 2006. Do you understand
7  what those four categories were?
8    A   Yes. We've defined them as A, B, C and D.
9      MS. SIDWELL: Okay. I will ask the court
10  reporter to mark the subpoena as Exhibit Number 1.
11      (Exhibit 1 was marked and was attached to
12  the transcript.)
13  BY MS. SIDWELL:
14    Q   Ms. Binkley, the court reporter just showed
15  you Exhibit Number 1 which is the subpoena dated
16  October 10 of 2006. Do you recognize that document?
17    A   Yes.
18    Q   And have you seen it before?
19    A   Yes.
20    Q   And who showed Exhibit Number 1 to you
21  before?
22    A   Claire did.

12

1    Q   Do you recall when that was?
2    A   I think I may have seen this -- I know I saw
3  it last night and I may have had it in an email prior
4  to that.
5    Q   Do you recall when that email was?
6    A   No.
7    Q   If you turn to the last page of Exhibit
8  Number 1 --
9    A   Uh-huh.
10    Q   -- you will see that there are four
11  categories there.
12      MS. WHITAKER: I'd like to object if you're
13  going to suggest that those are the four categories
14  that she's here to testify to. You were not at the
15  hearing before Judge Robertson?
16      MS. SIDWELL: I was not at the hearing,
17  Claire, but this was the subpoena.
18      MS. WHITAKER: Do you have the transcript?
19      MS. SIDWELL: I do not have the transcript
20  here.
21      MS. WHITAKER: Pursuant to the judge's
22  directive it's been limited to certain areas and then

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

4 (Pages 13 to 16)

13

1  there was an agreement during the deposition, a
2  discussion back and forth with Mr. Levine. So I have
3  a copy of the transcript if you'd like to see it. You
4  have not seen the transcript?
5         MS. SIDWELL: I do not have a copy of the
6  transcript here.
7         MS. WHITAKER: But you have seen it?
8         MS. SIDWELL: I have seen the transcript.
9         MS. WHITAKER: You've had a chance to look
10  at it. On pages 31 through 35 I believe is where the
11  discussion is and it's pretty clear what the judge
12  directed that Ms. Binkley respond to. And as I said,
13  Mr. Levine narrowed it. I believe you and I had
14  communications about that. So if you're going to ask
15  her to respond to these four items, they're outdated.
16         MS. SIDWELL: Well, I will take a look at
17  your copy of the transcript on the break but in the
18  meantime I will continue with these categories.
19         MS. WHITAKER: I don't think we're in a
20  position to respond in that way.
21         MR. O'CONNOR: I object to that too. I mean
22  the court clearly outlined what the deposition was

14

1  supposed to be about. It's in the transcript. You
2  can ask about these questions as they relate to the
3  four categories of documents perhaps that were
4  outlined in the transcript, or the hearing.
5         MS. SIDWELL: Let's take a short break. I'd
6  like to review the transcript. We're going off the
7  record.
8         (A recess was taken.)
9         MS. SIDWELL: We'll go back on the record.
10  After a brief discussion to clarify what's stated in
11  the court's transcript, the items that are -- or the
12  categories that are specified in Schedule A and the
13  four categories of materials that are specified in the
14  court's transcript are not mutually exclusive. What
15  we will be talking about are the general categories of
16  document collection and review procedures as stated in
17  the Schedule A as they relate to the four categories
18  of items which have been previously discussed by
19  counsel for Mr. Richman and counsel for the FDA and
20  those four categories are electronic documents, call
21  summaries and reports, internal emails, and
22  handwritten or other hard copy notes.

15

1         MS. FLEMING: Could I just clarify? You
2  said counsel for Dr. Richman. I think it's counsel
3  for Tom Moore.
4         MS. SIDWELL: I'm sorry.
5         MS. FLEMING: We should make that clear.
6  I'll put on the record as counsel for Dr. Richman --
7  Dr. Richman is ill and I have not had conversations
8  with the FDA about any of these. We had issued some
9  initial requests under both the Freedom Of Information
10  Act but that is where it has ended. I have not had
11  conversations with anyone on behalf of Dr. Richman.
12         MS. SIDWELL: I apologize for that
13  misstatement. Yes. Please clarify that. It was
14  counsel for Mr. Moore and counsel for the FDA.
15         MS. WHITAKER: And just to make it
16  absolutely clear what the 30(b)(6) witness has -- what
17  categories of cases have been searched, we have
18  identified four categories. They may not be exactly
19  the four categories in the subpoena. But I will just
20  read them so it's perfectly clear on the record.
21  Summaries and memoranda of telephone calls with
22  Biopure prepared by FDA concerning the Biological

16

1  License Application or trauma-related Investigational
2  New Drug Application submitted by Biopure Corporation
3  during the period of July 31, 2002 to April 30, 2004.
4         The second category is Review Committee
5  meeting summaries concerning the aforesaid BLA and
6  trauma IND during the period of July 31, 2002 to
7  April 30, 2004.
8         Internal email correspondence concerning the
9  aforesaid BLA or trauma IND for which Dr. Abdu Alyash,
10  Dr. Lawrence Landow, Franklin Stephenson and Dr. Toby
11  Silverman are shown as authors, recipients, paren cc
12  recipients or bcc recipients -- and I believe that was
13  excluded during the hearing by Mr. Levine -- during
14  the period from January 30 to -- excuse me --
15  January 1, 2003 to April 30, 2004
16         And the last category is all handwritten or
17  typed notes and personal files made by Dr. Abdu
18  Alyash, Dr. Lawrence Landow, Franklin Stephenson, and
19  Dr. Toby Silverman relating to the aforesaid BLA and
20  trauma IND during the period July 31, 2002 to
21  April 30, 2004. And that is what the 30(b)(6) witness
22  is authorized to testify to and that was the narrowed

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

5 (Pages 17 to 20)

17

1  request.
2       MS. SIDWELL: I will put on the record that
3  I disagree with Claire with -- with Ms. Whitaker's
4  characterization that it was a narrowed request.
5  Again those are four specific categories of documents
6  but the Schedule A is for a 30(b)(6) witness that can
7  testify as to the collection and review procedures for
8  those four categories of documents as well as
9  procedures for transmitting those four categories of
10  documents from FDA's hands.
11  BY MS. SIDWELL:
12     Q   So with that, I will continue. Ms. Binkley,
13  as you sit here today, are you prepared to testify
14  with respect to category one as it relates to the four
15  categories of documents specified by Ms. Whitaker?
16  Category one reads the document collection and review
17  procedures employed by the United States Food and Drug
18  Administration, the FDA, in response to requests for
19  information from the SEC regarding Biopure
20  Corporation, Biopure's public disclosures and
21  Biopure's interactions with the FDA.
22       MR. O'CONNOR: Objection.

18

1       MS. WHITAKER: Objection.
2       MS. SIDWELL: You can answer.
3       MS. WHITAKER: You can testify.
4     A   I'm not prepared to respond to requests for
5  information from the SEC. I'm prepared to respond to
6  requests for information and documents regarding the
7  narrowed subpoena.
8  BY MS. SIDWELL:
9     Q   Are you prepared to testify with respect to
10  the document collection and review procedures employed
11  by the United States Food and Drug Administration as
12  it relates to call summaries requested either under
13  the Securities and Exchange Commission's interagency
14  request of April 21st, 2006 and/or Mr. Moore's
15  subpoena, original subpoena from March 24th, 2006.
16       MR. O'CONNOR: Objection.
17       MS. WHITAKER: Objection. It's simply not
18  what the judge ordered. She's not here to testify
19  about the 20.85 process if that's what you're
20  suggesting. He made it perfectly clear.
21       MS. SIDWELL: Claire -- it's my
22  understanding, Ms. Whitaker, that these documents, the

19

1  call summaries, the committee meeting summaries, the
2  internal emails, and the handwritten typed personal
3  notes which -- you know, we can go through the SEC's
4  interagency request and you'll see that those four
5  categories correspond.
6       MS. WHITAKER: You can ask any question you
7  want about what kind of a search she has done, how
8  she's assembled records, but to the extent that you're
9  asking her to respond to something that -- a search
10  that she was not responsible for, it's just simply
11  beyond the scope of what the judge ordered. She's
12  here to provide the information concerning what
13  efforts are being made within the ten-day period since
14  the hearing to assemble the records and then, the
15  process after that, how long it's going to take. You
16  know, the judge was very explicit that you're entitled
17  to that information and we have -- I believe she
18  has --
19       MS. SIDWELL: We're entitled, Ms. Whitaker,
20  to all information regarding the FDA's document
21  collection and review procedures --
22       MS. WHITAKER: We can go around and aroun

20

1  on this.
2       MS. SIDWELL: That's the point of a 30(b)(6)
3  deposition.
4       MR. O'CONNOR: Just to be clear, I mean on
5  page 35 of the transcript from the hearing that took
6  place on October 30th, 2006, the judge very clearly
7  lays out what categories of testimony will be allowed
8  to take place. I think we're just talking -- you're
9  going to ask these questions. Let's just figure out
10  what documents are available so we can move forward.
11  It's not about the SEC request. It doesn't say where
12  they come from. There are four categories that we're
13  going to agree to produce, the process that's been
14  used and how long it's going to take. We can read it
15  into the record, we can mark it as an exhibit, but
16  it's very clear what the judge has allowed. I think
17  we're just wasting time talking about semantics. I
18  suggest we get to the questions about what's there and
19  how long it's going to take.
20       MS. SIDWELL: We will get to the questions
21  and we will come back to this and if we need to
22  reconvene the deposition, we will do so and we reserve

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

10 (Pages 37 to 40)

**37**

1    Q   Okay.
2    A   Now, you mean in my division do we keep a
3  log? Because other people can ask for those same
4  volumes. So we do not keep a log.
5    Q   Okay. So your particular division does not
6  keep a log?
7    A   Of what we ask for. What we do is in each
8  request that comes in; say, it's a FOIA request or
9  congressional, regardless of what it is, it gets a
10 folder, a file gets made. And so in that file you
11 keep all the things that you're requesting. You keep,
12 you know, kind of an administrative file of what
13 you're requesting.
14   Q   Okay.
15   A   But we do not keep -- I wouldn't know -- I
16 wouldn't know who else requested the same folder or
17 the same IND outside of my division. In my division I
18 could ask.
19   Q   Did you ask? Have you asked?
20   A   If somebody else in my division requested
21 those files?
22   Q   Right.

**38**

1    A   No. I didn't ask. Because I was not
2  assigned this.
3    Q   Okay. You mentioned that you had requested
4  at least -- or directed a search for the IND volumes
5  in late October. What about for the BLA volumes?
6    A   Same thing.
7    Q   Same date?
8    A   I believe so.
9    Q   Do you remember at whose request you
10 directed that search? Did someone contact you to
11 request the search?
12   A   Our Office of General Counsel.
13   Q   And was there a particular individual there
14 that you spoke with?
15   A   The first one was Rick Blumberg. First
16 person that I spoke to.
17   Q   Could you spell that last name, please?
18   A   B-L-U-M-B-E-R-G.
19   Q   And did he contact you by telephone?
20   A   Yes.
21   Q   Do you keep logs of telephone calls?
22   A   No.

**39**

1    Q   How did you come to testify today?
2    A   The person overseeing the current search for
3  documents.
4    Q   And do you recall who asked you to attend
5  today?
6    A   I think Rick mentioned it might be likely.
7  Then Mike Shane here let me know that it was more than
8  likely.
9    Q   What did you do to prepare for today's
10 deposition?
11   A   Basically I went through the emails that I
12 sent out in regard to the search. I went through -- I
13 got somewhat of a handle on how many documents we've
14 received thus far in response to the search. I went
15 through and determined who -- out of everybody that
16 I've asked for documents, who's responded and who has
17 not. Not anything much different than I would be
18 doing at this point in a search regardless of who the
19 search was for, whether I was being deposed or not.
20   Q   Okay. And did you speak to anyone about the
21 deposition today?
22   A   I spoke to both Claire and Mike.

**40**

1    Q   Okay. And when was that?
2    A   Probably several times over the last week
3  and a half or so. I mean we met yesterday but we
4  probably mentioned the deposition or that I would be
5  deposed in other conversations when --
6    Q   And when you met yesterday, how long did you
7  meet?
8    A   I think from 2:00 to 5:00.
9    Q   So about three hours?
10   A   Yeah.
11   Q   And did you take notes?
12   A   We ended about 5:00, didn't we?
13       MS. WHITAKER: A little before I think.
14       THE WITNESS: A little before 5:00? See.
15 I'm not a clock watcher. I apologize.
16 BY MS. SIDWELL:
17   Q   That's okay. Did you take notes at that
18 meeting?
19   A   No.
20       MS. WHITAKER: I might add I was also late.
21       THE WITNESS: Oh. Okay. So it wasn't from
22 2:00 to 5:00.

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

15 (Pages 57 to 60)

57

1    Q    Okay. Do you recall --
2    A    And I don't know -- you know, I can't tell
3    you for sure in either group that any -- that all of
4    them are signed. Some sent me a statement but
5    didn't -- or used an electronic signature or something
6    like that. I can't tell you that I have hand signed
7    of all of them.
8    Q    Okay. Going back to Exhibit 2, have you
9    received responsive documents from everyone in the two
10   column?
11   A    The two is four people -- not everybody in
12   the two column had responsive documents.
13   Q    Okay. Who did not have responsive
14   documents?
15   A    Jonathan Goldsmith. Mark Weinstein. And I
16   believe everybody else sent -- I believe everyone else
17   sent documents.
18   Q    What about in the cc column?
19   A    They were not expected to send documents.
20   Q    And with respect to Exhibit Number 3, have
21   you received responsive documents from everyone in the
22   two column?

58

1    A    No.
2    Q    Okay. Who have you not received responsive
3    documents from?
4    A    I cannot tell you off the top of my head but
5    many of these people did not -- indicated that they
6    did not have any documents.
7    Q    They indicated that they did not have
8    responsive documents?
9    A    Yeah.
10   Q    Can we get a list of those people?
11   MS. WHITAKER: Is that a request?
12   MS. SIDWELL: Yes, it is. Unless the
13   witness knows off the top of her head and can testify
14   today.
15   THE WITNESS: I cannot. I mean I wouldn't
16   want to testify under oath to all these names which
17   ones did or didn't provide documents. I know there
18   were a number of people who did not provide -- who
19   said they had no documents, no responsive documents.
20   BY MS. SIDWELL:
21   Q    And to your knowledge, everyone who has
22   responsive documents, have they produced those

59

1    responsive documents?
2    A    I have not heard from three.
3    Q    And those three, you don't know the names of
4    the three individuals off the top of your head?
5    A    I can make possibly a guess.
6    MR. SHANE: Don't.
7    THE WITNESS: I wouldn't want to say under
8    oath.
9    BY MS. SIDWELL:
10   Q    What is the volume of documents that you've
11   collected to date as a result of your requests?
12   A    An estimated volume based on the number of
13   inches, not counting page by page, is estimated to be
14   approximately 113,000 documents.
15   Q    Is that all of the documents or do you
16   anticipate any additional documents coming in?
17   A    I don't anticipate anything is going to
18   basically change that number. I think that number
19   will be significantly lowered when we go through and
20   weed out duplicates. How significantly I don't know
21   at this point.
22   Q    Can you just clarify for the record, is that

60

1    113,000 documents or 113,000 pages?
2    A    Pages.
3    Q    Pages. Okay. And those documents are
4    currently going through the review process, the
5    documents that you've received?
6    A    Those documents are in a sorting process,
7    trying to get them sorted by date, and then weeded out
8    for duplicates.
9    Q    Okay. And then they will go through a
10   review process?
11   A    And then they will go through a review
12   process if this is not further narrowed.
13   Q    Can you explain what that review process is?
14   A    Sure. It's not an easy process when you're
15   dealing with a scope of documents this large. You
16   initially go through and you -- somebody has to do a
17   read of every document and get an idea of what types
18   of information are in these documents that will need
19   to be protected so that you can go back through and
20   start doing your redactions. And the initial read is
21   to kind of give you a feel of is there a lot of
22   attorney-client privileged information so that you'll

69

1    THE WITNESS: Could we just -- could I run
2  to the ladies?  I'll be right back.
3    MS. SIDWELL:  Sure.  We'll go off the
4  record.
5    (A recess was taken.)
6    MS. SIDWELL:  I appreciate that
7  clarification.
8    MS. WHITAKER:  I'd like to just have one
9  quick break.  I'd like to talk to the witness.
10    (A brief recess was taken.)
11    MS. SIDWELL:  We are back on the record.
12  I'll just note quickly for the record that while we
13  were off the record we had a brief discussion with
14  Judge Robertson to determine the exact scope of this
15  particular deposition and it has been decided that Ms.
16  Binkley will testify only as to the four particular
17  category -- well, the review and collection and
18  transmittal procedures for the four specific
19  categories that we identified earlier with respect to
20  the FDA's most recent -- I'll call it a re-collection,
21  re-review that has been under way over the course of
22  the last couple of weeks.  So with that, we will pick

70

1  up where -- just about where we left off before we
2  went on break or before we went off the record.
3  BY MS. SIDWELL:
4    Q  You had indicated, Ms. Binkley, that to date
5  in the most recent collection efforts about 113,000
6  pages have been collected?
7    A  Uh-huh.
8    Q  And that they are currently being placed in
9  chronological order and then they will be reviewed and
10  that review will take at least eight minutes per page?
11    A  Uh-huh.
12    Q  And my colleague here has done the math and
13  it comes out to about 29 weeks' worth of review for a
14  staff of 14 people?
15    A  That may be true if a staff of 14 people
16  could be devoted to it.  Even over the last two weeks
17  I've had 14 people work on it at different times but
18  with 80 hours of comp. time working the holiday
19  weekend and the previous weekend, we put in about 625
20  hours.  And for that we stopped all other work on
21  other requests excepting other litigation,
22  court-ordered litigation, and a few congressional

71

1  requests and documents that are required to be
2  reviewed for advisory committee meetings and posted
3  prior to the meetings under FACA (phonetic).  And so
4  those reviews were the only types of reviews that we
5  had ongoing in the last couple weeks.  But in order to
6  do that, we stopped our regular FOIA queue.  We put it
7  on hold for a couple of weeks while we went through
8  this process.  I would not be able to do that for 29
9  weeks, be able to put all other document requests on
10  hold.
11    Q  Is there anything that could be done to
12  speed up or somehow shorten the eight minute review
13  period for each page?
14    A  Well, you know, when I say it's eight
15  minutes per page, some pages are not.  Some pages
16  are -- you can very quickly look at it and you can see
17  that this entire page there's no handwritten notes, it
18  was already sent to -- even if it was sent to Biopure,
19  it might still contain confidential commercial -- I
20  mean trade secret information so we would still have
21  to redact that.  But I'm trying to think of something
22  that wouldn't -- that you can quickly make a judgment

72

1  that there's not anything that needs to be redacted
2  and so those may take 30 seconds.  And other pages may
3  take hours.  I mean some of them are very complex
4  issues where you're trying to really tease out what's
5  trade secret from CCI so that more information can be
6  disclosed.  Or there's -- you know, there's other
7  issues that have to be resolved.
8    So it varies and the density of information
9  on a page, of course, makes it -- then the complexity
10  of the issues being discussed on the page are all
11  taken into account.  So it's not that somebody sits
12  there and puts an hour glass and says I'm going to
13  spend eight minutes on this page.  They don't.
14  They're doing it as quickly as they can do it.  It's
15  just that I will not be able to devote all 14 members
16  of my staff and myself to it for 29 weeks.  I can tell
17  you that.  We will work on it as quickly as we can.
18  We will try to make it a priority.  But we have to be
19  fair to other requesters who are requesting documents
20  for medical reasons, for other reasons.  They have a
21  right -- that are up in the queue to get their
22  documents too in a timely fashion and they're all

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

19 (Pages 73 to 76)

73

1  complaining too. And so, you know, we have
2  obligations in addition to this one subpoena.
3      Q   I understand that there is a slight
4  possibility that, you know, it will be less than
5  113,000 pages after your staff completes its
6  chronological I guess deduping?
7      A   Yeah.
8      Q   Do you have an anticipated timeline for when
9  that chronological placement or the ordering and the
10  deduping would occur?
11     A   I would hope by -- you know, my estimate
12  would be about a week from today.
13     Q   So a week from today would be Tuesday the
14  21st?
15     A   Yeah. I would shoot for that as a goal.
16     Q   As a goal for completing the deduping
17  process?
18     A   Yes.
19     Q   And then your staff would go through the
20  review for the various trade secret, attorney/client,
21  et cetera?
22     A   Uh-huh.

