UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, et al.,<br><br>Defendants. | No. 05-11853-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THOMAS A. MOORE'S MOTION FOR EQUITABLE RELIEF OR SANCTIONS AGAINST PLAINTIFF SECURITIES AND EXCHANGE COMMISSION**

At the scheduling conference held on March 16, 2006, the Court addressed difficulties that defendants had encountered in obtaining document discovery from the FDA. The Court admonished counsel for the SEC that the FDA must comply with proper discovery requests "*immediately* . . . not when the agency gets around to it," and the Court further instructed that the SEC should help defendants obtain discovery from the FDA because otherwise the SEC's case "*is going to suffer.*" See Mar. 16, 2006 Tr. at 7-9 (Ex. 1) (emphasis added). Mr. Moore served a proper *Touhy* request for documents and deposition testimony on the FDA, along with a subpoena *duces tecum*, on March 24. Exs. 2-3. Yet to date – over *eight months later* – the FDA still has *not* completed its document production to Mr. Moore, and recently admitted at a Rule 30(b)(6) deposition that it intends to take more than *six additional months* to complete its document collection and review. Joanne Binkley Tr. at 121 (Nov. 14, 2006) (Ex. 4).

Despite these egregious delays and the Court's admonitions, the SEC – apart from submitting an inter-agency document request to the FDA that omitted several categories of

documents sought by Mr. Moore (Ex. 5) – has done *nothing* to aid discovery. Mr. Moore now faces trial of this matter in six weeks, with no prospect of full discovery from the FDA. Seeking to capitalize on an unfair litigation advantage, yesterday the SEC sought authorization from the FDA to present trial testimony from *six FDA witnesses*, two of whom have never been deposed. *See* SEC Letter to Acting FDA Commissioner (Nov. 30, 2006) (Ex. 6).

Accordingly, Mr. Moore requests that the Court act upon its admonitions to the SEC, and grant relief to prevent prejudice to Mr. Moore from the Government's abject failure to cooperate in discovery. The Court has the inherent equitable power to do so, as part of the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 43 (U.S. 1991). *See also Barreto v. Citibank*, N.A., 907 F.2d 15, 16 (1st Cir. 1990) (noting the "well established principle" that "all orders governing the management of a case are enforceable" and recognizing that "[t]rial judges have considerable discretion" in choosing remedies for violation of orders).[1]

Mr. Moore requests two specific items of relief. *First*, it would be appropriate for the Court to instruct the jury that it may draw an "adverse inference" against the SEC at trial, to the effect that the documents not produced to Mr. Moore were either harmful to the SEC, helpful to Mr. Moore, or both. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (affirming "adverse inference" jury instruction as a discovery sanction). *Second*, the SEC should be precluded from presenting at trial the testimony of its six proposed FDA witnesses (Ex. 6). For four of those individuals – Dr. Toby Silverman, Dr. Abdu Alayash, Dr.

---

[1] The Court also has the power to sanction the SEC pursuant to Federal Rule of Civil Procedure 37(b)(2), because its actions were tantamount to failure to "obey a order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). *See also McGuire v. Acufex Microsurgical*, 175 F.R.D. 149, 153 (D. Mass. 1997) (recognizing wide discretion of courts in setting sanctions under Rule 37(b)(2)).

Laurence Landow, and Mr. Franklin Stephenson – Mr. Moore was forced to depose them on the eve of the discovery deadline without adequate document discovery. *See, e.g., Morris Graphics, Inc v. Casey Printing, Inc.*, 1999 U.S. Dist. LEXIS 11356 (D.R.I. 1999) (excluding witness on ground that defendant failed to obey court's order to respond more fully to interrogatories). The remaining witnesses – Dr. Robert Yetter and Dr. Basil Golding – were not made available for testimony during discovery, nor did the SEC take their administrative testimony.

