UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          :
SECURITIES AND EXCHANGE COMMISSION, :
                                          :
                        Plaintiff,        :        Civ. A. No. 05-11853-PBS
                                          :
            v.                            :
                                          :
HOWARD RICHMAN                            :
                                          :
                        Defendant.        :
_____:

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
PRETRIAL MEMORANDUM**

Pursuant to Fed. R. Civ. P. 16 and Local Rule 16.5(D), the Securities and Exchange

Commission ("Commission") hereby respectfully submits this Pretrial Memorandum. The

Commission further states that the parties have agreed to submit separate pretrial memoranda.

**I.    Summary of Evidence to Be Offered by the Plaintiff**

Plaintiff Securities and Exchange Commission ("Commission") will produce evidence at

trial to demonstrate that defendant Howard Richman, vice president of regulatory affairs of

Biopure Corporation ("Biopure"), engaged in a fraudulent scheme to misrepresent and conceal

from investors the truth about Biopure's applications for FDA approval to test and market a

blood-substitute product called Hemopure. The evidence that the Commission will produce can

be summarized as follows:

*Biopure Corporation*

Biopure is a Cambridge, Massachusetts-based biotechnology company. Since it was

founded in 1984, Biopure has devoted substantially all of its resources to the research and

development of Hemopure (HBOC-201). Hemopure is a biologic compound, derived from the

blood of cows, that is intended as a substitute for red blood cells in humans.  To date, Biopure

has not obtained FDA approval to market Hemopure for any use in humans.

*The Defendant*

Richman was Biopure's Senior Vice President of Regulatory Affairs and Operations from

February 2003 until October 2003.  He previously served as Biopure's Vice President of

Regulatory Affairs and Compliance from November 2001 through the spring of 2003.  In those

roles, defendant Richman was the executive at Biopure who was responsible for all FDA

regulatory affairs, including all interactions and communications with the FDA.  In addition,

Richman was responsible for reviewing portions of company SEC filings and press releases that

related to FDA regulatory matters for accuracy and completeness, and he participated in

conference calls with investors and equity analysts.

*The Food and Drug Administration*

The FDA, an agency within the U.S. Department of Health and Human Services, is

responsible for promoting the public health by promptly and efficiently reviewing clinical

research and taking appropriate action on the marketing of regulated products.  The Center for

Biologics Evaluation and Research ("CBER") is a center within the FDA that regulates biologics,

such as Hemopure, for human use.  Biologics, which are also called biologic products or

biological products, are products that generally are derived from living sources, in contrast to

drugs, which generally are chemically synthesized.

*The FDA Process for Approval of Biologics*

All companies that manufacture biologics for introduction into interstate commerce are

required to hold a license for the products.  These licenses are issued by CBER.  Licensing of

2

biologic products is very similar to the new drug approval process for human drugs. First, the biologic is studied in initial laboratory and animal testing, also called pre-clinical testing. After pre-clinical testing, a sponsor may submit a protocol to the FDA to conduct clinical trials in humans under an investigational new drug application ("IND"). Within 30 days from receipt of a protocol to conduct clinical trials, the FDA may place the trial on clinical hold. A clinical hold bars a sponsor from conducting trials under the protocol until the FDA lifts the clinical hold. Once the FDA permits clinical trials to go forwards, the trials are generally conducted in three phases. If the data generated by all of the clinical trials demonstrate that the product is safe and effective for its intended use, the data are submitted to CBER as part of a biologics license application ("BLA") for review and approval for marketing.

*The Timing of the FDA's BLA Review Process*

The timing of the FDA's review of BLAs is governed by performance goals under the Prescription Drug User Fee Act of 1992 ("PDUFA"). Under PDUFA goals, the FDA reviews BLAs within 10 months of receipt. If the FDA receives a "major amendment" to a BLA within the last 3 months of the review period, the FDA may grant itself a 3 month extension of time within which to complete its review.

When the FDA completes its review of a BLA, it sends an "action letter" to the company that submitted the BLA. There are only two types of action letters: (1) Complete Response Letters and (2) Approval Letters. Complete Response Letters are issued when the complete review indicates that there are deficiencies remaining that preclude the approval of the application or supplement at that time. An Approval Letter is issued following completion of all aspects of the review process, including testing of submitted product lots, pre-licensing

inspection and evaluation of final printed labeling or a suitable alternative and constitutes the final action.

Upon receiving a Complete Response Letter, a sponsor may make a resubmission to the FDA. There are only two types of resubmissions: (1) Class 1 Resubmissions and (2) Class 2 Resubmissions. The FDA reviews Class 1 Resubmissions, which relate to relatively minor, clarifying items, in two months after receipt. All other resubmissions are Class 2 Resubmissions. The FDA reviews Class 2 Resubmissions in six months after receipt.

*Biopure's BLA Submission to the FDA*

On July 31, 2002, Biopure publicly announced that it had submitted a BLA for FDA approval to market Hemopure ("HBOC-201") in the United States for the treatment of acute anemia in adult patients undergoing orthopedic surgery and for the purpose of eliminating, delaying or reducing the need for red blood cells in these patients. This was the first BLA submitted by Biopure for any use of Hemopure. In support of its BLA, Biopure submitted data and analysis to the FDA from the clinical trials of Hemopure, including "HEM-0115," the pivotal phase III trial to evaluate safety and efficacy of Hemopure as compared to red blood cells when administered therapeutically and perioperatively in certain orthopedic surgery patients.

*The FDA Begins Expressing Concerns to Biopure*

The FDA began expressing concerns to Richman about Biopure's BLA approximately one-and-a-half months after it was submitted. In September 2002, based on its initial review of the BLA, FDA began expressing concerns about the integrity and reliability of Biopure's clinical data. In addition, because of irregularities in data and trial administration, the FDA questioned the validity of an important review performed by the Safety Endpoint Evaluation Committee

4

("SEEC"), an independent committee that was supposed to have reviewed all adverse events experienced by patients in Biopure's pivotal phase III trial (HEM-0115).

*Biopure Discloses Its Trauma Program to Investors,*
*Submits a Trauma IND and the FDA Imposes a Clinical Hold*

In late 2002 and early 2003, Biopure began making public statements about expanding the potential indications of Hemopure to include a use on victims of trauma. On December 12, 2002, February 13, 2003, and March 5, 2003, Biopure issued press releases about the company's intention to begin clinical trials of Hemopure on trauma patients. For example, the March 2003 press release stated, among other things:

> The Company is currently preparing to submit a Phase II study protocol to the FDA for a randomized, standard-therapy controlled trauma trial of Hemopure in hospital emergency rooms . . . . Trauma trials of Hemopure are expected to begin this year, initially at Parkland Hospital in Dallas, Texas, with the lead investigators Drs. Paul Pepe and Joseph Minei.

On March 7, 2003, seven-and-a-half months into the FDA's review of the BLA, Richman submitted to the FDA a protocol for Biopure to conduct an in-hospital phase II clinical trial of Hemopure on trauma subjects at Parkland Hospital ("Trauma IND"). In support of the Trauma IND, Richman referred the FDA to Biopure's prior clinical experience with Hemopure, which also formed the basis of its BLA.

One month later, on April 9, 2003, the FDA informed Richman that it was imposing a clinical hold on the Trauma IND. In a telephone call, two FDA reviewers told Richman that the clinical hold was imposed because of "safety concerns" asiring from data from Biopure's pivotal clinical trial of Hemopure and from "a preliminary assessment of [the] BLA." The clinical hold was confirmed by the FDA in a letter, in which the FDA stated that patients who received

Hemopure were "associated with a higher incidence of life-threatening SAEs [serious adverse events]" than patients in the control group.  In May 2003, despite Biopure's attempts to persuade the FDA to lift its clinical hold, the FDA reiterated its position that the clinical hold remained in place because of safety concerns arising out of the BLA data and told Richman that Biopure would be required to conduct additional *pre-clinical* animal studies.

*Biopure Begins Raising Money from Investors Without Disclosing the Clinical Hold*

In mid-April 2003, after learning of the clinical hold, Biopure filed with the Commission a Post-Effective Amendment No. 1 to a Form S-3 Registration Statement that had been filed in March 2003 and Rule 424(b)(3) prospectus supplements ("April Offering Documents") for the sale of common stock and warrants for the purchase of common stock.

In the April Offering Documents, Biopure did not disclose that the FDA had already identified safety concerns about Hemopure, including increased incidences of serious adverse events suffered by patients.  Moreover, in disclosures about the FDA regulatory process, Biopure affirmatively stated its intention to expand Hemopure's uses, including a trauma use, but did not disclose that it had already designed a trauma trial that the FDA had placed on clinical hold because of safety concerns.

*-Despite the FDA's Serious Concerns Relating to its Pending BLA,*
*Biopure Continues to Raise Money From Investors Without Disclosing the Truth*

In a letter to Richman dated April 25, 2003, the FDA confirmed the clinical hold in writing, stating that the Trauma IND was "on clinical hold because subjects would be exposed to an unreasonable and significant risk of injury."  The FDA expressly stated that its safety assessment was based on its review of Biopure's BLA, including the pivotal trial (HEM-0115).

Specifically, the FDA stated that patients who received Hemopure in Biopure's clinical trials experienced "higher incidence of life-threatening [serious adverse events]" than patients in the control group. The FDA noted more deaths, cardiac arrests, congestive heart failure/pulmonary edemas, and other serious adverse events in patients who received Hemopure as compared to the control group. The FDA further stated that "systemic hypertension, which is believed to result in increased blood loss during uncontrolled hemorrhage, e.g., trauma, was observed much more frequently in [Hemopure] subjects than control." Finally, the FDA stated that its "safety concerns are supported by the results of the independent, blinded Data Monitoring Board, which found between-group differences in the incidence of [serious adverse events] that were highly statistically significant against [Hemopure]."

