UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>                Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS MOORE, HOWARD RICHMAN and JANE KOBER,<br><br>                Defendants. | Civil Action No. **05 CA 11853 PBS** |

**DEFENDANT HOWARD RICHMAN'S PRE-TRIAL MEMORANDUM**

Pursuant to Local Rule 16.5(d), Defendant Howard Richman ("Dr. Richman") hereby submits this Pre-Trial Memorandum in anticipation of the Final Pre-Trial Conference scheduled by the Court for July 17, 2007.

**I.     Preliminary Statement**

Pursuant to this Court's November 2, 2006, March 5, 2007, and May 7, 2007 Orders, the Court effectively stayed this action as to Dr. Richman, due in part to Dr. Richman's grave medical condition and also in light of ongoing good faith efforts between the parties to settle the action. As a result, Dr. Richman has not participated fully in discovery or other pre-trial activities relating to many of the subjects identified in this memorandum, including the scheduling and taking of fact and expert witness depositions, requests for materials from the FDA and related discovery motions, and amendment of pleadings. Accordingly, Dr. Richman respectfully reserves his rights to supplement or otherwise amend the statements contained herein. In addition, further to and as contemplated by the Court's Orders, Dr. Richman will need to complete a limited number of depositions in preparation for trial, including, among others, those of Franklin Stephenson, Lawrence Landow, Toby Silverman, and other FDA staff persons..

## II. Summary Of Evidence

### A. Plaintiff's Summary Of Evidence

See separately filed Pre-Trial Memorandum of Plaintiff Securities and Exchange Commission (the "SEC").

### B. Dr. Richman's Summary Of Evidence

The SEC asserts that Dr. Richman, the former Senior Vice-President of Regulatory Affairs and Compliance of Biopure Corporation, violated the federal securities laws through public statements and "omissions" concerning the FDA review process for Hemopure, Biopure's "blood substitute" product. The facts demonstrate, however, that the challenged statements and supposed "omissions" were not material, and that Dr. Richman lacked the requisite wrongful intent, thus defeating the SEC's causes of action.

#### 1. The "Clinical Hold" On The In-Hospital Trauma Trial Of Hemopure

The SEC alleges that Dr. Richman violated a duty to disclose a "clinical hold" that the FDA placed on Biopure's proposed protocol for an in-hospital trauma trial of Hemopure. This clinical hold was *not* material, however, because it was a routine, non-final regulatory action addressing a proposed indication for Hemopure that was many years away from potential commercialization. Further, in view of Biopure's disclaimers about the risks inherent to the FDA review process in all of its SEC filings, press releases, and investor conference calls, no reasonable investor could have considered the speculative prospect of the in-hospital trauma indication material to a current investment decision. Moreover, like Biopure's Board of Directors, Dr. Richman understood that the clinical hold was immaterial and need not be disclosed. Dr. Richman did not act with wrongful intent in connection with the clinical hold.

## 2. The Biologics License Application

The SEC further contends that Dr. Richman committed securities fraud by failing to use the assertedly magic words "complete response letter" to describe a July 30, 2003 letter from the FDA about Biopure's Biologics License Application ("BLA") for an orthopedic surgery indication for Hemopure. The "complete response letter" label was *not* material, however, because it is neither intended to, nor does it convey any information about the ultimate approvability of the product under review. In addition, contrary to the SEC's assertion, the term "complete response letter" does not clearly indicate a timetable for the FDA to act on a BLA resubmission; even if it did, this information still would not be material in the context of the FDA's multi-year BLA review and approval process. Moreover, neither Dr. Richman nor any other Biopure employee, officer, or director understood the BLA Letter to be a "complete response letter." This uncertainty negates any allegation of wrongful intent on Dr. Richman's part, as does the fact that he and Biopure made clarifying disclosures to the market as they gained a better understanding of the BLA Letter's nature.