74

1      Q   Okay.
2      A   And in the meantime I would also be trying
3  to get the telecons that are in the official file that
4  we know are responsive, that are in the official
5  license application file. Try to get those redacted.
6      Q   Okay. Do you have a sense -- and you may
7  not and that's fine -- but do you have a sense at this
8  point how many duplicate pages --
9      A   That I don't have -- I can -- I don't have
10  at this point. I would guess that when we start
11  getting into the emails, that quite a few of them will
12  be duplicate pages. I would have some suggestions of
13  ways that you might want to consider narrowing the
14  scope of this request, if you'd be interested, and try
15  to get you at least what may be more important to you.
16  I don't know what may be more important to you. But
17  at least to try to discuss it informally.
18     Q   Okay. I'd be happy to hear any of your
19  suggestions up front at this point.
20     A   There are thousands, probably tens of
21  thousands.
22     Q   Okay.

75

1      A   Between 20, maybe 20 and 30,000 -- I can't
2  give you an exact number -- of files called JMP files
3  and they are tables and pages and pages and pages of
4  raw data which can be protected as confidential
5  commercial information by the manufacturer at this
6  point if they should so choose. We would have to
7  search through them to make sure that there's no
8  privacy information in them. So we would still have
9  to do a review and that there's no third-party
10  information in them. So we would still have to do a
11  review of these tables. But you know, they've got
12  some kind of patient identifier on one side and then
13  they've got, you know, like Excel charts that go for
14  pages of when this patient -- for each patient, you
15  know, like 50 patients down a page, of when they got
16  every single dose of Hemopure and what reactions they
17  had and they're all just coded as numbers.
18         So I don't know that this would be of much
19  use to you. If I was an attorney trying to get
20  somewhere on this case, I wouldn't want this
21  confusing -- it's like background noise to me. I
22  don't see it would probably be useful for you. And if

76

1  you can get those off the table, you would probably
2  save a lot of effort, time, money, expense, time
3  wasted not getting documents to you, to say that those
4  are not responsive.
5         Another thing that I think is probably not
6  responsive and that you're probably not looking for is
7  a lot of the email attachments I believe are parts of
8  the BLA, big chunks of the BLA. And that's these
9  thousand page attachments that go back and forth. And
10  they may also be data manipulated by, you know, these
11  data sets again. Some subsections of them, maybe some
12  of them -- you know, I don't know what the reviewers
13  did with them. But again you know, if you can limit
14  the emails to not the attachments and get all the
15  emails and then, you know, reserve the right to later
16  ask for the attachment, we could get through things a
17  lot faster. I mean these are the things that are
18  going to hold you up to make this between something
19  that can be done possibly in a useful time frame for
20  you to get it to a courtroom, or it just won't happen
21  in that time. There's just not enough resources.
22     Q   If the JMP files, the raw data that you're

DEPOSITION OF JOANNE BINKLEY
CONDUCTED ON TUESDAY, NOVEMBER 14, 2006

31 (Pages 121 to 124)

121

1   has been made to do so. And we have collected those
2   as a result of that effort.
3       Q   And those documents are currently being
4   chronologized?
5       A   Uh-huh.
6       Q   And you expect that --
7       A   -- to be done in about a week from today.
8       Q   And the review process of the non
9   duplicative documents could take anywhere up to
10  approximately -- apparently six months?
11      A   Well, that's if I could devote everybody on
12  my staff to it which I told you I could not.
13      Q   So it could be a longer period of time?
14      A   It will be a longer period of time if we're
15  not significantly able to come to an agreement to
16  narrow the scope. And as for what steps are next, as
17  to what we should produce next, what we've done thus
18  far is the IND, the documents, correspondence, file of
19  the IND. And that has gone -- I believe's gone to GC.
20  I don't know the status. It may have gone to SEC. So
21  that's the first step on a rolling basis.
22          The next step that I was considering doing

122

1   is the BLA documents that are responsive. And that
2   would be the telecons and the Review Committee meeting
3   summaries. And so the telecons would be next. And
4   then after that the Review Committee meeting
5   summaries. Unless you tell me that you want us
6   instead to direct our attention to something else
7   next. You know. You tell me that you want something
8   else instead of that next, then we'll direct our
9   attention that way.
10      Q   Okay. Yes. It is my understanding that at
11  least a partial production has already been sent to
12  SEC?
13      A   Uh-huh.
14      Q   And you believe that that's the IND
15  correspondence?
16      A   Uh-huh.
17      Q   And what is your anticipated time line for
18  the BLA telecons and Review Committee meeting
19  summaries?
20      A   Well, if that's next, I would try to get the
21  telecons to you -- to our general counsel before
22  Thanksgiving or around -- right around then. And the

123

1   Review Committee meeting summaries probably the week
2   after Thanksgiving.
3       Q   And then we could anticipate I guess emails
4   following that?
5       A   Yes. And you know, as I mentioned earlier,
6   if you can agree to limit the scope of them so that
7   all these voluminous thousand 1500 page attachments
8   are eliminated, we could -- it would move that review
9   time -- it would shorten it. So I mean I have to say
10  some of the ball is in your court, some of it's in our
11  court. But I need additional guidance on ways that
12  we -- from you on ways that you'd considering
13  narrowing this so that we won't be in the three-year
14  category where we were with the other litigation.
15          MS. SIDWELL: I believe that's all of the
16  questions that I have. I will state for the record,
17  however, that given the misunderstanding and the
18  earlier conference, we still believe that we are
19  entitled to a 30(b)(6) deposition with a witness who
20  can speak to the document collection, review and
21  transmitting procedures employed by the FDA prior to
22  Judge Robertson's order and I would anticipate that we

124

1   will pursue that in due course.
2           MR. BLANCHARD: On behalf of Dr. Richman, we
3   don't have any questions. As pertains to Mr. Moore's
4   request for documents, my understanding is that Dr.
5   Richman's requests are still in the queue, given that
6   the case has been stayed as to him and he's been
7   severed, and that there would be some notice before he
8   picked up. I would anticipate that the FDA would
9   certainly prioritize other matters other than Dr.
10  Richman and in the happy event that he becomes well
11  enough to proceed, if the case doesn't settle, I
12  assume that we can pick up discussions with the FDA
13  through counsel at that point. And if there's any
14  questions counsel has in the meantime, I invite
15  Ms. Whitaker to call me.
16          EXAMINATION BY COUNSEL FOR THE SEC
17  BY MR. O'CONNOR:
18      Q   Can I ask this briefly? So you're going to
19  do the telecons to the BLA file and then the --
20      A   Committee.
21      Q   -- committee summaries? And then you're
22  next going to turn to the emails?

# EXHIBIT 5

04/21/06  FRI 14:23 FAX 617 424 5940          SEC-BDO                                    ☒002



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BOSTON DISTRICT OFFICE
33 ARCH STREET
23ᴿᴰ FLOOR
BOSTON, MA 02110-1424
PHONE: 617-573-8900
FACSIMILE: 617-573-4590

IAN D. ROFFMAN
PHONE: 617-573-8987
EMAIL: ROFFMANI@SEC.GOV

April 21, 2006

<u>**Via Facsimile and U.S. Mail**</u>

Mary-Pat Cormier
Edwards Angell Palmer & Dodge LLP
111 Huntington Ave
Boston, MA 02110-1424

Jason A. Levine
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

        Re:    <u>SEC v. Biopure, Civ. A. No. 05-11853-PBS (D. Mass.)</u>

Dear Jason and Mary-Pat:

        Enclosed is a copy of the Commission's request, pursuant to 21 C.F.R. 20.85, that the
FDA produce documents requested by defendants Moore and Richman. The purpose of this
letter is to confirm the understandings that we reached during our conference call on April 5. I
am also sending a copy of this letter to counsel for the FDA so that they may rely on it in
responding to the Commission's document request.

        As we discussed, we are making the enclosed request to the FDA in an effort to facilitate
the FDA's production of documents in this matter. It is our understanding that the parties have
mutually agreed that the parties -- including the Commission, the FDA and each defendant --
have not waived any rights, claims, arguments or objections as a result of this request. In
particular, the FDA may assert any objection to these or any other requests, including but not
limited to objections based on burden, relevance, admissibility and privilege. The Commission
similarly may assert any objection to these or any other requests, including but not limited to
objections based on burden, relevance, admissibility and privilege. The defendants have also not
waived any claim or argument that they are entitled to production of any document or that they
are entitled to compliance with any other document request or subpoena.

        As we discussed during our conference call, the FDA began identifying, locating and
collecting responsive documents after receiving defendant Moore's request dated March 24,
2006, based on an understanding that the Commission's enclosed request would be forthcoming.
You have agreed that the FDA may do a rolling production and that, as its first priority, it will
collect responsive documents that are less likely to be privileged and that exist in hard copy or in

Letter to Mary-Pat Cormier and Jason A. Levine
April 21, 2006
Page 2

readily-accessible electronic format before addressing your requests that seek categories of
documents over which they expect to assert privilege or which may require more complex
technical and computer assistence. With respect to your specific requests, you have clarified that
your reference to "native format" in request no. 5 means that you are asking that emails be
printed (or produced electronically) from the same program in which they were created. You
have further clarified that your reference to "metadata" in request no. 6 means that you are
seeking electronic production of versions of letters that contain prior edits embedded in the
electronic document. We further discussed that if FDA intends to assert a claim of privilege over
non-final versions of letters to Biopure and because FDA must review all documents (including
electronic documents) for trade secrets, confidential commercial information and privilege, FDA
may first produce final, hard-copy versions of communications (subject to trade secret and
confidentiality limitations, if any) before addressing your request for non-final electronic versions
that may contain metadata (if any exist).

        At this time, the Commission's request does not include the items requested in No. 7 and
No. 8 of your March 24 letter sent on behalf of defendant Moore. For the sake of clarity, these
omitted requests are:

        7.    All communications between the FDA and the SEC (and any notes or memoranda
              reflecting such communications) since July 31, 2002, relating to Biopure
              Corporation, Thomas A. Moore, Howard Richman, and/or Jane Kober.

        8.    All documents describing or concerning the policy of inter-agency cooperation
              between the FDA and the SEC to increase the public's protection from false and
              misleading statements, including communications between the FDA and the SEC.

        With respect to No. 7, as we discussed during our conference call, the Commission has
already produced communications between the FDA and SEC during the investigation that led to
the institution of this action. Although you have not agreed to withdraw this request, I do not see
any basis to require the FDA to search for and produce the same documents that the Commission
has already produced. Such a request would impose an entirely unnecessary burden on the FDA
and, frankly, would cause limited FDA personnel to take time away from collecting and
reviewing the other documents you are seeking. If there are any communications that you
believe have been omitted from the Commission's production, that certainly was not our
intention, and I ask that you bring any suspected omission (which would have been inadvertent)
to my attention so we may rectify it. The only other documents that would even arguably be
responsive to request no. 7 would be attorney notes, which you have agreed that you are not
seeking. Similarly, the Commission has also already produced documents responsive to request
no. 8 that comprise the FDA-SEC inter-agency cooperation letters from both 2004 and 1992. For

04/21/06  FRI 14:24 FAX 617 424 5940        SEC-BDO                                    ☒004

Letter to Mary-Pat Cormier and Jason A. Levine
April 21, 2006
Page 3

these reasons, there is no basis to impose upon the FDA the burden of also producing those same documents. Although your Request Nos. 7 and 8 are not included in the Commission's current request to the FDA, I remain willing to discuss these matters with you further at your convenience.

Lastly, defendants have also requested that the FDA authorize six employees to be deposed in this action. To the extent that the FDA grants defendants' requests, defendants have agreed that they, collectively, will depose each witness only once and that each defendant will not have a separate opportunity to depose these witnesses. In addition, as I mentioned in my March 27 letter to Jason Levine (cc-ed to all defense counsel) and reiterated during our April 5 conference call, defendants have not provided any justification to the FDA for their requests to take the depositions of Dr. Alayash or Dr. Epstein. Neither Dr. Alayash nor Dr. Epstein have been identified as a potential witness by the Commission and, based on the record to date, it is unclear what information they might have that would be relevant to the issues in this case. Accordingly, please be aware that, unless you make a supplemental submission to the FDA that provides a justification to take their depositions, the FDA may conclude that it has no basis on which to grant your request pursuant to 21 C.F.R. 20.1. If you determine to make a supplemental submission, I ask that you provide me with a copy as well.

If you have any questions or your like to discuss any of these matters in more detail, please do not hesitate to call me.

Very truly yours,

Ian D. Roffman

Enclosure: Letter to Gilliam B. Conley, April 21, 2006
cc:    Michael Druckman, Michael Shane, counsel for the FDA



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BOSTON DISTRICT OFFICE
33 ARCH STREET
23ᴿᴰ FLOOR
BOSTON, MA 02110-1424
PHONE: 617-573-8900
FACSIMILE: 617-573-4590

IAN D. ROFFMAN
PHONE: 617-573-8987
EMAIL: ROFFMANI@SEC.GOV

April 21, 2006

**Via Overnight Delivery**

Gilliam B. Conley
Center for Biologics Evaluation and Research
Office of Compliance and Biologics Quality (HFM-654)
Division of Inspections and Surveillance
Woodmont Office Complex 1
1401 Rockville Pike, Room 400S
Rockville, MD 20852

    Re:    SEC v. Biopure, Civ. A. No. 05-11853-PBS (D. Mass.)

Dear Mr. Conley:

    Pursuant to 21 C.F.R. § 20.85, the Securities and Exchange Commission ("Commission") is requesting that the Food and Drug Administration ("FDA") produce the documents listed below and authorize the Commission to disclose these documents to defendants in the above-referenced action. I understand that FDA is prohibited pursuant to 21 U.S.C. 331(j) from disclosing trade secret information outside the Department of Health and Human Services. To the extent that the requested documents contain confidential commercial information that belongs to Biopure Corporation ("Biopure"), the individual defendants are in the process of obtaining Biopure's consent for disclosure in connection with this matter. I will forward that consent to you when I received it.

    As counsel for the Commission has discussed with FDA counsel and with counsel for the defendants, the documents requested in this letter have been requested by defendants in the above-referenced action. The Commission is submitting this request to facilitate FDA's production of documents in compliance with FDA regulations. In making this request, the Commission expressly states that it is not taking a position as to the appropriateness of the document requests or as to the relevance or admissibility of responsive documents in the above-referenced action. The Commission further expressly reserves any and all of its rights to object to production of the requested document or to their use or admissibility in any pre-trial, trial or post-trial proceeding for any reason. Please note that the requested documents have also been the subject of other requests submitted by the defendants to the FDA in connection with this matter, and this letter is not intended to supercede defendants' other requests or to take a position as to

Letter to Gilliam B. Conley
April 21, 2006
Page 2


their compliance with applicable law or their enforceability.

<u>**Requested Documents**</u>

1.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations with Biopure or any of its agents or attorneys, since July 31,2002: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

2.    All handwritten or typed notes made by the following FDA employees relating to or reflecting conversations about Biopure or Hemopure with persons <u>other than</u> Biopure or any of its agents or attorneys, including any staff of the SEC, since July 31, 2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

3.    Other handwritten or typed notes or personal files of the following FDA employees relating to Biopure or Hemopure, since July 31,2002:  Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

4.    The final July 30, 2003 letter relating to Biopure's BLA, including any FDA "concurrence" sheets.

5.    All electronic mail (in native format) for the period January 1, 2003 to April 30, 2004, relating to Biopure or Hemopure for which one or more of the following FDA employees are shown as authors, recipients, cc: recipients, or bcc: recipients: Abdu Alayash, Dr. Lawrence Landow, Franklin Stephenson, and Dr. Toby Silverman.

6.    All drafts and electronic copies (including metadata) of the following documents:

a.    April 25, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

b.    May 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

c.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's IND application (FDA Reference: BB-IND 10962);

Letter to Gilliam B. Conley
April 21, 2006
Page 3

     d.    July 30, 2003 Basil Golding letter to Howard Richman regarding Biopure's Hemopure BLA (FDA Reference STN: 125066/0);

     e.    "Telecon with Biopure" memoranda by Franklin Stephenson dated July 31, 2003; August 5, 2003; August 15, 2003; August 26, 2003; and September 16, 2003;

     f.    "Record of Telephone Conversation" memoranda concerning telephone contact with Howard Richman on the following dates and times:  March 13, 2003 at 16:00:30; March 13, 2003 at 17:05:59; and April 8, 2003 at 16:05:48;

     g.    transcription of September 10, 2003 Howard Richman voicemail to Franklin Stephenson.