## BACKGROUND

### A.    Mr. Moore's Discovery Requests to the FDA.

The FDA has been on notice of Mr. Moore's need for the discovery at issue since the defendants jointly filed a *Touhy* request on January 12, 2006. During the March 16, 2006 scheduling conference, at the which the Court adjourned the May 2006 trial date, the Court admonished the SEC that, upon the submission of a new *Touhy* request, the FDA should comply "*immediately* . . . not when the agency gets around to it," or face a possible contempt citation. Mar. 16, 2006 Tr. at 7, 9-10. By agreement of all present, the Court set a deadline of July 1 – 106 days later – for *all* document production, and specifically stated that it intended for this deadline to apply to the FDA. *Id.* at 18. The Court also instructed SEC counsel to help defendants obtain discovery from the FDA, because otherwise the SEC's case "is going to suffer." *Id.* at 9. Finally, the Court set a deadline of October 31 for the close of all discovery, and set the trial date for January 16, 2007. *Id.* at 18, 24.

Acting promptly, on March 24, Mr. Moore submitted a very limited and proper *Touhy* request seeking, as did his subpoena of the same date, nine narrow categories of FDA documents, including drafts of several individual documents. *See* Exs. 2-3. Mr. Moore's *Touhy* request dramatically scaled back the scope of defendants' earlier joint request, was carefully

targeted to obtain only highly relevant information, and imposed no undue burden on the FDA. Tellingly, the FDA has *not* objected to any aspect of Mr. Moore's *Touhy* request.

As a nod to the Court's directive that it assist Mr. Moore, on April 21 the SEC submitted an inter-agency document request to the FDA on his behalf. Ex. 5. Critically, however, the SEC request *omitted* two categories of documents that Mr. Moore sought – namely, documents relating to: (1) communications between the FDA and the SEC about the defendants; and (2) inter-agency cooperation in enforcement matters. *Compare* Exs. 2, 3 *with* Ex. 5. These materials are highly relevant in view of the FDA's role as the *instigator* of this lawsuit, insofar as it referred its concerns about the accuracy of a Biopure press release to the SEC on August 8, 2003 pursuant to an inter-agency enforcement agreement. The SEC claimed that all responsive inter-agency correspondence had been produced by the SEC. This claim turned out to be false. For example, several documents later produced by the FDA were FDA email messages pertaining to Dr. Laurence Landow's review for accuracy of certain Biopure SEC filings in March 2003, *at the SEC's request*. Critically, the FDA reported to the SEC that those earlier statements by Biopure about the FDA process *were accurate*. The SEC had not produced these FDA documents.

### B.     The FDA's Initial, Deficient Response.

The FDA responded to the SEC's inter-agency request on Wednesday, June 28, 2006 – nearly the last possible day under the schedule set by this Court. *See* FDA Transmittal Letter (Ex. 7). Of course, the FDA's production omitted the communications between the FDA and the SEC that Mr. Moore sought but the SEC did not request. The FDA also failed to produce substantive documents bearing upon the evaluation of Hemopure, including many attachments to produced e-mail communications, even though these documents were plainly responsive to

several categories of the *Touhy* request (and to Mr. Moore's subpoena). Although the SEC received copies of the FDA document production, it apparently did not act to rectify the FDA's erroneous failure to produce, for example, facially responsive attachments to e-mails.

In the meantime, the D.C. Circuit decided the case of *Yousuf v. Samantar*, 2006 U.S. App. LEXIS 14750 (D.C. Cir. June 16, 2006), and held that federal agencies are susceptible to subpoenas issued pursuant to Fed. R. Civ. P. 45 even if they are not parties to the underlying litigation. *Id.* at *23-27. Accordingly, on July 11, counsel for Mr. Moore wrote to the FDA, advising it of the *Yousuf* decision, and requesting prompt and full compliance with his subpoenas of March 24, 2006 – including the two categories of documents that the SEC had omitted from its request. Ex. 8. On July 28, counsel for Mr. Moore notified the FDA in writing of the many shortcomings of its document production. Ex. 9. The SEC received this correspondence, but took no steps to assist Mr. Moore in his attempts to obtain the documents.