Despite its awareness of the FDA's safety concerns, Biopure continued to raise money without making a full disclosure to investors. On May 6, 2003, Biopure filed two supplements to the April Offering Documents, providing for the sale of shares of common stock and warrants to purchase shares of common stock. The May prospectus supplements incorporated by reference certain of Biopure prior public filings, including the April Offering Documents. The company did not disclose the clinical hold or the FDA concerns about the safety of Hemopure.

*Biopure Unsuccessfully Petitions the FDA to Lift the Clinical Hold and*
*Continues to Raise Money from Investors Without Disclosing*
*the Clinical Hold or the FDA's Serious Concerns Relating to its Pending BLA*

On May 12, 2003, Richman submitted two letters to the FDA. The first letter was a 42-page response to the FDA's April 25, 2003 clinical hold letter. The second May 12, 2003 letter submitted the identical response in support of Biopure's BLA.

On May 22, 2003, Biopure issued a quarterly earnings release ("May 22 Press Release").

The May 22 Press Release contained a section entitled, "Recent Corporate Events." Among the "Recent Corporate Events" a statement referring to clinical trials for a trauma indication: "Biopure is preparing for a Phase 2a in-hospital trauma trial." Nowhere did Biopure disclose that the Phase 2a in-hospital trauma trial was on hold because of the FDA's safety concerns – including an increased number of serious adverse events (including deaths) in patients who received Hemopure in the pivotal trial as compared to the control group.

That same day, May 22, 2003, Richman participated in an investor conference call along with Biopure's then-CEO regarding the earnings release for the second quarter ("May 22 Investor Call"). During the May 22 Investor Call, despite awareness of the FDA's safety concerns, the Biopure executives told investors that "we continue to not be aware of any major issues with [the BLA] at this time." They even told investors that the company aimed to be "moving product no later than October 1st." In addition, despite awareness of the clinical hold, the Biopure executives continued to discuss the "already announced in-hospital trauma trials" at Parkland Hospital.

### *Biopure's Submission Fails to Persuade the FDA to Lift the Clinical Hold*

In two letters to Richman dated May 30, 2003, the FDA responded to Richman's two May 12, 2003 submissions. In one letter, the FDA stated that the hold remained in place because "[o]ur conclusions about product safety remain unchanged." In a second letter dated May 30, 2003, the FDA informed Richman it was extending the deadline to complete its review of Biopure's BLA for 90 days because Richman's May 12, 2003 submission seeking to lift the clinical hold contained significant new analysis of the BLA data.

*Richman Makes False Statements About Reasons for the 90-day Extension and*
<u>*Misleadingly Characterizes the Extension as Positive News for the Company*</u>

On May 30, 2003, after receiving both May 30 letters from the FDA, Biopure issued a press release ("May 30 Press Release") and held a conference call with investors and analysts ("May 30 Investor Call"). The May 30 Press Release falsely stated that Biopure had made a submission to the FDA "[a]s part of the normal review process" of the BLA, which allowed the FDA to extend the BLA review deadline by up to three months.

Later that same day, Richman participated in the May 30 Investor Call along with Biopure's then-CEO. During the May 30 Investor Call, the executives falsely told investors that the extension was "a very positive development for Hemopure." Despite being thoroughly questioned by several participants in the conference call about the reason for and nature for Biopure's submission, Richman continued to falsely insist that the submission was part of the "normal process" of the <u>BLA</u> review. Richman did not admit the truth: that the submission was made in an unsuccessful attempt to lift a hold on clinical trials, which was imposed because of safety concerns arising out of the BLA data. The executives also continued to tell investors that the company was planning to begin selling Hemopure in the United States in October 2003.

*Biopure Continues to Conceal the Clinical Hold from Investors*
<u>*in Periodic Reports and Offering Documents Filed with the Commission*</u>

In June and July 2003, Biopure made several additional filings with the Commission, including a quarterly report and several offering documents for the sale of almost $20 million of common stock. In these filings, Biopure continued to mislead investors by stating that the orthopedic surgery indication was the "only" indication sought by Biopure to date. Nowhere in connection with these filings did Biopure disclose the clinical hold or the safety concerns raised

9

by the FDA.

*Richman Receives Two Letters from the FDA*
<u>*Detailing the Defects of the BLA and Trauma IND*</u>

On July 30, 2003, the FDA sent two letters to Richman.  One letter was a Complete Response Letter to Biopure's BLA ("Complete Response Letter"), which stated that the BLA had not been approved.  The second July 30, 2003 letter informed Richman that Biopure's Trauma IND remained on clinical hold because human subjects would be exposed to an unreasonable and significant risk of illness or injury ("Clinical Hold Letter").

The Complete Response Letter and the Clinical Hold Letter together conveyed the FDA's significant concerns regarding the data Biopure had submitted to the FDA for review and the safety of Hemopure.  When one of Biopure's outside directors learned -- several months after the fact -- that the FDA had sent <u>two</u> letters to Biopure on July 30, 2003, he said that it was as if the FDA was "throwing the book at" Biopure.  Indeed, the 49 pages that comprised the two letters amounted to a small book's worth of detailed deficiencies in Biopure's BLA and Trauma IND:

- The FDA noted significant deficiencies in the *conduct* of prior trials and questioned whether Biopure's trials "constitute[d] an adequate bases upon which to make a determination of safety or efficacy"of Hemopure.

- The FDA expressed concern that several clinical trial sites "had patterns of <u>protocol violations that continued unabated</u> despite repeated monitoring visits that disclosed the on-going problems."

- The FDA questioned "how Biopure can ensure that the safety and efficacy endpoints were met in light of the many protocol deficiencies . . . ."

- The FDA was concerned that the independent SEEC did not evaluate the correct database, that data was not gathered in a manner compliant with Good Clinical Practice, and that Biopure "did not perform the secondary safety analyses as expected and in the manner recommended by the FDA."

10

- The FDA noted that dosing recommendations were "not supported by clinical data" from the two phase III trials, and that, "[g]iven the information from the clinical trial, it is not possible to write adequate and safe dosing guidelines . . . ."

- The FDA also noted that "dosing guidelines" would require "confirmation in an adequately sized and adequately powered phase 3 clinical trial" and "support for dosing" would require "sufficient phase 2 data" to establish safety and efficacy.

- The FDA stated that information about Biopure's pre-clinical studies were "not sufficient to assess the adequacy of the studies to support use of the product at any dose" in the proposed trauma trial or to substitute for additional pre-clinical animal studies.

- In seeking additional information, the FDA asked Biopure to provide data about "patients treated for one year prior to initiation of the study," which would almost necessarily require a new trial that involved collecting data for a year prior to treatment with Hemopure.

- The FDA stated that Biopure's "contention that preclinical [animal] studies suggest that Hemopure transports oxygen more effectively than red blood cells is not supported by the preclinical [animal] studies . . . ."

- The FDA further stated that "a conscious animal" study "would have been useful" and requested "evidence from a conscious large animal model" about tissue oxygenation.

- The FDA also rejected Biopure's after-the-fact explanation for the increased number of serious adverse events experienced by Hemopure patients as being untested: "Selecting this particular subgroup to analyze *post hoc* can be used to generate hypotheses to test in future studies but it cannot be used to 'mitigate' outcome differences in the aggregate study population. . . ."

Because of the number, seriousness and extent of the deficiencies identified by the FDA, the FDA's communications were not good news for Biopure. The Commission's expert witness, head of the blood bank at Yale, has opined that responding completely and satisfactorily to the two letters would require that Biopure "undertake extensive and even Herculean efforts" including new pre-clinical trials and, potentially, new clinical trials.

11

_The FDA Tells Richman that the Letter was a Complete Response Letter_

At the time the FDA issued the Complete Response Letter, Richman had conversations about the letter with the FDA project manager, Franklin Stephenson.  In these conversations, Mr. Stephenson plainly told Richman that the letter was a Complete Response Letter for the BLA. Stephenson further told Richman that the FDA had completed its review of the BLA, that the FDA would only review a Biopure response addressing _all_ of the FDA's concerns, and that the FDA would have six months to complete its review.

_Biopure Issues a Press Release and Makes Misleading Statements to the Public_

Aware of their obligation to make a disclosure to investors, Biopure executives, including Richman, began working on public statements regarding the July 30 letters.  This work resulted in Biopure's issuance of a press release on August 1, 2003, and in the creation of "talking points" to be used by Biopure's spokesman in discussions with analysts and reporters.  Biopure's August 1 press release misleadingly failed to state the that company had received a Complete Response Letter; misleadingly failed to disclose that the company received two letters - one of which kept the clinical hold in place; misleadingly minimized the FDA's concerns by stating that the letter "focuses primarily on clarification of clinical and preclinical data and includes some comments on labeling"; and falsely stated that the FDA was "maintaining thirty days on the review clock" when Richman knew that any resubmission would trigger a new 6-month review clock.  In addition, Richman prepared statements for Biopure's spokesman to provide to the media in conversations about the press release.  These statements falsely stated that Biopure would respond to the FDA's letter in one to two months even though Richman knew they would not be able to; falsely stated that the FDA would review Biopure's resubmission in 30 days even though

Richman knew that the FDA would have six months to review a resubmission; and falsely stated that all of the FDA's questions were "answerable" even though Richman could not have known whether they were.