In addition, the SEC asserts that Dr. Richman's generally optimistic statements in press releases and investor conference calls about the regulatory status of Hemopure were actionable. These statements, however, were *not* material because they were the "kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace ... [such that] no reasonable investor could find them important to the total mix of information available." *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 35 (D. Mass. 1997). In addition, statements by Dr. Richman and others were all accompanied by meaningful disclaimers about the FDA's review process that "bespoke caution" to investors, thus negating any alleged materiality. *See, e.g., SEC v. Meltzer*, 440 F. Supp. 2d 179, 191 (E.D.N.Y. 2006); *SEC v. Schiffer*, 97 Civ. 5853(RO), 1998

U.S. Dist. LEXIS 6339, *5-6 & n.4 (S.D.N.Y. May 5, 1998). Finally, Dr. Richman was, in fact, personally optimistic about the approval prospects for Hemopure, thus demonstrating that his optimistic statement were not motivated by wrongful intent.

### C. Summary of Evidence To Be Offered By Third Parties

Subject to the Preliminary Statement in Paragraph I above, Dr. Richman does not expect that any third parties will offer evidence in this action.

### III. Facts Established By Pleadings Or By Stipulations Or Admissions Of Counsel

A.  Dr. Richman states that the parties are in the process of discussing potential stipulations, which may reduce the number of potential witnesses, reduce the number of potential trial exhibits, and narrow the issues for trial.

B.  Subject to the foregoing, the following is a list of facts established pleadings or by stipulations or admissions of counsel.

1.  The Commission purports to bring this action pursuant to Section 20 of the Securities Act [15 U.S.C. §§ 77t], and Sections 20(e) and 21 (d) of the Exchange Act [15 U.S.C. §§ 78t(e) and 78u(d)]. (Complaint, ¶9).

2.  The Commission purports to base jurisdiction over this action pursuant to Sections 20 and 22(a) of the Securities Act [15 U.S.C. §§ 77t and 77v(a)] and pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa]. (Complaint, ¶10).

3.  Biopure Corporation is a Delaware corporation and a biopharmaceutical corporation with its headquarters in Cambridge, Massachusetts. Biopure's stock is registered with the NASDAQ Stock Exchange under the symbol "BPUR." (Answer, ¶12).

4.  Dr. Richman was Biopure's Senior Vice President of Regulatory Affairs and Operations from spring 2003 until October 2003, when Biopure terminated his employment.

He previously served as Biopure's Vice President of Regulatory Affairs and Compliance from 2001 through the spring of 2003. Prior to joining Biopure, Dr. Richman was a director of regulatory affairs at several biotech companies. Dr. Richman was a practicing doctor of podiatric medicine from 1978-1992. Dr. Richman is a resident of Houston, Texas. (Complaint, ¶14).

5. In order to market commercially a biologic in the United States, a company must first obtain FDA approval for each individual indication. (Answer, ¶18).

6. Hemopure and Oxyglobin are Biopure products that are described in detail in Biopure submissions to the FDA. (Answer, ¶21).

7. On or about July 31, 2002, Biopure submitted a BLA concerning Hemopure to the FDA. (Answer, ¶25).

8. On or about February 4, 2003, Biopure sent a letter to its shareholders. (Answer, ¶26).

9. On or about March 7, 2003 Biopure submitted an IND to the FDA. (Answer, ¶28).

10. On or about April 9, 2003, a representative of the FDA telephoned Dr. Richman and indicated that the FDA was placing the trauma IND on clinical hold. (Answer, ¶29).

11. On or about April 25, 2003, the FDA sent a letter to Biopure, addressed to Dr. Richman. (Answer, ¶34).

12. On or about May 6, 2003, Biopure filed with the Commission a Rule 424(b)(3) prospectus supplement. (Answer, ¶35).

**13.** On or about May 12, 2003, Dr. Richman participated in the drafting of and signed a letter to the FDA, which responded to the FDA's April 25, 2003 letter. Defendant Thomas A Moore ("Mr. Moore") participated in drafting this letter. (Answer, ¶37).

**14.** On or about May 14, 2003, Biopure filed a Form 8-K with the Commission. (Complaint, ¶38). (Answer, ¶39).

**15.** On or about May 22, 2003, Biopure issued a press release announcing its results for the second quarter of fiscal year 2003. (Complaint, ¶41). Dr. Richman generally read the final drafts of Biopure's press releases to provide comments from a regulatory perspective. (Answer, ¶41).