7.    All documents describing or concerning proposed or actual revisions to CBER's Standard Operating Procedures and Policies 8405, versions #2 and #3.

8.    Personnel files of the following individuals:  Lawrence Landow, Toby Silverman and Franklin Stephenson.

9.    All "complete response letters" issued by the FDA between the dates January 1, 2003 and December 31, 2003.

If you have any questions about these requests or would like to discuss this matter further, please do not hesitate to contact me at 617-573-8987.

Very truly yours,

Ian D. Roffman

cc:    Jason A. Levine, counsel for defendant Thomas Moore
       Mary-Pat Cormier, counsel for defendant Howard Richman
       Michael Druckman, Michael Shane, counsel for FDA

# EXHIBIT 6



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**BOSTON DISTRICT OFFICE**
**23RD FLOOR**
**33 ARCH STREET**
**BOSTON, MASSACHUSETTS 02110-1424**

IN REPLYING PLEASE QUOTE



November 30, 2006

## VIA OVERNIGHT DELIVERY

Dr. Andrew C. Von Eschenbach
Acting Commissioner
United States Food & Drug Administration
Office of the Commissioner
Parklawn Building
Mail Code: HF-1
5600 Fishers Lane
Rockville, MD 20856

      Re:    Trial Testimony Request for
             <u>SEC v. Biopure Corp., et al., Civ. A. No. 05-11853-PBS (D. Mass.)</u>

Dear Commissioner von Eschenbach:

      Pursuant to 21 C.F.R. §§ 20.1 and 20.85, I hereby request that FDA employees, Dr. Abdu Alayash, Dr. Basil Golding, Dr. Laurence Landow, Dr. Toby Silverman, Mr. Franklin Stephenson, and Dr. Robert A. Yetter (collectively, "potential FDA witnesses"), be authorized to appear to testify at the trial in the above-captioned matter, currently scheduled to commence on January 16, 2007 in Boston, Massachusetts.

      In the action, the Securities and Exchange Commission ("Commission") charges that in 2003, defendant Thomas Moore, former chief executive officer of Biopure Corporation ("Biopure") and defendant Howard Richman, Biopure's former head of regulatory affairs, made material misstatements and omissions in public disclosures regarding Biopure's interactions with the FDA. The Commission initiated an investigation regarding this matter after receiving a letter from FDA's Office of Compliance and Biologics Quality, Center for Biologics Evaluation and Research ("CBER") which stated that a press release issued by Biopure on August 1, 2003 "may not be a fair and accurate disclosure of information to public investors" and "may not accurately reflect the magnitude of concerns expressed by [CBER] about deficiencies in the biologics license application (BLA) for the firm's investigational product 'Hemopure.'"

      The subject matter of the requested testimony is expected to concern the FDA's oral and written interactions with Biopure regarding Biopure's biologics license application, File No. BL 125066/0 ("BLA") and investigative new drug applications, File Nos. BB-IND 2935 (orthopedic surgery) and BB-IND 10962 (in-hospital trauma use) ("INDs") and FDA practice and procedure

Acting Commissioner von Eschenbach
November 30, 2006
Page 2

regarding compliance with PDUFA, issuance of action letters, and communications with sponsors during the time period relevant to the BLA and INDs. The potential FDA witnesses participated in the review of the BLA and INDs and/or in communications with Biopure regarding the status of these applications as follows:

**Dr. Abdu Alayash** – Dr. Alayash was the scientific lead for FDA's review of the BLA and was responsible for, among other things, review of the chemistry manufacturing controls sections of the BLA and INDs. Dr. Alayash participated in relevant communications with Biopure and/or its representatives.

**Dr. Basil Golding** – Dr. Golding was director of the Division of Hematology, Office of Blood Research and Review, which reviewed the BLA and INDs. Dr. Golding participated in and/or supervised the review of the BLA and INDs. Dr. Golding participated in, and on several occasions signed, relevant communications with Biopure and/or its representatives.

**Dr. Laurence Landow** – Dr. Landow was a primary clinical reviewer for the BLA and INDs. Dr. Landow was responsible for, among other things, analyzing safety data in connection with the BLA and for correspondence regarding the trauma IND. Dr. Landow participated in relevant communications with Biopure and/or its representatives.

**Dr. Toby Silverman** – Dr. Silverman was a primary clinical reviewer of the BLA and INDs. Dr. Silverman was Clinical Review Branch Chief in the Division of Hematology, Office of Blood Research and Review and was responsible for, among other things, supervising the clinical reviewers assigned to Biopure's applications, including Dr. Landow. Dr. Silverman participated in relevant communications with Biopure and/or its representatives.

**Mr. Franklin Stephenson** – Mr. Stephenson was a consumer safety officer in the Office of Blood Research and Review at CBER. Mr. Stephenson was a primary contact with Biopure regarding the BLA and INDs. Mr. Stephenson participated in relevant communications with Biopure and/or its representatives.

**Dr. Robert A. Yetter** – Dr. Yetter was Associate Director for Review Management for CBER. Dr. Yetter was personally involved on several occasions in the FDA's reviews of the BLA and INDs. Dr. Yetter is also familiar with CBER's Statements of Procedures and Policies ("SOPPs") applicable to the BLA and INDs. Dr. Yetter participated in relevant communications with Biopure and/or its representatives.

The appearance of the potential FDA witnesses would serve the public interest and

Acting Commissioner von Eschenbach
November 30, 2006
Page 3

promote the objectives of the agency. Each of the potential FDA witnesses was involved in the review of the BLA and/or INDs and/or participated in written and oral communications with Biopure or its representative about matters that are the subject of this action.

　　　　Thank you for your consideration. If you have any questions or require any additional information, please contact me at (617) 573-8927, or Ian D. Roffman, Senior Trial Counsel, at (617) 573-8987.


　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　David P. Bergers
　　　　　　　　　　　　　District Administrator
　　　　　　　　　　　　　Boston District Office


cc (by facsimile):
　　　　Bobby R. Burchfield, Esq., counsel for defendant Moore
　　　　Cathy Fleming, Esq., counsel for defendant Richman
　　　　Annamarie Kempic, Esq., U.S. Food & Drug Administration
　　　　Claire Whitaker, Esq., Assistant United States Attorney

# EXHIBIT 7



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

June 28, 2006

Securities and Exchange Commission
Boston District Office
6th Floor
73 Tremont Street
Boston, Massachusetts 02108

Attention: Ian D. Roffman

Dear Mr. Roffman:

The Center for Biologics Evaluation and Research (CBER) has concluded its review and redaction of certain documents you requested, pursuant to 21 C.F.R. § 20.85, in your April 21, 2006 letter to Gilliam B. Conley, Director of the Division of Inspections and Surveillance within the Office of Compliance and Biologics Quality. In that letter, you requested certain documents that the defendants in <u>SEC v. Biopure, Civ. A. No. 05-118653-PBS</u> (D. Mass.) seek as discovery in that case. You also sought authority to further disclose those documents to the defendants.

Mr. Elder authorized me to review the documents you have identified, and to provide you with the records you seek, subject to the limitations set forth in her letter, a copy of which is attached hereto. I have done that, and enclosed those records with this letter. As Mr. Elder's letter states, you may not disclose these documents to the defendants in that case until you obtain consent from Biopure to disclose its CCI to those defendants and provide FDA with a copy of the letter or document memorializing Biopure's consent.

If you have any questions, please contact me at 301-827-6350 or by email at Gilliam. Conley@fda.hhs.gov or Mike Druckman, Esq., at 301-827-5168, or by email at Michael.druckman@fda.hhs.gov.

Sincerely,

Gilliam B. Conley
Director, Division of Inspections and Surveillance
Office of Compliance and Biologics Quality
Center for Biologics Evaluation and Research

Enclosures



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville MD 20857

June 28, 2006

Securities and Exchange Commission
Boston District Office
6th Floor
73 Tremont Street
Boston, Massachusetts 02108

Attention: Ian D. Roffman

Dear Mr. Roffman:

This letter responds to your April 21, 2006, request pursuant to 21 CFR 20.85 for documents that the defendants in SEC v. Biopure, Civ. A. No. 05-11853-PBS (D Mass ) seek as discovery in that case, and for further authorization to disclose those documents to the defendants.

I have authorized Mr. Gilliam Conley and Dr. Maureen Knippen from FDA's Center for Biologics Evaluation and Research to provide directly to you the documents that you request, subject to the following limitations. First, as you acknowledge in your request, the U.S. Food and Drug Administration (FDA) is prohibited by 21 U.S.C. § 331(j) from disclosing trade secret information outside the Department of Health and Human Services  All trade secret information will be redacted from those documents.

Second, as you also acknowledge in your letter, many of the responsive documents contain confidential commercial information (CCI) that belongs to Biopure Corporation ("Biopure"). You represented in your request that the individual defendants were in the process of obtaining Biopure's consent to disclose to them in this case any and all CCI that is contained in the responsive documents.  To date, we have not received a copy of Biopure's consent. Consequently, our authorization for you to further disclose these documents to the defendants in this case other than Biopure is contingent on your obtaining and providing FDA with a copy of Biopure's consent.

Third, many of the responsive documents contain deliberative process documents that are privileged.  FDA has delegated authority to waive that privilege in appropriate circumstances.  In this matter, FDA has determined that it is appropriate to waive the privilege for documents that reveal FDA's deliberative process for decisions that have already been made, such as to place Biopure's Investigational New Drug application (IND) on clinical hold and to send Biopure a Complete Response letter in response to its Biologics License Application (BLA).  However, FDA has determined that it is not appropriate to waive the deliberative process privilege for records that reflect FDA's current deliberations about determinations that have not yet been

SEC LIT 0001099

made. For that reason, FDA will withhold any documents that disclose deliberations on decisions that have not been made.

Fourth, to the extent the documents contain information revealing confidential information that an entity other than Biopure owns, or that would be protected from a public disclosure request under 5 U.S.C. § 552(b)(6) or (b)(7), FDA will withhold those documents or redact the documents to the extent necessary to protect that confidential information.

Finally, as you communicated by voicemail to Associate Chief Counsel Mike Druckman, the defendants have agreed, at least for the time being, to stay their requests for personnel files of certain individuals (item 8 in your letter) and for complete response letters (item 9 in your letter).

If you have any questions, please contact Dave Krawetz of my office at 240-632-6841. Additionally, you may also contact the following individuals: Gilliam B. Conley, CBER, at 301-827-6220 or by email at gilliam.conley@fda.hhs.gov; Dr. Maureen Knippen, CBER, at 301-827-6351 or by email at Maureen.knippen@fda.hhs.gov, or Mike Druckman. Esq., at 301-827-5168, or by email at Michael.druckman@fda.hhs.gov.

Sincerely,

for Carl C. Bruger
David K. Elder
Director, Office of Enforcement

SEC LIT 0001100

# EXHIBIT 8

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Jason A. Levine
Partner
jlevine@mwe.com
202 756 8021

July 11, 2006

Michael Shane, Esq
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane, Mail Code: GCF-1
Rockville, MD 20857-0001

> Re:   *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853-PBS (D. Mass.)
>       **FDA Compliance With Subpoena Under Fed. R. Civ. P. 45**

Dear Mr. Shane:

On March 24, 2006, on behalf of Thomas Moore we served a subpoena *duces tecum* upon the FDA in the above matter. By fax dated April 3, you requested that we withdraw the subpoena (which we did *not* do), on the grounds that the FDA is not a "person" subject to subpoena under Fed. R. Civ. P. 45. As you may be aware, on June 16, the D.C. Circuit issued its decision in the case of *Yousuf v. Department of State*, 2006 U.S. App. LEXIS 14750 (D.C. Cir. June 16, 2006). In *Yousuf*, the court decisively held that the United States is a "person" within the meaning of Fed. R. Civ. P. 45, and accordingly is subject to subpoena regardless of whether it is a party to the underlying litigation. A copy of the *Yousuf* decision is attached for your convenience.

In accordance with *Yousuf*, we reiterate our request that the FDA promptly comply with our subpoena. Please let me know if you require an additional copy. Given the significant time that has elapsed since our subpoena was served, we must request the FDA's response by August 1, 2006. Please recall that a much broader subpoena was previously served upon the FDA in this matter by Biopure Corporation as well. If the FDA is accommodating in complying with our subpoena, we will refrain from seeking compliance with Biopure's more burdensome one.

Sincerely,

Jason A. Levine

Attachment

cc w/attach:   Claire Whitaker, Esq.
               Ian Roffman, Esq.

1 of 2 DOCUMENTS

**BASHE ABDI YOUSUF, ET AL., APPELLANTS v. MOHAMED ALI SAMANTAR
AND DEPARTMENT OF STATE, APPELLEES**

No. 05-5197

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA
CIRCUIT

*2006 U.S. App. LEXIS 14750*

February 27, 2006, Argued
June 16, 2006, Decided

**PRIOR HISTORY:** [*1] Appeals from the United
States District Court for the District of Columbia.
(No. 05mc00110). *Bashe Abdi Yousuf v Samantar, 2005 U.S.
App. LEXIS 21043 (D.C. Cir., Sept. 26, 2005)*

**COUNSEL:** Robert R. Vieth argued the cause for appel-
lants. With him on the briefs were Tara M. Lee, Lori R.
Ploeger, and Michael Traynor.

H. Thomas Byron, III, Attorney, U.S. Department of
Justice, argued the cause for appellee. With him on the
brief were Peter D. Keisler, Assistant Attorney General,
Kenneth L. Wainstein, U.S. Attorney, and Douglas N.
Letter, Attorney.

John S. Mills was on the brief for amici curiae The Edu-
cational Fund To Stop Gun Violence and National Secu-
rity Archive in support of appellants. Meredith Fuchs,
Kate A. Martin, and Sayre Weaver entered appearances.

**JUDGES:** Before: GINSBURG, Chief Judge, and
ROGERS and BROWN, Circuit Judges. Opinion for the
Court filed by Chief Judge GINSBURG.

**OPINIONBY:** GINSBURG

**OPINION:**

GINSBURG, *Chief Judge:* The drafters of the Fed-
eral Rules of Civil Procedure believed *Rule 45* was "so
simple that it did not need any discussion" at the sympo-
sia they held to introduce the Rules in 1938. American
Bar Association, *Federal Rules of Civil Procedure, Pro-
ceedings of the [American Bar Association] Institute [on
Federal Rules] at Washington, D.C. and* [*2] *of the
Symposium at New York City* 313 (Edward H. Hammond
ed.) (1939). The dispute before us today, in which plain-

tiff Bashe Abdi Yousuf and others challenge the district
court's denial of their motion to compel compliance with
a subpoena served upon the U.S. Department of State
under *Rule 45*, suggests the framers underestimated the
creativity of the United States when faced with a sub-
poena *duces tecum* issued in a case to which it is not a
party. That creativity notwithstanding, we hold the
United States is a "person" within the meaning of *Rule
45* -- as it has been held to be under every Rule thus far
litigated. Hence, we reverse the judgment of the district
court and remand the case for further proceedings.

I. Background

This appeal arises from litigation pending in the
United States District Court for the Eastern District of
Virginia, where the plaintiffs, who are Somali nationals,
brought suit under the Torture Victim Protection Act, *28
U.S.C. § 1350* note, and the Alien Tort Statute, *id. §
1350*, against Mohamed Ali Samantar for acts he alleg-
edly took as an official in the Somali government led by
President Mohamed Siad Barre. During discovery [*3]
the plaintiffs sought from the U.S. Department of State a
variety of documents related to (1) human rights abuses
committed by the Somali armed forces; (2) the interac-
tion between the United States and representatives of the
Siad Barre regime; and (3) "the formal structure and or-
ganization of the Somali government and political sys-
tem and Armed Forces." To this end the plaintiffs both
served the State Department with a subpoena pursuant to
*Rule 45* and submitted a request pursuant to the Depart-
ment's so-called *Touhy* regulations, *22 C.F.R. § § 172.1-
5* (setting forth agency procedures for responding to
document requests). *See United States ex rel. Touhy v.
Ragen, 340 U.S. 462, 468-70, 71 S. Ct. 416, 95 L. Ed.
417 (1951)* (upholding regulation prohibiting agency
employees from releasing documents without consent of
agency head).

2006 U.S. App. LEXIS 14750, *

The United States, on the Department's behalf, objected to the subpoena, whereupon the plaintiffs filed in the District Court for the District of Columbia a motion to compel compliance. *See Fed. R. Civ. P. 45(c)(2)(B).* The Government opposed the motion on the grounds it was not a "person" [*4] subject to subpoena under *Rule 45*; the plaintiffs had not followed proper procedures in subpoenaing the Department; and the subpoena was unduly burdensome. The plaintiffs then argued the Government had forfeited its objections to the subpoena because it had not raised them within the time limit set by *Rule 45(c)(2)(B)* and, in any event, maintained the subpoena was in all respects proper.

The district court denied the plaintiffs' motion to compel. It began by recognizing a "longstanding interpretive presumption," *Al Fayed v. CIA, 343 U.S. App. D.C. 308, 229 F.3d 272, 274 (D.C. Cir. 2000)*, that, as used in a statute, the term "person" does not include the United States. Holding the presumption unrebutted in this case, the court did not reach the Government's other objections to the subpoena. The plaintiffs now appeal.

## II. Analysis

The plaintiffs argue the district court erred in denying their motion because (1) the Government forfeited its objections when it failed to raise them in a timely manner and (2) the Government is a "person" for purposes of *Rule 45*. With regard to the latter point, the plaintiffs contend the district court should not have applied the interpretive [*5] presumption to *Rule 45* and, even if the presumption is applicable, it has been overcome. The Government in turn denies it forfeited its objections and defends the decision of the district court.

We review the district court's discovery orders for abuse of discretion, *Linder v. Calero-Portocarrero, 346 U.S. App. D.C. 117, 251 F.3d 178, 181 (D.C. Cir. 2001)*, except as to questions of law -- such as the proper interpretation of *Rule 45* -- which we decide *de novo. Eldred v. Reno, 345 U.S. App. D.C. 89, 239 F.3d 372, 374 (D.C. Cir. 2001)*. We must begin our analysis, however, with the matter of our jurisdiction. *See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*.