During several discussions between counsel for Mr. Moore and counsel for the FDA, it became clear that the FDA would not commit to any timetable for producing the remaining documents at issue. In view of the impending discovery deadline and trial date in this case, Mr. Moore filed an emergency motion to compel in the U.S. District Court for the District of Columbia. Ex. 10; *see also* Docket Nos. 109-111, 119 (Notices of Filing in this Court). The SEC received service of this filing, but stood silently by as the FDA stalled away the time remaining in discovery. In response to Mr. Moore's motion to compel, the FDA sought and obtained two *seriatim* extensions of time, until October 3, ostensibly to complete its document production and moot the motion to compel. After producing some additional documents, the FDA asserted on October 3 that it had "adequately addressed" the motion to compel. *See* FDA

5

Opp. to Mot. to Compel (Oct. 3, 2006) (Ex. 11). Mr. Moore then requested a Rule 30(b)(6) deposition of the FDA.

### C. The FDA's Admission of its Discovery Failures and New Document Review.

On the basis of the FDA's professed completion of its document production, Mr. Moore proceeded to take the depositions of FDA staffers who were intimately involved in the matters underlying this case, all of whom are key trial witnesses for the SEC: Dr. Alayash, Dr. Landow, Mr. Stephenson, and Dr. Silverman. Although these witnesses had received valid subpoenas, the FDA took the position that they would appear only because the FDA allowed them to appear. Over the weekend before Mr. Stephenson's deposition, FDA counsel advised SEC counsel – who told counsel for Mr. Moore – that the FDA had found additional documents that were responsive to Mr. Moore's requests, and was about to engage in a brand-new document review. At Mr. Stephenson's deposition, Assistant U.S. Attorney Claire Whitaker admitted the FDA's failure to search certain databases and email records of documents that were responsive to Mr. Moore's document requests. *See* Stephenson Tr. at 11-12 (Oct. 23, 2006) (Ex. 12). The very next day, during the last of the four depositions (of Dr. Silverman), Ms. Whitaker acknowledged new email searches that the FDA needed to conduct in response to the discovery requests. *See* Silverman Tr. at 12-14 (Oct. 24, 2006) (Ex. 13). During Dr. Silverman's deposition, a number of critical documents were produced – including minutes of an important FDA meeting, and an internal FDA record of a key telephone conversation with Biopure that was revised eight months after the call occurred – but too late for Mr. Moore to question the three prior witnesses.[2]

---

[2] Consistent with the SEC's repeated attempts to delay the January 16, 2007 trial date, the FDA repeatedly urged Mr. Moore to delay the depositions until some unspecified later time when its document production would be complete. Facing the Court's October 31 discovery deadline, Mr. Moore declined.

As a result of the FDA's failure to complete its document production, contrary to its prior assurances, Mr. Moore sought (and obtained) an emergency hearing in the D.C. district court where his motion to compel was pending. *See* Emergency Request for Hearing on Motion to Compel (Oct. 23, 2006) (Ex. 14). Mr. Moore gave the FDA an opportunity to obviate the hearing if it would provide assurances of a completed document production by October 30 (the date of the hearing). *See* Letter to C. Whitaker of Oct. 26, 2006 (Ex. 15). Although the SEC received this letter, it again stood silent. In fact, the FDA rejected Mr. Moore's request.

Further, in advance of the hearing, Mr. Moore provided the FDA with a proposed stipulation to narrow significantly the documents at issue to four precise categories of materials, subject to production in a reasonable timeframe. *See* Ex. 16 (proposed stipulation). The FDA refused to agree to any date certain for its further document production, however, and accordingly did not accept the stipulation. At the hearing, the Court required the FDA: (1) to complete its new document collection efforts, for essentially the materials set forth in the proposed stipulation, within two weeks (*e.g.*, by November 13); (2) to commence its document review and production process immediately thereafter; and (3) to produce a Rule 30(b)(6) witness to testify about these new discovery efforts. *See* Tr. of Oct. 30, 2006 Hearing at 34-35 (Ex. 17). SEC counsel appeared at the hearing but did not support Mr. Moore's motion. The day after the hearing, the formal discovery period in this case closed.