Biopure's Press Release received attention in the media, and the reporters published the false statements prepared by Richman. For example, one analyst reported that, "The letter is focused on clarification of clinical and preclinical data and does not request additional clinical trials, a strong positive in our opinion. Most encouragingly, 12 to 15 questions were focused on labeling. We expect it will take Biopure approximately two months to answer the FDA questions. Once the FDA received the answers, it has 30 days to make its decision. We believe this news is very positive for Biopure and brings them one step closer to approval." The Dow Jones Business News published an article quoting Biopure's spokesman as saying that, "all the questions are 'answerable,'" that "it will likely take Biopure about 1 to 2 months to provide the FDA," and that "the drug could be on the market around next spring." The Boston Globe published an article quoting Biopure's spokesman as saying, "we're this close to potential approval." When asked about the financing to build a plant to manufacture Hemopure, the spokesman replied that "we wouldn't be surprised if the deal [to finance the plant] closed after a formal approval by the FDA."

On July 31, 2003, Biopure's stock price closed at $5.97 per share. On August 1, 2003, Biopure's stock price closed at $7.30 per share. On August 2, 2003, Biopure's stock price closed at $7.46 per share, a 25% increase from July 31st. Between August 5 and August 11, 2003, Biopure also sold approximately $2.1 million of company stock.

13

*Richman Misleads Investors about Whether it Received a "Complete Response Letter"*

On August 15, 2003, Richman called the FDA to confirm that the July 30, 2003 letter was, in fact, a Complete Response Letter.  Nonetheless, Richman continued to conceal the true nature of the letter from investors.  On August 21, 2003, Richman participated in an investor conference call along with Biopure's then CEO.  This was the first conference call held by the company after issuing the August 1 Press Release.  The first question asked during the conference call was whether the letter was a Complete Response Letter:  "You used the term complete response a couple of times. But, this isn't a complete response letter. What is it exactly?"  The Biopure executives did not acknowledge that the letter was a Complete Response Letter.  Instead, they falsely stated that it was a "hybrid" letter, which the FDA issued to "offer[] us this precious opportunity to get a response 30 days after we submit the answers to those questions."  They further falsely stated that the FDA had done a "big favor" for Biopure by sending a unique type of letter, and that the FDA made a "commitment" to review Biopure's response in 30 days.  These statements had no basis in fact and contradicted what the FDA told Richman directly.

Between August 22 and September 4, 2003, Biopure sold approximately $3.9 million of common stock.

On September 12, 2003, Biopure filed a prospectus ("September 12 Prospectus") with the Commission.  In the "Risk Factors" section, Biopure stated that the July 30 FDA letter was a complete response letter.  The following trading day, Biopure's stock price dropped by 6.5% on heavy trading.  That day, Biopure then filed an amended prospectus ("September 15 Prospectus") with the Commission.  The September 15 Prospectus omitted the reference to the July 30 letter as

14

a "complete response letter." When asked about the filings and "what news overnight affected the stock," Biopure's spokesman blamed the stock movement on "a junior lawyer at a law firm we use" who "mistakenly included some copy in the 424B3 SEC filing on Friday saying that we had received a 'complete response letter' from the FDA." According to the spokesman, "I suspect, but cannot know for sure, that the stock price volume/decline at the opening on Monday morning was due to investors who had noticed the 'complete response letter' language on Friday."

Also on September 15, 2003, Biopure filed with the Commission a Form 10-Q quarterly report for the quarter ended July 31, 2003 ("September 15 Form 10-Q"). In the September 15 Form 10-Q, Biopure did not state that the July 30 letter Richman had received from the FDA was a complete response letter. In addition, the September 15 Form 10-Q failed to disclose, among other things, that the FDA had barred Biopure from conducting clinical trials of Hemopure on trauma victims for safety reasons, and it misled investors by disclosing development plans for the trauma indication without disclosing that Biopure had already sought permission to conduct trials for the trauma indication, designed additional clinical trials, submitted the trial designs to the FDA for review, and received a clinical hold from the FDA.

In September and October 2003, Biopure's then-CEO gave presentations to investors at various seminars organized by equity analysts and industry groups. Richman reviewed the regulatory content of these presentations. These presentations further mislead investors by continuing to conceal the truth of about the status of Biopure's FDA applications and failing to disclose the FDA's safety concerns about Hemopure.

On October 30, 2003, Biopure announced that defendant Richman would no longer serve

15

as vice president of regulatory affairs.  The truth about Biopure's FDA applications was not disclosed until December 2003.  In a December 11, 2003 Press Release, Biopure finally disclosed that the July 30 letter from the FDA was a complete response letter.  The December 11 Press Release, however, did not disclose the clinical hold on the trauma trials.  On Christmas Eve, December 24, 2003, after the close of the stock markets, Biopure issued a press release ("December 24 Press Release") and included the text of the release on a Form 8-K filed with the Commission ("December 24 Form 8-K").  In the December 24, 2003 Press Release, Biopure publicly revealed for the first time the trauma clinical hold imposed by the FDA more than eight months earlier.

## II.     Facts Established By Pleadings, Stipulations, or Admissions

The Commission states that the parties are in the process of discussing potential stipulations, which may reduce the number of potential witnesses, reduce the number of potential trial exhibits, and narrow the issues for trial.

## III.    Plaintiff's Contested Issues of Fact

The Plaintiff contends that the following issues of fact, *inter alia*, will be contested at trial:

1.     Whether Defendant Richman, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and ©) engaged in acts, transactions, practices, and courses of business which

16

operated or would operate as a fraud or deceit upon the purchasers of Biopure securities and upon other persons, in connection with the purchase or sale of Biopure securities. [Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.]

       2.      Whether Defendant Richman, directly or indirectly, in the offer or sale of Biopure securities, by the use of means or instruments of transportation or communication in interstate commerce, or by the use of the mails, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or ©) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities. [Section 17(a) of the Securities Act of 1933 ("Securities Act").]

       3.      (a)      Whether Biopure Corporation failed to file with the Commission factually accurate current and quarterly reports and/or failed to include in such reports, in addition to the information expressly required to be included, such further material information as necessary to make the required statements, in the light of the circumstances under which they are made, not misleading [Section 13(a) of the Exchange Act, and Rules 12b-20, 13a-11, and 13a-13 thereunder]; and

       (b)      Whether Defendant Richman, by knowingly rendering substantial assistance to one or more of Biopure's violations, aided and abetted Biopure's violations of reporting requirements of the federal securities laws as set forth in Section 13(a) of the Exchange Act, and Rules 12b-20, 13a-11, and 13a-13 thereunder.

## IV.    <u>Jurisdictional Questions</u>

The Commission states that there are no pending jurisdictional issues.

## V.    <u>Pending Motions</u>

There are no motions currently pending before the Court.  The Commission expects that prior to trial, it may file evidentiary motions, including several motions in limine designed to narrow the issues for trial.  The Commission further states that it may file a motion to compel the deposition of defendant Richman if such a motion becomes necessary.

## VI.    <u>The Commission's Issues of Law</u>

1.    What relief should be entered by the Court, including

a.    Whether defendant Richman should be enjoined from violating or aiding and abetting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b) and 13(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78m(a)] and Rules 10b-5, 12b-20, 13a-11 and 13a-13 promulgated thereunder [17 C.F.R §§ 240.10b-5, 240.12b-20, 240.13a-11 and 240.13a-13];

b.    Whether defendant Richman should be enjoined from serving as an officer or director of any publicly-traded issuer pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act [15 U.S.C. §§ 77t(e) and 78u(d)(2)];

c.    Whether, and in what amount, defendant Richman should be required to pay a civil monetary penalty; and

d.    Whether any additional relief would be just and appropriate under the circumstances.

VII.    **Requested Amendment to the Pleadings**

The Commission states that there are no further requested amendments to the pleadings.

VIII.   **Additional Matters**

The Commission states that there are no additional matters to be addressed beyond those

set forth in this pretrial memorandum.

IX.    **Probable Length of Trial**

Assuming that the case is tried in half-day sessions, the Commission estimates that the

trial will take approximately 14 days.