**16.** On or about May 22, 2003, Dr. Richman and Mr. Moore participated in a conference call. (Answer, ¶44).

**17.** On or about May 30, 2003, the FDA sent two letters to Biopure addressed to Dr. Richman. (Answer, ¶46).

**18.** On or about May 30, 2003, after receiving both May 30 letters from the FDA, Biopure issued a press release. (Complaint, ¶49). Dr. Richman read the final drafts of Biopure's press releases to provide comments from a regulatory perspective. (Answer, ¶49).

**19.** On or about May 30, 2003, Dr. Richman and Mr. Moore participated in a conference call. (Answer, ¶53).

**20.** On or about June 16, 2003, Biopure filed with the Commission a Form 10-Q quarterly report for the quarter ended April 30, 2003. (Complaint, ¶56).

**21.** On or about July 2, 2003, Biopure submitted a letter to the FDA. . (Answer, ¶61).

22. On or about August 1, 2003, Biopure issued a press release and included the text of the release in a Form 8-K filed with the Commission. (Complaint, ¶76). Dr. Richman participated in reviewing the August 1 Press Release. (Answer, ¶76).

23. On or about August 21, 2003, Biopure issued a press release announcing its financial results for the 3rd quarter of fiscal year 2003. (Complaint, ¶81). Dr. Richman generally read the final drafts of Biopure's press releases to provide comments from a regulatory perspective. (Answer, ¶81).

24. On or about August 21, 2003, Dr. Richman and Mr. Moore participated in a conference call. (Answer, ¶84).

25. On or about August 22, 2003, Biopure filed a Form S-3 registration statement and prospectus with the Commission for the sale of common stock and warrants for the purchase of common stock by selling security holders. (Complaint, ¶87).

26. On or about September 12, 2003, Biopure filed a Form 424(b)(3) prospectus with the Commission. (Complaint, ¶91).

27. On or about September 15, 2003, Biopure filed an amended Form 424(b)(3) prospectus with the Commission. (Complaint, ¶93).

28. On or about September 15, 2003, Biopure filed with the Commission a Form 10-Q quarterly report for the quarter ended July 31, 2003. (Complaint, ¶94). Dr. Richman reviewed the September 15, 2003 Form 10-Q from a regulatory perspective. (Answer, ¶95).

29. On or about October 30, 2003, Biopure issued another press release and included the text of the release in a Form 8-K filed with the Commission. (Complaint, ¶98).

30. On or about December 11, 2003, Biopure issued a press release announcing its financial results for the fiscal year ending October 31, 2003 and included the text

of the release in a Form 8-K filed with the Commission. (Complaint, ¶102). The December 11, 2003 Press Release speaks for itself. (Answer, ¶102).

**31.**   On or about December 24, 2003, Biopure issued a press release and included the text of the release on a Form 8-K filed with the Commission. (Complaint, ¶104).

## IV.   Contested Issues Of Fact

Dr. Richman identifies the following contested issues of fact, among others, to be decided in this action:

**A.**   Whether any misrepresentation or false or misleading statement or omission was made by or on behalf of Dr. Richman that directly or indirectly: (a) involved any material fact; (b) was relied upon by market participants, including investors; (c) caused or contributed to any loss or damage incurred by market participants, including investors; (d) was made in connection with the purchase or sale of any security by any market participant, including investors; (e) was made with any requisite level of scienter or intent to deceive; or (f) would operate as a fraud or deceit upon anyone.

**B.**   Whether Dr. Richman employed any device, scheme or artifice to defraud, including any that directly or indirectly: (a) involved any material fact; (b) was relied upon by market participants, including investors; (c) caused or contributed to any loss or damage incurred by market participants, including investors; (d) was made in connection with the purchase or sale of any security by any market participant, including investors; (e) was made with any requisite level of scienter or intent to deceive; or (f) would operate as a fraud or deceit upon anyone.

**C.**   Whether Dr. Richman engaged in any act, practice, course of business or transaction that operated as a fraud or deceit, including any that directly or indirectly: (a) involved any material fact; (b) was relied upon by market participants, including investors; (c)

caused or contributed to any loss or damage incurred by market participants, including investors; (d) was made in connection with the purchase or sale of any security by any market participant, including investors; or (e) was made with any requisite level of scienter or intent to deceive.