### A. Jurisdiction

At oral argument the Government asserted that, because the State Department had not finished reviewing the plaintiffs' document request pursuant to its *Touhy* regulations before the plaintiffs filed their motion to compel compliance with the subpoena, the Department had not as of then taken any final action subject to judicial review. Despite the Government's tardiness in presenting this objection, we must [*6] consider it because, under the Administrative Procedure Act, *5 U.S.C. § 704*,

without final agency action we do not have jurisdiction to proceed.

The objection need not long detain us, however. An agency's denial of a request is final agency action for the purpose of *§ 704. See, e.g., Envtl. Def. Fund v. Reilly, 285 U.S. App. D.C. 316, 909 F.2d 1497, 1504 n.97 (D.C. Cir. 1990)* (holding agency's denial of petition for rulemaking final per *§ 704*). Indeed, the Fourth Circuit has held specifically that an agency's refusal to comply with a subpoena constitutes "final agency action ... ripe for ... review under the APA." *COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 275 (1999)*. We agree. The requirement that an agency's action be "final" prevents improper judicial intrusion into the administrative decision making process. *Ciba-Geigy Corp. v. EPA, 255 U.S. App. D.C. 216, 801 F.2d 430, 436 (D.C. Cir. 1986)*. With regard to the subpoena here at issue, that process was completed on January 14, 2005, when the counsel for the Department of State sent a letter taking the position that, because the Government is not a "person" subject to [*7] *Rule 45*, subpoenas "are not proper procedural devices through which to seek information from a federal agency." It follows that such action is final and reviewable under the APA, regardless whether the Department of State was then still processing the plaintiffs' parallel request under its *Touhy* regulations.

### B. Forfeiture

The plaintiffs argue that the Government forfeited its objections to the subpoena, which was served on December 22, 2004, because it did not raise those objections until January 14, 2005, which was beyond the time limit in *Rule 45(c)(2)(B)*: "[A] person commanded to produce and permit inspection and copying [of documents] may, within 14 days after service of the subpoena ... [serve a] written objection to [the] inspection or copying." *See also Tuite v. Henry, 321 U.S. App. D.C. 248, 98 F.3d 1411, 1416 (D.C. Cir. 1996)* (discussing requirement).

The Government first contends it is not bound by *Rule 45(c)* because it is not a "person" for purposes of the Rule. Furthermore, the Government asserts the time limit applies only to objections related "to the substance of the subpoena [and] ... not to its ultimate enforcement." Finally, the [*8] Government argues forfeiture under *Rule 45* is "not automatic" and can be excused in the "unusual circumstances" of this case, where the "subpoena was overbroad, the State Department is a nonparty acting in good faith, and counsel for the government discussed the processing of the document requests [with plaintiffs' counsel] before this subpoena-enforcement litigation was initiated." As the Government further notes by way of mitigation, the plaintiffs "served the subpoena on December 22, 2004, in the midst of the holiday pe-

riod, and it was not received by the Department of Justice [as counsel to the Department of State] until January 13, 2005. An objection letter was sent the very next day," after counsel had conversed by telephone.

We begin with the Government's argument that the time limit set by *Rule 45(c)(2)(B)* applies only to objections concerning "the substance of the subpoena," by which it means objections such as "privilege or relevance or burden" that go to the" inspection or copying.... of designated materials"; from these it distinguishes objections going to the "ultimate enforcement" of the subpoena, the only example given being the current objection that the Government [*9] is not subject to a nonparty subpoena. The Government defends its distinction on the ground that objections going to enforcement cannot "be resolved or fleshed out before a dispute reaches the district court." The significance of this statement eludes us, and the Government adduces not a single case in support of it. Such dictum as we can find is against it. *See In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998)* (stating, relative to a belated claim of privilege, the Rule "require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game'").

We need not accept the Government's distinction, however, in order to consider its present objection. For the Government is correct that the district court may, "in unusual circumstances and for good cause," consider an untimely objection to a subpoena. *Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996)*; *see* 9 James W. Moore et al., *Moore's Federal Practice § 45.04[2]* (3d ed. 2004). Certain factors may guide the district court's discretion, for example, whether [*10] (1) the subpoena is "overbroad on its face and exceeds the bounds of fair discovery"; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) counsel for the witness was in contact with counsel for the party issuing the subpoena prior to filing its formal objection. *Concord Boat, 169 F.R.D. at 48* (internal quotation marks omitted); *see* 9 Moore et al. § 45.04[2]; *Alexander v. FBI, 186 F.R.D. 21, 34-36 (D.D.C. 1998)* (no waiver where witness is non-party and subpoena was not limited to relevant materials).

Here, the Government is a nonparty acting in good faith; the subpoena is broad enough at least to raise a question of overbreadth; and counsel for the Department acted promptly to contact counsel for the plaintiffs and to file his objections (though the State Department appears not to have acted with equal alacrity). Therefore, we cannot say the district court here abused its discretion in considering the Government's objections. And so we are obliged to do the same.

C. The Applicability of the Interpretive Presumption

*Rule 45(a)(1)(C)* provides that every subpoena shall:

> [C]ommand each *person* to whom it [*11] is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that *person* ....

*Fed. R. Civ. P. 45(a)(1)(C)* (emphases added). The Government argues it is not a "person" subject to this Rule, noting that "statutes employing the [word 'person'] are ordinarily construed to exclude" the sovereign. *United States v. Cooper Corp., 312 U.S. 600, 604, 61 S. Ct. 742, 85 L. Ed. 1071 (1941)*. The Government analogizes this case to *Al Fayed, 343 U.S. App. D.C. 308, 229 F.3d 272*, where we applied the presumption that the Government is not a "person" and the Dictionary Act, *1 U.S.C. § 1*, in construing *28 U.S.C. § 1782*, which provides the "district court of the district in which a person resides or is found may order him ... to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *See Linder, 251 F.3d at 180-81* (discussing *Al Fayed* and recognizing open question of applicability of *Rule 45* to Government). [*12]

The plaintiffs argue the Dictionary Act and the interpretive presumption that the Government is not a "person" are inapplicable to *Rule 45* because the Federal Rules "resulted from a judicial act, not legislation." Even if the presumption does apply, they note the presumption can be overcome if "[t]he purpose, the subject matter, the context, [and] the legislative history ... indicate an intent, by the use of the term, to bring [the] state or nation within the scope of the law." *Cooper Corp., 312 U.S. at 605*. Here, they contend, the purpose, context, and history of *Rule 45* bespeak an intent to treat the Government as a "person."

At the outset, we note that we have found no case-law applying the Dictionary Act to the Federal Rules, and it is doubtful, though surely not clear, whether the Rules are properly considered an "Act of Congress" subject to that Act, *1 U.S.C. § 1*. In the Rules Enabling Act, 28 U.S.C. § 723(b) (1934), the Congress gave "the Supreme Court of the United States ... the power to prescribe, by general rules, "the "process" to be followed in the district courts of the United States. The Congress additionally [*13] provided that the rules governing civil procedure would not go into effect "until they shall have been reported to Congress by the Attorney General at the beginning of a regular session thereof and until after the close of such session." *Id. § 723(c)*. Therefore, although the Congress did not draft and did not affirmatively

adopt the Federal Rules of Civil Procedure, *see* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1004 (3d ed. 2002), it did authorize their creation, and consequently it is not entirely clear the definitions of the Dictionary Act should not apply to the Rules.

This is not a question we need decide today, however. Because the definition of "person" in the Dictionary Act, *1 U.S.C. § 1* (defining "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"), upon which the Government relies was passed in 1947, the framers of *Rule 45* were not guided by it when, in 1937, they provided that a "person" may be subpoenaed to testify or to produce documents. *Fed. R. Civ. P. 45(a)(1)(C)*. The definition [*14] in place at the time the Rules were adopted was broader, stating that "in all acts hereafter passed ... the word 'person' may extend and be applied to bodies politic and corporate ... unless the context shows that such words were intended to be used in a more limited sense." Act of Feb. 25, 1871, § 2, 16 Stat. 431. As the Supreme Court explained in *Will v. Michigan Department of State Police, 491 U.S. 58, 69 n.9, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*, conflicting authorities from that time render the definition "ambiguous" with regard to whether it includes the States within its reach. *Cf. Cooper Corp., 312 U.S. at 605* (looking at various factors to discern intent "to bring state or nation within the scope of the law"). Regardless whether the plaintiffs are correct in positing broadly that the current definition of "person" in the Dictionary Act does not apply to judicially-adopted rules, therefore, we can agree more narrowly that it does not apply to a Rule promulgated before the current version of the Act was passed, *see Will, 491 U.S. at 69-70* (applying original definition to interpret statute passed before 1947), and it does not control our [*15] analysis in this case.

Next, we agree with the plaintiffs that the district court erred in presuming the Government is not a "person" covered by *Rule 45*. As the Supreme Court made clear in *Nardone v. United States, 302 U.S. 379, 58 S. Ct. 275, 82 L. Ed. 314 (1937)* (rejecting Government's invocation of presumption where it would have made statute prohibiting wire-tapping presumptively inapplicable to Government), which was issued the same day the Court adopted the Federal Rules, at common law the Government was presumed not to be a "person" bound by statute in only two types of cases: (1) where the statute, "if not so limited, would deprive the sovereign of a recognized or established prerogative title or interest," such as a statute of limitations; and (2) where deeming the Government a "person" would "work obvious absurdity as, for example, the application of a speed law to a policeman pursuing a criminal or the driver of a fire engine responding to an alarm." *Id. at 383-84; see also In re Vioxx Prods. Liab. Litig., F.R.D. , 2006 U.S. Dist. LEXIS 10477, 2006 WL 784878, at *6 (E.D. La. Mar. 15, 2006)* (analyzing Supreme Court cases to explain why presumption [*16] was limited to the two situations there identified).

*Rule 45* falls into neither class. First, the Government has no "established prerogative" not to respond when subpoenaed. On the contrary, as Justice Frankfurter noted in his concurrence in *Touhy*, the Government had agreed as early as 1900, *see Boske v. Comingore, 177 U.S. 459, 462, 20 S. Ct. 701, 44 L. Ed. 846, T.D. 104*, that records requested for a suit in which it was not a party "could be secured by a subpoena duces tecum to the head of the Treasury Department." *340 U.S. 462, 471-72, 71 S. Ct. 416, 95 L. Ed. 417* (quoting Brief for Appellee [in *Boske v. Comingore*] at 49). Second, application of *Rule 45* to the Government would work no "obvious absurdity." The Rules were designed to provide a "liberal opportunity for discovery," *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*, and, as discussed below, there is no indication the Government should be exempt from the obligation of a nonparty to provide its evidence pursuant to subpoena.

Because *Rule 45* neither deprives the United States of an "established prerogative" nor works an "obvious absurdity," therefore, the framers of the Rules would not have understood their [*17] use of the term "person" presumptively to exclude the Government. Our decision in *Al Fayed*, the centerpiece of the Government's argument, is in no wise contrary. The statute being interpreted in that case, *28 U.S.C. § 1782 (1948)*, unlike *Rule 45*, post-dated the amendment to the Dictionary Act, *1 U.S.C. § 1 (1947)*, that defines the word "person," when used in "any Act of Congress, unless the context indicates otherwise," to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," but makes no mention of governments. *See also United States v. United Mine Workers of Am., 330 U.S. 258, 275, 67 S. Ct. 677, 91 L. Ed. 884 (1947)* ("Congress made express provision [in the Dictionary Act], for the term ['person'] to extend to partnerships and corporations ... The absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them"). In *Al Fayed*, therefore, the Dictionary Act as amended in 1947 required that *§ 1782* be interpreted so as to exclude the Government. As we have seen, however, [*18] *Rule 45* is outside the realm governed by the 1947 amendment to the Dictionary Act, and, as noted above, the earlier version of that Act is ambiguous. Therefore, we follow the guidance of the Supreme Court as to when the Government is presumed not to be a "person," and this is not such a case.

2006 U.S. App. LEXIS 14750, *

D. The "Person[s]" Subject to *Rule 45*

The question remains whether, the presumption aside, the Government is a "person" bound by *Rule 45*. To answer this question we turn to the customary tools of statutory interpretation. Because the text of the Rule itself is unhelpful on this score, we turn to the context in which the Rule resides, that is, to the Rules as a whole.

The plaintiffs argue that because "person" is used throughout the Rules to include the Government, that word demands the same interpretation in *Rule 45*. In particular, they point to *Rule 4(i)(3)(A)*, which addresses a party's failure to serve "all persons required to be served in an action governed by *Rule 4(i)(2)(A)*," which in turn governs "[s]ervice on an agency or corporation of the United States." The plaintiffs also direct us to *Rule 30*, which allows a party to take "the testimony of any person, including a party, [*19] by deposition" and compel "[t]he attendance of witnesses ... by subpoena as provided in *Rule 45*." *Fed.R. Civ. P. 30(a)(1)*. *Rule 30(b)(6)* is express that a party may "in a subpoena name as the deponent a ... governmental agency." One district court, reading these two sections together, recently concluded that "a party may take the deposition of a governmental agency, whether a party or not, and compel the attendance of [the government deponent] through the use of a *Rule 45* subpoena." *In re Vioxx, 2006 U.S. Dist. LEXIS 10477, 2006 WL 784878, at \*9*. In the plaintiffs' view, *Rule 30* thus makes clear the Government is a "person" for purposes of *Rule 45* as well.

The Government responds to these specific points first with the general observation: "[I]t is ... common experience that identical words may be used in the same statute, or even in the same section of a statute, with quite different meanings." *Grand Lodge of Int'l Ass'n of Machinists v. King, 335 F.2d 340, 344 (9th Cir. 1964)*. Somewhat more helpfully, the Government suggests that, because "the rules as a whole address a wide range of subjects, ... it would be unsurprising if the [*20] term 'person' were employed to different ends in different rules." For example, the Government suggests we might construe *Rule 30* to permit a litigant to subpoena the Government when the Government is itself a party to the litigation. Moreover, based upon the Supreme Court's instruction in *Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)* (where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"), the Government argues the ambiguity of *Rule 45*, when contrasted with the specific references to the United States in *Rules 4* and *30*, is fatal to the plaintiffs' claim.

We do not disagree in principle with the Government's point that the meaning of the word "person" could vary from one Rule to another. Still, we note, it is the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995)* (internal quotation marks omitted). [*21]

With respect to the Federal Rules in particular, the Supreme Court has instructed that, except where doing so would "produce absurd results," "words and phrases ... *must* be given a consistent usage and be read *in pari materia* [;] ... to do otherwise would attribute a schizophrenic intent to the drafters." *Marek v. Chesny, 473 U.S. 1, 21, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985)* (first emphasis added, internal quotation marks omitted). As we have seen, there is nothing absurd about applying *Rule 45* to the Government. That reading, moreover, aligns the interpretation of *Rule 45* with that of every other rule in which the word "person" means more than simply a natural person. (For an example of the latter sort, see *Rule 4(c)(2)*, providing that service may be effected by any "person" meeting certain qualifications.) In addition to *Rules 4(i)(3)(A)* and *30(b)(6)*, see *Carlson v. Tulalip Tribes of Wash., 510 F.2d 1337, 1339 (9th Cir. 1975)* (holding "United States is a person described in *Rule 19(a)(1), (2)*," which governs joinder); *see also United States v. Yellow Cab Co., 340 U.S. 543, 556-57, 71 S. Ct. 399, 95 L. Ed. 523 (1951)* (United States may be impleaded [*22] as third-party defendant per *Rule 14*, which provides for "summons and complaint to be served upon a person"); *Roeder v. Islamic Republic of Iran, 357 U.S. App. D.C. 107, 333 F.3d 228, 232-33 (D.C. Cir. 2003)* (United States may intervene as of right under *Rule 24*, which requires "a person desiring to intervene [to] serve a motion,"*see Fed. R. Civ. P. 24(c)*).

With the teaching of *Marek v. Chesny* in mind, we are most loathe to depart from this "consistent usage" without a compelling reason to believe the term "person" in *Rule 45* should be understood differently than it is elsewhere throughout the Rules or differently from one case to another depending upon whether the United States is a party, *see In re Vioxx, 2006 U.S. Dist. LEXIS 10477, 2006 WL 784878, at \*9*. The Government attempts to offer such a reason but its efforts fail to persuade.

First, that *Rule 45* does not refer to the United States as do *Rules 4* and *30* is, contrary to the Government's argument, of no moment; as noted above, the United States has been held to be a "person" within the meaning of *Rule 19* although it is not expressly named there. *See Carlson, 510 F.2d at 1339*. [*23] The absence of such a reference in *Rule 45*, far from being significant, is unexceptional.

Second, the Government points both to the Supreme Court's approval of regulations governing how an agency will respond to document requests, *see Touhy, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417*, and to the Freedom of Information Act, *5 U.S.C. § 552(a)* (providing procedure for obtaining information from government agencies), to show that the Government has in place "carefully calibrated mechanisms for responding to requests for information." From this premise the Government argues that "silence in *Rule 45* should not be construed to establish a mechanism bypassing existing methods of requesting ... information from the government as a nonparty." Noting also that *Touhy* was decided in 1951, *340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417*, and the FOIA was enacted in 1966, the Government suggests that "when *Rule 45* was initially adopted in 1937, there was not even a background presumption that government information should be disclosed when requested," from which it infers *Rule 45* must not apply to the Government as a nonparty.

This argument is both illogical and anachronistic. First, as [*24] noted above, the Rules were designed in 1937 to provide a "liberal opportunity for discovery." *Conley, 355 U.S. at 47*. Therefore, to say there was then no "background presumption that government information should be disclosed when requested" assumes the conclusion to the very question here at issue. Second, the adoption, 14 and 29 years later, respectively, of methods by which (1) an agency would respond to a subpoena and (2) any person could obtain information from the Government without having to give a reason for wanting it, tells us nothing about whether parties in civil litigation had been authorized in 1937 to subpoena the Government for information demonstrably relevant to their cases. We do know, however, that the Supreme Court in *Touhy* assumed a federal agency could be subject to a third-party subpoena *duces tecum*, for otherwise the agency would not need to promulgate regulations for centralizing its response to such a subpoena. *See 340 U.S. at 464, 469*.

Moreover, before *Touhy* was decided, and long before the FOIA was enacted, such commentaries on the

Rules as considered the present issue suggested the Government is indeed a [*25] "person" subject to *Rule 45* regardless whether it is a party to the litigation in which the subpoena is issued. Indeed, one member of the Advisory Committee on Rules of Civil Procedure, which drafted the Rules, concluded in his discussion of "persons subject to deposition examination" -- which is to say, according to the original version of *Rule 26(a)*, "any person, whether a party or not" -- that "there is probably the same right to obtain discovery against the government and its officers and agents as against private parties." Edson R. Sunderland, *Discovery Before Trial Under the New Federal Rules*, 15 Tenn. L. Rev. 737, 742-43 (1939). Raoul Berger and Abe Krash later reached the same conclusion: "[T]he terms of the third party subpoena-deposition provisions are unqualified, and no considerations of policy can afford an exemption to the Government." *Government Immunity From Discovery*, 59 Yale L.J. 1451, 1465-66 (1950). The Government cites no commentary to the contrary.