### D.  The Rule 30(b)(6) Deposition of the FDA.

On November 14, counsel for Mr. Moore took the Rule 30(b)(6) deposition of FDA witness Joanne Binkley, the Director of the Division of Disclosure and Oversight Management in the Center for Biologics Evaluation and Research. *See* Binkley Tr. 8-17 (Ex. 4). Ms. Binkley is overseeing the FDA's new search for documents. *Id.* at 39. During this deposition, it became

7

plain that the FDA's initial document review efforts were grossly deficient, and will require significant time to correct. Ms. Binkley testified that since the hearing on October 30 – despite the very limited universe of documents still at issue – the FDA had somehow collected *113,000 pages* of potentially responsive documents from several sources not previously searched, and would take *over six months* of full-time review by a staff of 14 people. *Id.* at 59, 70-71, 121. Ms. Binkley also stated, however, that the FDA will not devote such resources to this matter, and its document review will require far more time. *Id.* at 70-73, 121-22. Counsel for the SEC attended Ms. Binkley's deposition, and did not encourage more expeditious compliance.

To date, since the October 30 hearing, the FDA has produced 169 pages of new, responsive documents to the SEC, some of which Mr. Moore has yet to receive.[3] We are aware of no efforts by the SEC to assist Mr. Moore with the FDA's current document review and production process. On November 30, the SEC requested FDA authorization for six FDA witnesses – including Mr. Stephenson and Drs. Silverman, Landow, and Alayash – to testify at trial. Ex. 6. At this point, six weeks before trial and Mr. Moore having expended hundreds of hours seeking FDA compliance, with numerous motions and court hearings on the issue, it is simply too late to continue our months-long effort to force compliance from the FDA.

## ARGUMENT

I. **EQUITABLE RELIEF ON BEHALF OF MR. MOORE IS WARRANTED BY THE GOVERNMENT'S FAILURE TO COOPERATE IN DISCOVERY.**

A. **The Court Has Broad Discretion To Grant Equitable Relief.**

During the March 16 scheduling conference, the Court made plain that the FDA was expected to provide "immediate" compliance with defendants' discovery requests, and that the

---

[3] Given Biopure's concerns over the dissemination of trade secret materials, all FDA documents are provided to the SEC, and Biopure inspects and review them before their production to Mr. Moore.

8

SEC was to assist defendants in obtaining discovery from the FDA; otherwise, the SEC's case "is going to suffer." Mar. 16, 2006 Tr. at 7, 9. As the Court implicitly recognized, it possesses the inherent power to grant equitable relief (or sanctions) as part of "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43. *Accord Barreto*, 907 F.2d at 16 (1st Cir. 1990) (noting the "well established principle" that "all orders governing the management of a case are enforceable" and affirming *dismissal* of action where plaintiff failed to comply with discovery and scheduling orders); *Simon v. Navon*, 71 F.3d 9, 17 (1st Cir. 1995) ("Federal courts have inherent power to sanction parties and attorneys for abuse of the litigation process.").[4] The Court has discretion to grant Mr. Moore the equitable relief it deems appropriate.

### B. Equitable Relief Is Warranted Under the Circumstances.

Unlike Mr. Moore, the SEC has had the benefit of full *ex parte* discovery from the FDA during the investigative phase of this case, deposing witnesses and obtaining documents through inter-agency requests. Even before filing its Complaint, the SEC had already obtained all of the discovery from the FDA that it considered necessary to present its own case to the jury. As the Court is also aware, the FDA is hardly a bystander in this case. Its actions are at the core of the SEC's allegations, and the agency itself instigated this action on August 8, 2003, pursuant to an inter-agency enforcement agreement. In other words, the SEC and the FDA have been working together against Mr. Moore for over three years. Now, absent sanctions, the SEC will gain from the impediments that Mr. Moore has faced in obtaining discovery from the FDA.

---

[4]  Relatedly, the Court also recognized that the SEC's failure to assist Mr. Moore in his discovery against the FDA was tantamount to a failure to "obey an order to provide or permit discovery," equally warranting sanctions under Fed. R. Civ. P. 37(b)(2). Given the fact-specific nature of sanctions, this Rule provides courts with discretion to "make such orders in regard to the failure [to comply] as are just." *Id.* See also *McGuire*, 175 F.R.D. at 153 (recognizing discretion of courts under Rule 37(b)(2)).