X.    **Names, Addresses and Telephone Numbers of the Commission's Potential Witnesses**

The Commission expects to call the following witnesses at trial either to present live

testimony or by deposition designation:

1.    Richard G. Adams
      SAC Capital Management
      540 Madison Avenue
      New York, NY 10022
      (212) 813-8600

2.    Abdu Alayash
      c/o Claire Whitaker
      Assistant United States Attorney
      Office of the United States Attorney
      for the District of Columbia
      Judiciary Center Building
      555 Fourth Street, NW
      Washington, DC 20537
      (202) 514-7137

3.    J. Richard Crout
      c/o Harry J. Weiss
      Wilmer Cutler Pickering Hale and Dorr LLP
      1875 Pennsylvania Avenue, NW
      Washington, DC 20006

(202) 663-6000

4.      Robert A. Dormer
        c/o John R. Fleder
        Hyman, Phelps & McNamara PC
        700 Thirteenth Street, N.W.
        Suite 1200
        Washington, D.C. 20005
        (202) 737-4580

5.      Ronald Fleming
        c/o David G. Keyko
        Pillsbury Winthrop Shaw Pittman LLP
        1540 Broadway
        New York, NY 10036-4039
        (212) 858-1604

6.      Jo Fladger
        163A Dodge Street
        Beverley, MA 01915
        (987) 921-4728

7.      Maria Gawryl
        c/o Janine Gawryl
        Gawryl and MacAllister, Attorneys-at-Law
        41 East Pearl Street
        Nashua, NH 03060
        (603) 882-3252

8.      Basil Golding
        c/o Claire Whitaker
        Assistant United States Attorney
        Office of the United States Attorney
        for the District of Columbia
        Judiciary Center Building
        555 Fourth Street, NW
        Washington, DC 20537
        (202) 514-7137

9.      Gabe Hoffman
        Accipiter Capital Management, LLC
        399 Park Avenue, 38th Floor
        New York, NY 10022

(212) 705-8700

10.    Inder Kaul
       c/o Jonathan L. Kotlier
       Nutter McClennen & Fish LLP
       World Trade Center West
       155 Seaport Boulevard
       Boston, MA 02210
       (617) 439-2683

11.    Jane Kober
       c/o Thomas J. Dougherty
       Skadden, Arps, Slate, Meagher & Flom, LLP
       One Beacon Street
       Boston, MA 02108
       (617) 573-4820

12.    Jason Kolbert
       c/o Richard McDonald
       Susquehanna International Group, LLP
       401 City Avenue, Suite 220
       Bala Cynwyd, PA 19004-1188
       (610) 747-2488

13.    Laurence Landow
       c/o Claire Whitaker
       Assistant United States Attorney
       Office of the United States Attorney
       for the District of Columbia
       Judiciary Center Building
       555 Fourth Street, NW
       Washington, DC 20537
       (202) 514-7137

14.    Raymond Lang
       9 Amanda Ct.
       Northport, NY 11768
       (516) 848-6291

15.    Steven Marks
       c/o Paul J. Fishman
       Friedman Kaplan Seiler & Adelman LLP
       1633 Broadway

New York, NY 10019-6708
(212) 833-1130

16.    Paul Miller
       c/o Richard F. Horowitz
       Heller, Horowitz & Feit, P.C.
       292 Madison Avenue
       New York, New York 10017
       (212) 685-7600

17.    Thomas A. Moore
       c/o Bobby R. Burchfield
       McDermott, Will & Emery
       600 13th Street, N.W.
       Washington, DC 20005-3096
       (202) 756-8003

18.    Virginia Rentko
       c/o Robert A. Buhlman
       Bingham McCutchen LLP
       150 Federal Street
       Boston, MA 02110-1726
       (617) 951-8717

19.    Ronald F. Richards
       c/o Christopher F. Robertson
       Seyfarth Shaw LLP
       World Trade Center East
       Two Seaport Lane, Suite 300
       Boston, MA 02210
       (617) 946-4989

20.    Howard Richman

21.    Frank Sasinowski
       c/o John R. Fleder
       Hyman, Phelps & McNamara PC
       700 Thirteenth Street, N.W.
       Suite 1200
       Washington, D.C. 20005
       (202) 737-4580

22.    Douglas Sayles

c/o Robert A. Buhlman
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8717

23.    Toby Silverman
c/o Claire Whitaker
Assistant United States Attorney
Office of the United States Attorney
for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20537
(202) 514-7137

24.    Edward Snyder

25.    Sapna Srivastava
c/o Harriet Britt
ThinkEquity Partners
600 Montgomery Street
San Francisco, CA 94111
(415) 249-6321

26.    Franklin Stephenson
c/o Claire Whitaker
Assistant United States Attorney
Office of the United States Attorney
for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20537
(202) 514-7137

27.    David Strupp
c/o Harriet Britt
ThinkEquity Partners
600 Montgomery Street
San Francisco, CA 94111
(415) 249-6321

28.    Josephine Torrente

23

c/o John R. Fleder
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
(202) 737-4580

29.    William Tubbs
c/o Robert A. Buhlman
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8717

30.    Robert Yetter
c/o Claire Whitaker
Assistant United States Attorney
Office of the United States Attorney
for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20537
(202) 514-7137

31.    Summary witness regarding Biopure stock price and trading volume

The Commission further states that it may call the following individuals if the need arises:

32.    Custodian of Records of Bank of New York
c/o John A. Mascarello
The Bank of New York
One Wall Street
New York, NY 10286
(212) 635-1119

33.    Custodian of Records of Biopure Corporation
c/o Robert A. Buhlman
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8717

34.     Custodian of Public Filings of Securities and Exchange Commission
        U.S. Securities and Exchange Commission
        100 F Street, NE
        Washington, DC 20549
        (202) 551-6551

35.     Custodian of Records of ThinkEquity Partners LLC
        c/o Harriet Britt
        ThinkEquity Partners
        600 Montgomery Street
        San Francisco, CA 94111
        (415) 249-6321

36.     Custodian of Records of Thomson StreetEvents
        Thomson Legal and Regulatory
        610 Opperman Drive
        Eagan, MN 55123
        (800) 328-9378

37.     Adnan Butt
        c/o Harriet Britt
        ThinkEquity Partners
        600 Montgomery Street
        San Francisco, CA 94111
        (415) 249-6321

38.     Bill Eudailey
        c/o Robert A. Buhlman
        Bingham McCutchen LLP
        150 Federal Street
        Boston, MA 02110-1726
        (617) 951-8717

39.     Doug Hansell
        c/o Robert A. Buhlman
        Bingham McCutchen LLP
        150 Federal Street
        Boston, MA 02110-1726
        (617) 951-8717

40.     Boyd Hanson
        c/o Robert A. Buhlman
        Bingham McCutchen LLP

150 Federal Street
Boston, MA 02110-1726
(617) 951-8717

41.     Michael Hensley
        927 Oxbow Crossing Road
        Chapel Hill, NC 27516

42.     William Hoffman
        c/o Massachusetts General Hospital
        55 Fruit Street
        BLK 8
        Boston, MA 02114-2696
        (617) 724-9711

43.     Thomas Koltis
        c/o Mark S. Radke
        LeBoeuf, Lamb, Greene & MacRae LLP
        1875 Connecticut Ave., N.W.
        Suite 1200
        Washington, DC 20009
        (202) 986-8076

44.     Alexander Lange
        c/o John A. Mascarello
        The Bank of New York
        One Wall Street
        New York, NY 10286
        (212) 635-1119

45.     Michael Luck
        c/o Robert A. Buhlman
        Bingham McCutchen LLP
        150 Federal Street
        Boston, MA 02110-1726
        (617) 951-8717

46.     Steven J. Moore
        Kelley Drye & Warren LLP
        Two Stamford Plaza
        281 Tresser Boulevard
        Stamford, CT 06901
        (203) 351-8020

47. Bruce Pearce
    c/o Robert A. Buhlman
    Bingham McCutchen LLP
    150 Federal Street
    Boston, MA 02110-1726
    (617) 951-8717

48. Wesley Pritchett
    259 Buttonwood Drive
    Key Biscayne, FL 33149

49. Carl W. Rausch
    c/o Michael G. Bongiorno
    Wilmer Pickering Hale and Dorr LLP
    399 Park Avenue
    New York, NY 10022
    (212) 937-7220

50. Martha Reitman
    c/o William N. Gerson
    Townsend and Townsend and Crew LLP
    379 Lytton Ave.
    Palo Alto, CA 94301-1431
    (650) 326-2400

51. Charles A. Sanders
    c/o Terence J. Lynam
    Akin Gump Strauss Hauer & Feld LLP
    Robert S. Strauss Building
    1333 New Hampshire Avenue, N.W.
    Washington, DC 20036-1564
    (202) 887-4045

52. Barry Scott
    c/o Robert A. Buhlman
    Bingham McCutchen LLP
    150 Federal Street
    Boston, MA 02110-1726
    (617) 951-8717

53. Laura Boothman Stamm

54. Alvin Stroyny

c/o John A. Mascarello
The Bank of New York
One Wall Street
New York, NY 10286
(212) 635-1119

55.    Roger Thies
c/o John R. Fleder
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
(202) 737-4580

## XI.    List of Proposed Exhibits

The Commission preliminarily expects to offer as exhibits documents taken from the list

of exhibits attached hereto as Exhibit A.  The Commission expressly reserves its right to add

additional exhibits upon reasonable notice.

## XII.    Parties' Positions on Objections to the Evidence

The Commission states that the parties will engage in discussions regarding each party's

objections to witnesses and exhibits, and to the extent the parties are unable to resolve objections,

they will present their objections to the Court.