**D.**     Whether Dr. Richman obtained any money or property by any means that directly or indirectly: (a) involved in any way any untrue statement of material fact or omission to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; (b) was relied upon by market participants, including investors; (c) caused or contributed to any loss or damage incurred by market participants, including investors; (d) was made in connection with the purchase or sale of any security by any market participant, including investors; (e) was made with any requisite level of scienter or intent to deceive; or (f) would operate as a fraud or deceit upon anyone.

**E.**     Whether the statements alleged in the Complaint to have been made (or omitted), if any were in fact made (or omitted), had a basis in fact or reasonable basis.

**F.**     Whether anyone suffered loss or damages, and if so, whether such loss or damages resulted from causes other than any alleged act or omission by Dr. Richman.

**G.**     Whether Dr. Richman at all times acted in good faith and exercised reasonable due diligence, and whether Dr. Richman had, after reasonable investigation, reasonable grounds to believe and did believe, at the time such statements were made (if any), that such statements were true and/or not misleading.

**H.**     Whether the statements alleged in the Complaint to have been made, if any were in fact made, constituted forward-looking statements protected by applicable safe harbor provisions.

BOS111_12175833_1.DOC/JLEE

**I.**    Whether Biopure's public statements, registration statement/prospectus, prospectus supplements, and annual and quarterly filings with the SEC, sufficiently bespoke caution.

**J.**    Whether there was culpable participation by Dr. Richman in the actions or activities of others.

**K.**    Dr. Richman incorporates the contested issues of fact identified in Paragraph III of the SEC's separately filed Pre-Trial Memorandum.

## V.    Jurisdictional Questions

Dr. Richman raises no jurisdictional questions in this action.

## VI.    Questions Raised By Pending Motions

On December 21, 2005, Dr. Richman joined Defendants Moore, Kober, and Biopure in a Joint Motion for Partial Summary Judgment as to all claims that assert that the August 1, 2003 press release is misleading as to the status of the BLA because the press release effectively stated exactly what the FDA's July 30, 2003 letter stated. On August 28, 2006, the Court denied the Joint Motion for Partial Summary Judgment without reaching the merits, apparently on grounds that the Defendants' motion was mooted because of the settlement reached with Defendants Kober and Biopure, and because of the ongoing settlement negotiations between the SEC and Dr. Richman.

Furthermore, on November 31, 2006, Defendant Moore filed a Motion for Summary Judgment arguing, among other things, that the relevant statements and omissions attributed to Mr. Moore by the SEC in its Complaint were not material, and that Moore lacked the requisite intent to be found liable for the SEC's claims. Specifically, Mr. Moore argued that: (1) he was under no obligation to disclose the "clinical hold" that the FDA placed on Biopure's proposed

protocol for an in-hospital trauma trial of Hemopure, (2) he did not commit securities fraud by failing to use the words "complete response letter" to describe a July 30, 2003 letter from the FDA, and (3) his generally optimistic statements in press releases and investor conference calls about the regulatory status of Hemopure were not actionable.

Pursuant to the Court's November 2, 2006 Order to effectively stay the action as to Dr. Richman, granted in part because of Dr. Richman's grave medical condition and also in light of ongoing good faith efforts between the parties to settle the action, Dr. Richman did not join Mr. Moore's Motion for Summary Judgment, nor did he advance the same or similar summary judgment arguments on his own behalf. However, the arguments in Mr. Moore's Motion for Summary Judgment, which Dr. Richman would have adopted or at least considered adopting had the action against him not been stayed, raise important questions that could dispose of the action entirely as to Dr. Richman.

Dr. Richman respectfully requests leave to file a motion for summary judgment, based in part on the arguments raised in both the Joint Motion for Partial Summary Judgment and in Mr. Moore's Motion for Summary Judgment, upon neither of which has this court made a determination on the merits.

**VII.   Outstanding Issues Of Law**

Dr. Richman identifies the following issues of law, among others, to be decided in this action:

A.   Whether the FDA's July 30, 2003 letter to Biopure constituted a "complete response letter" to Biopure's Biologics License Application for an orthopedic surgery indication for Hemopure.

**B.** Whether the SEC's claims are barred because Dr. Richman at all times acted in good faith, exercised reasonable due diligence, and because Dr. Richman had after reasonable investigation, reasonable grounds to believe and did believe, at the time such statements were made (if any), that such statements were true and/or not misleading.