In sum, the "purpose, the subject matter, the context, [and] the ... history [of *Rule 45*] ... indicate an intent, by the use of the term ['person'], to bring [the Government] [*26] within the scope" of the Rule. *Cooper Corp., 312 U.S. at 605*.

III. Conclusion

The term "person" as used in the Federal Rules of Civil Procedure consistently means not only natural persons and business associations but also governments, including the United States. Because the Government has given us no cause to ignore the Supreme Court's command that we interpret each Rule *in pari materia* with the others, we hold the Government is a "person" subject to subpoena under *Rule 45* regardless whether it is a party to the underlying litigation. Therefore, the plaintiffs' motion to compel should not have been denied on the ground that *Rule 45* is inapplicable to the Department of State. The case accordingly is remanded for further proceedings consistent with this opinion.

*So ordered.*

# EXHIBIT 9

# McDermott Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

Jason A. Levine
Partner
jlevine@mwe.com
202 756.8021

July 28, 2006

**BY FACSIMILE & U.S. MAIL**

Michael N. Druckman, Esq.
Associate Chief Counsel
Office of Chief Counsel
U.S. Food and Drug Administration
5600 Fishers Lane
Mail Code: GCF-1
Rockville, MD 20857-0001

Claire Whitaker, Esq.
Assistant United States Attorney
United States Department of Justice
555 Fourth Street, N.W.
Civil Division
Washington, D.C. 20530

Re:   *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853-PBS (D. Mass.)
      **FDA Document Production**

Dear Mr. Druckman and Ms. Whitaker:

After receiving them on July 13, we have reviewed the documents produced by the FDA in response to the SEC's *Touhy* request (which, as you know, duplicated seven of the nine categories contained in Thomas Moore's *Touhy* request and subpoena of March 24, 2006). Despite their responsiveness to several of the requests, internal FDA memoranda and attachments to various emails pertaining to the actual evaluation of the BLA and IND for Hemopure were *not* included in the FDA's document production.  We find this puzzling in view of the letter dated June 28, 2006, from David Elder to the SEC, indicating that the FDA "has determined that *it is appropriate to waive the privilege* for documents that reveal FDA's deliberative process *for decisions that have already been made*, such as to place Biopure's [IND] on clinical hold and to send Biopure a Complete Response Letter in response to its [BLA]." Mr. Elder's letter is attached for your reference.

In view of the FDA's voluntary waiver of the deliberative process privilege, we must request the immediate production of all internal memoranda and other documents pertaining to the aforementioned evaluation of Biopure's BLA and IND for Hemopure, such as the many evaluative attachments to emails that were produced without their attachments.  These materials are important for Mr. Moore's defense and for his testifying expert's reference, and the FDA itself acknowledged the absence of grounds upon which to withhold them.  Given the importance of this matter and our court-imposed time constraints, we will be forced to move to compel the production of these documents in the absence of a full response by Friday, August 4.

Michael Druckman, Esq.
Claire Whitaker, Esq.
July 28, 2006
Page 2

Please contact me if you wish to discuss this matter further or require additional details to help expedite the FDA's review process, including the identification of emails that were produced without their plainly responsive attachments.

Sincerely,

Jason A. Levine

Attachment

cc w/attach:    Michael Shane, Esq.
                Ian Roffman, Esq.
                Cathy Fleming, Esq.

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

June 28, 2006

Securities and Exchange Commission
Boston District Office
6th Floor
73 Tremont Street
Boston, Massachusetts 02108

Attention: Ian D. Roffman

Dear Mr. Roffman:

This letter responds to your April 21, 2006, request pursuant to 21 CFR 20.85 for documents that the defendants in <u>SEC v. Biopure, Civ. A. No. 05-11853-PBS</u> (D.Mass.) seek as discovery in that case, and for further authorization to disclose those documents to the defendants.

I have authorized Mr. Gilliam Conley and Dr. Maureen Knippen from FDA's Center for Biologics Evaluation and Research to provide directly to you the documents that you request, subject to the following limitations. First, as you acknowledge in your request, the U.S. Food and Drug Administration (FDA) is prohibited by 21 U.S.C. § 331(j) from disclosing trade secret information outside the Department of Health and Human Services. All trade secret information will be redacted from those documents.

Second, as you also acknowledge in your letter, many of the responsive documents contain confidential commercial information (CCI) that belongs to Biopure Corporation ("Biopure"). You represented in your request that the individual defendants were in the process of obtaining Biopure's consent to disclose to them in this case any and all CCI that is contained in the responsive documents. To date, we have not received a copy of Biopure's consent. Consequently, our authorization for you to further disclose these documents to the defendants in this case other than Biopure is contingent on your obtaining and providing FDA with a copy of Biopure's consent.

Third, many of the responsive documents contain deliberative process documents that are privileged. FDA has delegated authority to waive that privilege in appropriate circumstances. In this matter, FDA has determined that it is appropriate to waive the privilege for documents that reveal FDA's deliberative process for decisions that have already been made, such as to place Biopure's Investigational New Drug application (IND) on clinical hold and to send Biopure a Complete Response letter in response to its Biologics License Application (BLA). However, FDA has determined that it is not appropriate to waive the deliberative process privilege for records that reflect FDA's current deliberations about determinations that have not yet been

made. For that reason, FDA will withhold any documents that disclose deliberations on decisions that have not been made.

Fourth, to the extent the documents contain information revealing confidential information that an entity other than Biopure owns, or that would be protected from a public disclosure request under 5 U.S.C. § 552(b)(6) or (b)(7), FDA will withhold those documents or redact the documents to the extent necessary to protect that confidential information.

Finally, as you communicated by voicemail to Associate Chief Counsel Mike Druckman, the defendants have agreed, at least for the time being, to stay their requests for personnel files of certain individuals (item 8 in your letter) and for complete response letters (item 9 in your letter).

If you have any questions, please contact Dave Krawetz of my office at 240-632-6841. Additionally, you may also contact the following individuals: Gilliam B. Conley, CBER, at 301-827-6220 or by email at gilliam.conley@fda.hhs.gov; Dr. Maureen Knippen, CBER, at 301-827-6351 or by email at Maureen.knippen@fda.hhs.gov, or Mike Druckman, Esq., at 301-827-5168, or by email at Michael.druckman@fda.hhs.gov.

Sincerely,

David K. Elder
Director, Office of Enforcement

SEC LIT 0001100

# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENA IN:

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

BIOPURE CORPORATION, THOMAS
MOORE, HOWARD RICHMAN, and JANE
KOBER,

Defendants.

CASE NUMBER   1:06MS00380

JUDGE: James Robertson

DECK TYPE: Miscellanous

DATE STAMP: 08/10/2006

(Related Case: Civ. No. 05-11853-PBS
Pending in the U.S. District Court
for the District of Massachusetts)

**Expedited Hearing Requested**

## MOTION OF DEFENDANT THOMAS A. MOORE TO COMPEL
## COMPLIANCE WITH FEDERAL SUBPOENAS BY THE UNITED
## STATES FOOD AND DRUG ADMINISTRATION

Pursuant to Federal Rules of Civil Procedure 37 and 45, and the Local Rules of this

Court, defendant Thomas A. Moore requests that the Court order the United States Food and

Drug Administration ("FDA") to comply with five federal subpoenas issued out of this Court on

March 24, 2006. As explained in greater detail in the accompanying Memorandum of Law, the

FDA has complied only partially with one of these subpoenas for the production of documents,

and has failed to comply at all with the other four subpoenas for the testimony of its staffers,

thereby significantly prejudicing Mr. Moore's defense in this matter. Accordingly, the relief set

forth in the accompanying Memorandum of Law is appropriate.

## REQUEST FOR EXPEDITED ORAL HEARING

Pursuant to Local Rule 7(f), Mr. Moore requests an expedited oral hearing on this Motion

if the Court is not inclined, for whatever reason, to grant the Motion on the basis of the parties'

written submissions alone. As explained in the accompanying Memorandum of Law, the

discovery sought by the subpoenas is the cornerstone of Mr. Moore's defense, and he will be

significantly prejudiced if the FDA does not promptly provide this discovery. For these reasons,

expedited treatment is warranted.

## STATEMENT PURSUANT TO LOCAL RULE 7(m)

Counsel for Mr. Moore have conferred with counsel for the FDA in a good faith attempt

to resolve the issues involved herein, and have been unable to reach agreement. This Motion

will be opposed.

Respectfully submitted,

Bobby R. Burchfield (D.C. Bar No.289124)
Jason A. Levine (D.C. Bar No. 449053)
McDermott Will & Emery LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000
Fax: (202) 756-8087

Edward P. Leibensperger
Jeffrey S. Huang
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
Tel.: (617) 535-4000
Fax: (617) 535-3800

Date:   August 10, 2006          *Counsel for Defendant Thomas A. Moore*

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA IN:  )<br><br>SECURITIES AND EXCHANGE  )<br>COMMISSION,  )<br>   )<br>      Plaintiff,  )<br>   )<br>      v.  )<br>   )<br>BIOPURE CORPORATION, THOMAS  )<br>MOORE, HOWARD RICHMAN, and JANE  )<br>KOBER,  )<br>   )<br>      Defendants.  )<br>   ) | MISC. No. _____<br><br>(Related Case: Civ. No. 05-11853-PBS<br>Pending in the U.S. District Court<br>for the District of Massachusetts)<br><br>**<u>Expedited Hearing Requested</u>** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THOMAS A. MOORE'S MOTION TO COMPEL COMPLIANCE WITH FEDERAL SUBPOENAS BY THE UNITED STATES FOOD AND DRUG ADMINISTRATION

Thomas Moore urges the Court to compel the United States Food and Drug Administration ("FDA") to comply with subpoenas issued out of this Court on March 24, 2006, in accordance with the D.C. Circuit's decision in *Yousuf v. Samantar*, 2006 U.S. App. LEXIS 14750 (D.C. Cir. June 16, 2006), which holds that federal agencies are susceptible to subpoenas issued pursuant to Fed. R. Civ. P. 45 even if they are not parties to the underlying litigation. *Id.* at *23-27. Even though instructed on March 16, 2006, by Judge Saris, the judge presiding over the underlying case, to comply with a proper discovery request "*immediately,*" the FDA has taken *138 days* and still not come close to complete compliance. The documents and deposition testimony sought by Mr. Moore are crucial to his defense in this action, and the FDA's seemingly interminable delays will cause him serious prejudice if not halted by this Court.

The FDA has not produced the key documents, or authorized the depositions of four staffers, requested by Mr. Moore via subpoenas (and a "*Touhy*" request) dated *March 24, 2006.*

Exs. 1-5 (subpoenas to FDA and staffers) and 6 (*Touhy* request).[1] These documents, and the staffers' testimony, go to the heart of this case, but the FDA has failed even to advise Mr. Moore as to whether or when he will receive the documents or authorization to depose the staffers. Meanwhile, Mr. Moore suffers significant continuing harm to his reputation, employability, and income every day the action is pending. For this reason, merely acquiescing in the FDA's delays, and potentially a later trial date, is not a viable option for Mr. Moore. The D.C. Circuit has now agreed that unending delays by federal agencies in discovery are unacceptable, by ruling in *Yousuf* that they must comply with subpoenas in civil litigation even if they are not parties to the underlying suit. *See* 2006 U.S. App. LEXIS 14750 at \*23-27.

Accordingly, Mr. Moore asks this Court to enforce his subpoenas directed to the FDA. Specifically, Mr. Moore requests that the Court order the FDA to: (1) produce all documents that are responsive to his FDA subpoena of March 24, 2006, no later than 10 calendar days from the date of the Order; and (2) produce for deposition the four FDA staffers identified by subpoenas of the same date, no later than 30 calendar days from the date of the Order.

## STATEMENT OF THE CASE

Mr. Moore's subpoenas arise out of a securities enforcement action brought by the SEC against Biopure Corporation, two of its former executives (Mr. Moore, the former Chief Executive Officer, and Howard Richman, a former Vice President), and its current General Counsel (Jane Kober) before Judge Saris in the United States District Court for the District of Massachusetts. *SEC v. Biopure Corp. et al.*, Civ. No. 05-11853 (D. Mass., filed Sept. 14, 2005). The SEC alleges that the defendants engaged in a fraudulent scheme to misrepresent and conceal

---

[1] The FDA's *Touhy* regulations, 21 C.F.R. § 20.1 *et seq.*, govern its processing and treatment of document and deposition requests. *See Touhy v. Ragen*, 340 U.S. 462, 467 (1951) (federal agencies authorized to promulgate regulations governing procedures for producing documents and testimony).

from investors certain facts about Biopure's applications for FDA approval of Hemopure. The SEC's entire case is based upon the FDA's review of these applications, its communications with Biopure regarding the applications, and the steps the FDA and defendants believed were necessary to obtain marketing approval in the United States.

Despite these facts, by letter dated April 3, 2006, the FDA refused to comply with Mr. Moore's subpoenas and asked that they be withdrawn (which Mr. Moore did *not* do). Ex. 7 (FDA letter). After the submission of an inter-agency *Touhy* request by the United States Securities and Exchange Commission ("SEC") on April 21, 2006 (Ex. 8), the FDA has produced *some* of the documents sought by Mr. Moore. Ex. 9 (FDA transmittal letter). However, as discussed below, the FDA has not produces many of the key documents at issue, even though it expressly *waived* any pertinent privilege. *Id.* The FDA has also failed to indicate whether or when it will make the requested witnesses available for deposition.

Importantly, the FDA is no passive bystander in this case. Instead, it appears that the FDA referred the case to the SEC, and assisted with formulating the allegations contained in the Complaint. For example, an FDA letter to the SEC staff on August 8, 2003 – now one of the SEC's key Exhibits – opines that a press release issued by Biopure on August 1, 2003 "may not be a fair and accurate disclosure of information to public investors." Ex. 10. Even before the SEC filed its Complaint, the FDA produced selected documents to the SEC and made witnesses freely available for interviews and investigative depositions by SEC counsel – all without formal process. Yet the FDA has not timely responded to formal process from Mr. Moore.

The FDA has been on notice of Mr. Moore's personal need for the documents and testimony at issue since the defendants jointly filed a *Touhy* request on January 12, 2006. During a March 16, 2006 scheduling conference (prior to the decision in *Yousuf*), the presiding judge in

3

the District of Massachusetts, Judge Saris, admonished the SEC that, upon the submission of a

new *Touhy* request for documents and depositions, the FDA should comply "immediately" or

face a possible contempt citation *and* negative ramifications for the SEC's case at trial. *See* Mar.

16, 2006 Tr. at 7, 9-10 (Ex. 11). By agreement of all present, Judge Saris set a deadline of July 1

– 106 days later – for *all* document production, and specifically stated that it intended for this

deadline to apply to the FDA. *Id.* at 18. Judge Saris also indicated that counsel for the SEC, Ian

Roffman, should help defendants obtain discovery from the FDA, because otherwise the SEC's

case "is going to suffer." *Id.* at 9. Judge Saris also set a deadline of October 31, 2006, for the

close of all discovery, and set the trial date for January 15, 2007. *Id.* at 18, 24.

     Acting promptly, on March 24, Mr. Moore submitted a proper, limited *Touhy* request

seeking, as did his subpoenas of the same date: (1) nine narrow categories of FDA documents,

including drafts of several individual documents; and (2) the depositions of four FDA staffers

who were deeply involved in the review of Hemopure that is central to this case – Mr. Franklin

Stephenson, and Drs. Toby Silverman, Laurence Landow, and Abdu Alayash. Ex. 6.[2] Mr.

Moore's *Touhy* request was carefully targeted to obtain only highly relevant information and

imposed no undue burden on the FDA. Tellingly, the FDA has *not* objected to any aspect of Mr.

Moore's *Touhy* request.

     Because of the compelling and time-sensitive need for the requested documents, Mr.

Moore sought expedited processing in accordance with 21 C.F.R. § 20.44(a). The FDA *denied*

this request by letter dated May 16, 2006, and stated that it would place Mr. Moore's *Touhy*

---

[2] In response to a concern voiced by the FDA to Mr. Roffman, Mr. Moore supplemented his *Touhy* request on April 24, 2006 (Ex. 12), to provide additional grounds for the deposition of Dr. Alayash, whom the SEC has not designated as a trial witness, unlike the other three identified FDA staffers.

document request at the back of the FOIA queue. Ex. 13. These actions guaranteed that the FDA would *not* produce documents in time for a January 2007 trial.

Apparently anticipating this outcome, on April 21, the SEC had submitted an inter-agency *Touhy* request on behalf of Mr. Moore, in an effort to receive a speedier response from the FDA as a sister agency. Ex. 8. Critically, however, the SEC's inter-agency request *omitted* two categories of documents that Mr. Moore sought in his subpoena and *Touhy* request — namely, documents relating to: (1) FDA-SEC communications about the defendants; and (2) inter-agency cooperation in enforcement matters. *Compare* Exs. 1, 6 *with* Ex. 8. These materials are relevant in view of the FDA's role as the *instigator* of this lawsuit. On May 3, 2006, counsel for Mr. Moore requested that the SEC conform its inter-agency request to his *Touhy* request. Ex. 14 (letter to Mr. Roffman). The SEC refused. Ex. 15 (letter from Mr. Roffman). Meanwhile, Mr. Moore's subpoena remained pending.

The FDA thereafter responded to the SEC's inter-agency request on Wednesday, June 28, 2006 — nearly the last possible day under the schedule set by Judge Saris. Ex. 9.[3] Of course, the FDA's production omitted the communications between the FDA and the SEC that Mr. Moore sought but the SEC did not request. The FDA also withheld substantive documents bearing upon the evaluation of Hemopure, including many attachments to produced e-mail communications, even though these documents were plainly responsive to several categories of the *Touhy* request (and to Mr. Moore's subpoena). Importantly, the FDA *waived* its "deliberative process privilege" with respect to these materials, and so has no grounds for

---

[3] Because Biopure required the opportunity to review the FDA's document production for purposes of ensuring their confidentiality *before* their dissemination to Mr. Moore, he did not ultimately receive the documents until *July 13*.

withholding them from production. *Id.* Moreover, FDA also did not respond to Mr. Moore's longstanding *Touhy* request to depose the four FDA staffers.