Mr. Moore's defense has suffered from the FDA's inexcusable delays. For example, on August 30, Mr. Moore deposed a testifying expert of the SEC – Dr. Edward Snyder – whose expert opinions turned on his interpretation of certain communications to Biopure from the FDA. Yet Mr. Moore did not timely (nor does he today) have all of the internal FDA documents that may have aided him in this deposition. Likewise, on October 17, 19, 23, and 24, Mr. Moore deposed four FDA staffers – all of whom, in addition to two others, the SEC intends to offer at trial – whose testimony turned (and will turn at trial) exclusively on internal FDA documents. Again, Mr. Moore lacked full document production from the FDA upon conducting these depositions. Recognizing the unfairness of this situation, on October 23, FDA counsel offered to adjourn and re-convene the depositions "if indeed something is discovered . . . that needs to be further explored." Stephenson Tr. at 12-13. Of course, given the imminent October 31 discovery deadline, the January 16, 2007 trial date in this case, and the FDA's expectation that it will take until mid-year or longer to complete its document review, this offer was not serious.[5]

Mr. Moore cannot readily resolve this problem by simply seeking a delay of the trial date to accommodate the FDA (and the SEC), given the serious reputational harms that he suffers from the mere pendency of this lawsuit. Unlike the SEC, Mr. Moore is caught between the proverbial "rock" and "a hard place." Accordingly, it is appropriate to grant Mr. Moore equitable relief, to mitigate the disadvantage that the SEC failed to help prevent.

Two particular forms of relief are most fitting. *First*, Mr. Moore is entitled to an instruction that the jury may draw an "adverse inference" against the SEC that the documents not produced to Mr. Moore were harmful to the SEC, helpful to Mr. Moore, or both. *See Residential Funding Corp.*, 306 F.3d at 107 (affirming district court's imposition of adverse jury instruction

---

[5] Of course, we do not know whether the SEC had previously communicated its desire for

as sanction under Rule 37(b)(2)). Because Mr. Moore's defense has been undeniably prejudiced by the FDA's incredible discovery delays and the SEC's apparent acquiescence therein, both of which were contrary to court order, an adverse inference will help to "hold the scales of justice even" and ensure a fairer trial. Wright & Miller, *Federal Practice and Procedure* § 2284 (2006 ed.). The SEC has long since obtained all of the discovery it sought from the FDA, and should not permitted to capitalize on its failure to heed the Court's admonitions on Mr. Moore's behalf.

*Second*, the SEC should be precluded from calling any of its six intended FDA witnesses to testify at trial. As noted above, the FDA's own counsel recognized the unfairness of this situation, and thus offered to re-convene the depositions upon Mr. Moore's receipt and review of additional documents. *See* Stephenson Tr. at 12-13. Such supplemental depositions are not feasible, however, given the FDA's protracted timeframe for completing its document review and production. Moreover, it would be profoundly unjust for the SEC to offer live testimony from FDA witnesses at trial, given Mr. Moore's inability to cross-examine them on the basis of a complete FDA document production. In these circumstances, a bar on live testimony from FDA witnesses is warranted. *See Morris Graphics,* 1999 U.S. Dist. LEXIS 11356 (excluding witness under Rule 37(b)(2) on basis that, *inter alia*, defendant failed to obey court's order to respond more fully to plaintiff's interrogatories). *Accord Herrera v. Deutscher*, 1996 U.S. App. LEXIS 4839 (7th Cir. 1996) (affirming court's exercise of discretion to exclude witness); *United States v. 68.94 Acres of Land,* 918 F.2d 389, 397 (3d Cir. 1990) (same).

---

postponement of the trial to the FDA.

11

## CONCLUSION

For the foregoing reasons, Mr. Moore should be awarded equitable relief in the form of: (1) an instruction at trial that the jury may draw an "adverse inference" against the SEC; and (2) preclusion of live testimony from FDA witnesses on behalf of the SEC at trial.

                        Respectfully submitted,

                        /s/ Jason A. Levine
                        Edward P. Leibensperger (BBO # 292620)
                        McDermott Will & Emery LLP
                        28 State Street
                        Boston, MA  02109-1775
                        Tel.: (617) 535-4000

                        Bobby R. Burchfield (admitted pro hac vice)
                        Jason A. Levine (admitted pro hac vice)
                        McDermott Will & Emery LLP
                        600 Thirteenth Street, NW
                        Washington, D.C.  20005-3096
                        Tel.: (202) 756-8000

Date:   December 1, 2006              *Counsel for Defendant Thomas A. Moore*