Dated: July 10, 2007                          Respectfully submitted,
        Boston, Massachusetts


                                               /s/ Ian D. Roffman
                                              Ian D. Roffman (BBO #637564)
                                              R. Daniel O'Connor (BBO# 634207)
                                              Ellen Bober Moynihan (BBO#  567598)
                                              33 Arch Street
                                              Boston, Massachusetts 02110-1424
                                              (617) 573-8987 (Roffman)
                                              Counsel for Plaintiff
                                              Securities and Exchange Commission

*Served Electronically by ECF*

# Exhibit A

**Plaintiff Securities and Exchange Commission's**
**Preliminary Exhibit List[1]**

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| All Biopure SEC filings, April 2003 – December 2003 | |
| Summary Chart of Biopure Corp. Stock Prices and Trading Volume, 2003 | |
| Summary Chart of Stock Sales by Biopure Corp., April - December 2003 | |
| Summary Timeline of Events | |
| Biopure Annual Report, 2002 | SEC LIT 001025 - 001040 |
| Graph of Biopure Stock Price (BPUR) and % of Shares Traded from 01/02/03 - 01/30/04 | Stamm Report, Ex. 1 |
| Chart of Chronology in SEC Complaint | Stamm Report, Ex. 2 |
| Summary of Event Study Analysis Regression Results | Stamm Report, Ex. 3 |
| Summary of Volume Analysis Regression Results | Stamm Report, Ex. 4 |
| Chart of Summary of Adjusted Returns, % of Shares Traded, and Significance | Stamm Report, Ex. 5 |
| Chart of Price, Adjusted Return, Adjusted Percent of Shares Traded and Significance on Selected Days in SEC Complaint | Stamm Report, Ex. 6 |
| Chart of News Causing Stock Price Movement on Selected Statistically Significant Days in Expert Report of Paul A. Gompers | Stamm Report, Ex. 7 |
| Chart of Biopure Stock Adjusted Returns and Percent of Shares Traded on Days with Press Releases With Reference to Hemopure Trauma Application | Stamm Report, Ex. 8 |
| Chart of 2005 Dates Mentioned in Gompers' Report Relating to Trauma Trial | Stamm Report, Ex. 9 |
| Graph of Hourly % of Shares Traded and Trade Price from 03/04/03 - 03/06/03 | Stamm Report, Ex. 10 |
| Graph of % of Shares Traded and Trade Price from 09/12/03 - 09/16/03 | Stamm Report, Ex. 11 |
| Moore's Calendar, July 2002 - December 2003 | BP 22658 - 22731 |
| Letter from Epstein to Alford, re: IND Application, dated September 15, 1999 | BP 30242 - 30242C |
| Letter from Epstein to Alford, re: IND Application (BB-IND 2935), dated December 10, 1999 | BP 20547 - 20549 |
| Letter from Alford to Silverman re: BB-IND2935: Hemopure-201, dated February 10, 2000 | BP 30243 - 30248 |
| Letter from Weinstein to Alford re: IND for HBOC-201, dated March 30, 2000 | BP 30249 - 30249A |

---

[1] The Commission reserves its right to delete exhibits from or add exhibits to its exhibit list upon reasonable notice.

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Letter from Alford to Silverman re: BB-IND2935: Hemopure-201, dated May 17, 2000 | BP 30250 - 30250H |
| Letter from Regan to Silverman re: BB-IND 2935: Hemopure-201, dated May 23, 2000 | BP 30251 - 30251D |
| Letter from Weinstein to Regan re: IND for HBOC-201, dated July 7, 2000 | BP 30252 - 30252A |
| Safety Endpoint Evaluation Committee Charter, dated November 29, 2000 | BP 21525 - 21539 |
| FDA Memo from Stephenson to File re: 4th draft Meeting Minutes, dated January 12, 2001 | BP 02553 - 02559 |
| Email from Miller to Hensley re: Plant Shutdown Project Plan in Excel format, dated November 1, 2001 | Depo. Ex. 221 |
| FDA Fiscal Year 2002 Performance Report to Congress | |
| Email from Miller to Looney re: BLA Summary 2002_0326.mpp; BLA Status Report 26Mar02.doc, dated March 26, 2002 | Depo. Ex. 222 |
| Letter from Richman to Williams re: BLA BB-IND 2935, dated July 31, 2002 | BP 06857 - 06858 |
| Biopure Press Release, "Biopure Submits Hemopure® Marketing Application to the U.S. FDA", dated July 31, 2002 | |
| Biopure Press Release, "Biopure Announces 2002 Third Quarter Financial Results", dated August 22, 2002 | |
| Biopure Press Release, "Biopure Receives U.S. Army Grant to Develop Hemopure® For Military Trauma Applications", dated September 4, 2002 | |
| Contact Report from Hanson to Landow, dated September 16, 2002 | BP 06871 |
| Contact Report from Silverman to Richman, dated September 17, 2002 | BP 06872 |
| Fax from Richman to Landow re: attachments for meeting on same day, dated September 18, 2002 | BP 06876 - 06880 |
| Contact Report from Richman to Silverman, dated September 18, 2002 | BP 06886 - 06887 |
| Contact Report from Richman to Silverman, dated September 18, 2002 | BP 21206 - 21207 |
| Contact Report from Tubbs to Silverman, dated September 19, 2002 | BP 06891 - 06892 |
| Contact Report from Luck to O'Connor, dated September 20, 2002 | BP 06893 |
| Contact Report from Richman to Silverman, dated September 24, 2002 | BP 06897 - 06900 |
| Letter from Richman to Silverman , 75 pages, dated September 24, 2002 | BP 20819 - 20893 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Letter from Williams to Richman: BL 125066/0.0, dated October 1, 2002 | BP 06930 |
| Biopure Press Release, "Biopure's Marketing Application for Hemopure® Accepted by the FDA for Review", dated October 1, 2002 | |
| Letter from Richman to Williams re: Amendment 2 to STN#125066/0, dated October 18, 2002 | BP 06945 - 06947 |
| Contact Report from Silverman to Richman, dated October 22, 2002 | BP 21814 - 21815 |
| Letter from Richman to Williams re: Amendment 2 to STN#125066/0, dated November 21, 2002 | BP 06961 - 06964 |
| Letter from Golding to Richman re: BL: 125066/0, dated December 3, 2002 | BP 06968 - 06969 |
| Biopure Press Release, "Biopure Announces 2002 Fourth Quarter and Year-End Financial Results", dated December 12, 2002 | |
| Memo from Stephenson to file re: Review Committee Meeting Summary for STN: 125066/0.0, dated December 17, 2002 | FDACBEROCTMA00712 - 714 |
| Contact Report from Stephenson to Richman, dated January 7, 2003 | BP 21792 |
| Contact Report from Stephenson to Tubbs, dated January 21, 2003 | BP 00771 |
| Email from Derfel to Moore et al., re: More Advisory Committee Preparation Questions, dated January 28, 2003 | BP 10553 - 10573 |
| Biopure Press Release, "Biopure Restructures Management Responsibilities, Appoints New Chief Financial Officer", dated January 28, 2003 | |
| Biopure Strategic Plan (Version VIX), dated February 12, 2003 | BP 03957 |
| Biopure Press Release, "Biopure Announces 2003 First Quarter Financial Results", dated February 20, 2003 | |
| Biopure Press Release, "Correction -- Biopure Corporation", dated February 20, 2003 | |
| Email from Richards to Strupp re: Pleasure meeting with you both yesterday, dated February 27, 2003 | Depo. Ex. 300 |
| Biopure Press Release, "U.S. Navy to Help Fund and Conduct Biopure's Pivotal Clinical Trial of Hemopure® in Trauma", dated March 5, 2003 | |
| "A Multi-Center Study to Evaluate the Safety and Tolerability of Hemoglobin-Based Oxygen Carrier-201 (HBOC-201) in Trauma Subjects" | BP 15664 - 15737 |
| Letter from Richman to Silverman re: BB-IND 2935, | BP 07047 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| dated March 7, 2003 | |
| Letter from Capen to Richman re: BB-IND 10962, dated March 14, 2003 | BP 07435 - 07437 |
| Email from Richards to Srivastava re: Pleasure meeting with you both yesterday, dated March 14, 2003 | Depo. Ex. 301 |
| Email from Miller to Hansell, w/ BLA Application Summary attached, dated April 2, 2003 | BP 10070 - 10196 |
| Email from Richards to Srivastava re: Touching base, dated April 3, 2003 | Depo. Ex. 302 |
| Email from Srivastava to Richards re: Company Report, with attachments, dated April 3, 2003 | Depo. Ex. 303 |
| Email from Sayles to Srivastava and Richards re: Company Report, dated April 4, 2003 | Depo. Ex. 304 |
| Email from Richards to Srivastava re: Your inquiry regarding first in class drugs that didn't require a divsory panel for approval, dated April 4, 2003 | Depo. Ex. 305 |
| Biopure Trauma Team Structure, dated April 8, 2003 | BP 05361 |
| Contact Report: Landow to Richman, dated April 9, 2003 | BP 01406 |
| Email from Srivastava to Srivastava re: ThinkEquity: Initiation of Coverage on the Biotechnology Industry, with attachments, dated April 14, 2003 | Depo. Ex. 306 |
| ThinkEquity Analyst Report, Initiation of Coverage, dated April 14, 2003 | BP 01245 - 1256 |
| ThinkEquity Analyst Report, Initiation of Coverage with Equal Weight, dated April 15, 2003 | Gompers 00282 - 295 |
| ThinkEquity Analyst Report, Biotechnology: Initiation of Coverage, dated April 15, 2003 | BP 01261 - 1287;  Gompers 00296 - 322 |
| Email from Hutchison to Rob at BONY re: Issuance and Settlement Procedures | BP SEC 02010 - 2014 |
| Summary of April 16, 2003 Sale of Biopure Stock | BP SEC 02634, 1533 - 1534 |
| Minutes of Meeting of the Board of Directors of Biopure Corp, April 16, 2003 | BP 01053 |
| Email from Sayles to BMC Communications re: TSC story, dated April 19, 2003 | BP 35844 - 35845 |
| Letter from Golding to Richman re: BB-IND 10962, dated April 25, 2003 | BP 07438 - 07439 |
| Letter from Golding to Richman Reference: BB-IND 10962, dated April 25, 2003 | SEC LIT 0001102 - 1104 |
| Contact Report, Landow to Richman, dated April 30, 2003 | BP 07461 |
| Summary of May 2, 2003 Sale of Biopure Stock | BP SEC 02718, 2724, 2691 - 2696 |
| Summary of May 6, 2003 Sale of Biopure Stock | BP SEC 02737, 2743 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Summary of May 12 - 13, 2003 Sale of Biopure Stock | BP SEC 02281, 2275 - 2276 |
| Email from Sayles to Strupp et al., re: BPUR presentation 5/9/03, dated May 9, 2003 | Depo. Ex. 308 |
| Letter from Richman to Williams re: Amendment 7 to STN # 125066/0, dated May 12, 2003 | BP 00893 - 00894 |
| Letter from Richman to Williams, re: General Safety Information, dated May 12, 2003 | BP 07051 - 07098 |
| Letter from Richman to Golding re: Clinical Hold Complete Response, dated May 12, 2003 | BP 07363 - 07406 |
| Email from Richards to Srivastava, re: FDA just posted panel agenda on the website as well, dated May 13, 2003 | Depo. Ex. 307 |
| Email from Richman to Kaul re: Final Response Complete 2: Comments on Q.1 | BP 04732 - 04734 |
| Summary of May 14 - 19, 2003 Sale of Biopure Stock | BP SEC 02266, 02273 |
| ThinkEquity Analyst Report, Hemopure is not on the June Advisory Committee; A positive in our view, dated April 14, 2003 | Gompers 00323 - 326 |
| Email from Soffey to Sayles re: ThinkEquity - BPUR Roadshow in NYC Fri. 5/16, dated May 14, 2003 | Depo. Ex. 309 |
| Biopure Press Release, "Biopure Announces Second Quarter 2003 Conference Call and Webcast", dated May 15, 2003 | |
| Summary of May 20, 2003 Sale of Biopure Stock | BP SEC 02260 - 02263 |
| Biopure Press Release, "Biopure Announces 2003 Second Quarter Financial Results", dated May 22, 2003 | |
| Transcript of Investor Conference Call, dated May 22, 2003 | BP 06839 - 06851 |
| Contact Report from Alayash to Richman, dated May 27, 2003 | BP 00795 |
| Contact Report from Richman to Stephenson, dated May 27, 2003 | BP 00796 |
| Biopure Draft Press Release: "Biopure Receives FDA Complete Response Letter for Hemopure®, dated May 27, 2003 | BP 00180 - 00181 |
| Email from Christopher to Sayles re: Conf call Qs 1, dated May 28, 2003 | BP 35877 - 35879 |
| Contact Report from Richman to Stephenson, dated May 28, 2003 | BP 00797 |
| Transcript of Investor Conference Call, dated May 30, 2003 | BP 06825 - 06836 |
| Letter from Golding to Richman re: BB-IND 10962, dated May 30, 2003 | BP 07440 - 07442 |
| Letter from Golding to Richman re: BL 125066/0, dated | BP 00816 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| May 30, 2003 | |
| Concurrence Page for Classification of Response Letter, May 2003 | SEC LIT 0001164 |
| Letter from Golding to Richman re: BB-IND 10962, dated May 30, 2003 | SEC LIT 0001106 - 1109 |
| Biopure Press Release, "U.S. FDA Finalizes Response Date for Biopure's Marketing Application of Hemopure®", dated May 30, 2003 | |
| ThinkEquity Analyst Report, FDA Extends Hemopure Review Timeline to August 29, dated May 30, 2003 | Gompers 00327 - 329 |
| IND 10962 Clinical Hold Meeting, dated June 3, 2003 | BP 34232 - 233 |
| Summary of June 2 - 5, 2003 Sale of Biopure Stock | BP SEC 02251 - 2259 |
| Summary of June 5 - 6, 2003 Sale of Biopure Stock | BP SEC 02247 - 2250 |
| Invoice to Jane Kober, dated June 5, 2003 | BP 37348 - 37349 |
| Summary of June 9 - 15, 2003 Sale of Biopure Stock | BP SEC 02238 - 2246 |
| Email from Sayles to Srivastava re: Request to remove phone number, dated June 9, 2003 | |
| Email from Crout to Richman, forwarded to Kaul and Hansell, re: Recent FDA Letter, dated June 9, 2003 | BP 09755 - 9756 |
| ThinkEquity Partners Discussion Materials: Biopure Corporation, dated June 11, 2003 | BP 32257 - 32307 |
| Email from Court to Moore, et al., re: Review of Protocols, dated June 13, 2003 | BP 07510 - 07512 |
| Biopure: The Leader in Oxygen Therapeutics, dated June 17, 2003 | TEP-BPUR 00291 - 325 |
| Minutes of Meeting of the Board of Directors of Biopure Corp, dated June 17, 2003 | BP 01054 - 01055 |
| Biopure Registered Direct Offering: Presentation to be shown to ThinkEquity, dated June 23, 2003 | TEP-BPUR 00287 - 390 |
| Biopure Trauma Program Team Meeting Minutes, dated June 24, 2003 | BP 17729 - 17730 |
| Email from Sayles to Strupp re: Douglas Sayles has sent you a file! Dated June 24, 2003 | Depo. Ex. 310 |
| Email from Richards to Strupp re: Updated Presentation, dated June 24, 2003 | Depo. Ex. 311 |
| Email from Kratus to Richards et al., re: Biopure teach in for the ThinkEquity Salesforce, June 26, 2003 | Depo. Ex. 312 |
| Clinical Development Plan for Trauma Indication, by J. Richard Crout, M.D., dated July 1, 2003 | BP 04182 - 4187 |
| Biopure: The Leader in Oxygen Therapeutics, dated July 1, 2003 | BNY Biopure 0002137 - 2169 |
| Email from Richman to Crout, re: Questions 3 and 4, dated July 2, 2003 | BP 04450 |