**C.** Whether Dr. Richman complied faithfully with all duties of disclosure to which he was subject, if any, and breached no duty of disclosure applicable to him.

**D.** Whether the SEC's claim against Dr. Richman for aiding and abetting violations of the securities laws fails as a matter of law because Biopure did not violate any applicable law or statute; or, to the extent Biopure's conduct did violate some law or statute, Dr. Richman did not know or was not reckless in not knowing that Biopure's conduct constituted such violation.

**E.** Whether the fraud-on-the-market theory is not a basis of liability with respect to any of the claims in this action.

**F.** Whether the statements alleged in the Complaint to have been made, if any were in fact made, were forward-looking statements protected by applicable safe harbor provisions.

**G.** Whether the SEC's claims are barred, in whole or in part, because Biopure's public statements, registration statement/prospectus, prospectus supplements, and annual and quarterly filings with the SEC, sufficiently bespoke caution.

**H.** Whether the SEC's claims are barred, in whole or in part, by applicable statutes of limitation and/or the doctrines of laches, and/or estoppel, and/or unclean hands and/or waiver.

**I.** Whether the SEC's claims are barred, in whole or in part, because there was no culpable participation.

**J.** Whether Dr. Richman is entitled to payment of its attorneys' fees by the SEC pursuant to § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e).

## VIII.  Requested Amendments To The Pleadings

Subject to the Preliminary Statement in Paragraph I above, as well as to the pending motions identified under Paragraph VI, Dr. Richman does not seek to amend any pleadings in this action at this time.

## IX.  Additional Matters To Aid In The Disposition Of The Action

Subject to the Preliminary Statement in Paragraph I above, Dr. Richman does not believe there to be any additional matters to aid in the disposition of this action at this time.

## X.  Probable Length Of Trial

Dr. Richman expects trial in this action to last approximately 12-14 business days, or two-and-one-half weeks.

## XI.  List Of Witnesses

Dr. Richman anticipates that the following witnesses may be called at trial:

**A.     Peter B. Hutt** (Expert Witness), Covington & Burling LLP [1]

   Covington & Burling LLP
   1201 Pennsylvania Avenue, NW
   Washington, DC 20004-2401
   Phone: (202) 662-6000

**B.     S. P. Kothari** (Expert Witness), MIT Sloan School of Management [2]

   Sloan School of Management, E52-325
   Massachusetts Institute of Technology
   50 Memorial Drive
   Cambridge, MA 02142
   Phone: (617) 253-6130

---

[1] Mr. Hutt was initially identified as Defendants' expert witness on FDA policies and procedures, among other things, earlier in this litigation. Dr. Richman has since attempted to contact Mr. Hutt concenring his testimony in this action, without success. In the event that Mr. Hutt is unavailable to testify as a witness, Dr. Richman reserves the right to call an alternate expert on the issues for which Mr. Hutt was initially designated to testify.

[2] Mr. Kothari was initially identified as Defendants' expert witness on stock pricing, among other things, earlier in this litigation. Dr. Richman has since attempted to contact Mr. Kothari concenring his testimony in this action, without success. In the event that Mr. Kothari is unavailable to testify as a witness, Dr. Richman reserves the right to call an alternate expert on the issues for which Mr. Kothari was initially designated to testify.

    **C.**    Dr. Richman further incorporates the list of witnesses identified in Paragraph X of the SEC's separately filed Pre-Trial Memorandum.

## XII. Proposed Exhibits

Dr. Richman's list of proposed exhibits to be offered into evidence in this action is hereto attached as Exhibit A. Dr. Richman expressly reserves its right to add additional exhibits upon reasonable notice. Dr. Richman incorporates the proposed exhibits identified in Paragraph XI of the SEC's separately filed Pre-Trial Memorandum and Exhibit A attached thereto..

## XIII. Remaining Objections To Evidence Identified Through Fed. R. Civ. P. 26(a)(3) Disclosure

Dr. Richman states that the parties will engage in discussions regarding each party's objections to witnesses and exhibits, and to the extent the parties are unable to resolve objections, they will present their objections to the Court.