On July 11, 2006, counsel for Mr. Moore wrote to the FDA, advising it of the D.C. Circuit's decision in the *Yousuf* case, and requesting prompt and full compliance with his subpoenas of March 24, 2006. Ex. 16. On July 28, counsel for Mr. Moore notified the FDA in writing of the shortcomings of its document production. Ex. 17. In response, on August 3, FDA Associate General Counsel Carl Turner verbally indicated that the FDA would seek to produce the missing email attachments on or about August 11, but he professed an inability to make any commitments about whether or when the FDA would produce the remainder of the documents or approve the deposition of the four staffers separately subpoenaed by Mr. Moore. During another conversation with Mr. Turner on August 9, he confirmed the FDA's intention to produce the missing email attachments on August 14, and stated that the FDA had authorized a search for the unproduced FDA-SEC communications and inter-agency enforcement materials, but he was not able to estimate how long that search would take. Mr. Turner had no further information about the FDA's timetable or intentions with respect to the depositions and other documents at issue.

## ARGUMENT

### THE FDA SHOULD BE ORDERED TO COMPLY FULLY AND PROMPTLY WITH MR. MOORE'S SUBPOENAS OF MARCH 24, 2006.

As the D.C. Circuit held in the recent *Yousuf* decision, the Government and its agencies are "persons" within the meaning of Fed. R. Civ. P. 45, and accordingly are subject to subpoena regardless of whether they are parties to the underlying litigation. 2006 U.S. App. LEXIS 14750, at *23-*27. The FDA falls squarely within the ambit of Rule 45 and is subject to Mr. Moore's subpoenas. Indeed, the FDA did *not* dispute its susceptibility to subpoena when advised of the *Yousuf* decision by letter dated July 11, 2006. Ex. 16. Yet despite the pendency of Mr. Moore's

6

subpoena (and identical *Touhy* request) for *138 days*, the FDA has failed to comply fully with his straightforward and limited document and deposition requests.

Mr. Moore's defense is already suffering from the FDA's delays. For example, on August 30, Mr. Moore's counsel will depose the SEC's testifying expert witness, whose expert opinions turn on his interpretation of certain communications to Biopure from the FDA. Yet Mr. Moore still has not received various internal documents from the FDA that are crucial to his effective deposition of this expert witness. Further, Mr. Moore's own expert disclosure is due on September 6, yet his testifying expert witness may require the full evaluative record of the FDA in order to form thorough opinions. Further delay from the FDA may gravely impede the work of Mr. Moore's testifying expert.

Mr. Moore's defense would be prejudiced even further if he were forced to proceed to trial without the full discovery he has sought from the FDA. Yet he would be equally prejudiced by any significant delay of the trial date to accommodate the agency, given the serious economic and reputational harms that he suffers from the mere pendency of this lawsuit. Mr. Moore, in other words, is caught between the proverbial "rock" and "a hard place." Against the background of the continuing harms he is suffering, the FDA's inaction may be more than mere bureaucratic inertia.

The SEC, in contrast, has had the benefit of full discovery from the FDA during the investigative phase of this case, and it now stands to gain from whatever impediments Mr. Moore faces in obtaining discovery from the FDA. For these reasons, at the scheduling conference held nearly five months ago (prior to the *Yousuf* decision), Judge Saris clearly instructed the FDA to comply with a reasonable *Touhy* request "*immediately*," not "when the agency gets around to it." March 16, 2006 Tr. at 7 (Ex. 11). The FDA has not done so.

Accordingly, Mr. Moore urges the Court to order the FDA to comply, finally and fully, with the outstanding subpoenas dated March 24, 2006. Given the exigencies of the situation, Mr. Moore requests that the Court order FDA to: (1) produce all remaining documents that are responsive to his document subpoena within 10 calendar days from the date of the Court's Order; and (2) produce the four subpoenaed FDA witnesses for depositions within 30 calendar days from the date of the Court's Order.

## CONCLUSION

For the foregoing reasons, Mr. Moore urges the Court to grant his Motion to Compel. A proposed Order to this effect is submitted herewith.

Respectfully submitted,

Bobby R. Burchfield (D.C. Bar No. 289124)
Jason A. Levine (D.C. Bar No. 449053)
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000
Fax: (202) 756-8087

Edward P. Leibensperger
Jeffrey S. Huang
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Tel.: (617) 535-4000
Fax: (617) 535-3800

Date:    August 10, 2006                    *Counsel for Defendant Thomas A. Moore*

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA IN: | ) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BIOPURE CORPORATION, THOMAS | ) |
| MOORE, HOWARD RICHMAN, and JANE | ) |
| KOBER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

MISC. No. _____

(Related Case: Civ. No. 05-11853-PBS
Pending in the U.S. District Court
for the District of Massachusetts)

### [PROPOSED] ORDER

The Court, having considered Defendant Thomas A. Moore's Motion to Compel, the

Memoranda of Law in support thereof and in opposition thereto, and all pertinent argument,

hereby ORDERS that the United States Food and Drug Administration ("FDA") shall:

(1)    produce all documents that are responsive to Mr. Moore's subpoena to the FDA

of March 24, 2006, no later than 10 calendar days from the date of this Order; and

(2)    produce for deposition, no later than 30 days from the date of this Order, the

following employees whose testimony was subject to Mr. Moore's subpoenas of

March 24, 2006: (a) Mr. Franklin Stephenson; (b) Dr. Toby Silverman; (c) Dr.

Laurence Landow; and (d) Dr. Abdu Alayash.

_____
United States District Judge

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Motion to Compel and Memorandum of Law were served by hand delivery on this 10th day of August, 2006, upon

    Claire Whitaker, Esq.
    Assistant United States Attorney
    Office of the United States Attorney for the District of Columbia
    555 Fourth Street, N.W.
    Washington, D.C. 20001

    Carl Turner, Esq.
    Office of Chief Counsel
    U.S. Food and Drug Administration
    5600 Fishers Lane, Mail Code: GCF-1
    Rockville, MD 20857-0001

    *Counsel for United States Food and Drug Administration*

and by Federal Express, overnight delivery, upon

    Ian D. Roffman, Esq.
    U.S. Securities and Exchange Commission
    Boston District Office
    33 Arch Street
    Boston, MA 02110

    *Counsel for United States Securities and Exchange Commission*

By: _____
    Jason A. Levine

# EXHIBIT 11

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER, )<br>)<br>)<br>)<br>Defendants. )<br>) | Misc. No. 1:06-00380(JR) |

### NON-PARTY UNITED STATES FOOD AND DRUG ADMINISTRATION'S OPPOSITION TO DEFENDANT THOMAS MOORE'S MOTION TO COMPEL

The United States Food and Drug Administration ("FDA"), by and through its undersigned counsel, respectfully submits this opposition to defendant Thomas Moore's motion to compel compliance with Moore's third-party subpoenas for documents and testimony from FDA employees. As detailed below, FDA has addressed the issues raised in Moore's motion by providing documents responsive to Moore's third-party subpoenas and complying with Moore's request to take the depositions of four FDA employees. Because FDA has complied with Moore's discovery requests, the pending motion should be denied as moot.

### I. BACKGROUND

Thomas Moore is one of the remaining defendants in a civil enforcement action filed by the Securities and Exchange Commission ("SEC") in the United States District Court for the District of Massachusetts. See SEC v. Biopure, et al., Civ. No. 05-11853 (D. Mass. filed Sept. 14, 2005). SEC's complaint alleges, among other things, that Biopure Corporation and several of its current and former executives, including Moore, violated securities laws by

misrepresenting the status of biologic license applications pending with FDA. Id. FDA is not a party to the case. Moreover, FDA has not participated in any of the pretrial scheduling conferences referenced in Moore's motion to compel.

FDA, however, did provide documents to SEC, pursuant to 21 C.F.R. § 20.85, during the course of its investigation, and permitted three employees to be deposed by SEC after receiving written requests from SEC in accordance with FDA regulations. See 21 C.F.R. § 20.1; see also Ex. A, Declaration Gilliam B. Conley, Director of the Division of Inspections and Surveillance, FDA, Center for Biologics Evaluation and Research ("CBER"), Office of Compliance and Biologics Quality (hereinafter "Conley Decl.") at ¶ 7. After SEC initiated its case in 2005, SEC asked FDA for permission to release copies of the documents obtained from FDA, and transcripts of the SEC's investigatory depositions of FDA employees. Id. at ¶ 8. FDA granted SEC's request, and redacted copies of the documents and transcripts were subsequently provided to the defendants. Id.

On March 24, 2006, Moore requested additional documents and testimony from FDA pursuant to its disclosure regulations, 21 C.F.R. §§ 20.2 and 20.1. See Moore Mot. Compel, Exs. 1-6. Moore's request for documents identified nine separate categories of documents. Id. Simultaneously, Moore issued third-party subpoenas for such documents and testimony to FDA. Id.

On April 3, 2006, FDA informed Moore that, pursuant to then-applicable precedent concerning the applicability of Rule 45 to federal agencies, see SEC v. Biopure et al., Misc. No. 05-00506, (D.D.C. Jan. 20, 2006), his subpoenas were unenforceable on FDA. See Moore Mot. Compel, Ex. 7. FDA also explained why complying with the subpoenas would be unduly

2

burdensome. Id. FDA noted, however, that Moore's requests for testimony and documents

pursuant to 21 C.F.R. §§ 20.2 and 20.1 would be reviewed in accordance with agency

procedures. Id.

In an effort to obtain documents for Moore in an expedited manner, SEC requested the

documents from FDA under 21 C.F.R. § 20.85, which authorizes FDA to provide documents to

other federal agencies. See Ex. A, Conley Decl. at ¶¶ 3, 10. SEC's request, dated April 21,

2006, sought seven of the nine categories of documents identified in Moore's request to FDA.

See Moore Mot. Compel, Ex. 8. SEC did not request (1) communications between FDA and

SEC concerning the defendants in SEC's case, and (2) documents concerning the policy of inter-

agency cooperation between FDA and SEC. Id. at ¶ 10.

Upon receiving SEC's request, FDA completed a thorough search to obtain responsive

documents, which included direct contact with each of the FDA employees identified in Moore's

subpoenas. Id. at ¶ 11. On June 28, 2006, FDA provided SEC with approximately 400 pages

that were responsive to SEC's request for documents under 21 C.F.R. § 20.85. Ex. B, June 28,

2006 Correspondence from FDA to SEC. In providing the documents to SEC, FDA noted that

trade secret information had been redacted from some of the documents pursuant to 21 U.S.C.

331(j), which prevents the release of such information. Id. However, deliberative process

information was not redacted, nor was Biopure's confidential commercial information. Id.

Because the documents contained significant commercial information belonging to Biopure,

SEC was not permitted to release the documents directly to Moore until Biopure had reviewed

the documents and consented to their release. Id.

3

Shortly before these documents were received by Moore, the Court of Appeals for the D.C. Circuit issued an order in an unrelated case that held that the government was subject to Rule 45 subpoenas. See Yousuf v. Samantar, 451 F.3d 248 (D.C. Cir. 2006); Moore Mot. Compel, Ex. 16. Consistent with this development, FDA initiated a search for documents responsive to the two categories of documents that were in Moore's subpoenas, but omitted from SEC's request under 21 C.F.R. § 20.85. Ex. A, Conley Decl. at ¶ 13; see also Ex. C, Declaration of Beth Brockner Ryan, Chief of the Access Litigation and Freedom of Information Branch, Office of Communication, Training and Manufacturers Assistance, CBER, FDA (hereinafter "Brockner Ryan Decl.") at ¶¶ 8-9; and Ex. D, Declaration of Anne Smith, Testimony Specialist, FDA's Office of Regulatory Affairs, Office of Enforcement, Division of Compliance Policy (hereinafter "Smith Decl.") at ¶ 6.

On July 28, 2006, Moore requested the production of additional documents, such as email attachments, that Moore believed should have been provided with FDA's June 28, 2006 response. See Moore Mot. Compel, Ex. 17. After receiving this request, FDA reviewed the documents provided and confirmed that certain attachments were indeed missing. See Ex. A, Conley Decl. at ¶ 14. On August 17, 2006, FDA provided SEC with approximately 170 pages of additional documents in response to Moore's July 28, 2006 request. Id. at ¶ 16. Consistent with FDA's June 28, 2006 release, these documents were redacted prior to being released to SEC. Thereafter, SEC was permitted to release the documents to Moore after pre-release review by Biopure of its confidential commercial information. Id.

On August 10, 2006, before receiving the additional documents being assembled by FDA, Moore filed the instant motion to compel. Moore's motion noted that certain attachments

4

were missing from documents provided by FDA. Moore Mot. Compel at 5-6. Moore stated that FDA had not provided documents responsive to two categories identified in his subpoenas: (1) communications between FDA and SEC concerning the defendants in SEC's case, and (2) documents concerning the policy of inter-agency cooperation between FDA and SEC. Id. Finally, Moore's motion asserted that FDA had not responded to his request to take the depositions of several FDA employees. Id.

On August 21, 2006, FDA notified Moore that FDA had approved his request to take the depositions of four FDA employees. See Ex. E, August 21 Correspondence from FDA to Moore. These depositions are presently scheduled to take place this month.

On September 14, 2006, the Department of Justice ("DOJ"), on behalf of FDA, provided counsel for Moore with 200 pages that were responsive to his request for documents concerning the policy of inter-agency cooperation between FDA and SEC. Ex. F, September 14 Correspondence to Moore; Ex. D, Smith Decl. at ¶ 9. Because these documents did not contain any confidential commercial information of Biopure's, they were provided directly to Moore. Id.

Also on September 14, 2006, FDA sent 581 pages to SEC for release to Moore after pre-release review by Biopure. Ex. G, September 14, 2006 Correspondence from FDA to SEC. The 581 pages included, in part, documents obtained in response to Moore's subpoena request for communications between FDA and SEC concerning the defendants. See Ex. A, Conley Decl. at ¶ 19; Ex. C, Brockner Ryan Decl. at ¶ 10. The September 14, 2006 release also included documents provided by an FDA employee who conducted a supplemental search for documents. Ex. C, Conley Decl. at ¶ 19.

In addition, on September 22, 2006, FDA provided SEC with 122 additional pages that had been located by a second FDA employee who had completed supplemental search for documents. Ex. H, September 22, 2006 Correspondence from FDA to SEC. The September 22, 2006 release contained 122 pages because some of the newly-obtained documents were found to be non-responsive or duplicative. See Ex. C, Brockner Ryan Decl. at ¶ 12. As with FDA's releases on June 28, August 18, and September 14, 2006, these additional documents were redacted to prevent the release of trade secret information or information that is otherwise privileged. Id.[1] Similarly, because confidential commercial information belonging to Biopure was not redacted, the documents could only be released to Moore after pre-release review by Biopure. See Ex. H.

## II. ARGUMENT

District courts have broad discretion in reviewing discovery matters. Brune v. Internal Revenue Service, 861 F.2d 1284, 1288 (D.C. Cir. 1988); In re Multi-Piece Rim Products Liability Litigation, 653 F.2d 671, 679 (D.C. Cir. 1981) (affirming district court decision to deny motion to compel discovery from non-party witnesses). Suffice it to say, in the present situation, where the information sought in the subpoena and in the motion to compel has been provided, plaintiff's motion to compel is rendered moot.

As detailed below, FDA, a federal agency that is not a party to the underlying action, has worked diligently to comply with Moore's extensive requests for documents and testimony, and has addressed all of the matters raised in his motion to compel.

First, on June 28, 2006, FDA provided approximately 400 pages that responded to seven of the nine categories of documents identified in Moore's subpoenas. These documents were

---

[1] Privilege logs for all releases are attached as Exhibit I, hereto.

provided to SEC for subsequent release to Moore after pre-release review by Biopure.

Second, after being notified by Moore that FDA's June 28, 2006 release omitted certain e-mail attachments, FDA located the missing attachments and provided them to SEC for release to Moore.

Third, on August 21, 2006, FDA notified Moore that FDA had approved his request to take the depositions of FDA employees. FDA and Moore have tentatively set the depositions for October 17, 19, 23, 24, and 26.

Fourth, to the extent FDA's June 28, 2006 release did not contain documents responsive to two of the nine categories of documents identified in Moore's subpoenas, FDA located responsive documents and, on September 14, 2006, provided them either directly to Moore or to SEC for release to Moore after pre-release review by Biopure.

Fifth, on September 14 and September 22, 2006, FDA provided several hundred additional pages to SEC for release to Moore after Biopure review. These additional documents had recently been obtained from FDA employees who had completed supplemental searches for responsive materials.

FDA's efforts, both before and after Moore filed the instant motion, demonstrate a rigorous, good faith effort to comply with Moore's requests. Because the issues raised in Moore's request have been adequately addressed by FDA, and FDA has complied with Moore's requests for documents and testimony, Moore's motion should be denied as moot.

### III. CONCLUSION

For the foregoing reasons, defendant Moore's motion to compel should be denied as moot.

Respectfully submitted,

*[signature]*
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

*[signature]*
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

*[signature]*
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:
Daniel Meron
General Counsel

Sheldon T. Bradshaw
Chief Counsel
Food and Drug Division

Eric M. Blumberg
Deputy Chief Counsel, Litigation

Michael Shane
Associate Chief Counsel
United States Department of
Health and Human Services
Office of the General Counsel

9

## CERTIFICATE OF SERVICE

I certify that the accompanying Non-party FDA's Opposition to Defendant's Moore's

Motion to Compel was served on:

Steven J. Crimmins, Esq.
John J. Dempsey, Esq.
Bingham McCutchen LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036

Robert A. Buhlman, Esq.
Donald J. Savery, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

Thomas J. Dougherty, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

John D. Hughes, Esq.
Edwards & Angell LLP
101 Federal Street
Boston MA 02110

Bobby Roy Burchfield, Esq.
Jason Levine, Esq.
McDermott Will & Emery LLP
600 13th St., N.W.
Washington, D.C. 20005

Edward P. Leibensperger, Esq.
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109

Ian D. Roffman, Esq.
United States Securities and Exchange Commission
33 Arch St., 23rd Floor
Boston, MA 02110-1424

by first class mail, prepaid, this 3rd day of October, 2006.