6

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Letter from Richman to Golding re: BB-IND 10962, Clinical Hold Response, dated July 2, 2003 | BP 07408 - 07427 |
| Email from Soffey to Moore et al., re: Biopure Roadshow June-July, 03, dated July 8, 2003 | Depo. Ex. 313 |
| Email from Strupp to Richards re: Call me, dated July 11, 2003 | |
| Email from Moore to Srivastava re: Bihua Chen, dated July 14, 2003 | |
| List of Purchasers of Biopure Stock | BP SEC 04130 - 04131 |
| Email from Kober to Murphy Re: Hemopure BLA, dated July 17, 2003 | BP 36733 - 36735 |
| Biopure Press Release, "Biopure Corporation Raises $17 Million Through Sale of Common Stock", dated July 23, 2003 | |
| Letter from Golding to Richman re: BB-IND 10962, dated July 30, 2003 | BP 02243 - 2257 |
| Letter from Golding to Richman re: BLA, dated July 30, 2003 | BP 00817 - 00850 |
| Concurrence Page for Clinical Hold Letter, July 30, 2003 | SEC LIT 0001126 |
| Concurrence Page for Complete Response Letter, July 30, 2003 | SEC LIT 0001162 - 1163 |
| Moore's Handwritten Notes, dated July 31, 2003 | BP 24751 |
| Telecon with Biopure, dated July 31, 2003 | SEC LIT 0001292 |
| Email from Sayles to Moore: Press Release Draft, dated July 31, 2003 | BP 00001 - 00003 |
| Email from Forney to All Employees re: Company Meeting, dated July 31, 2002 | BP 00004 |
| Draft Press Release with handwritten notes, dated July 31, 2003 | IT Ex. 149A |
| Email from Sayles, CC'd to Sayles and Moore: Revised Press Release, dated July 31, 2003 | BP 00006 - 00008 |
| Email from Sayles to Moore et al., re: FDA response press release, dated July 31, 2003 | BP 00012 - 00014 |
| Email from Scott to Moore, re: Rationale for Trauma, dated August 1, 2003 | BP 10000 - 10003 |
| FDA Response Planning Meeting Minutes, dated August 1, 2003 | Depo. Ex. 225 |
| Email from Sayles to Nealon and Tarmy, re: Dow Jones - Tiffany, dated August 1, 2003 | BP 00040 |
| Biopure Press Release, "Biopure Receives FDA Response to Hemopure® Marketing Application", dated August 1, 2003 | |
| Email from Richards to Sayles re: ThinkEquity/BPUR: | BP 00048 - 00049 |