Dated July 10, 2007
Boston, Massachusetts

                                                Respectfully submitted,

                                                /s/ Joey H. Lee
                                                John. D. Hughes (BBO #243660)
                                                Mary Patricia Cormier (BBO #635756)
                                                Joey H. Lee (BBO #663803)
                                                EDWARDS ANGELL PALMER &
                                                     DODGE LLP
                                                111 Huntington Avenue
                                                Boston, Massachusetts 02199
                                                (617) 239-0100

                                                Counsel for Defendant Howard Richman

# EXHIBIT A

BOS111_12175841_1.DOC/JLEE

## DEFENDANT HOWARD RICHMAN'S
## PRELIMINARY LIST OF EXHIBITS[1]

Thomas A. Moore SEC Testimony (excerpts)

Toby Silverman Testimony (excerpts)

Abdu Alayash Testimony (excerpts)

Richard Crout Testimony (excerpts)

Franklin Stephenson Testimony (excerpts)

Laurence Landow Testimony (excerpts)

Howard Richman Testimony (excerpts)

Charles Sanders Testimony (excerpts)

David Judelson Testimony (excerpts)

Carl Rausch Testimony (excerpts)

Daniel Harrington Testimony (excerpts)

Jane Kober Testimony (excerpts)

Expert Report of Peter Barton Hutt

FDA White Paper, *Prescription Drug User Fee Act (PDUFA) Adding Resources and Improving Performance in FDA Review of New Drug Applications* (Nov. 2005) (excerpts)

*FDA Manual of Standard Operating Procedures and Policies, License Applications, Complete Review and Issuance of Action Letters,* SOPP 8405 v.3 (Aug. 8, 2003)

*Approval Times for Priority and Standard Biological License Applications and Device Applications* (June 29, 2005)

BLA HBOC-201 Overall Summary (excerpts)

Transmittal Letter from Biopure to CBER (Jul. 31, 2002)

Letter from Basil Golding to Howard Richman (Dec. 3, 2002)

---

[1] Dr. Richman reserves his right to delete exhibits from or add exhibits to its exhibit list upon reasonable notice.

Regulatory Agency Telephone Contact Report (Jan. 7, 2003)

Biopure Form S-3 (filed Jan. 29, 2003) (excerpts)

Biopure Form 10-K (filed Jan. 29, 2003) (excerpts)

Biopure Press Release (Mar. 5, 2003)

Letter from Howard Richman to Toby Silverman (Mar. 7, 2003)

Letter from John C. Capen to Howard Richman (Mar. 14, 2003)

Biopure Form 10-Q (filed Mar. 17, 2003) (excerpts)

Letter from Jerome Davis to Jeffrey Reidler (Mar. 26, 2003)

Regulatory Agency Telephone Contact Report (Apr. 9, 2003)

Letter from Basil Golding to Howard Richman (Apr. 25, 2003)

Biopure Form 8-K (filed May 22, 2003) (excerpts)

Investor Conference Call Transcript (May 22, 2003) (excerpts)

Regulatory Agency Telephone Contact Report (May 27, 2003)

Biopure Press Release, May 30, 2003 (excerpts)

Investor Conference Call Transcript (May 30, 2003)

Adam Feuerstein, *TheStreet.com, Biopure* (Jun. 2, 2003)

Biopure Form 10-K (filed Jun. 16, 2003) (excerpts)

Letter from Basil Golding to Howard Richman (Jul. 30, 2003)

Letter from Basil Golding to Howard Richman (Jul. 30, 2003)

Biopure Press Release (Aug. 1, 2003)

Adam Feuerstein, *TheStreet.com, Biopure* (Aug. 4, 2003)

Biopure Press Release (Aug. 21, 2003)

Investor Conference Call Transcript (Aug. 21, 2003) (excerpts)

Email from Doug Sayles (Sept. 26, 2003)

Email from Doug Sayles (Sept. 29, 2003)

Biopure Press Release (Oct. 30, 2003)

Investor Conference Call Transcript (Oct. 30, 2003) (excerpts)

BOS111_12175841_1.DOC/JLEE

- 4 -

Biopure Press Release (Dec. 11, 2003)

Biopure Press Release (Dec. 24, 2003)

Biopure Press Release (Feb. 24, 2004)

69 Fed. Reg. 43351 (Jul. 20, 2004)

71 Fed. Reg. 2458 (Jan. 17, 2006)