CLAIRE WHITAKER, D.C. BAR # 354530
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7137

11

# EXHIBIT 12

VIDEOTAPED DEPOSITION OF FRANKLIN STEPHENSON
CONDUCTED ON MONDAY, OCTOBER 23, 2006

1 (Pages 1 to 4)

**Page 1**

1      UNITED STATES DISTRICT COURT
2      FOR THE DISTRICT OF MASSACHUSETTS
3
4    - - - - - - - - - - - - - - - - - - *
5    U.S. SECURITIES AND EXCHANGE      *
6    COMMISSION,                        *
7              Plaintiff,       *
8         vs.                   * Case Number
9    BIOPURE CORPORATION, THOMAS MOORE, * 05-11853-PBS
10   HOWARD RICHMAN, and JANE KOBER,    *
11             Defendants.       *
12   - - - - - - - - - - - - - - - - - - *
13      Videotaped Deposition of FRANKLIN STEPHENSON
14              Rockville, Maryland
15           Monday, October 23, 2006
16                9:12 a.m.
17
18
19   Job No. 1-88635
20   Pages 1 - 242
21   Reported by: Karen Young
22   Videographer: Santiago Murillo

**Page 2**

1        Videotaped Deposition of FRANKLIN
2    STEPHENSON, held at the offices of:
3        U.S. FOOD AND DRUG ADMINISTRATION
4        1401 Rockville Pike, Room 402S
5        Rockville, Maryland 20852
6        (301) 827-7877
7
8
9
10
11        Pursuant to notice, before Karen Young,
12   Notary Public in and for the State of Maryland.
13
14
15
16
17
18
19
20
21
22

**Page 3**

1                A P P E A R A N C E S
2    ON BEHALF OF THE SECURITIES AND EXCHANGE
        COMMISSION:
3
         IAN D. ROFFMAN, ESQUIRE
4        U.S. SECURITIES AND EXCHANGE COMMISSION
         Division of Enforcement
5        Boston District Office
         33 Arch Street
6        Boston, Massachusetts 02110-1424
         (617) 573-8987
7
8    ON BEHALF OF THOMAS MOORE:
9
         BOBBY R. BURCHFIELD, ESQUIRE
10       HEATHER L. SIDWELL, ESQUIRE
         McDERMOTT WILL & EMERY LLP
11       600 Thirteenth Street, Northwest
         Washington, D.C. 20005-3096
12       (202) 756-8003
13
14   ON BEHALF OF THE U.S. FOOD AND DRUG
         ADMINISTRATION:
15
         CLAIRE WHITAKER, ESQUIRE
16       U.S. ATTORNEY'S OFFICE
         555 Fourth Street, Northwest, E-4204
17       Washington, D.C. 20530
         (202) 514-7137
18
         MICHAEL SHANE, ESQUIRE
19       DEPARTMENT OF HEALTH AND HUMAN SERVICES
         Office of the Chief Counsel
20       Food and Drug Administration
         5600 Fishers Lane
21       Rockville, Maryland 20857
         (301) 827-2802
22

**Page 4**

1    ON BEHALF OF BIOPURE CORPORATION:
2       MICHAEL D. BLANCHARD, ESQUIRE
        BINGHAM McCUTCHEN LLP
3       One State Street
        Hartford, Connecticut 06103-3178
4
        (860) 240-2945
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

VIDEOTAPED DEPOSITION OF FRANKLIN STEPHENSON
CONDUCTED ON MONDAY, OCTOBER 23, 2006

3 (Pages 9 to 12)

9

1    MS. WHITAKER: Claire Whitaker, Assistant
2  U.S. Attorney, on behalf of the FDA.
3    THE VIDEOGRAPHER: Thank you. The court
4  reporter today is Karen Young of LAD Reporting. Will
5  the reporter please swear in the witness?
6    FRANKLIN STEPHENSON,
7    having been duly sworn, testified as follows:
8    - - -
9    MR. BURCHFIELD: Please begin.
10    MS. WHITAKER: All right, I'm Claire
11  Whitaker, and as a preliminary matter, I'd like to
12  have two documents marked as Exhibit 1 and 2. Counsel
13  have already discussed them. Exhibit -- to be marked
14  as Exhibit 1 is the August 21st letter to the --
15  Mr. Moore's attorney I believe, and it provides the
16  limitations -- it outlines the limitations to
17  Mr. Stephenson's testimony.
18    He is permitted to testify concerning the
19  dealings with Biopure roughly between February -- July
20  2002 and going through the clinical hold letters that
21  are connected with this litigation and the complete
22  response letter of July 30th, 2003. In addition, in

10

1  the letter, it indicates that he's not permitted to
2  discuss trade secrets or commercial financial
3  information; however, in order to attempt to move
4  these depositions along, counsel have come to an
5  agreement that in light of the fact there's a
6  stipulation between Mr. Moore and Biopure which
7  provides for confidentiality, Biopure will be
8  protected. The confidentiality provision is going to
9  be marked as Exhibit 2.
10    And in addition, our agreement is that
11  Biopure would provide a counsel at this deposition to
12  object if indeed trade secrets or commercial financial
13  information is raised and there's an objection by
14  Biopure. Counsel for Biopure is not here yet but the
15  parties have agreed to go forward because it's
16  believed that we'll be just discussing preliminary
17  matters the first hour or so.
18    In addition, we are providing Mr. Moore's
19  attorney with the redacted version of Mr. Stephenson's
20  official personnel file. This is produced even though
21  there was a subpoena. We believe the subpoena could
22  have been objected to; however, in the spirit of

11

1  cooperation, we've determined that we will provide
2  that file, and we have done so today.
3    There's one last matter that has come to the
4  attention of the FDA counsel, and that is on Thursday
5  when Dr. Landow's deposition was being taken, a
6  document was shown to him from a system of records
7  called BIM, and after that deposition, we -- we asked
8  Dr. Landow and the FDA about the BIMS systems of
9  record because we wanted to ensure that we had
10  produced everything in response to the subpoenas --
11  the subpoenas and also with regard to the subpoenas
12  from -- that we produced to the SEC, and we determined
13  that there were approximately ten records of contacts
14  which were recorded in the BIM system, and we had them
15  copied on Saturday and we are -- there is a process by
16  which FDA must review them first and then provide them
17  to the SEC and then the SEC must let Biopure look at
18  them and then we can produce them to Mr. Moore, and it
19  is hoped that that process will be completed by mid-
20  morning today so we can provide those BIM records.
21    In addition, as we were asking Mr. Landow
22  about these records, he questioned whether or not his

12

1  e-mails had been in fact downloaded and provided, and
2  a very cursory review seemed to indicate that they
3  were not, so we had Mr. Landow on Saturday run all of
4  his e-mails from approximately July '02 through the
5  beginning of '04, and those also are being processed
6  through the FDA with hopes that the Biopure's attorney
7  will be able to review them and then we can go
8  forward.
9    And we also have questioned Mr. Stephenson
10  to ensure that his e-mails were produced, and he has
11  assured us that that was the case, and we are also
12  asking Dr. Silverman, who will be deposed tomorrow, if
13  indeed hers were run off and produced because we want
14  to ensure that Mr. Moore's attorney has everything.
15    But in light of the fact that there are some
16  documents that have yet to be seen by Mr. Moore's
17  attorney, we would be willing to adjourn this meeting
18  to a later date if Mr. Moore's attorney prefers, and
19  we would also be willing to reconvene the deposition
20  if -- if Mr. Moore's attorney thought that that was
21  appropriate, and we offer the two deponents,
22  Dr. Alayash and Dr. Landow, again for reconvenement

VIDEOTAPED DEPOSITION OF FRANKLIN STEPHENSON
CONDUCTED ON MONDAY, OCTOBER 23, 2006

4 (Pages 13 to 16)

**13**

1   of their testimony if indeed something is discovered
2   in reviewing those supplemental documents that needs
3   to be further explored. So with that said, you know,
4   I would -- if counsel for Mr. Moore prefers, we'd be
5   totally willing to adjourn the meeting to a later
6   date, the deposition.
7           MR. BURCHFIELD: Thank you for those
8   comments. In deference to Mr. Roffman, who has come
9   in from Boston, and a person from Bingham Dana, who
10  presumably is on the way from Boston, we will go
11  forward with the deposition to the degree we can
12  complete it today, but I appreciate your offer to make
13  the witnesses available again in light of the late
14  production. With regard -- you mentioned that
15  Mr. Stephenson has confirmed that his e-mails have
16  been produced, and I'll ask him about that on the
17  record, but -- and also Mr. Landow. How about
18  Mr. Alayash, Dr. Alayash?
19          MS. WHITAKER: I'm not sure whether we've re
20  -- inquired of him; however, in the beginning, it was
21  noticed that his name is across many of the e-mails
22  that are in the documents that I've seen, so I do not

**14**

1   doubt that he marked every document to be produced and
2   that they were produced, but we will definitely
3   double-check with him too.
4           MR. BURCHFIELD: Can you do that please?
5   The second thing is you mentioned that the -- that the
6   e-mail search as well as your interpretation of the
7   letter regarding the restrictions on the testimony
8   generally run from July '02 I think you said to early
9   '04. I know last week at one of the depositions, the
10  deposition the SEC took of Mr. Moore's expert,
11  documents were used that went back to 1999, and to the
12  degree that -- to the degree that those -- that the
13  SEC believes those issues are in the case, then we
14  would like FDA documents relating to -- relating to
15  Biopure and these transactions going back to 1999.
16          In particular, Mr. Roffman, you will recall
17  that you had a number of questions for Mr. Hutt and
18  also as I recall -- as I recall, there were
19  discussions in the depositions the SEC took of these
20  witnesses that go back to the period of the planning
21  of the BLA, of the original HEM-0115 IND in 1999,
22  2000, 2001, and the discussions leading up to the BLA

**15**

1   in 2000 -- in late 2001, early 2002. So to the degree
2   that those are going to be at issue in this case, we
3   obviously need to see those documents.
4           MS. WHITAKER: If I could just make one
5   point, obviously the reason that they were not
6   produced was because they were not the subject of the
7   subpoena, but to the extent that we can review our
8   records and see what we have, I'll certainly look into
9   that.
10          MR. BURCHFIELD: Thank you.
11          MR. ROFFMAN: Let me just state for the
12  record, I am not entirely sure exactly which issues
13  you're talking about. I think some of the issues of
14  what you've described were the subject of questions.
15  Some may not have been, but I'm perfectly happy to be
16  involved in any discussion that we have about that.
17          EXAMINATION BY COUNSEL FOR THOMAS MOORE
18  BY MR. BURCHFIELD:
19      Q.  Okay. Any other preliminaries before we
20  begin? And just -- this is not something that we need
21  to debate about today, by just as I think everyone
22  knows, we do not necessarily accede to the limitations

**16**

1   FDA has put on its production or the testimony, but
2   that's going to be resolved at a higher peg rate than
3   ours, so -- okay, I have that it is 9:23, so why don't
4   we begin the deposition. Would you please state your
5   name?
6       A.  Franklin Stephenson.
7       Q.  Has the witness been sworn, by the way?
8   Mr. Stephenson, do you still reside at 11305 Ashley
9   Drive in Rockville, Maryland 20852?
10      A.  Yes, I do.
11      Q.  Am I correct that you have a bachelor's
12  degree from Howard University in parasitology,
13  received in 1973?
14      A.  Yes.
15      Q.  And am I also correct that you have a
16  master's degree from Johns Hopkins in business in
17  1998?
18      A.  It was 1989.
19      Q.  1989.
20      A.  Right.
21      Q.  Okay, thank you for that clarification. You
22  began your employment at FDA on or about October 30th

# EXHIBIT 13

VIDEOTAPED DEPOSITION OF TOBY SILVERMAN, M.D.
CONDUCTED ON TUESDAY, OCTOBER 24, 2006

1 (Pages 1 to 4)

1

```
 1          UNITED STATES DISTRICT COURT
 2            DISTRICT OF MASSACHUSETTS
 3    --------------------------------x
 4    SECURITIES AND EXCHANGE      :
 5    COMMISSION,                  :
 6        Plaintiff,               :
 7        -vs-         : Case No. 05-11853-PBS
 8    BIOPURE CORPORATION, THOMAS  :
 9    MOORE, HOWARD RICHMAN AND    :
10    JANE KOBER,                  :
11        Defendants.              :
12    --------------------------------x
13
14
15        Videotaped Deposition of Toby Silverman, M.D.
16              Rockville, Maryland
17            Tuesday, October 24, 2006
18                  9:08 a.m.
19
20    Job No : 1-88641
21    Pages 1 - 319
22    Reported by: Tammy S. Newton
```

2

```
 1        Deposition of Toby Silverman, M.D. held at the
 2    offices of:
 3        Food and Drug Administration
 4        1401 Rockville Pike
 5        Rockville, Maryland 20850
 6
 7
 8
 9    Pursuant to agreement, before Tammy S Newton, a
10    Notary Public in and for the State of Maryland.
11
12
13
14
15
16
17
18
19
20
21
22
```

3

```
 1              A P P E A R A N C E S
 2    ON BEHALF OF THE FOOD AND DRUG ADMINISTRATION
 3        CLAIRE WHITAKER, ESQUIRE
 4        United States Attorney's Office
 5        555 Fourth Street, N W
 6        E-4204
 7        Washington, D C  20530
 8        (202) 514-7137
 9        and
10        MICHAEL SHANE, ESQUIRE
11        Office of the Chief Counsel
12        Food and Drug Administration
13        5600 Fishers Lane
14        Rockville, Maryland 20857
15        (301) 827-2802
16
17
18
19
20
21
22
```

4

```
 1    ON BEHALF OF THE SECURITIES AND EXCHANGE
 2    COMMISSION:
 3        IAN D. ROFFMAN, ESQUIRE
 4        Securities and Exchange Commission
 5        Boston District Office
 6        33 Arch Street
 7        Boston, Massachusetts 02110-1424
 8        (617) 573-8987
 9
10    ON BEHALF OF DEFENDANT THOMAS MOORE:
11        BOBBY BURCHFIELD, ESQUIRE
12        HEATHER SIDWELL, ESQUIRE
13        McDermott, Will & Emery, LLP
14        600 Thirteenth Street, N.W
15        Washington, D.C. 20005-3096
16        (202) 756-8021
17
18
19
20
21
22
```

VIDEOTAPED DEPOSITION OF TOBY SILVERMAN, M.D.
CONDUCTED ON TUESDAY, OCTOBER 24, 2006

3 (Pages 9 to 12)

**9**

1    No. 49 - E-mail Chain            250
2    No. 50 - Pivotal Phase III Study        252
3    No. 51 - Telephone Contact Report    258
4    No. 52 - Boston Globe Article        260
5    No. 53 - Oct. 18, 2002 Letter from Richman
6        to Williams            265
7    No. 54 - Telephone Contact Report    266
8    No. 55 - Nov. 21, 2002 Letter from Richman
9        to Williams            269
10    No. 56 - Stipulation & Confidentiality
11        Agreement            316
12    No. 57 - Aug. 21, 2006 Letter from Elder
13        to Levine & Cormier        316
14
15
16
17
18
19
20
21
22

**11**

1        MS. WHITAKER:  Claire Whitaker, Assistant
2    U.S. Attorney, representing Food and Drug
3    Administration.
4        VIDEOTAPE OPERATOR:  The court reporter
5    today is Tammy Newton of L.A.D. Reporting Company.
6    Will the reporter please swear in the witness.
7        Toby Silverman, M.D.,
8    having been sworn by the notary, testified as follows:
9        VIDEOTAPE OPERATOR:  Please begin.
10        MS. WHITAKER:  Mr. Burchfield, is it all
11    right if I make my representations?
12        MR. BURCHFIELD:  Go ahead.
13        MS. WHITAKER:  I'm Clair Whitaker
14    representing the Food and Drug Administration.  This
15    deposition was scheduled pursuant to a subpoena.  The
16    subpoena was reviewed by the Food and Drug
17    Administration, and Dr. Silverman has certain
18    restrictions placed on her testimony.
19        The restrictions are set forth in the
20    August 21st, 2006 letter, which will be made part of
21    the record.  She may testify to certain doc --
22    documents, what is called the IND, and certain letters

**10**

1        PROCEEDINGS:
2        VIDEOTAPE OPERATOR:  Here begins Videotape
3    No. 1 in the deposition of Dr. Toby Silverman in the
4    matter of Securities and Exchange Commission versus
5    Biopure Corporation, et al. in the United States
6    District Court for the District of Columbia in
7    Miscellaneous No. 10600380 JR.  Today's date is
8    October 24th, 2006.  The time on the video monitor is
9    9:08 a.m.  The video operator today is Richard Fazio.
10        This video deposition is being taking place
11    at the Food and Drug Administration, located at 1401
12    Rockville Pike in Rockville, Maryland.
13        Will counsel please voice identify
14    yourselves and state whom you represent.
15        MR. BURCHFIELD:  Bobby Burchfield for
16    Defendant Thomas Moore.
17        MS. SIDWELL:  Heather Sidwell, McDermott
18    Will & Emery, also for Defendant Thomas Moore.
19        MR. BLANCHARD:  Michael Blanchard, Bingham
20    McCutchen for non-party Biopure Corporation.
21        MR. ROFFMAN:  Ian Roffman on behalf of the
22    U.S. Securities and Exchange Commission.