| DESCRIPTION | BATES or EXHIBIT No. |
| --- | --- |
| Positive Review Letter from the FDA - Great News for Biopure, dated August 1, 2003 | |
| Article, "Biopure Jumps 22%", dated August 1, 2003 | BP 00082 - 00083 |
| ThinkEquity Analyst Report--Positive Review Letter from the FDA - Great News for Biopure, dated August 1, 2003 | Gompers 00330 - 331 |
| Email from Sayles to Moore et al., re: FDA response talking points, dated August 1, 2003 | BP 00059 - 00060 |
| Email from Sayles to Sayles, re: FDA response talking points, dated August 1, 2003 | BP 00070 - 00071 |
| Email from Sayles to Richman re: FAQ, dated August 1, 2003 | BP 00065 |
| Email from Sayles to Moore et al., re: A few media clips, dated August 1, 2003 | BP 00084 - 94 |
| Email from Sayles to Moore et al., re: Revised FDA response talking points, dated August 4, 2003 | BP 00116 - 00117 |
| Letter from Richman to Williams re: Response to FDA Letter Dated 7/30/03, dated August 4, 2003 | BP 00946 |
| Emails between Sayles and Moore re: press release, dated August 4, 2003 | BP 24752 |
| Email from Sayles to Nealon re: Press Release, dated August 4, 2003 | BP 00125 - 00126 |
| FDA Response Planning Meeting Minutes, dated August 4, 2003 | Depo. Ex. 227 |
| Email from Fladger to Miller re: FDA Resp 8-2-03, dated August 4, 2003 | Depo. Ex. 226 |
| Email from Moore to Sayles re: Please read re: press release, dated August 4, 2003 | BP 24752 |
| Email from Kober to Richman and Moore, re: Hyman Phelps, dated August 5, 2003 | BP 37048 - 37049 |
| Telecon with Biopure, meeting called by Stephenson, dated August 5, 2003 | SEC LIT 000430 |
| Summary of August 5 - 11, 2003 Sale of Biopure Stock | BP SEC 02227 - 2237 |
| Email from Kober to Richman and Moore, re: Hyman Phelps, dated August 5, 2003 | BP 37048 - 37049 |
| Email from Kober to Torrente re: receipt of a package, dated August 7, 2003 | BP 37052 - 37054 |
| Handwritten note of a meeting including: Josephine, Howard, and JK, dated August 7, 2003 | BP 36999 - 37002 |
| Letter from Cole (FDA) to Stegman (SEC) re: Biopure Corporation, dated August 8, 2003 | SEC LIT 000325 - 327 |
| FDA Response Planning Meeting Minutes, dated August 8, 2003 | Depo. Ex. 229 |
| Invoice to Jane Kober, dated August 11, 2003 | HPM 00001 - 00008 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Moore's Handwritten notes, dated August 12, 2003 | BP 37012 |
| Kober's Handwritten notes of telephone call, dated August 13, 2003 | K 122 - 123 |
| Moore's Handwritten notes, dated August 13, 2003 | BP 37013 - 37020 |
| Medical Officer Safety Review, dated August 13, 2003 | FDACBEROCTMA00210 - 294 |
| FDA Response Plan, dated August 14, 2003 | Depo. Ex. 230 |
| Email from Strupp to Srivastava et al., re: Request, dated August 15, 2003 | |
| FDA Unanswerable Questions, dated August 15, 2003 | BP 10732 - 10734, 4406-4408 |
| FDA Response Planning Meeting Minutes, dated August 15, 2003 | Depo. Ex. 232 |
| Contact Report from Richman to Stephenson, dated August 15, 2003 | BP 00803 |
| Telephone message from Biopure (Richman), dated August 15, 2003 | SEC LIT 000431 |
| Email from Torrente to Eudailey et al., re: FDA Meeting Request, dated August 18, 2003 | BP 36746 - 36748 |
| Biopure Strategic Plan (Version IXa), dated August 18, 2003 | BP 03988 |
| Biopure Strategic Plan (September 2003), dated August 18, 2003 | BP 03989 - 3990 |
| Email from Rentko to Gawryl et al., re: bullets for preclincial questions, dated August 19, 2003 | BP 37168 - 37170 |
| Biopure Press Release, "Biopure Announces 2003 Third Quarter Financial Results", dated August 21, 2003 | |
| Transcript of Investor Conference Call, dated August 21, 2003 | BP 06798 - 06811 |
| FDA Response Planning Meeting Minutes, dated August 22, 2003 | Depo. Ex. 233 |
| ThinkEquity Analyst Report, 3Q Report: Update on Hemopure Regulatory Status, dated August 22, 2003 | Gompers 00332 - 334 |
| Summary of August 22 - 27, 2003 Sale of Biopure Stock | BP SEC 02218 - 2226 |
| FDA Response Planning Meeting Minutes, dated August 25, 2003 | Depo. Ex. 234 |
| Letter from Richman to Williams re: Amendment 10 to STN# 125066/0, dated August 25, 2003 | BP 16968 - 16973 |
| Contact Report, meeting called by Stephenson, dated August 26, 2003 | SEC LIT 0001295 |
| Draft Q3 Earnings Call Questions, August 2003 | BP 06818 - 6822 |
| Email from Kober to Torrente, re: Status of FDS letter, dated August 26, 2003 | BP 36775 - 36777 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Email from Miller to Richman et al., re: FDA Response Timelines, dated August 26, 2003 | BP 04353 |
| FDA Response Plan, dated August 26, 2003 | Depo. Ex. 237 |
| Email from Torrente to Kober re: FDA Letter, dated August 26, 2003 | BP 36773 |
| Email from Kober to Torrente re: FDA Letter, dated August 26, 2003 | BP 36731 - 36732 |
| Email from Sasinowski to Kober and Torrente re: Status of FDA Letter, dated August 26, 2003 | BP 36728 - 36730 |
| Letter from Richman to Williams re: Amendment 11 to STN# 125066/0, dated August 27, 2003 | BP 16974 - 16979 |
| Strategy Planning Session for FDA Meeting #1 Meeting Minutes, dated August 27, 2003 | Depo. Ex. 238 |
| Email from Kober to Sasinowski and Crout re: Status, dated August 27, 2003 | BP 36778 - 36781 |
| Contact Report from Silverman to Tubbs, dated August 27, 2003 | BP 04350 - 04352 |
| Contact Report, meeting called by Stephenson, dated August 27, 2003 | SEC LIT 0001452 |
| Handwritten notes of Telephone call, dated August 28, 2003 | BP 37024 - 37025 |
| FDA Response Planning Meeting Minutes, dated August 28, 2003 | Depo. Ex. 240 |
| Handwritten notes | BP 37023 |
| Summary of September 2 - 4, 2003 Sale of Biopure Stock | BP SEC 02211 - 2217 |
| FDA Response Planning Meeting Minutes, dated September 8, 2003 | BP 00713 - 715 |
| Email from Crout to Sasinowski and Crout re: Draft Letter; w/ handwritten notes, dated September 5, 2003 | HPM 00188 |
| Minutes of Meeting of the Board of Directors of Biopure Corp, dated September 5, 2003 | BP 31613 |
| Email from Lang to Richards re: Biopure Standby Equity Distribution Term Sheet No. 2, dated September 8, 2003 | |
| Letter from Richman to Williams re: Amendment 12 to STN# 125066/0, dated September 8, 2003 | BP 17076 - 17081 |
| Contact Report from Stephenson to Richman, dated September 9, 2003 | BP 00808 - 809 |
| Email from Fleming to Kober and Richards, re: BNY Capital Markets -- Standby Equity Financing, dated September, 10, 2003 | IT Ex. 184 |
| Contact Report from Richman to Silverman, et al., dated 9/10/2003 | BP 2169-2170 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| The Columbine Quantitative Analyst Report on Biopure, dated September 10, 2003 | Gompers 00335 - 338 |
| Email from Fladger to Richman et al., re: 115 Data & Monitor Schematis 9-11-03, dated September 11, 2003 | |
| FDA Response Planning Meeting Minutes, dated September 12, 2003 | Depo. Ex. 243 |
| Email from Fladger to Richman et al., re: GCP Issues & FDA Questions 9-14-03, dated September 14, 2003 | Depo. Ex. 244 |
| Email from Fleming to Kober re: Document due diligence, dated September 15, 2003 | BNY Biopure 0001626 |
| Fax from Tubbs to Stephenson re: Biopure Meeting Pre-Read Materials, dated September 16, 2003 | BP 00959 - 962 |
| Contact Report from Silverman to Richman, dated September 16, 2003 | BP 00813 - 815 |
| Telecon with Biopure, meeting called by Stephenson, dated September 16, 2003 | SEC LIT 000743 - 746 |
| Email from Sayles to Cipolla, dated September 16, 2003 | BP 05056 |
| Email from Kober to Rausch re: Dormer's advice, dated September, 17, 2003 | BP 37065 |
| Text of Presentation by Moore at ThinkEquity Partners Growth Conference, dated September 17, 2003 | |
| Email from Sayles to Moore and Richards, re: Feuerstein column 3:45pm, dated September 17, 2003 | BP 05062 |
| Letter from Richman to Williams re: Amendment 13 to STN# 125066/0, dated September 17, 2003 | BP 00963 - 964 |
| Moore Presentation at ThinkEquity Partners Growth Conference, with September 10, 2003 Press Release attached | BP 06737 - 6754 |
| Weiss Ratings Inc. Stock Research Report on Biopure, dated September 19, 2003 | Gompers 00339 - 352 |
| Email from Rentko to Miller re: FDA Response Timelines, dated September 22, 2003 | Depo. Ex. 246 |
| Handwritten notes, dated September 22, 2003 | BP 36796 - 36798 |
| FDA Response Plan, dated September 23, 2003 | BP 03094 - 03103 |
| FDA Response Planning Meeting Minutes, dated September 24, 2003 | Depo. Ex. 248 |
| Text of Presentation by Moore at UBS Global Life Sciences Conference, dated September 25, 2003 | |
| Moore Presentation at UBS Global Life Sciences Conference, with September 18, 2003 Press Release attached | BP 06719 - 6735 |
| Email from Moore to Sayles re: BLA Statement for website, dated September 26, 2003 | BP 05096 - 5097 |
| Email from Srivastava to Richards re: Conference | Depo. Ex. 324 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Update on Biopure, dated September 26, 2003 | |
| Email from Richards to Sayles, dated September 28, 2003 | BP 36200 - 36201 |
| Fax from Forney to Sasinowski et al., re: Letter from Moore, dated October 1, 2003 | BP 36804 - 36806 |
| Email from Forney to Miller re: Letter from Tom Moore; Planning Meeting Agenda, dated October 2, 2003 | Depo. Ex. 249 |
| Invoice to Jane Kober, dated October 3, 2003 | HPM 00009 - 00012 |
| Handwritten notes re: BLA Response Letter etc, dated October 7, 2003 | BP 37026 - 37031 |
| Handwritten notes, dated October 7, 2003 | IT Ex. 169 |
| Fax from Forney to Dormer et al., re: Notes from Hyman Phelps Meeting, dated October 8, 2003 | BP 36834 - 36835 |
| Weiss Ratings Inc. Stock Research Report on Biopure, dated October 9, 2003 | Gompers 00353 - 366 |
| Moore Presentation at Rodman & Renshaw Techvest Healthcare Conference with October 14, 2003 Press Release attached | BP 06704 - 6718 |
| FDA Response Planning Meeting Minutes, dated October 15, 2003 | Depo. Ex. 250 |
| FDA Response Plan, dated October 15, 2003 | BP 03051 - 03059 |
| Handwritten notes, dated October 15, 2003 | BP 37032 - 37065 |
| Email from Torrente to Kober et al., re: Biopure 10/16 Inv slides, dated October 17, 2003 | BP 36844 - 36845 |
| Draft Letter to Epstein from Biopure re: BLA STN #125066/0, dated October 17, 2003 | HPM 00058 - 00065 |
| October 21, 2003 Status Update for Biopure Response to FDA Questions of July 30, 2003, dated October 21, 2003 | BP 18290 - 18370 |
| 10/21/2003 Status Update for Biopure Response to FDA Questions of 7/30/03, dated October, 21, 2003 | Depo. Ex. 252 |
| Biopure Press Release, "Biopure to Present at Mass Opportunities Biotechnology Investor Conference on October 27, 2003," dated October 20, 2003 | |
| Email from Fleming to Richards et al., re: Action Items, dated October 27, 2003 | BNY Biopure 0001710 |
| Moore Presentation at Mass Opportunities Biotechnology Investor Conference with October 20, 2003 Press Release attached | BP 06688 - 6703 |
| Letter from Moore to Epstein re: Amendment 14 to BLA STN# 125066/0, dated October 29, 2003 | BNY Biopure 0001719 - 1729 |
| Email from Torrente to Sayles re: Biopure press release, dated October 29, 2003 | HPM 00145 - 00149 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Email from Sayles to Torrente re: Biopure Press Release, dated October 29, 2003 | HPM 00066 - 00070 |
| Letter to Epstein from Biopure re: Amendment 14 to BLA STN #125066/0, dated October 29, 2003 | BP 06972 - 06982 |
| Email from Srivastava to Sales re: Bpur Mgmt Conversation - Internal Use Only, dated October 30, 2003 | |
| Transcript of Investor Conference Call, dated October 30, 2003 | BP 06670 - 6685 |
| ThinkEquity Analyst Report, Biopure Updates Timeline, As Expected, dated October 30, 2003 | Gompers 00367 - 368 |
| Biopure Press Release, "Biopure Updates Regulatory and Operating Plans", dated October 30, 2003 | |
| Handwritten Notes from telephone call with Hyman Phelps, dated October 31, 2003 | BNY Biopure 0001713 |
| ThinkEquity Analyst Report--Biopure Updates Timelines; Forecast Hemopure Approval by YE2004, dated October 31, 2003 | Gompers 00369 - 372 |
| Contact report, Stephenson to Luck, dated November 6, 2003 | BP 07468 |
| Invoice to Jane Kober, dated November 6, 2003 | HPM 00013 - 00021 |
| Letter from Luck to Williams re: Pre-IND (Type B) Meeting Request, dated November 7, 2003 | BP 07479 - 07487 |
| HEM 115 Chronology/ Time Line, dated November 10, 2003 | BP 01526 - 01531 |
| Email from Fleming to Richards and Kober re: Proposed BNY Standby Arrangements--Next Steps, dated November 10, 2003 | Depo. Ex. 355 |
| Email from Kober to Torrente re: S3, dated November 10, 2003 | HPM 00150 |
| The Columbine Quantitative Analyst Report on Biopure, dated November 10, 2003 | Gompers 00373 - 376 |
| Email from Wolff to Torrente et al., re: BLA Update Changes, dated November 10, 2003 | BP 37171 - 37173 |
| Contact Report from Stephenson and Landow to Zuchero, dated November 12, 2003 | BP 06998 - 6999 |
| Email from Zuchero to Moore, Luck and Tubbs re: Contact report 11/17/03, dated November 17, 2003 | HPM 00101 - 00103 |
| Email from Richards to Lang re: Prospectus Supplement, dated November 18, 2003 | |
| ThinkEquity Analyst Report--Biotech Sector Trends: Outlook on the Coverage Universe, dated November 20, 2003 | Gompers 00377 - 380 |
| Email from Forney to Kober re: Recent Developments, | HPM 00104 - 00109 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| dated November 20, 2003 | |
| Email from Richards to Lang re: Recent Developments, dated November 21, 2003 | |
| Email from Fleming to Kober and Richards, re: Standby Equity Distribution Agreement, dated November 21, 2003 | BNY Biopure 0001825 - 1860 |
| Weiss Ratings Inc. Stock Research Report on Biopure, dated November 24, 2003 | Gompers 00381 - 394 |
| Email from Griffith to Gibbons, re: Biopure Standby Equity Distribution Program, dated November 25, 2003 | BNY Biopure 0001861 |
| Email from Kober to Torrente et al., re: Standby Equity Distribution Agreement, dated November 10, 2003 | HPM 00151 - 00187 |
| ValuEngine Quantitative Valuation Report, dated November 28, 2003 | Gompers 00395 - 412 |
| Memo from Tubbs to Richman re: Withdrawal of IND, dated November 29, 2003 | BP 20257 - 20258 |
| Trauma -- Delay in Commercialization: A financial implication | BP 05390 - 05393 |
| Email from Torrente to Zuchero re: Meeting package and attachments, dated December 2, 2003 | HPM 00111 - 00120 |
| Halpern Capital Equity Research: Biotechnology, on Biopure, dated December 8, 2003 | Gompers 00413 - 426 |
| Invoice to Jane Kober, dated December 9, 2003 | HPM 00022 - 00028 |
| Invoice to Jane Kober, dated December 9, 2003 | HPM 000090 - 000092a |
| Invoice to Jane Kober, dated December 9, 2003 | HPM 000124 - 000130 |
| Biopure Press Release, "Biopure Announces 2003 Fourth Quarter and Year-End Financial Results", dated December 11, 2003 | |
| ThinkEquity Morning Research Summary, dated December 12, 2003 | Gompers 00427 - 431 |
| ThinkEquity Analyst Report, Biopure Reports 4Q03 Results; Reiterates Regulatory Guidance, dated December 12, 2003 | Gompers 00432 - 435 |
| Email from Sayles to Buhlman and Torrente re: Realmoney.com and Globe articles, dated December 12, 2003 | HPM 00121 - 00123 |
| ThinkEquity Analyst Report, Biopure Initiates Phase II Safety Trial for Hemopure in Europe, dated December 23, 2003 | Gompers 00436 - 439 |
| Biopure Press Release, "Biopure Receives 'Wells Notice' from Securities and Exchange Commission", dated December 24, 2003 | |
| ThinkEquity Analyst Report, Biopure Receives 'Wells Notice' from the SEC, dated December 26, 2003 | Gompers 00440 - 443 |