**12**

1    in connection with that, the BLA and documents and
2    facts associated with that.
3        She's not permitted to testify to trade
4    secrets of any other organization, or in the case of
5    Biopure, there is a confidentiality agreement which
6    will also be made part of the record, which indicates
7    that there's an agreement between Biopure and Mr.
8    Moore concerning the use of any trade secrets or
9    confidential financial information.  That's going to
10    be made part of the record.
11        I will also add that Biopure's attorney,
12    Mr. Blanchard, is here to ensure that nothing that
13    would be considered confidential financials during the
14    testimony is put on the public record.  He also has 30
15    days to review the deposition and put other -- put
16    information that may have come up that he didn't
17    object to on the public record -- I mean, made
18    confidential.
19        I also would like to indicate that we have
20    provided Ms. -- Dr. Silverman's official personnel
21    file.  We've received a subpoena.  We believe that the
22    subpoena was inappropriate.  In the spirit of

VIDEOTAPED DEPOSITION OF TOBY SILVERMAN, M.D.
CONDUCTED ON TUESDAY, OCTOBER 24, 2006

4 (Pages 13 to 16)

13

1 cooperation, we have provided that. We also, after
2 the deposition of Dr. Landow, there was a document
3 that was presented to him during the deposition. We
4 had some concerns that we had searched the system of
5 records that was designated at the top of the page as
6 BIMS.
7      We have obtained documents from the BIMS
8 file now, which had been reviewed internally for
9 release. Mr. Blanchard was given a copy yesterday
10 and -- to determine whether or not Biopure would have
11 any objection. At this point in time, I don't believe
12 the -- that has been cleared. We also have -- asked
13 Mr. Landow, again in the spirit of trying to make sure
14 everything has been produced to Mr. Moore's attorney,
15 to go through his -- all of his e-mails, his e-mails,
16 to ensure that he has produced e-mails.
17      The reason for this is that at the top of
18 the page, it says Dr. Alayash and most of them -- and
19 there's a few that say Dr. Silverman and Dr. Landow.
20 So we want to make sure until we have a -- some -- a
21 group of e-mails from Dr. Landow and I think also some
22 notes which are being processed through the FDA. I

14

1 guess it's the FOIA office, and we've asked them to do
2 that on an emergency basis.
3      We've also asked Dr. Silverman to do the
4 same thing, so that we can make sure that everything
5 has been produced. She has not completed the process,
6 because her computer failed, but she's going through
7 and trying to print out every single e-mail she either
8 sent or received. And to the extent that they're
9 duplicates, I'm not sure how we'll handle that. But
10 in any event, that material has not gone to the FOIA
11 office yet.
12      So with that said, we're obviously
13 attempting to provide everything we can possibly
14 provide to Mr. Moore on an emergency basis at this
15 point. I also would note that I have not been to my
16 office, because I've been in deposition, but I
17 understand that Defendant Moore has filed a motion for
18 emergency hearing. I don't believe anyone called me
19 about it or contacted me. Is that correct?
20      MR. BURCHFIELD: We discussed it yesterday
21 at the deposition.
22      MS. WHITAKER: You discussed it with me?

15

1      MR. BURCHFIELD: We discussed the issue
2 yesterday with you, and we asked -- we asked you -- we
3 asked you for assurances about the production of the
4 documents and were unable to get them.
5      MS. WHITAKER: I understand. But did you
6 tell me you were going to be filing and ask me if I
7 had any objection?
8      MR. BURCHFIELD: We did not. We did not
9      MS. WHITAKER: I wanted to be sure. And
10 you have filed something?
11      MR. BURCHFIELD: It is filed.
12      MS. WHITAKER: Do you mind if I have a
13 copy?
14      MR. BURCHFIELD: I don't have one with me.
15      MS. WHITAKER: It's an emergency. I'd like
16 to at least see it.
17      MR. BURCHFIELD: I understand -- I
18 understand you've been served. And as for your
19 statement about the FDA's emergency efforts to produce
20 these documents, just so we're clear, this is in
21 response to the subpoena and the Touhy request that we
22 served properly on FDA last March. It wasn't

16

1 something that we filed last week or yesterday. It's
2 something that you had in your possession for eight
3 months, almost eight months, and -- at least seven
4 months. And so we are now toward the end of the
5 discovery cutoff, as we discussed yesterday, and we
6 are running out of time. So if you can get those
7 documents to us today, that would be -- that would be
8 much appreciated.
9      MS. WHITAKER: All right. And so you say I
10 was served with this motion for --
11      MR. BURCHFIELD: It should be in your
12 office.
13      MS. WHITAKER: -- for the emergency hearing
14 that was filed in court under the electronic filing?
15      MR. BURCHFIELD: Are we here to take a
16 deposition?
17      MS. WHITAKER: No, no. I just need to have
18 someone notify my office how to get in touch with me,
19 because if it's a request for emergency hearing, I do
20 not have my cell phone. Nobody can get in touch with
21 me, and I certainly don't want to appear to the judge
22 that I'm not available. That's all.

# EXHIBIT 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN, and JANE KOBER, )<br><br>Defendants. ) | Misc. No. 1:06-00380 (JR)<br><br>(Related Case: Civ. No. 05-11853-PBS Pending in the U.S. District Court for the District of Massachusetts) |

### DEFENDANT THOMAS A. MOORE'S EMERGENCY REQUEST
### FOR HEARING ON MOTION TO COMPEL

Despite its documented history of delay in responding to Mr. Moore's March 24, 2006 *Touhy* Request, the U.S. Food and Drug Administration ("FDA") contended on October 3, 2006 that it had "adequately addressed" all of the issues and matters raised in Mr. Moore's August 10, 2006 Motion to Compel. See Exhibit A, p. 7 (FDA's Opposition to Defendant's Motion to Compel). Mr. Moore's Reply noted that FDA's "tepid and subjective assessment is wholly inadequate assurance that the FDA has actually satisfied Mr. Moore's discovery requests." See Exhibit B, p. 1 (Defendant's Reply to FDA's Opposition). Regardless, Mr. Moore's counsel subsequently proceeded in good faith to schedule and take the depositions of critical FDA staffers.

On Sunday, October 22, 2006, the Securities and Exchange Commission informed Mr. Moore's counsel that FDA would be producing additional, newly discovered responsive documents – despite the fact that Mr. Moore's counsel was to depose Franklin Stephenson of FDA the following morning on Monday, October 23, 2006 (and had already deposed Dr.

Laurence Landow). Indeed, more than halfway through Stephenson's deposition, FDA indicated that these additional documents were still forthcoming. FDA's previous and persistent delay results in continued prejudice to Mr. Moore, and it is now apparent that FDA's contentions are no assurance at all.

In view of FDA's continuing failure to fulfill its discovery obligations in responding to Mr. Moore's *Touhy* Request and parallel subpoenas, FDA is now attempting to persuade the parties that they should delay the discovery deadline in this case. Such a delay would have significant repercussions on the timing and filing of summary judgment motions, the pre-trial conference, and ultimately, the trial itself. Mr. Moore therefore seeks an emergency hearing on his August 10, 2006 Motion to Compel (attached as Exhibit C).

Respectfully submitted,

/s/ Bobby R. Burchfield

Bobby R. Burchfield
Jason A. Levine
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000

Edward P. Leibensperger
Jeffrey S. Huang
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Tel : (617) 535-4000

Date:   October 23, 2006                    *Counsel for Defendant Thomas A. Moore*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Emergency Request for Hearing on Motion to Compel was served by first-class mail, postage pre-paid, on this 23rd day of October, 2006 upon:

> Claire Whitaker, Esq.
> Assistant United States Attorney
> Office of the U.S. Attorney for the District of Columbia
>
> Michael Shane, Esq.
> Office of Chief Counsel
> U.S. Food and Drug Administration
> 5600 Fishers Lane, Mail Code: GCF-1
> Rockville, MD 20857-0001
>
> *Counsel for United States Food and Drug Administration*

and by Federal Express, overnight delivery, upon:

> Ian D. Roffman, Esq.
> U.S. Securities and Exchange Commission
> Boston District Office
> 33 Arch Street
> Boston, MA 02110
>
> *Counsel for United States Securities and Exchange Commission*

By:    _____ /s/ Jeffrey S. Huang _____
              Jeffrey S. Huang

3

# EXHIBIT 15

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Heather L. Sidwell
Associate
hsidwell@mwe.com
202 756 8334

October 26, 2006

**VIA FACSIMILE**

Claire Whitaker, Esq.
Assistant United States Attorney
United States Department of Justice
555 4th Street, N.W.
Civil Division
Washington, D.C. 20530

Re:     *SEC v. Biopure*, No. 05-11853-PBS (D. Mass.), No. 1:06MS00380 (D.D.C.)
        **FDA Document Production**

Dear Ms. Whitaker:

During the depositions of Mr. Stephenson and Dr. Silverman, it became clear that FDA has not produced all responsive documents, including for example: (1) summary reports of all telephone calls with Biopure; (2) review committee meeting summaries; (3) notes – both handwritten and typed – of internal meetings and calls concerning Biopure; and (4) internal emails regarding Biopure's BLA and IND.

It is our understanding that you have asked FDA to conduct a download of responsive emails and electronic documents belonging to Mr. Stephenson and Drs. Silverman, Alayash, and Landow, and to search the FDA's BIMS and RMS/BLA databases for additional responsive materials, and that you have asked each of the witnesses to re-review their files in order to capture the above-mentioned documents.

In light of this effort, we are amenable to withdrawing Mr. Moore's emergency motion (filed October 23, 2006), provided that you can give assurances that (1) the additional documents will be made available by FDA no later than Monday, October 30, 2006, and (2) upon providing the additional documents, we will receive a written certification from FDA that it has complied fully with Mr. Moore's subpoena and *Touhy* request.

Our proposal should in no way suggest that we will withdraw our non-party subpoena dated October 10, 2006. Indeed, the FDA's failure to complete its production to date underscores the importance of sworn testimony regarding the FDA's collection, review, and transmittal of responsive documents. Accordingly, we expect that the deposition noticed on October 10 will proceed as scheduled on October 31, 2006. Please confirm that FDA will produce a witness.

October 26, 2006
Page 2


Sincerely,

Heather L. Sidwell

cc:    Michael Shane, Esq.
       Ian Roffman, Esq.
       Michael Blanchard, Esq.

# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,     ) ) ) ) Plaintiff,     ) ) v.     ) ) BIOPURE CORPORATION, THOMAS ) MOORE, HOWARD RICHMAN, and JANE ) KOBER,     ) ) Defendants.     ) ) | Misc. No. 1:06-00380(JR) |

**STIPULATION**

Defendant Thomas Moore and non-party U.S. Food and Drug Administration ("FDA")

hereby stipulate and agree as follows:

1.    In the underlying case, on March 24, 2006, Mr. Moore requested documents and

testimony from the FDA pursuant to the FDA's *Touhy* regulations, which are promulgated at 21

C.F.R. §§ 20.1 and 20.2. On the same date, Mr. Moore issued non-party subpoenas to the FDA

for the same documents and testimony identified in his *Touhy* request.

2.    On August 10, 2006, Mr. Moore filed with this Court a motion to compel the

FDA's production of all documents responsive to his *Touhy* request and subpoena. The FDA

sought and obtained from the Court several extensions of time in which to respond to Mr.

Moore's motion to compel, predicated on the representation that the FDA would fully satisfy Mr.

Moore's motion without need for court order. On October 3, the FDA represented to the Court

that it had "adequately addressed" Mr. Moore's motion to compel, and the FDA accordingly

requested that the motion be denied.

3.    On October 17, Mr. Moore informed the Court that he would be willing to hold his motion in abeyance, pending written confirmation that the FDA had in fact collected and produced to him all documents that are responsive to his subpoena and *Touhy* request.

4.    On October 22, the FDA advised counsel for Mr. Moore that it had subsequently discovered additional responsive documents, and that it was conducting further searches for materials to produce to Mr. Moore. The FDA continues to search for responsive documents, and this search is expected to continue beyond the deadline for discovery of October 31, 2006, in the underlying case.

5.    In view of the foregoing, the FDA hereby stipulates that it will complete its current document search, and produce all documents that are responsive to Mr. Moore's subpoena and *Touhy* request, by no later than November 7, 2006. In exchange, Mr. Moore hereby stipulates that the FDA may confine its document review to the following categories of materials

> (a) Summaries and memoranda of telephone calls prepared by FDA, concerning the Biologics License Application ("BLA") or trauma-related Investigational New Drug Application ("trauma IND") submitted by Biopure Corporation, during the period of July 31, 2002 to April 30, 2004;
>
> (b) Review Committee Meeting summaries concerning the aforementioned BLA or trauma IND during the period of July 31, 2002 to April 30, 2004;
>
> (c) Internal email correspondence concerning the aforementioned BLA or trauma IND for which Dr. Abdu Alayash, Dr. Laurence Landow, Franklin Stephenson, and Dr. Toby Silverman are shown as authors, recipients, cc: recipients, or bcc: recipients during the period of January 1, 2003 to April 30, 2004; and
>
> (d) All handwritten or typed notes and personal files made by Dr. Abdu Alayash, Dr. Laurence Landow, Franklin Stephenson, and Dr. Toby Silverman relating to the aforementioned BLA and trauma IND during the period of July 31, 2002 to April 30, 2004.

2

6.      In view of the foregoing, the FDA and Mr. Moore further stipulate and agree that Mr. Moore's motion to compel will be further held in abeyance until he: (1) receives the FDA's written certification, no later than November 7, 2006, that it has in fact produced all documents responsive to Mr. Moore's *Touhy* request and subpoena; and (2) conducts a deposition, no later than November 14, 2006, of the FDA pursuant to Federal Rule of Civil Procedure 30(b)(6) to test the adequacy and finality of its document production. If these conditions are satisfied, Mr. Moore will withdraw his motion to compel.

7.      The FDA and Mr. Moore further stipulate and agree that Mr. Moore will hold in abeyance his deposition subpoena of October 10, 2006, pending the aforementioned Rule 30(b)(6) deposition, the occurrence of which will satisfy the subpoena. Finally, the FDA and Mr. Moore also stipulate and agree that Mr. Moore will withdraw his deposition subpoenas of October 20, 2006 for the testimony of persons who are no longer employed by the FDA, and Mr. Moore will hold in abeyance his deposition subpoena for the testimony of Marieanne Brill until he receives the FDA's aforementioned final document production and determines whether there remains a need for this deposition. If Mr. Moore at that juncture no longer requires the deposition, then he will withdraw the subpoena; if Mr. Moore does require the deposition, the FDA agrees that it will produce Ms. Brill for deposition no later than November 14, 2006.

                              Respectfully submitted,


                              _____
                              Claire Whitaker, Esq.
                              UNITED STATES DEPARTMENT OF JUSTICE
                              555 4th Street, NW
                              Washington, D.C.  20530
                              Tel.: (202) 514-7137

                              *Counsel for United States Food and Drug Administration*

_____
Bobby R. Burchfield
Jason A. Levine
McDermott Will & Emery LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
Tel.: (202) 756-8000

*Counsel for Defendant Thomas A. Moore*

Date:   October __, 2006

# EXHIBIT 17

SEC vs.                                    October 30, 2006
Biopure Corporation, et al.                MC 06-0380

<div style="border:1px solid">

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE          :      MC No. 06-0380
COMMISSION,                      :
                                 :
            Plaintiff            :      October 30, 2006
v.                               :
                                 :
BIOPURE CORPORATION, et al.,     :      10:00 a.m.
                                 :
            Defendants           :
. . . . . . . . . . . . . . . . .:    . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff SEC:          IAN D. ROFFMAN, ESQUIRE
                            UNITED STATES SECURITIES AND
                                EXCHANGE COMMISSION
                            Boston District Office
                            33 Arch Street
                            Boston, MA.  02110-1424
                            (617)573-8987

For Defendant               JASON A. LEVINE, ESQUIRE
Thomas Moore:               McDERMOTT, WILL & EMERY
                            600 Thirteenth Street, NW
                            Washington, D.C.  20005-3096
                            (202) 756-8021

For the Movant              CLAIRE M. WHITAKER, ESQUIRE
Food and Drug               UNITED STATES ATTORNEY'S OFFICE
Administration:             555 4th Street, NW
                            Suite E-4204
                            Washington, DC 20816
                            (202) 514-7137

Court Reporter:             REBECCA STONESTREET, RPR, CRR
                            Official Court Reporter
                            Room 6415, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 354-3249

Proceedings reported by machine shorthand, transcript produced

by computer-aided transcription.

</div>

United States District Court    202-354-3249   Rebecca Stonestreet, RPR, CRR
For the District of Columbia         Official Court Reporter

ee8fcf03-c5f4-4671-8f10-cf6074d77a50

SEC vs.                                              October 30, 2006
Biopure Corporation, et al.                          MC 06-0380

Page 34

1    deadline under Judge Sarris' order.  The defendant's deposition

2    is going to be scheduled after tomorrow, as well as some expert

3    discovery which the court in Massachusetts entered an order

4    governing, which is going to take place after tomorrow.

5           The second thing I wanted to raise is, as I think

6    Ms. Whitaker mentioned, one of the defendants has filed a motion

7    to sever and stay, and that's going to affect the schedule in

8    this case.  And Judge Sarris has scheduled a hearing on that

9    motion for Wednesday afternoon, November 1st.  And so to the

10   extent that tomorrow's deadline is firm or not firm, the parties

11   expect to be in front of Judge Sarris on Wednesday on that

12   question.

13          And I just wanted to inform Your Honor of those things.

14          THE COURT:  Okay.  That's useful.  Thank you, sir.

15          As to the three new witnesses who have been subpoenaed,

16   I will grant the FDA's motion to quash.  I will not quash the

17   notice -- the 30(b)(6) notice.  I'm going to take Ms. Whitaker

18   at her word.  She tells me that the summaries and memoranda of

19   phone calls with Biopure concerning trauma would be produced by

20   the end of this week, she tells me that the biological -- I'm

21   not quite sure what the label is on this, biological documents,

22   it will take 10 days to gather them, as it will take 10 days to

23   gather the committee meeting summaries, as it will take 10 days

24   to gather the internal e-mails, as it will take 10 days to

25   gather the handwritten or typed notes.

United States District Court    202-354-3249   Rebecca Stonestreet, RPR, CRR
For the District of Columbia          Official Court Reporter

ee8fcf03-c5f4-4671-8f10-cf6074d77a50

Page 35

1    I understand that it will take the agency some time to
2    do trade secret review and to process these documents for
3    discovery, but Mr. Moore is entitled to two things, it seems to
4    me.  First, he's entitled to good faith rolling discovery and
5    production of documents as soon as they may come available, and
6    not waiting until they're all available; and second, he's
7    entitled to take a 30(b)(6) deposition two weeks from now to
8    determine what has been gathered, how many documents, and what
9    the process is and how long it's going to take to complete their
10   discovery.

11   So I will require the Food and Drug Administration to
12   make available a 30(b)(6) witness, and it seems to me not
13   unreasonable to ask the FDA -- to direct the FDA to put a single
14   person in charge of this discovery so that that person can
15   respond to a 30(b)(6) deposition and provide detailed
16   information about the quantity of documents in each of these
17   categories that have been gathered within this 10-day period,
18   and testify about the process and the anticipated length of time
19   it will take to complete the trade secret review process for all
20   of these documents.

21   That's about as far as I'm willing to go.  I don't know
22   whether that turns out to be a grant of the motion to compel or
23   not.  It's a direction to the Food and Drug Administration,
24   which I expect they'll comply with.  Ms. Whitaker?

25   MS. WHITAKER:  Just two points.  If Your Honor would

United States District Court    202-354-3249   Rebecca Stonestreet, RPR, CRR
For the District of Columbia      Official Court Reporter
ee8fcf03-c5f4-4671-8f10-cf6074d77a50