| DESCRIPTION | BATES or EXHIBIT No. |
|---|---|
| Halpern Capital Equity Research: Biotechnology, on Biopure, dated December 26, 2003 | Gompers 00444 - 445 |
| Invoice to Jane Kober, dated January 7, 2004 | HPM 00131 - 00100 |
| Biopure Press Release, "Biopure Updates Hemopure® Regulatory Status Following FDA Meeting", dated January 8, 2004 | |
| Letter from Nedjar to Tubbs discussing the 1/6/04 meeting, dated March 16, 2004 | |
| Curriculum Vitae of Edward Snyder | Depo. Ex. 2 |
| Curriculum Vitae of Laura Boothman Stamm | |
| Expert Report of Peter Barton Hutt--DRAFT, dated May 11, 2006 | Hutt 03008 - 03033 |
| Curriculum Vitae of Richard Crout | IT Ex. 103 |
| Curriculum Vitae of Maria S. Gawryl | IT Ex. 109 |
| Jane Kober's Calendar | BP 24655 - 24750 |
| Biopure Corporation Organizational Charts, Volume 1 Copy 8, various dates | BP 23453 - 13469 |
| IND 10962 Clinical Hold Complete Response | BP 31680 - 31724 |
| 2001, 2002, 2003 Biological License Application (BLA) Approvals | Depo. Ex. 288 |
| Informed Consent, Authorization to Participate in a Research Study, Blank | BP 30278 - 30284 |
| 1998 Biological License Application (BLA) Approvals | Depo. Ex. 285 |
| 1999 Biological License Application (BLA) Approvals | Depo. Ex. 286 |
| 2000 Biological License Application (BLA) Approvals | Depo. Ex. 287 |
| SOPP 8402, Designation of License Application Amendments as Major or Minor, dated April 16, 2001 | BP 00259 - 00261 |
| Draft SOPP 8405, Complete Review and Issuance of Action Letters, dated August 4, 2003 | SEC LIT 0001328 - 1333 |
| SOPP 8405, Complete Review and Issuance of Action Letters, dated August 8, 2003 | BP 00271 – 00274 |
| SOPP 8405.1, Procedures for the Classification of Resubmissions of an Application for a Product Covered by the Prescription Drug User Free Act (PDUFA III), dated August 30, 2002 | BP 00275 - 00278 |